UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60719-CIV-DIMITROULEAS

ITAMAR MEDICAL, LTD.,

    Plaintiff,

v.

ECTOSENSE NV,

    Defendant.

_____/

## ORDER DENYING MOTION TO DISMISS

THIS MATTER comes before the Court upon on Defendant's Motion to Dismiss
Amended Complaint [DE 28] ("Motion"). The Court has carefully considered the Motion,
Plaintiff's Response [DE 35], and the Reply [DE 41] thereto. The Court has also considered
Defendant's Motion for Miscellaneous Relief (Request to take Judicial Notice) [DE 42], the
Response [DE 44], and Reply [DE 45] thereto, and the Parties' arguments at the November 24,
2020 hearing on this matter, and it otherwise fully advised in the premise.

## I.    BACKGROUND

In its Amended Complaint, Plaintiff Itamar Medical, Ltd. ("Plaintiff" or "Itamar") brings
claims against Defendant Ectosense, nv ("Defendant" or "Ectosense") for trademark
infringement, unfair competition/false designation of origin, and false advertising under the
Lanham Act, 15 U.S.C. § 1051, *et seq.*, and claims for unfair competition, deceptive trade
practices, and trademark infringement under Florida law. *See* Am. Compl. [DE 19] [hereinafter
"AC"].

Plaintiff Itamar is an Israeli medical device manufacturer. AC ¶ 10. Itamar develops, manufactures, and sells products that use Itamar's "PAT" technology, or technology that measures peripheral arterial tone. AC ¶¶ 10–11. The United States Patent and Trademark Office issued Itamar a U.S. Federal Trademark Registration in November 2010 for the mark "PAT." ¶ 11.  Itamar's PAT technology enables sleep apnea testing without traditional, in-lab sleep apnea diagnostic devises, referred to as Home Sleep Apnea Tests ("HSATs"). AC ¶ 18. Itamar's product line, including the WatchPAT 200U, WatchPAT 300, and WatchPAT ONE, uses the PAT technology. AC ¶ 18.

According to the Amended Complaint, Defendant Ectosense *nv* is a digital health and medical devices company focused on sleep disorders. AC ¶ 21. One of Ectosense's products is the NightOwl. AC ¶ 3. Ectosense described the NightOwl as "a PAT device.". AC ¶ 24. Plaintiff claims, however, that the NightOwl uses photoplethysmography ("PPG") designed for oximetry. AC ¶ 24, 26. According to Plaintiff, the NightOwl does not use uniform pressure around the finger, which Plaintiff claims has been an inherent element of the PAT measurement. AC ¶¶ 24–26. Ectosense has marketed its NightOwl product as based on Peripheral Arterial Tonometry at meetings focused on sleep issues, namely the American Academy of Dental Sleep Medicine and the SLEEP annual meetings, both in 2019. AC ¶¶ 30–31. Ectosense's marketing materials for the NightOwl also claim that the product is based on PAT or PAT-based. ¶¶ 32–33, 35. Plaintiff claims that the NightOwl does not meet the American Academy of Sleep Medicine's ("AASM") guidelines for an HSAT or a PAT-based device. AC ¶¶ 33–34. According to Plaintiff, Ectosense is attempting to benefit from the medical community's acceptance and use of PAT-based technology by making false and misleading statements that the NightOwl uses PAT-based technology and is a PAT-based HSAT that complies to the AASM guidelines. AC ¶ 40.

Plaintiff contends that Ectosense's activities have caused Plaintiff to have to incur legal fees and expenses, have caused irreparable harm to Itamar's goodwill, reputation, and customer relationships. AC ¶¶ 44–45. In addition, Plaintiff contends Ectosense's marketing of the NightOwl has led and will continue to lead to sales being diverted from Itamar. AC ¶ 40.

Based on these allegations, Plaintiff brings its five count Amended Complaint. Count I alleges a claim for federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114. Count II alleges a claim for unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A). Count III alleges a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Count IV alleges a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla.. Stat. § 501.201 *et seq.* ("FDUPTA"). Count V alleges a claim under Florida common law for unfair competition and trademark infringement. Plaintiff seeks to enjoin Ectosense from using the PAT mark or claiming the NightOwl is a PAT device as well as obtain a judgement for damages and reasonable attorneys' fees.

## II.   <u>LEGAL STANDARD</u>

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any

theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

## III.   DISCUSSION

Defendant's Motion to Dismiss [DE 28] seeks to dismiss all claims in Plaintiff's Amended Complaint [DE 19] pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant also seeks an award of its attorneys' fees, claiming that Plaintiff's Lanham Act claims rise to the level of exceptional. In adjudicating the Motion to Dismiss, Defendant requests that the Court take judicial notice of the FDA's March 6, 2020 Clearance Letter and the 510(k) Summary for the NightOwl. [DE 42].

### A.  Consideration of the FDA's 510(k) Summary and Other Documents

Defendant, throughout its Motion to Dismiss relies on documents outside the four corners of the complaint. This includes two pamphlets which contain statements purportedly referenced in the Amended Complaint and the FDA's March 6 clearance letter ("Clearance Letter") and 510(k) Summary for NightOwl. Defendant separately moves for the Court to take judicial notice of the Clearance Letter and 510(k) Summary. Defendant argues that this Court may consider the contents of the Clearance Letter and 510(k) Summary because Plaintiff has pled that Ectosense is using its FDA clearance to mislead consumers and physicians.

Plaintiff requests that the Court not consider these documents. In particular, the Plaintiff argues that the Court cannot consider the Clearance Letter or 510(k) Summary. Plaintiff notes that it does not reference the 510(k) Summary in its Amended Complaint and as such the summary is not "central" to Plaintiff's complaint; therefore, under applicable case law, the summary cannot be considered on a motion to dismiss.

Typically, in considering a motion to dismiss, a court's review is confined to the four corners of the complaint. *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir.2009). An exception exists for documents that were not attached to the complaint if they are central to a plaintiff's claim and their authenticity is undisputed. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id.*

Under Federal Rule of Evidence 201, "[c]ourts can take notice of certain facts without formal proof but only where the fact in question is 'one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997) (citing Fed.R.Evid. 201(b)). "[T]he kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." *Id.*

Rather than asking the Court to take notice of a specific, undisputed fact, the Defendant requests that the Court take judicial notice of two documents, the 510(k) Summary prepared by Defendant and the FDA's Clearance Letter. The meaning of the documents is highly disputed by Plaintiff. The Court will take judicial notice of the fact that the FDA issued the Clearance Letter for the NightOwl product on March 6, 2020. However, the Court will not take judicial notice of the contents of the 510(k) Summary and FDA Clearance Letter or any facts or statements there within.

**B.  Federal Trademark Infringement Claims**

Defendant argues that Plaintiff's claims for trademark infringement (Count I) and false designation of origin (Count II) under the Lanham Act fail to state a plausible claim and are barred by the fair use defense. Defendant contends Plaintiff's "PAT" trademark only gives it exclusive use of the mark as a source indicator and cannot give it exclusive dominion over all "PAT technology" or "PAT-based technology" as it is a trademark and not a patent.

In response, Plaintiff argues that Itamar holds an incontestable registration to the "PAT" conclusive evidence of the validity of the registered mark, the validity of the registration of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark in commerce. Plaintiff contends that the "PAT" mark is presumed to be valid and non-descriptive and that applicability of the fair use defense is not clear from the face of Plaintiff's Amended Complaint.

*1.  Stating a Claim for Trademark Infringement or False Designation of Origin*

A trademark is "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods ... from those manufactured or sold by others and to indicate the source of the goods." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 797

(11th Cir. 2003) (quoting 15 U.S.C. § 1127). "[B]y preventing competitors from copying a source-identifying mark, [trademark law] reduces the customer's costs of shopping and making purchasing decisions and helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003).

To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that: (1) it possesses a valid mark, (2) the defendant used the mark, (3) the defendant's use of the mark occurred "in commerce," (4) the defendant used the mark "in connection with the sale ... or advertising of any goods," and (5) the defendant used the mark in a manner likely to confuse consumers. *3Lions Publishing, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1040 (M.D. Fla. 2019) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). To state a claim for false designation of origin under 15 U.S.C. § 1125, a plaintiff must plead (1) that it had enforceable trademark rights in the mark or name, and (2) that the defendant's use was likely to cause confusion about an affiliation, connection, or association between defendant's and plaintiff's products or as to the origin of the products. *See* 15 U.S.C. § 1125; *Tracfone Wireless, Inc. v. Simply Wireless, Inc*., 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc*., 508 F.3d 641, 647–48 (11th Cir. 2007)).

A key analysis in both claims is whether the allegedly infringing use is likely to cause confusion. *Phoenix Entm't Partners, LLC v. Casey Rd. Food & Beverage*, 728 F. App'x 910, 912 (11th Cir. 2018). "Unlike the general prohibition against unauthorized copying that exists in patent and copyright law the touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to

cause consumer confusion." *Custom Mfg.*, 508 F.3d at 647. "[A] plaintiff claiming infringement of an incontestable mark must show likelihood of consumer confusion as part of the prima facie case." *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 112 (2004). When determining whether the use of a mark is likely to cause confusion, courts consider the following: (1) whether the mark can be classified as generic, descriptive, suggestive, or arbitrary; (2) the similarity of the marks; (3) the similarity of the goods; (4) where, how, and to whom the parties' products are sold; (5) the similarity of advertising media; (6) the defendant's intent; and (7) any evidence of actual confusion. *See Custom Mfg.*, 508 F.3d at 648.

Plaintiff has alleged sufficient facts to permit the Court, taking all allegations as true and drawing all inferences in favor of Plaintiff, to infer a plausible claim for trademark infringement and false designation of origin. Plaintiff has alleged that it holds enforceable trademark rights to the allegedly source-identifying mark, "PAT". AC ¶ 1. Further, Plaintiff has alleged that it holds an incontestable registration to the "PAT" and "EndoPAT" marks. AC ¶ 17. As Plaintiff alleges that it holds a registration that has been declared incontestable pursuant to 15 U.S.C. 1065, the validity and non-descriptive nature of Plaintiff's trademark are presumed. *Dieter v. B & H Indus. of Sw. Fla., Inc.,* 880 F.2d 322, 328 (11th Cir. 1989). Plaintiff has also alleged that Ectosense has used the "PAT" mark in marketing and selling its NightOwl product. *See, e.g.* AC ¶¶ 33, 37.

Finally, Plaintiff's allegations raise a plausible inference that Defendant Ectosense's use of the "PAT" mark is likely to cause or has caused customer confusion. Defendant Ectosense and Plaintiff both have used the acronym PAT to describe devices that, among other tests, serve as Home Sleep Apnea Tests. AC ¶¶ 2, 3.  Further, Plaintiff alleges that Ectosense prominently displayed Plaintiff's trademark, the "PAT" term, on the front page of a brochure for the NightOwl. AC ¶ 33. Plaintiff also alleges that Defendant's promotion materials stated that the

NightOwl is "a PAT device" and contains "PAT technology." AC ¶ 37. Finally, Plaintiff has alleged that Defendant's use of the PAT term will confuse customers as to the source of the NightOwl product and has caused and will continue to cause a loss of sales and goodwill for Itamar. AC ¶ 40.

Based on the foregoing, the Court finds that Plaintiff has stated a plausible claim for trademark infringement (Count I) and false designation of origin (Count II).

### 2. *Viability of Dismissal Based on Fair Use Defense*

Defendant moves to dismiss Itamar's claims for trademark infringement and false designation of origin based on the affirmative defense of fair use. Defendant contends that Itamar's use of the "PAT" term is descriptive and that the applicability of the fair use defense is clear on the face of Plaintiff's Amended Complaint. According to Defendant, peripheral arterial tone is a physiological measure and PAT, an acronym of this physiological measure, is a descriptive, non-source identifying term. Plaintiff's own use of the "PAT" term throughout its Amended Complaint, Defendant argues, demonstrates that the term is descriptive rather than source-identifying. In addition, Defendant contends that argues that the pamphlet Itamar relies on an as an example of Ectosense impermissible use of the PAT mark "includes (1) the prominent display of Ectosense's own registered trademark; (2) the full phrase definition of PAT as peripheral arterial tonometry; and (3) a conspicuous identification of Ectosense as the company behind NightOwl." Mot. at 21.

Plaintiff argues that the PAT term is not descriptive, but a term coined by Itamar and used to identify Itamar products. Further, Plaintiff argues that the bold, attention-getting way Defendant used the PAT mark in its pamphlets was not descriptive in fashion but rather used to

identify Ectosense's NightOwl as a product using PAT-technology. Finally, Plaintiff contends Ectosense's good faith use of the mark is not clear from the Amended Complaint.

Defendants charged with infringement of a trademark may respond by asserting the affirmative defense of descriptive fair use. To prevail on an affirmative defense of descriptive fair use a defendant must demonstrate that its use of the mark was 1) other than as a mark 2) descriptive in nature and 3) done in good faith. *Int'l Stamp Art, Inc. v. U.S. Postal Serv*., 456 F.3d 1270, 1274 (11th Cir. 2006). A clear purpose of the descriptive fair use defense is to prevent a trademark registrant from appropriating a descriptive term or phrase for its exclusive use and depriving another commercial speaker "of the ordinary utility of descriptive words." *KP Permanent*, 543 U.S. at 122.

A motion to dismiss made under Rule 12(b)(6) may be granted based on the presence of a valid affirmative defense "when [the complaint's] allegations--on their face--show that an affirmative defense bars recovery on the claim." *See Koger v. Florida*, 130 F. App'x 327, 332 (11th Cir. 2005) (affirming the district court's dismissal of a complaint based on a finding of qualified immunity) (quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001)); *Foster v. Maloney*, 785 F. App'x 810, 814 (11th Cir. 2019) (affirming the district court's dismissal of a complaint based on a finding of qualified immunity) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)). Many courts have found that a claim for trademark infringement may be dismissed on a motion to dismiss when the applicability of the fair use defense is clear from the allegations in the complaint. *See In re Dual–Deck Video Cassette Recorder Antitrust Litig.,* 11 F.3d 1460, 1467 (9th Cir.1993); *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 613 (6th Cir. 2009); *Setai Hotel Acquisitions, LLC v. Luxury Rentals Miami Beach, Inc.*, No. 16-21289-CIV-MORE, 2016 U.S. Dist. LEXIS 171396, at *8 (S.D. Fla. Dec. 9, 2016).

However, when the facts necessary to find that the fair use defense applies are not apparent from a plaintiff's complaint, courts find the applicability of the fair use defense is not best addressed at the motion to dismiss stage. *See 3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1042 (M.D. Fla. 2019) (noting that "[t]he Court only considers a fair use affirmative defense when analyzing a 12(b)(6) motion if the facts necessary to make the determination are evident on the face of the complaint.") (internal citations omitted). *Cf Tovey v. Nike, Inc*., No. 1:12-CV-0448, 2012 WL 7017821, at *8 (N.D. Ohio July 3, 2012), *report and recommendation adopted as modified*, No. 1:12CV448, 2013 WL 486341 (N.D. Ohio Feb. 6, 2013) (N.D. Ohio July 3, 2012) ("The Sixth Circuit merely requires plaintiffs pleading infringement to plead sufficient facts to make plausible that the plaintiff owns the trademark, defendant used it in commerce, and the use was likely to cause confusion. The time to address a defense of "fair use" is in a motion for summary judgment or at trial, not in a motion to dismiss.").

In *Lilly et al. v. Santander Consumer USA Inc*., this Court stated that a fair use defense, that is clear from the face of the complaint, can serve as grounds for dismissal. *See* Case 0:19-cv-61069-WPD, [DE 48] (citing *3Lions Publishing, Inc. v. Interactive Media Corp*., 389 F. Supp. 3d 1031, 1040 (M.D. Fla. 2019)). However, this Court denied in part the Motion to Dismiss in *Lilly v. Santander*, stating that it was not so clear from the face of the complaint that a fair use defense would apply as to warrant dismissal at the motion to dismiss stage. In *3Lions Publishing Inc. v. Interactive Media Corp*., the Middle District of Florida similarly found that fair use was not clear from a complaint, where the trademark was allegedly used in a blog post's title in the context of a defendant promoting its own products. *See* 389 F. Supp. 3d at 1042.

Defendant Ectosense has failed to demonstrate that a fair use defense is clear from the face of the complaint. Plaintiff alleges at least one instance of Defendant's use of the "PAT"

mark where Defendant prominently displays the "PAT" term on the front page of a pamphlet and additionally alleges that Defendant described the NightOwl as "a PAT device." AC ¶ 33, 37. Defendant has not demonstrated that, upon only the allegations in the Complaint, Defendant's use of the  "PAT" mark was so clearly 1) other than as a mark 2) descriptive in nature and 3) done in good faith as to warrant dismissal merely on a motion to dismiss.

### C. Federal False Advertising Claim

Defendant argues that Plaintiff's claim for false advertising under the Lanham Act (Count III) is due to be dismiss because Plaintiff's claims are precluded by the Food, Drug, and Cosmetic Act ("FDCA") and because Plaintiff fails to sufficiently allege falsity of Defendant's statements.

### 1. *Preclusion of Plaintiff's False Advertising Claim Under the Lanham Act*

Defendant contends the FDCA precludes or preempts Count III, for false advertising under the Lanham Act, and Count IV, brought under FDUPTA. According to Defendant, Plaintiff's false advertising claim under the Lanham Act and FDUPTA claim are precluded and preempted, respectively, by 21 U.S.C. § 337(a) which provides the FDA with exclusive enforcement powers of the FDCA. In effect, Defendant contends that the FDA has effectively approved of the statement that the NightOwl measures PAT and, as such, any of Plaintiff's claims challenging these statements as false or misleading are precluded and preempted by the FDCA. Defendant characterizes Plaintiff's claim that the NightOwl measures only PPG and does not provide a PAT measurement as directly in conflict with the FDA's Clearance Letter and the 510(k) Summary which states that NightOwl analyzes changes in the peripheral arterial tone. Defendants argues that under the applicable regulatory regime, the 510(k) Summary is a part of a

product's "labeling" so Itamar's false advertising claim is precluded because it attacks one of the bases underlying the 510(k) clearance for the NightOwl product.

Plaintiff argues that the nature of the 510(k) clearance process demonstrates that the FDA has not "approved" statements that the NightOwl relies on a PAT measurement and that the 510(k) Clearance Letter from the FDA does not support preclusion. Plaintiff argues Ectosense, even considering the 510(k) Clearance Letter, cannot show the FDA agrees with every claim made in the 510(k) Summary. Further, Plaintiff contends the Clearance Letter clearly states that the FDA has not made a determination that the NightOwl's labeling meets any Federal statutes or regulations.

"[N]either the Lanham Act nor the FDCA, in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA." *See POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 113 (2014). Further, the two statutes serve to distinct but complimentary purposes. "The Lanham Act and the FDCA complement each other in major respects, for each has its own scope and purpose. Although both statutes touch on food and beverage labeling, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety." *POM Wonderful LLC.,* 573 U.S. at 115.

In *POM Wonderful LLC v. Coca-Cola Co.*, the Supreme Court addressed the preclusive effect of the FDCA in the context of food and beverage labeling. *See* 573 U.S. 102 (2014). As to food and beverage labels, the Supreme Court has held that the FDCA does not preclude Lanham Act claims based on alleged false or misleading statements on labels. *Id.* The Supreme Court reasoned that "[u]nlike other types of labels regulated by the FDA, such as drug labels, *see* 21 U.S.C. § 355(d), it would appear the FDA does not preapprove food and beverage labels under its regulations and instead relies on enforcement actions, warning letters, and other measures.

...Because the FDA acknowledges that it does not necessarily pursue enforcement measures regarding all objectionable labels, ... if Lanham Act claims were to be precluded then commercial interests—and indirectly the public at large—could be left with less effective protection in the food and beverage labeling realm than in many other, less regulated industries." *POM Wonderful LLC,* 573 U.S. at 116 (internal citations omitted).

In another case addressing FDCA preclusion in the context of food and beverage labeling, the Eleventh Circuit held that a false advertising claim brought under the Lanham Act was not precluded by the FDCA because it did not require the court to interpret the FDCA when determining whether the marketing of a supplement was deceptive. *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.,* 910 F.3d 1186, 1199 (11th Cir. 2018). The Court reason that "[b]ecause [the key] inquiry would not require a court "to interpret or apply the FDCA to determine whether or not the marketing of the supplement was deceptive," resolving [the plaintiff's] claim under the Lanham Act would not "step on the FDCA's toes," *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1199 (11th Cir. 2018) (citing *Hi-Tech Pharm., Inc. v. Hodges Consulting*, 230 F.Supp.3d 1323, 1331 (N.D. Ga. 2016). Similarly, in the present case, determining whether Defendant's use of the term "PAT" in marketing its NightOwl product was misleading or deceptive will not require the Court to apply the FDCA.

The Second Circuit's analysis in *Church & Dwight., Inc. v. SPD Swiss Precision Diagnostics, GmBH,* is instructive. *See* 843 F.3d 48, 63 (2d Cir. 2016). In *Church & Dwight., Inc.*, the Second Circuit determined that a false advertising claim under the Lanham Act against a marketer of an in-home pregnancy test was not precluded by the FDCA even though the pregnancy test and its labeling had gone through the FDCA § 510(k) process. *Id.* at 62. The Second Circuit in its analysis relied on the Supreme Court's reasoning in *POM Wonderful*, in

particular, the Supreme Court's conclusion that the Lanham Act was intended to protect commercial interests against unfair competition while the FDCA protects public health and safety. *Id.* In addition, the Second Circuit noted that the Supreme Court in *POM Wonderful* "rejected the proposition that the FDCA's or FDA's regulation of a label creates a "ceiling" that precludes any further challenges to that label under other statutes." *Id.* at 63 (citing *POM Wonderful LLC.,* 573 U.S. at 118–19). Ultimately the court in *Church & Dwight, Inc* concluded that a marketer could be held liable for false or misleading advertisements under the Lanham Act even if the products labeling was also regulated by the FDA, reasoning that "FDA approval of the accuracy of a subject's representations does not create a ceiling that bars still better protections against the capacity of the representations to mislead." *See* 843 F.3d at 63. The Second Circuit noted that the FDA in its clearance letter in the *Church & Dwight* case had made the same statement it did in the present case, that the FDA's clearance and review of the 510(k) Summary "does not mean that FDA has made a determination that your device complies with other requirements of the [FDCA] or any Federal statutes and regulations administered by other Federal agencies." *Id.* 63–64.

The Court finds that Plaintiff Itamar's false advertising claim under the Lanham Act is not precluded. The Court notes that the present case is distinguishable from the dispute in *POM Wonderful* and in *Hi-Tech Pharm., Inc.* as those cases addresses food and beverage labeling, where here, Defendant's NightOwl product and labeling when through the 510(k) process. However, as the Second Circuit found in *Church & Dwight, Inc.*, the Court sees "no reason why the subjugation of Defendant's Product labeling to FDA regulation through the § 510(k) process should categorically immunize it from Lanham Act claims by competitors regarding the regulated labeling." *See Church & Dwight Co.*, 843 F.3d at 63. The 510(k) process is not a

process for the FDA to preapprove the safety and efficacy of a medial device. *See Eghnayem v. Bos. Sci. Corp*., 873 F.3d 1304, 1317 (11th Cir. 2017). Rather, it is a process by which a manufacturer can earn an exemption to the FDA's premarket approval process for medical devices by demonstrating that the device in question is "substantially equivalent" to legally marketed devices. *Id.* At this stage of the litigation, the Court finds that resolving Plaintiff's claims under the Lanham Act will not intruded on the dominion of the FDA under the FDCA.

### 2.  *Stating a Claim for False Advertising*

"To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1260 (11th Cir. 2004). The falsity element requires a "either '(1) commercial claims that are literally false as a factual matter' or '(2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.'" *Hickson Corp. v. N. Crossarm Co*., 357 F.3d 1256, 1261 (11th Cir. 2004) (citing *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir. 1998)). "When determining whether an advertisement is literally false or misleading, courts 'must analyze the message conveyed in full context,' and 'must view the face of the statement in its entirety.'" *Hi-Tech Pharm., Inc. v. HBS Int'l Corp*., 910 F.3d 1186, 1196 (11th Cir. 2018) (quoting *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010))

The allegations in Plaintiff's Amended Complaint are sufficient to state a claim for false advertising under § 43(a)(1)(B) of the Lanham Act. Plaintiff alleges is its Amended Complaint that Ectosense presented information that was false and misleading at the American Academy of Dental Sleep Medicine annual meeting, including the statement that the NightOwl product was "[b]ased on Peripheral Arterial Tonometry" technology. AC ¶ 30. Plaintiff also alleges similar false statements were made at the SLEEP annual meeting in 2019 and in NightOwl promotional materials. AC ¶ 31–33. These statements are false and misleading, according to the allegations in the Amended Complaint, because the NightOwl product purportedly uses PPG not "PAT" technology. AC ¶ 32, 35, 73. The Amended Complaint also alleges that a NightOwl brochure contains a statement that the product is a "PAT-based HSAT according to AASM guidelines," however, Plaintiff alleges that the NightOwl product does not meet the AASM guidelines for a PAT-based HSAT. AC ¶ 33–34. Plaintiff also alleges that Ectosense's advertising interferes with Plaintiff's goodwill and customer relationships and will harm Plaintiff's reputation as a producer of PAT products and the value of PAT. AC ¶ 45. Plaintiff also alleges that Ectosense's false and misleading statements have diverted sales from Itamar's products to Ectosense "and/or have lessened the goodwill enjoyed by Itamar's medical devices." AC ¶ 77.

Defendant argues that Plaintiff's federal false advertising claim fails because Plaintiff fails to properly plead falsity. In response, Plaintiff argues that it has properly pled that Defendant's statements were false or misleading, those statements must be accepted as true. According to Plaintiff, that Defendant's arguments regarding the proper pleading of falsity urge the court to make a summary judgment finding at this motion to dismiss stage.

When addressing a motion to dismiss the Court must accept all factual allegations as true and make all reasonable inferences in favor of the non-moving party. *Spanish Broad. Sys. of*

*Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004). Here, Plaintiff has specifically alleged that the NightOwl product does not use Itamar's PAT technology and does not measure "PAT" making its statements that the NightOwl is PAT-based false or misleading. Concluding that this allegation is sufficient either because the NightOwl is in fact PAT-based or because the 510(k) Summary and FDA Clearance Letter evidence that the NightOwl provides a PAT measurement would require the Court to conduct a fact-intensive inquiry and draw inferences in favor of Defendant. Such an analysis is not appropriate at the motion to dismiss stage. *See Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1231 (M.D. Fla. 2017) (declining to conduct a fact-intensive inquiry or draw inferences in favor of a Defendant to determine that certain statements were not false when adjudicating a motion to dismiss). Accepting Plaintiff's allegations as true and drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently pled that Ectosense's advertisements were false or misleading.

Defendant also claims that a number of the statements attributed to Ectosense, at least by implication, throughout the Amended Complaint were not actually made by Ectosense but by third parties. According to Defendant, Plaintiff does this in order to circumvent the pleading requirement of the contributory liability doctrine which requires a plaintiff to allege that a defendant had intended to participate in actually knew about the false advertising scheme of a third-party. Plaintiff alleges that Defendant Ectosense made a number of false or misleading statements. *See, e.g.* Am. Compl. ¶ 30 (stating "Ectosense presented information…"), 31 (stating "Ectosense continued providing…"), 36 (stating "Ectosense has also recently begun distributing marketing materials…"), 39 (stating "Ectosense's advertisements"). Whether Ectosense actually made these statements or can be held liable for these statements, is not an appropriate

determination for the Court to make on a motion to dismiss. As such, Defendant's arguments that statements in the Amended Complaint cannot be attributed to Ectosense will not prevent Plaintiff's claims from proceeding at this time.

### D. Florida Deceptive and Unfair Trade Practices Act Claim

Defendant argues that Plaintiff's Florida Deceptive and Unfair Trade Practices Act claim (Count IV) is preempted by the FDCA for the same reasons its federal law claims is precluded and that the FDUPTA claim is implausible on its face.

#### 1. Stating a Claim under FDUPTA

The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") is designed to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006) (quoting Fla. Stat. § 501.202(2)). FDUPTA provides for both monetary damages and injunctive and declaratory relief. *See* Fla. Stat. § 501.211. Plaintiff's Amended Complaint seeks both injunctive and monetary relief. *See* AC ¶¶ 26, 28–29.

Defendant contends Plaintiff has failed to state a monetary claim under FDUPTA by failing allege actual damages. Defendant contends that in FDUPTA-competitor claims, as opposed to a claim brought by a consumer, a Plaintiff's only available actual damages are past lost profits. According to Defendant, as Plaintiff has not pled past lost profits, Defendant argues Plaintiff fails to state a claim.

Plaintiff argues it has sufficiently alleged actual damages by stating in the Amended Complaint that ""[b]oth consumers and Itamar have been injured by Ectosense's violations because consumers have been misled to not make purchases of Itamar's products based on

Ectosense's misleading claims that its products offer consumers the equivalent  technology and capabilities in a superior and less expensive format." AC ¶ 87.

To state a claim for monetary damages under FDUPTA a plaintiff  must plead three elements, "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (quoting *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006)). Here, Plaintiff has alleged Ectosense engaged in deceptive acts by making misleading claims about its NightOwl product. AC ¶ 87. In addition, a successful infringement claim supports a claim for violation of FDUTPA. See *Coach, Inc. v. Swap Shop, Inc*., No. 12-60400-CIV, 2012 WL 12887010, at *9 (S.D. Fla. Sept. 21, 2012) (citing *Natural Answers, Inc. v. SmithKline Beecham Corp*., 529 F.3d 1325, 1333 (11th Cir. 2008) ("... [plaintiffs] claim for a violation of the Florida Deceptive and Unfair Trade Practices Act rises or falls on the success of its trademark infringement and false advertising claims"). Plaintiff has further alleged, among others, damages in the form of past lost profits, AC ¶ 87 which can constitute actual damages under FDUPTA, *see Restore Robotics, LLC v. Intuitive Surgical, Inc*., No. 5:19CV55-TKW-MJF, 2019 WL 8063988, at *6 (N.D. Fla. Nov. 14, 2019).

Accordingly, the Court finds that Plaintiff has stated a claim under FDUTPA.

### 2. *Preemption of Plaintiff's FDUPTA Claim*

In addition, Defendant argues that if Plaintiff's FDUPTA claim is preempted by the FDCA and the FDA's 510(k) clearance process. Plaintiff argues that, related to how its Lanham Act claim for unfair competition is not precluded, its FDUPTA claim is not preempted. Plaintiff argues that by bringing a FDUPTA claim, Plaintiff is not asking the Court to impose additional requirements on Defendant above and beyond the FDCA and its implementing regulations.

The Court determines that Plaintiff's FDUPTA claim as pled is not preempted by the FDCA or the 510(k) process. Section 360(k) of the FDCA expressly preempts state laws that impose requirements for any device intended for human use "which is different from, or in addition to, any requirement applicable under this chapter to the device, and… which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." *See* 21 U.S.C. § 360(k). Further, FDA regulations state that "state requirements are pre-empted 'only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device....'" *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 322 (2008) (quoting 21 CFR § 808.1(d)).

Defendant Ectosense appears to argue that a claim that the NightOwl's marketing is false or misleading would be preempted by the FDA's decision to issue a clearance letter based on the NightOwl's 510(k) Summary. However, Defendant Ectosense has failed to point to any device specific "requirements" that would preempt Plaintiff's claims, any authority that would support their claim that the 510(k) process constitutes or imposes a "requirement" under the FDCA's preemption provision, or any other general federal labeling requirement that would preempt Plaintiff's FDUPTA claim.

As the Supreme Court of the United States has noted, "[e]ven though substantial-equivalence review under § 510(k) is device specific, [the Supreme Court in *Medtronic, Inc. v. Lohr*]…rejected the manufacturer's contention that § 510(k) approval imposed device-specific 'requirements.'" *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 322 (2008) (distinguishing between the 510(k) process, which the Supreme Court in *Lohr* held did not impose "requirements", and the FDA's premarket approval process which the Supreme Court determined does impose

"requirements."). The Court notes that in *Medtronic, Inc. v. Lohr* the Supreme Court of the United States stated that the relevant statutory and regulatory language do not necessarily preclude "general' federal requirements from pre-empting "general" state requirements (as opposed to device-specific requirements). *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 500 (1996). However, the Court remains unpersuaded that there is a conflict, in the present case, between the 510(k) process, which requires a devices to be substantially equivalent to an existing device, and Plaintiff's claims under FDUPTA, which is intended to prevent manufacturers from engaging in deceptive and unfair trade practices.

Unlike the defendant in *Critcher v. L'Oreal USA, Inc*., the case relied on by Ectosense, Defendant Ectosense does not point to a specific regulation or requirement imposed by the FDCA which would preempt Plaintiff's FDUPTA claim. In *Critcher v. L'Oreal USA, Inc.*, the plaintiff claimed that the labeling on the defendant, L'Oreal USA, Inc.'s, liquid cosmetic products was deceptive and misleading because the label, while reflecting the amount of product contained in the package, did not reflect the smaller amount of product the consumer would actually be able to access. *See* 959 F.3d 31, 36–37 (2d Cir 2020). The plaintiffs in *Critcher*, admitted that the liquid cosmetic products complied with federal "net-quantity" labeling requirements, but argued that such compliance was insufficient because it had the effect of making the packaging misleading. *See Id.* at 36. The Second Circuit concluded that Plaintiff's claim could not survive the FDCA's preemption clause regarding cosmetic products because it would impose a requirement that is different from or in addition to the FDCA and its implementing regulations which require the packaging "accurately state the total amount or product contained therein." *See Id.* at 36–37. Here, Defendant cites to no regulation, other than

the general 510(k) clearance process, which would expressly preempt Plaintiff's claims that Ectosense's marketing of the NightOwl is false or misleading.

At this stage in the litigation, the Court is not persuaded that Plaintiff's FDUTA claim is preempted by the FDCA.

**E.  Florida Common Law Unfair Competition and Trademark Infringement**

Defendant argues that because Plaintiff's federal claims under the Lanham Act fail, Itamar's state-law claims for common law trademark and unfair competition (Count V) necessarily fail. Plaintiff contends that because dismissal of Plaintiff's trademark infringement and false designation of origin claims is not warranted, dismissal of Plaintiff's Florida common law unfair competition and trademark infringement claims is not warranted. Defendant noted in the hearing on the Motion to Dismiss that Count V is a parallel state law claim for trademark infringement and unfair competition. The Court here agrees. As Plaintiff's federal law claims for trademark infringement will be permitted to proceed, the Court finds no reason for Plaintiff's Count V not to proceed.

**IV.  <u>CONCLUSION</u>**

Based on the foregoing the Court denies Defendant's Motion to Dismiss and Motion to take Judicial Notice.

Accordingly, it is Ordered and Adjudged as follows:

1.  Defendant's Motion to Dismiss [DE-28] is **DENIED**.

2.  Defendant's Request to Take Judicial Notice [DE-42] is **DENIED**.

3.  Defendant shall file its answer to Plaintiff's Amended Complaint on or before **January 18, 2020**.

DONE AND ORDERED in Chambers in Fort Lauderdale, Broward County, Florida this 4th day of January, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
All Counsel of Record