## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### Case No. 20-60719-CIV-DIMITROULEAS/SNOW

ITAMAR MEDICAL LTD.,

    Plaintiff,

v.

ECTOSENSE NV and VIRTUOX, INC.,

    Defendants.

### PLAINTIFF'S MOTION TO COMPEL DE-DESIGNATION OF DOCUMENTS MARKED ATTORNEYS' EYES ONLY

Itamar Medical Ltd. ("Itamar"), pursuant to Federal Rule of Civil Procedure 26(c) and the Stipulated Protective Order, ECF No. 66, moves to compel Ectosense *nv* ("Ectosense," and together with Itamar, the "Parties") to remove the "Attorneys' Eyes Only" ("AEO") designation from certain documents, or in the alternative, to re-designate the documents "Confidential."

## I.   INTRODUCTION

Throughout this litigation, Ectosense has repeatedly argued that the Food and Drug Administration's ("FDA") clearance of Ectosense's device, the NightOwl, through the 510(k) process establishes that Ectosense has not acted unlawfully—even claiming that the 510(k) clearance is "case dispositive." Ectosense recently produced materials related to the 510(k) process that, in Ectosense's own words, evidence "that Itamar had at some point corresponded, or was contemporaneously corresponding, with the FDA, advancing its own position in an attempt to convince the FDA that NightOwl does not measure PAT and is not PAT-based." Despite that characterization and the fact that the documents contain other potential misrepresentations about Itamar, its products, and its technology, Ectosense has deprived Itamar's counsel from consulting with Itamar about those documents and their veracity by improperly designating them AEO. Itamar is now forced to seek the Court's assistance so that Itamar can fairly litigate its claims.

## II.   BACKGROUND

On March 25, 2021, Itamar filed a Second Amended Complaint asserting trademark infringement, false advertising, and unfair competition claims against Ectosense.[1] *See* Sec. Am. Compl. Itamar's claims arise out of, among other things, Ectosense's false advertising of the NightOwl as using Itamar's PAT® technology, as well as its infringement of Itamar's protected intellectually property rights. *Id.* ¶¶ 24–47. To defend its unlawful conduct, Ectosense has relied on the FDA's determination that the NightOwl and Itamar's Watch-PAT 200U are "substantially equivalent" with respect to safety and effectiveness. *See* Jan. 4, 2021 Order at 12–18, 20–23 (rejecting Ectosense's arguments on the 510(k) clearance and denying Motion to Dismiss).

Under the Protective Order in this case, the Parties may designate certain defined, competitively sensitive information as Confidential or AEO. *See* Prot. Order § II. Section II.A permits a party to designate information AEO if it "believes in good faith" that the information is "competitively sensitive and constitutes or contains," among other things, trade secrets. *Id.* The

---

[1] While Itamar also asserted claims against VirtuOx, Inc., this Motion pertains only to Ectosense.

Parties may designate information Confidential if they would "not normally reveal [it] to third parties." *Id.* While Confidential material can be disclosed to a receiving party, AEO material cannot; disclosure is limited to the party's attorneys, experts, and the Court. *Id.* § VII.B, C. Unsurprisingly, the Protective Order does not apply to publicly available information. *Id.* § III.

On March 26, Ectosense produced 315 documents related to its 510(k) submission. Ex. 1. In the email containing the link to the documents, Ectosense mass-designated the documents AEO. *Id.* Not one document included the AEO legend as required by the Protective Order. *See* Prot. Order §§ I, V.A. Even more concerning, not one document warranted the AEO designation. The documents improperly designated AEO included documents: authored by Ectosense's founder alleging—to the FDA—that Itamar misleadingly describes PAT® technology because it "wants to project an aura of 'proprietariness' in order to keep NightOwl from competing with its business"; inaccurately stating that Itamar has described "ordinary PPG as an embodiment of PAT—without the need for a uniform pressure"; admitting that Itamar "coined" the term peripheral arterial tonometry and "obsessively uses it in order not to be associated with 'ordinary PPG'"; suggesting that FDA has a "fundamental misunderstanding about the PAT-based technology" because of Itamar; and further disparaging Itamar and misleadingly describing its technology and devices.[2] Thus, on April 7, Itamar requested that Ectosense withdraw the designations. Ex. 1. Two weeks later, Ectosense responded that it would not remove the designation from any document. Ex. 2.

On April 28, Itamar explained in greater detail (with supporting case law) why the AEO designations were improper. Ex. 3. And because Ectosense refused to affix the AEO legend to the individual documents, Itamar also listed the 315 documents and the reasons why the designations were improper as to different categories of documents. *Id.* at 4–5, App. 1. Itamar informed Ectosense that its refusal to remove the designations was prejudicing Itamar's ability to prepare its case and requested to meet and confer about the issue. *Id.* The Parties conferred on May 3, 2021, and Itamar expressed its willingness to agree to Ectosense's re-designation of all the documents as Confidential. Ectosense represented that it would identify the documents (1) that should remain AEO and (2) that it would re-designate Confidential. On May 5, Ectosense provided Itamar a list of 26 documents that it would re-designate Confidential. Ex. 4. Of the 26 documents it agreed to re-designate Confidential, all 26 are publicly available—and in fact one document was published by Itamar. It made clear that it would "**not [be] withdrawing or**

---

[2] Itamar is happy to submit any or all of the documents, which would have to be filed under seal.

**changing any designation on any document**" other than the 26 documents listed. *Id.*

## III. ARGUMENT

It is Ectosense's burden to show that the 315 (now 289) documents are properly designated AEO "based on evidence and controlling law." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 468 (M.D. Fla. 2008); *see also* Prot. Order § VI.B. That means that Ectosense "must establish good cause for continued protection under Rule 26." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). To that end, Ectosense "must show that: (1) the information sought is a trade secret or other confidential information; and (2) the harm caused by its disclosure outweighs [Itamar's] need." *Sumner v. Biomet, Inc.*, 2010 WL 11519199, at *2 (M.D. Ga. July 22, 2010). "[S]tereotyped and conclusory statements" are not enough; Ectosense must make a "particular and specific demonstration of fact." *Israel v. Bellsouth Telecomms., Inc.*, 2013 WL 12090046, at *5 (S.D. Fla. Jan. 29, 2013).

### A. The Documents Do Not Constitute a Trade Secret

Ectosense claims that the 289 documents "represent in their totality a trade secret of how Ectosense navigated the 510(k) process." Ex. 2 at 2. Its position is unsupported and unsupportable.

A company's "navigat[ion]" of the 510(k) process is not a trade secret under federal or state law,[3] and Ectosense has provided no support for its assertion to the contrary. *See* Ex. 2. Instead, the most it says is that the 289 documents "are highly confidential by law." *Id.* at 2 (citing the Federal Food, Drug and Cosmetic Act and FDA regulations). That statement, too, is wrong. First, the cited regulations concern the *government's* obligation to keep trade secrets confidential. They have no bearing on a *party's* ability to designate materials Confidential or AEO under a protective order in an *adversarial* proceeding. As Itamar has explained, "[j]ust because a law or regulation requires the government to keep certain information confidential does not mean that

---

[3] FDA regulations provide that a "trade secret may consist of any commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort. *There must be a direct relationship between the trade secret and the productive process.*" 21 C.F.R. § 20.61(a) (emphasis added). Florida law defines a "trade secret" as information that "(a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4); *see also Chicago Trib.*, 263 F.3d at 1313 (describing "commonly accepted criteria" for determining whether party's "presumptively confidential documents do in fact contain trade secrets").

3

information automatically becomes AEO for purposes of discovery." Ex. 3 at 2.  Second, the regulations apply only to material that qualifies as a trade secret.  But Ectosense puts the cart before the horse because it has not shown that the documents amount to a trade secret in the first instance.

In fact, case law makes clear that "communications with the FDA . . . are not presumptively confidential." *King Pharms., Inc. v. Eon Labs, Inc.*, 2010 WL 3924689, at *10 (E.D.N.Y. Sept. 28, 2010); *see also id.* at *9 ("Simply put, the communication of information to the FDA in connection with a drug application does not automatically trigger protection against disclosure."). Instead, "the party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Id.* (cleaned up).  Accordingly, it remains Ectosense's burden "to establish, through competent evidence, that [the documents] reveal trade secrets or other confidential business information, the disclosure of which would cause [Ectosense] clearly defined and serious harm." *Id.* at *10.  Ectosense has not done that, nor can it, given the contents of the documents.

Ectosense also states without elaboration that some of the documents "contain technical information." Ex. 2 at 2.  Yet it fails to specify which documents contain technical information. Simply because a document touches on the operation of Ectosense's—or Itamar's—devices does not mean it constitutes "technical information" under the Protective Order.  Moreover, the Protective Order requires a designating party to designate *only those portions* of documents that constitute protected material if "only a portion of a document or portions of the material on a page qualifies for protection." Prot. Order § V.B.1.  To the extent that any of the 289 documents actually include technical information about the NightOwl, Ectosense may (and in fact must) designate *only* those portions.  For these reasons, Ectosense's assertion is another meritless attempt to prevent Itamar from addressing the many inaccuracies littered throughout Ectosense's documents.

Ectosense has failed to show "by specific facts that the [AEO] designation is necessary." *Core Lab'ys LP v. AmSpec*, 2017 WL 3585420, at *2 (S.D. Ala. Aug. 18, 2017).  That the admissions and misstatements in the materials might hurt Ectosense does not make them trade secrets or provide grounds for an AEO designation. *See Select Exp. Corp. v. Richeson*, 2011 WL 13227869, at *6 (S.D. Fla. Jan. 4, 2011) ("The plaintiff has not identified any specific confidential information or trade secret, the production of which would prejudice the plaintiff or its business interests.  The Court finds that the plaintiff's assertion of trade secrets . . . lacks sufficient specificity to support a protective order.").  As a result, the AEO designations should be removed.

4

### B.   Itamar's Need for the Documents Outweighs Any Purported Harm

The only harm Ectosense mentions is that the method of "how [it] secured premarket clearance for its device . . . could be gleaned from these documents." Ex. 2 at 2. But the case law is clear that "vague characterizations of harm are insufficient," *Israel*, 2013 WL 12090046, at *5, and that a designating party must set forth evidence establishing that disclosure would cause "clearly defined and serious harm," *Kings Pharms.*, 2010 WL 3924689, at *10. The harm Ectosense would suffer from disclosure of the documents is having evidence pertaining to key factual issues (including Ectosense's misrepresentations about Itamar and its devices) exposed and corrected—but that is not the type of harm contemplated by the case law or the Protective Order.

In addition, the AEO designations significantly impede Itamar's access to evidence that relates to a core dispute: whether Ectosense's device is based on PAT® technology. *See Richeson*, 2011 WL 13227869, at *6 ("The Court also must balance [a party's] interest in confidentiality against the [adversary's] need for the information."). Despite Ectosense's initial eagerness to rely on the contents of its 510(k) Summary for its Motion to Dismiss—a request Judge Dimitrouleas properly denied, *see* Jan. 4, 2021 Order at 6—it now seeks to *prevent* Itamar from seeing the very materials underlying the 510(k) Summary. And although Ectosense previously stated that the 510(k) documents concern "the exact issues Itamar is advancing in this litigation," it now attempts to question Itamar's need for the documents "given the issues in this lawsuit." Ex. 4 at 3 ("We do not believe that you and your client are being prejudiced in any way here given the issues in this lawsuit."). The "issues in this lawsuit" include Ectosense's false advertising of its device as employing the same PAT® technology as Itamar's devices. The 289 documents concern that very issue. But Itamar cannot review the materials to assess their veracity because of the improper designations, and Itamar has no other ways to access the materials. Only Itamar—not its attorneys, nor a potential expert—can determine whether certain statements about Itamar, its actions, and its products' capabilities are accurate. How Itamar could *not* be prejudiced is inexplicable.

Ectosense's improper AEO designations are impeding Itamar's ability to pursue its claims and defend itself as Itamar's counsel cannot share key documents with its client—documents that Ectosense has relied on and will continue to rely on. The Protective Order's purpose is to protect sensitive information. Ectosense should not be allowed to use it to hide key evidence from Itamar.

### IV.   CONCLUSION

For those reasons, Itamar respectfully requests that the Court order Ectosense to withdraw the AEO designations, or in the alternative, to re-designate the documents as Confidential.

5

Dated: May 10, 2021                     Respectfully submitted,

By: s/ *Elizabeth B. Honkonen*
Robert D. W. Landon, III (FL Bar No. 961272)
Elizabeth B. Honkonen (FL Bar No. 0149403)
KENNY NACHWALTER, P.A.
Four Seasons Tower
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
Telephone: (305) 373-1000
rlandon@knpa.com
ebh@knpa.com

Allen M. Gardner (admitted *pro hac vice*)
Chase A. Chesser (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2270
allen.gardner@lw.com
chase.chesser@lw.com

Jennifer L. Barry (admitted *pro hac vice*)
Patrick C. Justman (admitted *pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
jennifer.barry@lw.com
patrick.justman@lw.com

*Attorneys for Plaintiff Itamar Medical Ltd.*

## CERTIFICATE OF GOOD FAITH

**I HEREBY CERTIFY**, pursuant to Local Rule 7.1(a)(3)(A) and this Court's March 8, 2021 Order, that after the Parties exchanged their respective positions described above, counsel for the movant conferred with counsel for Ectosense in a good faith effort to resolve the issue by telephone on May 3, 2021, and by email on May 4 and 5, 2021.  Despite these efforts, the Parties have been unable to resolve the issue, and on May 5, 2021, counsel for Ectosense represented that Court intervention would be necessary if its latest proposal was not acceptable.  *See* Ex. 4, at 1 ("Let us know if this works.  If it does not, then it seems that we have exhausted our efforts here and we can have the Court assist the parties on this issue.").  On May 7, 2021, the Parties conferred telephonically and by email regarding the need to file Itamar's Motion to Compel under seal.  On May 10, 2021, Ectosense authorized Itamar to file the Motion to Compel without seal if Itamar agreed that Ectosense could also quote from the AEO materials without waiving the AEO designations, and Itamar agreed to Ectosense's proposal.

By: s/ *Elizabeth B. Honkonen*
Elizabeth B. Honkonen (FL Bar No. 0149403)