UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 20-cv-60719-WPD/SNOW

---

ITAMAR MEDICAL LTD.,

                    Plaintiff,

     v.

ECTOSENSE NV and VIRTUOX, INC.,

                    Defendants.

---

**THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Itamar Medical Ltd. ("Itamar") brings this third amended complaint against

Ectosense *nv* ("Ectosense") and VirtuOx, Inc. ("VirtuOx," and together with Ectosense,

"Defendants") for trademark infringement, unfair competition/false designation of origin, and

false advertising in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*., and unfair

competition, deceptive trade practices, and trademark infringement under Florida law.  Itamar

alleges, with knowledge concerning its own acts and on information and belief as to all other

matters (unless otherwise specifically stated), as follows:

**INTRODUCTION**

1.      Itamar is a medical device company that develops, manufactures, and sells,

among other products and services, home sleep apnea tests ("HSATs") that use Itamar's

proprietary PAT® technology.  Itamar's PAT® technology allows for the non-invasive

measuring, recording, and analysis of the peripheral arterial tonometry ("PAT") signal to

diagnose, among other things, sleep apnea.  Itamar coined the term "peripheral arterial

tonometry" in or around 1997 and introduced this measurement to the medical field.  Itamar then

used the related acronym (PAT®) to identify itself as the source of all products that incorporated its proprietary PAT® technology and could measure the "PAT" signal detected by its devices. Not surprisingly, consumers and those in the medical industry have come to exclusively associate the PAT® mark, PAT® based technologies, and "PAT" signal measurements with Itamar, the originator of this term, technology, and related devices.

2.      Itamar's product line includes the WatchPAT® 200, WatchPAT® 200U, WatchPAT® 300, WatchPAT® ONE, and Endo PAT® devices, as well as its CloudPAT® digital health platform.  Itamar's devices use PAT® technology not only with HSATs, but also to measure various bodily functions and assist with the diagnosis of a wide range of medical conditions.  For example, Itamar's devices can evaluate a patient's endothelial functioning, measure the cardiovascular effects of pharmacological agents, measure blood pressure and blood flow, and serve as a diagnostic marker in exercise stress tests.

3.      Ectosense has promoted a home sleep apnea test, known as the "NightOwl" (the term "NightOwl" also refers to the disposable version of the NightOwl, the "NightOwl Mini"), through false and misleading advertising and promotional materials that have harmed and continue to harm consumers and Itamar's sales of HSATs.

4.      VirtuOx, a client of Ectosense that performs sleep testing services with Ectosense's NightOwl, has also engaged in harmful false and misleading advertising in promoting both the NightOwl device and another device, the "EZSlēp," that it claims uses PAT® technology.

5.      Ectosense and VirtuOx are entities responsible for the wrongdoing alleged herein. Ectosense and VirtuOx participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for those acts.

6.      At all relevant times, Ectosense acted as the principal, agent, and/or representative of VirtuOx, and VirtuOx acted as the principal, agent, and/or representative of Ectosense.  Any action by one of the Defendants was within the course and scope of the agency relationship between the Defendants and was with the permission, ratification, and/or authorization of the other Defendant.

7.      Both Ectosense's and VirtuOx's unfair competition and false and misleading advertisements have infringed Itamar's federally protected intellectual property rights and harmed Itamar's goodwill and legitimate business enterprises.

8.      By this action, Itamar seeks to put a stop to Defendants' unlawful conduct and obtain compensation for Defendants' violations of federal and state law.

## THE PARTIES

9.      Itamar is a limited corporation, with its principal place of business in Caesarea, Israel.

10.     Ectosense is a Belgium-based company (Naamloze Vennootschap).

11.     VirtuOx is a Florida corporation with its principal place of business in Coral Springs, Florida.

## JURISDICTION AND VENUE

12.     This is a civil action alleging trademark infringement, unfair competition and false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a); and unfair competition, deceptive trade practices, and trademark infringement under Florida common law.  Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over Itamar's claims for relief for violation of the federal trademark and unfair competition statutes.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over Itamar's state law claims because those claims are joined with substantial and

related claims under the Lanham Act.  This Court also has supplemental jurisdiction over Itamar's state law claims pursuant to 28 U.S.C. § 1367(a) because all of Itamar's claims arise out of a common nucleus of operative facts.

13.     This Court has personal jurisdiction over Ectosense because Ectosense distributes its products in the United States, including Florida, through various distributors and its Chief Executive Officer, who distributes the NightOwl and the NightOwl Mini from his residence in Parkland, Florida.  Ectosense conducted and completed a U.S. validation study, titled "A Validation Study of the NightOwl PAT-based Home Sleep Apnea Test," involving over 100 participants, in this District.  Moreover, Ectosense has promoted and continues to promote its NightOwl product through at least three websites accessible in Florida: *www.ectosense.com*, *www.elitedental.com.sg/wp-content/uploads/2019/09/Ectosense-NightOwl.pdf*, and *www.elitedental.com.sg/snoring-obstructive-sleep-apnea*.  Additionally, after receiving U.S. Food & Drug Administration ("FDA") clearance, Ectosense engaged in additional distribution of printed and electronic marketing materials through its U.S. distributors, and contacted a variety of doctors, dentists, and others that may use HSATs to serve their patients, including medical providers within the State of Florida and this District.  VirtuOx, a Florida corporation with its principal place of business in Florida, resides and maintains offices in this District and conducts business in this State, including within this District.  Both Ectosense and VirtuOx have attempted to derive financial benefits from residents of the State of Florida, including by marketing and promoting the NightOwl product to residents of the State of Florida, including within this District.

14.     Venue in this Court exists under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Itamar's claims occurred in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Itamar's Trademarks and Products

15.     Itamar was founded in 1997 under the laws of the State of Israel, and it is a publicly traded company, including on the Nasdaq Capital Market.  Itamar is a medical device company that develops, manufactures, and sells various products that use Itamar's proprietary PAT® technology.  The company (and through its subsidiaries) markets, distributes, and services its products worldwide, including throughout the United States and within this District.

16.     In or around 1997, Itamar coined the term "Peripheral Arterial Tonometry or Tone" to describe a signal that its new technology could measure and report to aid in the detection and diagnosis of a wide range of medical conditions.  Itamar then also coined the related acronym (PAT®) to identify itself as the source of products incorporating this ground-breaking technology.  As the progenitor of this term, acronym, and technology, Itamar and its products have been and continue to be exclusively associated with all uses of the PAT® mark, "PAT" term, and Peripheral Arterial Tonometry or Tone terms for the last two decades.

17.     Indeed, Itamar has defined and established the meaning of the term "PAT" based on the special measurement conditions required, as well as the physiological rationale of those requirements, to properly measure "PAT" signals.  Top-tier, peer-reviewed medical journals have recognized and published the description of "PAT" as defined by Itamar.  For example, in 2000, the highly regarded journal Nature Medicine provided the following description of the "PAT" measurement and how it differs from other pulse measurement methods:

> Using a new plethysmographic technique to measure peripheral arterial tone (PAT), we report here that REM sleep in humans is associated with considerable peripheral vasoconstriction.  The apparatus is essentially a plethysmograph that, unlike models now available, is able to envelop the finger up to and beyond its tip with a uniform pressure field.  The applied pressure field is sufficient to substantially unload arterial wall tension, thereby improving the

dynamic range of the system, while preventing the potential occurrence of venous engorgement that promotes vasoconstriction.

18.     These special requirements mean that the "PAT" measurement, as defined by Itamar, is a unique method, and it is distinct from other pulse measuring methods that do not apply the basic requirements for accurate "PAT" measurement as established by Itamar.  In other words, Itamar's PAT® devices are fundamentally different from other devices that do not envelop the finger (or relevant body part) up to and beyond its tip, in a uniform pressure field, thereby preventing venous pooling in the measured tissues.  The presence of this pressure field (and the corresponding absence of venous pooling) is a critical feature of all PAT® based devices and technologies.  These differences are critical to distinguishing between PAT® based devices and the technologies underlying other devices.

19.     Patenting authorities have likewise found Itamar's "PAT" measuring methods to be innovative and inventive, and assigned patent rights (including patents with "Peripheral Arterial Tone" in the title) to Itamar for measuring "PAT."  For example, in November 2001, the United States Patent and Trademark Office granted the following patents based on the methods and apparatus for measuring "PAT":

**United States Patent 6,319,205**: Method and apparatus for the non-invasive detection of medical conditions by monitoring peripheral arterial tone.

**United States Patent 6,322,515**: Method and apparatus for the non-invasive detection of medical conditions by monitoring peripheral arterial tone.

20.     Consistent with this widespread association of the PAT® mark, "PAT" measurement, and PAT® technologies with Itamar, the company has obtained extensive trademark rights in a family of PAT® derivative marks, including the following:

| Trademark | Class:  Goods/Services & First Use Date | Reg. No. and Date |
|---|---|---|
| PAT® | Class 10:  Medical apparatus, namely, non-invasive, diagnostic units used to assess and measure body functions and states and physiological conditions which affect the vasculature<br>First Use: 1997 | 3,870,786<br>November 2, 2010 |
| Endo PAT® | Class 10:  Medical apparatus, namely, non-invasive, diagnostic units used to measure vascular function and diseases and states and physiological conditions involving the vasculature<br>First Use: 1997 | 4,026,328<br>September 13, 2011 |
| WatchPAT® | Class 10:  Medical apparatus, namely, non-invasive, diagnostic units used to assess and measure body functions and states and physiological conditions which affect the vasculature<br>First Use: Jan. 9, 2003 | 4,660,354<br>December 23, 2014 |
| CloudPAT® | Class 42:  Providing temporary use of web-based cloud computing software for managing the diagnosis and treatment of sleep apnea<br>First Use: Aug. 2011 | 4,958,825<br>May 17, 2016 |

21.     The above marks are collectively referred to as the PAT® Marks.  The above registrations are collectively referred to as the PAT® Registrations.

22.     Itamar's registrations for the PAT® and Endo PAT® marks are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as Itamar's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods listed in the registrations.  Further, the PAT® Registrations constitute prima facie evidence that the marks are valid, and that Itamar is entitled to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

23.     Itamar also uses additional variations of its PAT® Marks, including the following marks used as product names:  the WatchPAT® 200, WatchPAT® 200U, WatchPAT® 300, WatchPAT® ONE, Endo PAT®, and CloudPAT® (a digital health platform that supports the use

of some of these devices).  All of these products (other than the CloudPAT® digital health platform) use Itamar's proprietary PAT® technology to enable simple, accurate, and reliable sleep apnea testing without the discomfort of traditional in-lab sleep apnea diagnostic testing.

24.     The terms "peripheral arterial tone or tonometry" were used twice in 1990 and sporadically in 1993, without becoming a common term.  Extensive use in relation to Itamar's PAT® based devices started in 2000, as demonstrated by hundreds of usages in more than 500 publications, including in peer-reviewed medical studies published in medical magazines, all of which refer to Itamar's PAT® based technology and products.  These publications did not use these terms in a generic manner or in a manner indicating that these terms or technology are commonplace in the market or originated from manufacturers other than Itamar.  Only in October 2018 did one study (promoted by Ectosense) refer to Itamar's PAT® technology in relation to Ectosense's NightOwl device, clearly attempting to trade off Itamar's achievement of the American Academy of Sleep Medicine ("AASM") guidelines adopting Itamar's PAT® technology in 2017.

25.     Through careful cultivation of the various products offered under the PAT® Marks and variations of these marks, the PAT® Marks have developed an outstanding reputation in the medical community, become well-known, and are recognized as identifying Itamar as the source of all PAT® technology based products.  Thus, Itamar has extensive common law rights in its family of PAT® Marks.

**The NightOwl and the EZSlēp Do Not Measure PAT and Are Not PAT-Based**

26.     Ectosense is a digital health and medical device company focused primarily on sleep disorders.  According to its website, Ectosense is the "third largest home sleep test provider worldwide and [is] on a rapid growth trajectory to take the leading position."  Ectosense, Careers: UI/UX Lead, *https://careers.ectosense.com/careers*.  Ectosense sells, promotes, and/or

markets its product in the United States through various distributors, healthcare providers and physicians, and dentistry centers and dentists, as well as through clients like VirtuOx who use Ectosense's NightOwl to perform sleep tests.

27.     VirtuOx is a medical technology services company that provides, among other things, diagnostic tools and services related to sleep apnea.  According to its website, VirtuOx is a "Independent Diagnostic Testing Facility (IDTF) that performs over 40,000+ [sic] new diagnostic tests each month in the patient's home."  VirtuOx, Sleep Apnea for Consumers, *https://virtuox.net/Consumers/SleepApnea*.  VirtuOx is a client of Ectosense that uses the NightOwl to perform home sleep tests and promotes the NightOwl on its website, *https://virtuox.net/HealthcareProfessionals/SleepApnea*.  VirtuOx has also advertised a device called the EZSlēp.  In some advertisements, VirtuOx has also referred to the device as the "NightOwl EZSlēp."  The EZSlēp device is the same as the NightOwl device; the only difference is the name.  VirtuOx refers to and/or has referred to the NightOwl as the EZSlēp in promoting and using the NightOwl to conduct sleep testing services.  The description of the NightOwl device, its components, its software, and its functionality therefore applies equally to the EZSlēp device, and vice versa.

28.     The actions and statements of Ectosense's U.S. distributors and clients were and are all authorized, approved, and/or ratified by Ectosense, and so statements made by any such distributor, person, or entities will be attributed to Ectosense below.

29.     The NightOwl and EZSlēp devices use photoplethysmography ("PPG") technology, which is designed for oximetry to measure a patient's relevant vitals.  Specifically, the NightOwl uses "a 50Hz optical reflective sensor [that] shines light onto the finger and from the intensity of reflections determines, among other parameters, the oxygen saturation level of

9

the blood." The devices, shown below, are secured to the fingertip of the patient via a small elastic band. This is ordinary PPG technology, which is a low-cost alternative to Itamar's PAT® technology.

 

30.     Itamar's PAT® technology, on the other hand, represents a unique method of acquiring plethysmography. The common feature in PAT®-based plethysmography is the use of a clearly-defined, multi-featured pressure field applied around and enclosing the measured organ (e.g., a patient's finger), which is specifically designed to physiologically condition and optimize the signals. The plethysmographic technologies that preceded Itamar's PAT® technology could not attain the same objectives as this PAT® technology because previous designs could not apply a near diastolic pressure that covered the measured tissues without causing the patient's finger to be pushed out of the probe by the pressure being applied to it at its distal end. Itamar's PAT® technology allowed the desired level of pressure to be applied to the entire fingertip of the patient, without the pressure ejecting the patient's fingertip from the device. For reference, Itamar's WatchPAT® 300 device appears as follows:



31.     Unlike Itamar's devices featuring PAT® technology, neither the NightOwl nor the EZSlēp applies any sort of pressure field to the distal end of the finger, meaning there is no possibility of preventing venous pooling, as Itamar's PAT® technology requires.  In fact, the design of the Defendants' products promotes venous pooling.  The NightOwl and the EZSlēp devices do not and cannot measure PAT, and they are not and cannot be PAT-based.

**Ectosense's Deceptive and Infringing Activities**

32.     Ectosense has marketed and is actively marketing the NightOwl in the United States, Europe, and Singapore as a home sleep apnea test.  In an effort to usurp the goodwill associated with the PAT® Marks and trade off Itamar's reputation, as well as mislead and confuse consumers, Ectosense has made blatant, unauthorized use of the PAT® Marks and misleadingly described the NightOwl as a "PAT based" device that provides a "PAT measurement," even though it is not such a device and does not provide a PAT measurement.

33.     More problematically, Ectosense's marketing campaigns have misled and deceived consumers about the limited capabilities of the NightOwl as compared to Itamar's products—to Ectosense's benefit and Itamar's detriment.  For example, Ectosense has highlighted the lightweight and small size of the NightOwl compared to Itamar's products, which Ectosense is able to achieve by using PPG technology, not PAT® technology.  Ectosense stated that it is "immensely proud of the fact that our device is finger-tip sized, completely self-contained, [and] requires no external wristworn device common to our competitors."  This is a clear reference to Itamar's products, which have a "wristworn device" (as shown above) so that they can, *inter alia*, obtain secure and uniform pressure around the patient's finger, which is critical to an accurate "PAT" measurement.  But, of course, the NightOwl does not provide such uniform pressure because it does not take a "PAT" measurement or use PAT® technology.  Rather, it uses PPG technology as described above.  This allows it to be a much smaller product.

34.     Ectosense highlights the NightOwl as a "PAT-based device" when attempting to steal away Itamar's customers, but then focuses the attention of other consumers on the small and lightweight nature of the NightOwl, which Ectosense explains was achieved by using PPG technology.  But, Ectosense cannot have it both ways:  The NightOwl cannot be a "PAT-based device" when it suits Ectosense, and then be a PPG device using PPG technology that is so much smaller and more lightweight when compared to competitive devices that use an "external wristworn device" to obtain an accurate "PAT" measurement (i.e., Itamar's devices).  Ectosense cannot magically change the underlying technology powering the NightOwl depending on the audience, but it persists in such false and misleading conduct as part and parcel of its marketing campaign designed to target and harm Itamar.

35.     Ectosense's efforts to compare the NightOwl to Itamar's devices did not stop with implicit comparisons.  More recently, Ectosense has directly compared the NightOwl to Itamar's WatchPAT devices and provided false and misleading information about Itamar's devices on Ectosense's website.  For example, Ectosense selectively chose two studies to support its claim that the Itamar WatchPAT 300's "failure rate" is "5 - 8%."  It also relied on non-published "[d]ata internal to Ectosense" to support its claim that the failure rate for the NightOwl is "<3%."  Comparison Sheet of FDA-Cleared HSAT Devices Based on Peripheral Arterial Tonometry (PAT), *http://cdn.ectosense.com/200806_PAT_devices_comparison_COMP001US.pdf*.



36.     In another comparison, as shown below, Ectosense included pictures of what is clearly a deconstructed Itamar WatchPAT device to draw additional comparisons to Itamar's devices.



37.     Tellingly, Ectosense knows that the NightOwl device does not provide a "PAT" measurement, as reflected in the analytic report produced by the product, which includes no mention of the patient's "PAT" measurement.  As the NightOwl device does not apply PAT® technology nor provide any of the functional characteristics necessary for a "PAT" measurement, it cannot therefore provide an accurate "PAT" measurement, as defined in Itamar's patents and published papers.  Accordingly, NightOwl does not measure "PAT" and it is not "PAT-based."

38.     As further evidence of Ectosense's selective and misleading marketing of the NightOwl, it also opportunistically used the PAT® Marks to attract consumer attention when Itamar and its products have garnered recognition or made changes in relevant medical practices.  For example, NightOwl's operation manual in Europe previously used the term "PPG" and not "PAT" when describing the underlying technology.  After the AASM guidelines adopted "PAT" measurements as an acceptable method in 2017, however, Ectosense began using the term "PAT" on its product even though the NightOwl does not contain PAT® technology.  Similarly, Ectosense initially used the term "sympathetic activation events" in its manuals, but it replaced that term in its October 2018 manual with "peripheral arterial tone (PAT)."  Ectosense's opportunistic use of the PAT® Marks is an attempt to free ride off the AASM guidelines achieved by Itamar and the associated focus on Itamar's PAT® technology.

39.     At two recent annual meetings focused on sleep issues, materials were distributed and information was presented containing false and misleading statements about the NightOwl product.  At the American Academy of Dental Sleep Medicine annual meeting, which took place from June 7 to 9, 2019, in San Antonio, Texas, Ectosense presented information and distributed materials about the NightOwl product that contained false and misleading statements, including statements that the product was "[b]ased on Peripheral Arterial Tonometry" technology.

40.     Immediately following that event, Ectosense continued providing false and misleading information about the NightOwl.  At the SLEEP annual meeting, which took place from June 10 to 12, 2019, the materials again represented that the NightOwl was "[b]ased on Peripheral Arterial Tonometry" technology.

41.     Ectosense has repeatedly made similar false and misleading statements regarding the technology underlying the NightOwl.  For example, promotional materials state that the NightOwl product is based on "PAT" technology or is "PAT-based."  However, the NightOwl uses PPG, not "PAT" technology.

42.     The front page of one NightOwl brochure claims that the NightOwl is a "PAT-based HSAT according to AASM guidelines."



43.     The brochure confirms the agency relationship between Ectosense and VirtuOx and further establishes the difficulty in attempting to separate allegations neatly against Ectosense or VirtuOx.  The brochure first states: "NightOwl: By VirtuOx."  The brochure later states: "Ectosense: The Company Behind NightOwl."

44.     Likewise, a more recent NightOwl brochure from Ectosense states on the first page that the NightOwl is a "FDA-cleared HSAT device based on PAT according to AASM guidelines and CPT 95800."

FDA-cleared HSAT device based on PAT according to AASM guidelines and CPT 95800.

However, the AASM guidelines for HSATs include PAT® technology as technically adequate when combined with oximetry and actigraphy, but they do not include HSATs based on oximetry or PPG, with or without actigraphy, which is all that is provided by the NightOwl.

45.     The AASM guidelines also require that a "PAT" based device report rapid eye movement ("REM").  However, the 510(k) Summary for the NightOwl does not indicate that the device not measures REM.  The false statements that the NightOwl product qualifies as a "PAT-based" device according to the AASM guidelines misleads physicians and potential consumers to believe that the NightOwl reports REM as part of its analysis, which it does not.

46.     The NightOwl advertisements reference the Common Procedural Technology ("CPT") code 95800, which requires the use of "PAT" or Airflow in the patient's treatment. Because the NightOwl product uses PPG technology, Defendants' use of the CPT code 95800 for the NightOwl product is false and misleading, as it implies that the NightOwl employs PAT® technology.

47.     The NightOwl Instructions For Use also claims that the product diagnoses sleep apnea "based on an analysis of the peripheral arterial tone ('PAT')," and that the product "generates a diagnostic report containing information on . . . the presence or absence of a substantial change in peripheral arterial tone (PAT)."  However, the NightOwl measures only basic PPG and does not provide a "PAT" measurement.

48.     In short, Ectosense is attempting to benefit from the acceptance and use of PAT® based technology by medical professionals and consumers by making false and misleading statements that the NightOwl is based on PAT® technology and qualifies as a "PAT-based HSAT

according to AASM guidelines."  Itamar has used its PAT® Marks, including the PAT® mark, for

over two decades to identify and promote its sleep apnea devices and other medical devices.

Ectosense's use of the term "PAT" on promotional materials for the NightOwl will confuse

consumers regarding the origin of the products, Itamar's sponsorship of the products, and the

similarity between the NightOwl and Itamar's products, including the WatchPAT® product.

Ectosense's use of the "PAT" term—including in presentations at conferences in the United

States, distribution of materials at conferences in the United States, promotion of products on

websites accessible in the United States, and marketing of the NightOwl in the United States

after recently receiving clearance from the FDA to market the NightOwl—has led and will

continue to lead consumers to forego purchasing Itamar's products to purchase the NightOwl,

thus diverting sales from Itamar and causing consumers and Itamar substantial harm.  This

pervasive and unauthorized use of the PAT® Marks has also harmed, and will continue to harm,

the goodwill and reputation of these marks and cause irreparable damage to Itamar.

49.     Indeed, Ectosense is actively approaching Itamar's current customers (both within

the United States and around the world) and offering what it falsely claims as the "PAT-based"

NightOwl as a replacement for Itamar's products, which are actually based on PAT® technology.

Ectosense has provided NightOwl devices for piloting to Itamar's prospective and current

clients.  For example, Ectosense provided the NightOwl product for piloting to two hospitals in

the Netherlands while both hospitals were in the process of evaluating Itamar's WatchPAT®

product.  Ectosense also provided the NightOwl product for a pilot to a primary care company

that is already using Itamar's WatchPAT® product as part of a large commercial activity with

Itamar's client in the Netherlands.  Additionally, Ectosense has recently attempted to gain a

larger foothold in the European market for the NightOwl product by referencing its first dental

sleep client in the United Kingdom and Ireland.  Itamar has received multiple communications from clients stating that Ectosense has been attempting to increase its foothold in Australia and Asia and has been actively seeking distributors for the NightOwl product in Asian markets, including Malaysia and Singapore.

50.     Ectosense recently touted its FDA clearance in promoting its NightOwl product outside of the U.S.  Ectosense's Electronic System Design Engineer stated publicly that "[Ectosense has] long been trying to convince doctors that the NightOwl is as effective at detecting sleep apnea as some of the more traditional and clunky equipment used in medical sleep labs."

51.     Ectosense's misstatements are misleading to consumers, physicians, and the rest of the marketplace.  Ectosense's statements are knowingly false, specifically designed to harm Itamar's goodwill, and derive an illegitimate commercial benefit by passing off the NightOwl as a "PAT-based" device that provides a "PAT measurement," thereby diverting sales of Itamar's valid PAT® products to sales of the NightOwl.

### VirtuOx's Deceptive and Infringing Activities

52.     VirtuOx is a medical technology services company that provides diagnostic tools and services using Ectosense's devices, the NightOwl and NightOwl Mini.  In addition to the NightOwl, VirtuOx markets, sells, and/or provides services with at least one other product, the EZSlēp, that it represents as using "PAT Technology" and markets as comparable to Itamar's WatchPAT ONE® device.

53.     Although VirtuOx has faulted Itamar for believing that VirtuOx was a "distributor" of the NightOwl, VirtuOx has in fact offered both the NightOwl (reusable) and NightOwl Mini (disposable) for purchase through its website, as shown below.  The price listed for the NightOwl was $1500 per device, and for the NightOwl Mini was $150 per device.





54.     VirtuOx has marketed and is actively marketing the NightOwl and EZSlēp in the

United States as a home sleep apnea test.  In an effort to usurp the goodwill associated with the

PAT® Marks and trade off Itamar's reputation, as well as mislead and confuse consumers,

VirtuOx has made blatant, unauthorized use of the PAT® Marks and misleadingly described the NightOwl and EZSlēp as featuring "PAT Technology."

55.     As another example of VirtuOx's deceptive and infringing conduct, VirtuOx describes the NightOwl and the EZSlēp as "PAT device[s]" that "use[] the same tech as Itamar." Both statements are false, as well as misleading.

56.     A recently distributed pamphlet compares the EZSlēp product to Itamar's WatchPAT® devices, and when distributing this pamphlet VirtuOx stated that the product "uses the same tech as Itamar." That statement is literally false. VirtuOx also stated, among other things, that the product is "a PAT device," and that the "MSRP is $100 for 100 hours," while the "WatchPat is about $75-85 for 1 night test." The EZSlēp brochure also prominently displays the following graphic directly contrasting the NightOwl EZSlēp with Itamar's WatchPAT ONE®, and explicitly states that the product contains the same "PAT Technology" used in the WatchPAT ONE® product, even though it does not:



57.     VirtuOx has also advertised and is advertising the NightOwl and NightOwl EZSlēp as the "***smallest*** and most convenient home sleep testing device in the world" (emphasis original), as well as the "world's smallest sleep apnea diagnostic tool," leading consumers to

incorrectly believe that the products have improved on Itamar's proprietary technology when they have not, which is misleading.

58.     Adding to the confusion between VirtuOx's, Ectosense's, and Itamar's devices, VirtuOx has also claimed that the NightOwl device was its device, referring to it as "a multi-use Disposable Home Sleep Apnea Testing HSAT devices [sic] **by VirtuOx** which is the only one in the world to be FDA cleared to diagnose sleep apnea."  (Emphasis added.)  Accordingly, while Virtuox has faulted Itamar for previously alleging that VirtuOx has claimed to receive FDA clearance for the NightOwl, VirtuOx has in fact made statements to that effect.

59.     As further evidence of VirtuOx's selective and misleading marketing of the NightOwl and EZSlēp products, like Ectosense, VirtuOx has also opportunistically used the PAT® Marks to attract consumer attention when Itamar and its products have garnered recognition or made changes in relevant medical practices.  Like Ectosense, VirtuOx's opportunistic use of the PAT® Marks is an attempt to free ride off the AASM guidelines achieved by Itamar and the associated focus on Itamar's PAT® technology.

60.     VirtuOx's malfeasance is not just limited to written promotional materials. VirtuOx has an army of salespeople that are aggressively—and misleadingly—peddling the NightOwl and/or the NightOwl EZSlēp throughout the United States.  For example, the president of VirtuOx has been in frequent communication with a home sleep apnea supplier based in the United States, claiming that the NightOwl product is an economical replacement for Itamar's WatchPAT® devices.  Yet, it is not a replacement as these are two fundamentally different products that utilize different technology.  Itamar is unaware of all the oral misrepresentations and false statements made by VirtuOx's salesforce in its efforts to steal away Itamar's clients and

mislead potential consumers, but it expects that discovery will uncover a variety of falsehoods and actionable conduct, both on the part of VirtuOx and Ectosense.

61.     VirtuOx has also launched, in the words of its co-founder and Chief Operating Officer, a "shock and awe" marketing campaign geared towards the U.S. market to target Itamar's customers, confuse potential customers, trade off Itamar's goodwill, and flagrantly violate Itamar's longstanding rights in the PAT® Marks.  Accordingly, Itamar updated its pleadings to allege some of the unlawful activities involved in this "shock and awe" campaign, but there is expected to be much more malfeasance—and harm—that remains unknown to Itamar at this time and will be uncovered through discovery.

62.     The frequency and intensity of VirtuOx's unlawful conduct is only going to increase and become more problematic as time passes.  As part of the VirtuOx's "shock and awe" marketing campaign to invade the U.S. market, VirtuOx has also recently begun distributing marketing materials promoting the NightOwl product to "physicians in all 50 states" and have claimed that the "multi-use Disposable Home Sleep Apnea Testing HSAT" device is "now shipping."  Among other things, the marketing materials state:  "Dentists are provided with NightOwl® Home Sleep Apnea Testing (HSAT) devices on consignment (no need to purchase expensive HSAT devices again) to send home with their patients."  The marketing materials provide the contact information for three different locations of VirtuOx:  Coral Springs, Florida; San Francisco, California; and Washington, D.C.  The longer VirtuOx is allowed to operate by misleading and confusing consumers, the more harm that Itamar will suffer.

63.     VirtuOx has also been explicit in its disparagement of Itamar's devices, stating that "WatchPAT [is] NOT Accurate!"

64.     Despite being added to this litigation as a defendant, VirtuOx continues to promote the NightOwl and the NightOwl EZSlēp on its website.

65.     VirtuOx's misstatements are misleading to consumers, physicians, and the rest of the marketplace.  VirtuOx's statements are knowingly false, specifically designed to harm Itamar's goodwill, and derive an illegitimate commercial benefit by passing off the NightOwl and EZSlēp as "PAT device[s]" and products that use "PAT Technology," thereby diverting sales of Itamar's valid PAT® products to sales of the NightOwl and EZSlēp devices.

66.     VirtuOx is attempting to benefit from the acceptance and use of PAT® based technology by medical professionals and consumers by making false and misleading statements that the NightOwl and EZSlēp products are based on PAT® technology and qualify as a "PAT device."  Itamar has used its PAT® Marks, including the PAT® mark, for over two decades to identify and promote its sleep apnea devices and other medical devices.  VirtuOx's use of the term "PAT" on promotional materials for the products will confuse consumers regarding the origin of the products, Itamar's sponsorship of the products, and the similarity between the products and Itamar's products, including the WatchPAT® product.  VirtuOx's use of the "PAT" term—including in advertisements and promotions of its products on websites accessible in the United States, and in marketing the NightOwl and EZSlēp in the United States after Ectosense received clearance to market the NightOwl—has led and will continue to lead consumers to forego purchasing Itamar's products to purchase these products, thus diverting sales from Itamar and causing consumers and Itamar substantial harm.  This pervasive and unauthorized use of the PAT® Marks has also harmed, and will continue to harm, the goodwill and reputation of these marks and cause irreparable damage to Itamar.

**Harm to Itamar Caused by Defendants' Activities**

67.     Because of Defendants' wrongful conduct, Itamar was forced to retain counsel and incur fees and expenses (and continues to incur fees and expenses).  On August 7, 2019, Itamar's counsel sent Ectosense and VirtuOx a cease and desist letter that informed both Ectosense and VirtuOx of the unlawful conduct arising out of their false and misleading marketing and deceptive trade practices.  Itamar explained that it would take legal action if Defendants failed to stop issuing false and misleading promotional materials and making sales efforts based on those deceptive materials, and also if Defendants failed to stop infringing Itamar's trademarks, including the PAT® mark.  On November 8, 2019, Counsel for Ectosense responded to Itamar's cease and desist letter, denying any wrongdoing.  Itamar was forced to bring this action to protect its valuable trademark rights, goodwill, and reputation as a source of high quality PAT® based diagnostic devices.

68.     Defendants' activities have caused and will continue to cause irreparable harm to Itamar for which it has no adequate remedy at law because Defendants' conduct interferes with Itamar's goodwill and customer relationships and will substantially harm Itamar's reputation as a source of high quality PAT® products and the value of the PAT® Marks.

69.     Itamar's interests in protecting its intellectual property rights and products from customer confusion outweigh any potential harm to Defendants that could possibly flow from an injunction requiring Ectosense and VirtuOx to correct their false and misleading statements regarding the NightOwl and/or EZSlēp devices or cease infringing the PAT® Marks.  Moreover, the public interest is best served by granting the requested relief to Itamar against Ectosense and VirtuOx in this case.

### FIRST CLAIM FOR RELIEF
#### (Against Both Defendants)
### Lanham Act – Federal Trademark Infringement – 15 U.S.C. § 1114

70. Itamar realleges and incorporates by reference all of the factual allegations set forth above in paragraphs 1 through 69.

71. Itamar is the owner of all rights, title, and interest in and to the PAT® Registrations, including the right to sue for and recover all past, present, and future damages for infringement of the rights conferred by the PAT® Registrations.

72. The trademarks reflected in the PAT® Registrations are strong and distinctive. The trademarks reflect that Itamar is the source of all products advertised, marketed, sold, or used in connection with the PAT® Marks, and indicate that Itamar has authorized such products for sale and that such products satisfy Itamar's quality control standards.

73. As described above in paragraphs 32–51, Ectosense has made unauthorized use of the PAT® Marks in commerce in relation to the NightOwl, indicating among other things that the NightOwl and NightOwl Mini are a "PAT-based" devices when they are not.

74. In promoting the NightOwl as "PAT-based," among other things, Ectosense did not have authorization, license, or permission from Itamar to use the PAT® Marks.

75. Ectosense's unauthorized use of the PAT® Marks in the above-described manner was intended to confuse consumers into incorrectly believing that the NightOwl devices were, in fact, based on Itamar's proprietary PAT® technology.  Accordingly, such unauthorized use of the PAT® Marks by Ectosense in connection with the unauthorized promotion and sale of the NightOwl products was knowing, intentional, and willful.

76. Ectosense's unauthorized use of the PAT® Marks in the above-described manner was likely to cause confusion or mistake, or to deceive as to the source, origin, affiliation, sponsorship or authorization of the NightOwl devices.  This constitutes trademark infringement.

77.     As also described above in paragraphs 52–66, VirtuOx has made unauthorized use of the PAT® Marks in commerce in relation to the NightOwl and the EZSlēp, indicating among other things that the devices are "PAT device[s]" featuring "PAT Technology" when they are not.

78.     In promoting the NightOwl and EZSlēp products as "PAT device[s]," among other things, VirtuOx did not have authorization, license, or permission from Itamar to use the PAT® Marks.

79.     VirtuOx's unauthorized use of the PAT® Marks in the above-described manner was intended to confuse consumers into incorrectly believing that the NightOwl and EZSlēp products were, in fact, based on Itamar's proprietary PAT® technology.  Accordingly, such unauthorized use of the PAT® Marks by VirtuOx in connection with the unauthorized promotion and sale of the NightOwl and EZSlēp products was knowing, intentional, and willful.

80.     VirtuOx's unauthorized use of the PAT® Marks in the above-described manner was likely to cause confusion or mistake, or to deceive as to the source, origin, affiliation, sponsorship or authorization of the NightOwl and EZSlēp products.  This constitutes trademark infringement.

81.     As a direct and proximate result of Defendants' wrongful conduct, Itamar has been damaged.

82.     Unless an injunction is issued enjoining any continuing or future use of the PAT® Marks by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm Itamar.

83.     Defendants' activities have caused and will continue to cause irreparable harm to Itamar, for which it has no adequate remedy at law, because: (i) the PAT® Marks constitute a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes interference with Itamar's goodwill and customer relationships and is harming and will continue to substantially harm Itamar's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to Itamar, are continuing.  Accordingly, Itamar is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

84.     Pursuant to 15 U.S.C. §1117(a), Itamar is entitled to an order: (i) requiring Defendants to account to Itamar for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Itamar that were caused by Defendants' conduct.

85.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), Itamar is therefore entitled to an award of treble damages against Defendants.

86.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus Itamar is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Against Both Defendants)
### Lanham Act – Unfair Competition and False Designation of Origin –
### 15 U.S.C. § 1125(a)(1)(A)

87.     Itamar realleges and incorporates by reference all of the factual allegations set forth above in paragraphs 1 through 69.

88.     Defendants were aware of the PAT® Marks, including because Defendants were on constructive notice based on Itamar's federal registrations, and Defendants were on actual

notice at least as early as August 7, 2019, the date of Itamar's communication with Defendants regarding their infringement of the PAT® Marks and their false and misleading statements and promotional materials about the NightOwl.

89.   As described above in paragraphs 32–51 and 74, Ectosense has, without authorization, on or in connection with its goods in interstate commerce, made or contributed to the making of false designations of origin and/or false or misleading descriptions or representations of fact which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Ectosense with Itamar or as to the origin, sponsorship, or approval of the NightOwl.

90.   As described above in paragraphs 52–66 and 78, VirtuOx has, without authorization, on or in connection with its goods in interstate commerce, made or contributed to the making of false designations of origin and/or false or misleading descriptions or representations of fact which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of VirtuOx with Itamar or as to the origin, sponsorship, or approval of the NightOwl and EZSlēp products.

91.   Defendants' acts constitute unfair competition and false designation of origin, and/or induce or contribute to acts or unfair competition and false designation of origin.

92.   Defendants' conduct has deceived and unless restrained will continue to deceive the public, including medical professionals, governmental and commercial payors, consumers, and retailers, and has injured and unless restrained will continue to injure Itamar and the public, including medical professionals, governmental and commercial payors, consumers, and retailers, causing damages to Itamar in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of Itamar and its products.

93.     As a direct and proximate result of Defendants' wrongful conduct, Itamar has been damaged.

94.     Unless an injunction is issued enjoining any continuing or future use of the PAT® Marks by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm Itamar.

95.     Defendants' activities have caused and will continue to cause irreparable harm to Itamar, for which it has no adequate remedy at law, because: (i) the PAT® Marks constitute a unique and valuable property right that has no readily determinable market value; (ii) Defendants' infringement constitutes interference with Itamar's goodwill and customer relationships and is harming and will continue to substantially harm Itamar's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to Itamar, are continuing.  Accordingly, Itamar is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

96.     Pursuant to 15 U.S.C. §1117(a), Itamar is entitled to an order: (i) requiring Defendants to account to Itamar for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Itamar that were caused by Defendants' conduct.

97.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), Itamar is therefore entitled to an award of treble damages against Defendants.

98.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus Itamar is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
**(Against Both Defendants)**
### Lanham Act – False Advertising – 15 U.S.C. § 1125(a)(1)(B)

99.     Itamar realleges and incorporates by reference all of the factual allegations set forth above in paragraphs 1 through 69.

100.     As described above in paragraphs 32–51, Ectosense is using false, deceptive, and/or misleading descriptions and/or misrepresentations in commercial advertising and marketing that misrepresent the nature, characteristics, and/or qualities of the NightOwl devices in interstate commerce.

101.     Ectosense prominently features "PAT" and "PAT-based" in advertising the NightOwl.  Because Itamar's PAT® technology is proprietary, the NightOwl devices cannot be "PAT-based" as Itamar has not authorized Ectosense to use this technology.  Ectosense has also advertised the NightOwl to be reimbursable under the same CPT code that covers Itamar's PAT® based devices, implying that the NightOwl is also based on PAT® technology, which is false.  Further, the NightOwl product's specifications also demonstrate that it does not actually use Itamar's PAT® technology; rather, it uses PPG technology.  Accordingly, Ectosense's advertising is literally false.

102.     Ectosense's advertising is also misleading, as detailed above, because it claims that the NightOwl devices are smaller and more lightweight, leading consumers to incorrectly believe that its products have improved on Itamar's proprietary technology when they have not.

103.     As described above in in paragraphs 52–66, VirtuOx is also using false, deceptive, and/or misleading descriptions and/or misrepresentations in commercial advertising and marketing that misrepresent the nature, characteristics, and/or qualities of the NightOwl and EZSlēp products in interstate commerce.

104.     VirtuOx prominently features "PAT," "PAT device," and "PAT Technology" in advertising the NightOwl and EZSlēp products.  Because Itamar's PAT® technology is proprietary, the products cannot be "PAT-based" as Itamar has not authorized VirtuOx to use this technology.  Further, the NightOwl product's specifications also demonstrate that it—and thus, the EZSlēp—does not actually use Itamar's PAT® technology; rather, it uses PPG technology.  In addition, VirtuOx has stated that the EZSlēp "uses the same tech as Itamar," which is demonstrably untrue.  Accordingly, VirtuOx's advertising is literally false.

105.     VirtuOx's advertising is also misleading, as detailed above, because it claims that the NightOwl and EZSlēp products are smaller and more lightweight, leading consumers to incorrectly believe that their products have improved on Itamar's proprietary technology when they have not.

106.     Defendants' false and misleading statements actually deceive or have the tendency to deceive a substantial segment of their audience.

107.     Defendants' false and misleading statements are material and are likely to influence the purchasing decisions of actual and prospective purchasers of the NightOwl devices, EZSlēp, and/or Itamar's medical devices.

108.     Defendants' false and misleading statements have diverted sales to Defendants at the expense of Itamar and/or have lessened the goodwill enjoyed by Itamar's medical devices.

109.     Defendants' acts of false advertising have deceived and unless restrained will continue to deceive the public, including medical professionals, governmental and commercial payors, consumers, and retailers, and have injured and unless restrained will continue to injure Itamar and the public, including medical professionals, governmental and commercial payors,

consumers, and retailers, causing damages to Itamar in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of Itamar and its medical devices.

110.    Itamar has no adequate remedy at law to compensate it for all of the damages that have been caused and will continue to be caused by Defendants' wrongful acts unless those acts cease immediately.

111.    Pursuant to 15 U.S.C. §1117(a), Itamar is entitled to an order: (i) requiring Defendants to account to Itamar for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Itamar that were caused by Defendants' conduct.

112.    Defendants' acts of false advertising are willful, intentional, and egregious and make this an exceptional case within the meaning of 15 U.S.C. § 1117(a).  Itamar is entitled to an award of attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**(Against Both Defendants)**
**Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 _et seq._**

113.    Itamar realleges and incorporates by reference all of the factual allegations set forth above in paragraphs 1 through 69.

114.    This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 _et seq_.

115.    Defendants have engaged in the conduct of trade and commerce in the State of Florida.

116.     As described above in paragraphs 32–51, Ectosense has violated FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices by using the PAT® Marks without authorization to mislead consumers

into falsely believing to their detriment that Ectosense is associated with or related to Itamar and its products and technology.

117.    Ectosense has further violated FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices by making false and misleading statements about its products, as outlined above in paragraphs 32–51 to mislead consumers to their detriment.

118.    As described above in paragraphs 52–66, VirtuOx has violated FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices by using the PAT® Marks without authorization to mislead consumers into falsely believing to their detriment that VirtuOx is associated with or related to Itamar and its products and technology.

119.    VirtuOx has further violated FDUTPA by engaging in unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices by making false and misleading statements about its products, as outlined above in paragraphs 52–66 to mislead consumers to their detriment.

120.    Both consumers and Itamar have been injured by Defendants' violations because consumers have been misled to not make purchases of or to not use services associated with Itamar's products based on Ectosense's misleading claims that the NightOwl offers consumers the equivalent technology and capabilities in a superior and less expensive format, and VirtuOx's misleading claims that the NightOwl and EZSlēp products offer consumers the equivalent technology and capabilities in a superior and less expensive format.

121.    Itamar is entitled to recover its reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.2105.

**FIFTH CLAIM FOR RELIEF**
**(Against Both Defendants)**
**Florida Common Law Unfair Competition and Trademark Infringement**

122.    Itamar realleges and incorporates by reference all of the factual allegations set forth above in paragraphs 1 through 69.

123.    Itamar first adopted and has consistently used the PAT® Marks in the United States medical device market.  The PAT® Marks have accrued substantial goodwill and developed a strong reputation and these marks identify and distinguish Itamar's medical products from similar products marketed by others in the United States.

124.    Itamar adopted the PAT® Marks as a means of establishing its reputation, garnering goodwill, and distinguishing its products from similar products offered by others. Itamar has built up valuable goodwill in the PAT® Marks and the distinctive quality and characteristics of Itamar's medical devices in this District and in the State of Florida.

125.    For more than twenty years, the association of the PAT® Marks with Itamar's medical products in the United States medical device market has acquired a special significance as the name of the specific medical products marketed and sold through distributors by Itamar, and the PAT® Marks are inherently distinctive and, by actual usage, have come to identify Itamar's medical devices.

126.    As described above in paragraphs 32–51, Ectosense's use of the PAT® Marks and claims that the NightOwl is PAT-based permit Ectosense to promote the NightOwl and NightOwl Mini as if they are affiliated with or sponsored by Itamar when they are not.

127.    As described above in paragraphs 52–66, VirtuOx's use of the PAT® Marks and claims that the NightOwl and EZSlēp products are PAT devices permit VirtuOx to promote the products as if they are affiliated with or sponsored by Itamar when they are not.

128.    With full knowledge of the PAT® Marks, Defendants intended to and did trade off the goodwill associated with these marks.  Defendants have commenced, or intend to commence, the use of an identical or confusingly similar name, mark, symbol, logo, and design to indicate or identify similar medical device products marketed by Defendants in competition with Itamar in the same trade area in which Itamar has already established the PAT® Marks for Itamar's medical device products.

129.    Ectosense has misled medical professionals, consumers, and the public into incorrectly believing that the NightOwl and NightOwl Mini are, in fact, PAT-based when they are not.

130.    VirtuOx has misled medical professionals, consumers, and the public into incorrectly believing that the NightOwl and EZSlēp products are, in fact, PAT devices based on PAT technology when they are not.

131.    Defendants have misled and will continue to mislead medical professionals, consumers, and the public into falsely believing that there is a connection between Defendants and Itamar when there is not.

132.    As a consequence of Defendants' actions, or threatened actions, customer confusion as to source or sponsorship of the medical device products offered, or to be offered, by Defendants is likely or inevitable.

133.    Defendants' activities constitute acts of unfair competition in violation of the common law of the State of Florida and unjustly enrich Defendants to Itamar's detriment.

## PRAYER

WHEREFORE, Itamar prays for the following relief:

A.    An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with

them, who receive actual notice of the injunction order by personal or other service (the "Enjoined Parties"), to:

1. never advertise, market, package, label, or sell any product under the name or trademark PAT® or any similar name or mark;

2. never publish, display, distribute, disseminate, or use, or permit or enter into or perform any agreement for the publication, display, distribution, or use of any advertising which communicates any claims or messages or which in any way state or imply that (a) the NightOwl or EZSlēp products are PAT-based when they are not; (b) the NightOwl or EZSlēp products use PAT® technology when they do not; and (c) the NightOwl or EZSlēp products are PAT-based HSATs according to the AASM guidelines when they are not;

3. never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendants are in any manner associated or connected with Itamar, or are licensed, approved, or authorized in any way by Itamar;

4. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief that Defendants, or any of their goods or services, are related in any way to Itamar; and

5.      never unfairly compete with Itamar in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing the PAT® Marks.

B.      An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to file with the Court and serve upon Itamar's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction.

C.      An order, pursuant to 15 U.S.C. § 1118, directing the Enjoined Parties to deliver up and destroy all infringing products, labels, signs, prints, packages, wrappers, receptacles, advertisements, plates, molds, matrices, and/or other means of making the same.

D.      An order finding that, by the acts complained of above, Defendants have infringed Itamar's federally registered PAT® Marks in violation of 15 U.S.C. § 1114.

E.      An order finding that, by the acts complained of above, Defendants have created a false designation of origin and false representation of association, and have engaged in false advertising, in violation of 15 U.S.C. § 1125(a).

F.      An order finding that, by the acts complained of above, Defendants have violated FDUTPA.

G.      An order finding that, by the acts complained of above, Defendants have engaged in unfair competition in violation of Florida common law.

H.      An order directing an accounting by Defendants of their profits by reason of their unfair competition, false advertising, and deceptive acts and practices.

I.      An order that Defendants bear the obligation and expense of publication, display, distribution, and dissemination of corrective advertising to dispel the false, misleading, and deceptive advertising already communicated to consumers and the public regarding the NightOwl and/or EZSlēp products.

J.      A judgment on all claims for the damages suffered by Itamar as a result of Defendants' infringing activities, false advertising, unfair competition, and deceptive acts and practices, in an amount to be determined at trial.

K.      An order awarding Itamar:

1.      Pursuant to 15 U.S.C. § 1117(a), Itamar's actual damages, as well as all of Defendants' profits or gains of any kind from their acts of trademark infringement, false designation of origin, and unfair competition, and false advertising, including an appropriate increase in those damages and profits; and

2.      treble, enhanced, and/or exemplary damages because of Defendants' willful and wanton acts.

L.      An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case.

M.      An order awarding Itamar its reasonable attorneys' fees.

N.      An order awarding Itamar all of its costs, disbursements and other expenses incurred due to Defendants' unlawful conduct, pursuant to 15 U.S.C. § 1117(a).

O.      An order awarding Itamar interest.

P.      An order awarding Itamar such other relief as the Court deems appropriate.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Itamar demands a trial by jury.

Dated:  July 6, 2021                        Respectfully submitted,


                                            /s/ Robert D.W. Landon, III

                                            Robert D. W. Landon, III (FL Bar No. 961272)
                                            Elizabeth B. Honkonen (FL Bar No. 0149403)
                                            KENNY NACHWALTER, P.A.
                                            Four Seasons Tower
                                            1441 Brickell Avenue, Suite 1100
                                            Miami, FL 33131
                                            Telephone: (305) 373-1000
                                            rlandon@knpa.com
                                            ebh@knpa.com

                                            Allen M. Gardner (admitted *pro hac vice*)
                                            Chase A. Chesser (admitted *pro hac vice*)
                                            LATHAM & WATKINS LLP
                                            555 Eleventh Street, N.W., Suite 1000
                                            Washington, D.C. 20004
                                            Telephone: (202) 637-2270
                                            Allen.Gardner@lw.com
                                            Chase.Chesser@lw.com

                                            Jennifer L. Barry (admitted *pro hac vice*)
                                            Patrick C. Justman (admitted *pro hac vice*)
                                            LATHAM & WATKINS LLP
                                            12670 High Bluff Drive
                                            San Diego, CA 92130
                                            Telephone: (858) 523-5400
                                            Jennifer.Barry@lw.com
                                            Patrick.Justman@lw.com

                                            *Attorneys for Plaintiff Itamar Medical Ltd.*