UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

              Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

           Defendants       /

Case No. 20-60719-CIV-
DIMITROULEAS/SNOW

## ECTOSENSE'S ANTI-SLAPP MOTION PURSUANT TO FLA. STAT. § 768.295

Itamar filed this lawsuit to stifle healthy competition in the marketplace represented by Ectosense. The only interests this lawsuit serve are Itamar's avarice and monopolistic behavior. Itamar was so hasty in its efforts to step on the neck of a smaller competitor it didn't even wait until it actually had a legal right to sue, or evidence. And, when Itamar prematurely filed suit, it did so based on groundless speculation, false statements, and the pursuit of misleading inferences. Itamar's lawsuit aims at the heart of Ectosense's freedom of speech, and thus, the heart of the U.S. Constitution. It expressly seeks to impose prior restraint – and not even of any <u>false</u> statements from Ectosense. Instead, Itamar vindictively seeks to punish Ectosense for truthful statements, commercial speech, and even core First Amendment activities. Ectosense will not bend a knee, nor will it suffer the boot of a nihilistic bully that is taking advantage of the Court, and abusing the privilege to litigate. Itamar's lawsuit does casual violence to the judicial system and liberties the United States has stood for since the country was founded. Itamar should be repaid in kind, and this lawsuit violently ended. Ectosense requests an award of attorney's fees and costs pursuant to Fla. Stat. § 768.295, the Florida Anti-Strategic Litigation Against Public Participation Statute.

## I.     FLORIDA'S SLAPP STATUTE CAN BE APPLIED IN FEDERAL COURT.

### A.      SLAPP Provides a Flexible Remedy to Guard Freed of Expression.

Itamar's lawsuit is the exact type of litigation the SLAPP statute was intended to discourage.  It protects "the rights of free speech in connection with public issues" and the right to seek relief from governmental entities.  Fla. Stat. § 768.295(1); Fla. Stat. §768.295 (2)(a).  It protects the same rights as the U.S. and Florida Constitutions. Fla. Stat. § 768.295(3).  Free speech "in connection with public issues," includes "any written or oral statement that is protected under applicable law and is made before a governmental entity . . . or is made in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work."  Fla. Stat. § 768.295(2)(a).

A Defendant in a lawsuit may file a motion pursuant to the Florida SLAPP statute asserting that the "lawsuit, cause of action, claim, cross-claim, or counterclaim against [the Defendant is] without merit and primarily because such person has exercised the constitutional right of free speech in connection with a public issue . . . [or] to instruct representatives of government[.]" Fla. Stat. § 768.295(3); Fla. Stat. § 768.295(4).  The Florida SLAPP statute expressly provides such a motion should be ruled on quickly, to achieve "an expeditious resolution of a claim that the suit is in violation of this section."  Fla. Stat. § 768.295(4).[1]

 SLAPP motions can be flexibly applied.  A SLAPP motion can make arguments normally raised in a motion to dismiss, or a summary judgment, and can be supported with evidence.  Fla. Stat. § 768.295.  *Bongino v. Daily Beast*, 477 F.Supp.3d 1310, 1322 (S.D. Fla. 2020)(holding "because Plaintiff's suit fails to state a claim [ ] it was without merit under Fla. Stat. § 768.295(3))." *See also*, *Davis* 2017 WL 8809359, at *20.  Ectosense includes evidentiary arguments here, so the

---

1.      Courts examining this aspect of the SLAPP statute agree that hypothetical future discovery is not a valid reason to deny a SLAPP motion, or delay a ruling.  *Davis v. McKenzie*, 2017 WL 8809359, at *17 (S.D. Fla. 2017), *report and recommendation adopted*, 2018 WL 1813897 (S.D. Fla. 2018).

burden is shifted to Itamar to overcome the motion. Fla. Stat. § 768.295(4). The First Amendment

to the United States Constitution and s. 5, art. I of the State Constitution are the shield of freedom

of expression, and SLAPP is a sword.  If the Court grants the motion, awarding the moving party

attorney's fees is non-discretionary.  Fla. Stat. § 768.295(5).

## B.      Precedent Supports the Federal Application of the SLAPP Statute.

If a case exists in which a federal court in Florida held the Florida SLAPP statute could not

be applied in federal court, Ectosense hasn't been able to find it.  The Florida cases applying it are

legion.  The 11th Circuit recently applied Florida's SLAPP statute, albeit noting whether it applied

it federal court had been waived.  *Parekh v. CBS*, 820 Fed. Appx. 827 (11th Cir. 2020).  Still, the

11th Circuit, however, did not express any reservations about whether it would have done so had

the issue been briefed.[2]  There is no reason this Court should find differently.  Federal Rules of

Evidence 302 and 501 require it.  "In a civil case, state law governs the effect of a presumption

regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 302.

The SLAPP statute is a Florida state law shifting the burden of proof to Itamar. Fla. Stat. §

768.295(4).  The SLAPP statute provides that the effect of a SLAPP motion that is granted is

dismissal of the action or final judgment, and attorney's fees.  Fla. Stat. § 768.295(4).  "The

common law – as interpreted by United States courts in the light of reason and experience –

governs a claim of privilege . . . state law governs privilege regarding a claim or defense for which

state law supplies the rule of decision."  FED. R. EVID. 501.  The First Amendment to the United

States Constitution and s. 5, art. I of the State Constitution provide all persons a privilege to speak.

The SLAPP statute is a state law, governs the use of the privileges in The First Amendment to the

---

2.       The 11th Circuit has also applied California's SLAPP statute in federal court.  *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 947 (11th Cir. 2017). *See also*, *Corsi v. Newsmax*, 2021 WL 626855 (S.D. Fla. 2021)(applying Florida SLAPP statute); *Vibe Ener v. Duckenfield*, 2020 WL 6373419 (S.D. Fla. 2020)(applying Florida SLAPP statute); *Tobinick v. Novella*, 142 F.Supp.3d 1275 (S.D. Fla. 2017).

United States Constitution and s. 5, art. I of the State Constitution, and provides that when it is successfully triggered, the rule of decision is that dismissal or final judgment should occur, together with an award of attorney's fees.  Fla. Stat. § 768.295(4).

If a federal rule contains language that expressly invokes a "state law" "rule of decision" on a particular topic, a federal court must apply the state law, and there is no need to even analyze whether there is a conflict between the state law and federal rule, because the state law is adopted as the applicable federal rule itself. The proper application of the mandatory language contained in the rules is addressed by the advisory notes specifically addressing the exact same rules. The Advisory Committee Note to Rule 501 explains, "[t]he Committee also included in its amendment a proviso modeled after Rule 302 and similar to language added by the Committee to Rule 601[.] The proviso is designed to require the application of State . . . law [on the topics addressed] [and was] necessary in the light of the Advisory Committee's view . . . that this result is not mandated under *Erie* [alone]." Comm. Notes, FED. R. EVID. 501.  That is how the Rule's drafters answered a question stretching back to the Founders as to whether it is necessary to codify the circumstances under which a right must be recognized, if the structure of our Constitution already mandates the same result by virtue of federalism. Is it necessary to enact a law requiring a right be recognized if "[t]he only use of the declaration was to recognize the ancient law and to remove doubts[?]" The FEDERALIST PAPERS, No. 84 (Alexander Hamilton).  It should not be, under *Erie* and its progeny, and Hamilton presciently observed that doing so lays the groundwork for the debate currently before this Court. To suggest an already-existing right must be codified before the government is prohibited from infringing on that right "would even be dangerous . . . why declare that things shall not be done which there is no power to do? . . . [I]t is evident that it would furnish, to men disposed to usurp, a plausible pretense for claiming that power." FEDERALIST PAPERS, No. 84

(Alexander Hamilton). Today, the incorporeal danger Hamilton described would be reified by assertions that federal courts need not respect the rights granted by the SLAPP statute in the absence of an express mandate.

The Supreme Court, without expressly invoking Rule 302, held that result is already required, because a federal court must give effect to a state law "which puts the burden of proof on [a particular party]." *Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 20 (2000). "[T]he burden of proof [is] a 'substantive' aspect of a claim [and] an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." *Id.* at 21-22. *See also*, *CIMINO v. RAYMARK Indus.*, 151 F.3d 297, 311 (5th Cir. 1998)(providing that "the Rules of Decision Act, 28 U.S.C. § 1652, and *Erie R. Co. v. Tompkins* . . . with its seeming constitutional underpinning, mandate that the substantive law applied be that of the relevant state, here Florida. Substantive law includes not only the factual elements which must be found to impose liability and fix damages, but also the burdens of going forward with evidence and of persuasion thereon."). As a result, where a state statute provides a substantive defense pertaining to the same topic as a federal rule, it must be construed to complement rather than conflict with a federal rule, because a federal rule "does not replace [the] policy determinations found in state law. [The state law and the federal rule] can exist side by side . . . each controlling its own intended sphere of coverage without conflict." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751-53 (1980). *Walker* reflects the relationship between the federal government and the States that was intended before the Constitution was even ratified. "[L]ocal or municipal authorities form distinct and independent portions of the supremacy, no more subject, within their respective spheres, to the general authority, than the general authority is subject to them, within its own sphere." FEDERALIST PAPERS, No. 39 (James Madison).

5

C.    **The United States Supreme Court Requires that Federal Rules Be Interpreted to Give Effect to State Law Whenever Possible, and Not Interpreted in a Manner That Will Diminish a Substantive Right Under State Law.**

There is a long-standing recognition that federal rules leave "'room for play in the joints' between them." *Locke v. Davey*, 540 U.S. 712, 718-719 (2004). "In other words, there are some state actions permitted[.]" *Id.* Where possible, a federal court should attempt to harmonize state and federal rules. When a federal court is "called upon to examine a statutory scheme that has the potential for the optimum of federalism [, there will be] problems of accommodation that require additional interstitial interpretation . . . as the partners pirouette. The success of their federalist venture will depend not only upon the grace, but also the substance of movement by both partners in the ballet. We have endeavored to ink a most self-effacing role for the federal judiciary, one which should foster a harmonious background to the dance and necessitate intervention only when a point of unmelodious discord serious threatens the contrapuntal balance." *Save the Bay, Inc. v. Administrator of EPA*, 556 F.2d 1977, 1296-1297 (5th Cir. 1977).[3]

The Federal Rules of Civil Procedure and Evidence are promulgated under the auspices of the Rules Enabling Act, which contains a critical limiting provision prohibiting the Federal Rules of Civil Procedure and Evidence from infringing on rights granted by the several States. 28 U.S.C. § 2072(b). "Such rules shall not abridge, enlarge or modify any substantive right." *Id.* As a result, federal courts cannot interpret the rules in ways that "abridge" "substantive right[s]." In *Semtek v. Lockheed Martin*, 531 U.S. 497 (2001) the United States Supreme Court held the Rules Enabling Act prohibits applying a Federal Rule of Civil Procedure in a manner that would strip a party of a

---

3.      *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981)("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981, handed down by that court to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and bankruptcy courts in the circuit.").

substantive right under state law. In *Semtek*, the plaintiff filed suit in California state court, which was removed to federal court. *Id.* at 499. The federal court applied a California state statute of limitations and applied the text of Federal Rule of Civil Procedure 41 to dismiss the claims "in their entirety on themerits and with prejudice." *Id.* The plaintiff promptly re-filed in Maryland, which had a longer statute of limitations. *Id.* The Maryland courts dismissed on *res judicata* grounds, reasoning that the California federal court's application of Rule 41's language dismissing the California suit "on the merits" meant "the dismissal by the California federal court barred the complaint filed in Maryland, since the *res judicata* effect of federal diversity judgments is prescribed by federal law[.]" *Id.* at 500. The United States Supreme Court then granted *certiorari* and reversed, explicitly basing its ruling on the need to protect the system of federalism, and avoid a result that would be unconstitutional and violate the Rules Enabling Act. *Id.*

In a unanimous opinion, the United States Supreme Court struck down an interpretation of the "on the merits" language in Rule 41 that barred refiling in Maryland under the longer Maryland statute of limitations. *Id.* at 501-502. A statute of limitations "merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim preclusive effect in other jurisdictions with longer, unexpired limitation periods." *Id.* at 504. As a result, applying the California federal court's "on the merits" dismissal under Rule 41 in a way that would preclude filing suit in Maryland under the longer statute of limitations was unconstitutional. *Id.* Allowing the California federal court's application of Rule 41 to strip a litigant of a substantive right granted by another state, which would still exist but for the interpretation of Rule 41 to extinguish that right, would do violence to fundamental principles of federalism embedded in the core of constitutional jurisprudence. It would "violate the federalism principle of *Erie v. Tompkins* by engendering 'substantial variations in outcomes between state and federal litigation' which

would 'likely influence the choice of a forum,'" because "defendants sued on stale claims in California . . . would systematically remove state-law suits brought against them to federal court [to achieve] a statute-of-limitations dismissal [that] would bar suit everywhere [, including in states with longer limitations periods]." *Id.*

Moreover, it would "violate th[e] limitation" of "the Rules Enabling Act: that the Rules 'shall not abridge, enlarge or modify any substantive right." *Id.* at 503. Because of the "potential conflict with the Rules Enabling Act, and to avoid serious constitutional concerns," a court should therefore "adop[t] a 'limiting instruction'" of the Federal Rule of Civil Procedure at issue, precisely as the United States Supreme Court did in *Ortiz v. Fibreboard* with respect to Rule 23. *Id.* (quoting, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842 (1999)). Echoing the language of Rules 302 and 501, the Supreme Court held "[t]his is . . . a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits . . . any other rule would produce the sort of 'forum shopping and inequitable administration of the laws' that *Erie* seeks to avoid, since filing in, or remove to federal court would be encouraged by the divergent effects that the litigants would anticipate from likely grounds of dismissal." *Id*. at 508-509 (emphasis supplied).

The United States Supreme Court has extended application of *Semtek* to require interpreting the Federal Rules of Civil Procedure in a manner that ensures a defendant will "be entitled to litigate its statutory defenses to individual claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011)(striking down contrary interpretation of Rule 23). Thus, a federal rule of civil procedure can only displace state law if there is a federal rule not "susceptible of two meanings" that "unambiguously" addresses the issue at hand. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 405-06 (2010). If there is not a federal rule of civil procedure that

unambiguously governs the issue and can only be interpreted in one way, the United States Supreme Court proclaims that "we can (and must) interpret [a federal rule] in a manner that avoids overstepping its authorizing statute." *Id.* at 406. Therefore, "in some instances, the 'plain meaning' of a federal rule will not come into 'direct collision' with the state law, and both can operate. In other instances, the rule 'when fairly construed' with 'sensitivity to important state interests and regulatory policies' will not collide with the state law." *Id.* at 421 (J. Stevens, concurring).

### D.     SLAPP Does not Conflict With the Federal Rules.

If there is a way to interpret a federal rule that does not void a substantive right under state law, federal courts must apply that interpretation.  The SLAPP statute provides substantive rights and defenses.  As a result, the Court must interpret and apply the statute, because refusing to apply it would void a substantive right.

The Florida SLAPP statute does not contain provisions that conflict with the Federal Rules, in any event.  Other state's SLAPP statutes contain provisions in direct competition with Federal Rules, requiring Courts to apply the statute partially, by giving effect to the parts of the statute that do not conflict.  For example, the Texas SLAPP statute includes provisions limiting discovery; providing mandatory deadlines; and a completely different procedure than Rules 12 or 56.  CIVIL PROCEDURE & PROCESS § 27.001 *et seq.*  Those types of provisions, which would potentially conflict with a Federal Rule, are not present in the Florida SLAPP, so there is no danger of conflict.

Federal Rule of Civil Procedure 83(b), titled "Procedure When There is No Controlling Law," explains that "[a] judge may regulate practice in any manner consistent with federal law, rules adopted under [the Rules Enabling Act], and the district's local rules." FED. R. CIV. P. 83(b). If a federal court believes no rule clearly explains what to do, Rule 83 requires that under the *Erie* progeny discussed above, the default rule, under "federal law" and the rules of construction applied

to the "rules adopted under [the Rules Enabling Act,]" is that federal courts should regulate rules of practice to give effect to substantive state rights whenever possible. Federal courts are not confined to statutory sources of state law, and can adopt harmonizing interpretations provided by judicial decisions. "When these rules refer to state law, the term 'law' includes the state's statutes and the state's judicial decisions." FED. R. CIV. P. 81(d).

There should similarly be no struggle to harmonize the threshold defensive motion procedures allowed by SLAPP with Federal Rules of Civil Procedure 12 and 56. The SLAPP statute expressly provides that the appropriate standard is either of those rules.  Fla. Stat. § 768.295.Nothing in Rule 12, Rule 56, or any other federal rule precludes a federal court from adopting a state procedural mechanism that is embedded as part of a state law providing a substantive right. Because SLAPP is not clearly preempted by a conflicting federal rule, *Erie* and its progeny mandate that the SLAPP be allowed in federal court. A federal rule can only displace state law if the federal rule is not "susceptible of two meanings" and "unambiguously" addresses the issue at hand. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 405-06 (2010). "[W]e can (and must) interpret [a federal rule] in a manner that avoids overstepping its authorizing statute." *Id.* at 406. "[If] the 'plain meaning' of a federal rule will not come into 'direct collision' with the state law, and both can operate," it should be "'fairly construed' with 'sensitivity to important state interests[.]" *Id.* at 421 (J. Stevens, concurring).

Because construing Rules 12 and 56 as preempting the SLAPP in federal court would result in different outcomes between Florida state courts and federal courts, they cannot be so interpreted. Federal courts cannot interpret federal rules in a way that would result in different outcomes depending entirely on whether a claim is brought in federal court, or a local court of the state in which the federal court sits. *Semtek*, 531 U.S. 497 (holding that interpreting Rule 41 in a way that

would result in different outcomes in different forums would be unconstitutional, and violate the Rules Enabling Act). If there is no obvious conflict, federal rules also cannot be interpreted in a way that would obviate separately-provided statutory defenses. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011)(striking down contrary interpretation of Rule 23).

Thus, the SLAPP statute should be applied here.  It does not conflict with a Federal Rule, and applying it in a manner differently than Florida state court would encourage forum shopping. This applies to <u>all</u> claims, even the Lanham Act claims, because those are concurrent jurisdiction claims that may be brought in state court.  When that occurs, the Lanham Act is the state's substantive law.  And, the Supreme Court has applied a state privilege not provided for in the Federal Rules, because that is what the Federal Rule of Evidence 501 requires. *Jaffee v. Redmond*, 518 U.S. 1, 12–13 (1996).  In *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the United States Supreme Court held "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." Thus, Florida's SLAPP statute reflects an express policy to protect freedom of expression, dictating that it be adopted and applied – even as to the Lanham Act claims.  "A federal court exercising pendent jurisdiction over state law claims must apply the substantive law of the state in which it sits." *Janvey v. Brown*, 767 F.3d 430, 434 n.10 (5th Cir. 2014)(discussing cases involving simultaneously asserted federal-question and state-law claims).

## II.   <u>OVERVIEW OF ITAMAR'S FALSE ALLEGATIONS.</u>

Ectosense attaches as an Exhibit the Declaration of Bart Van Pee.  Ectosense incorporates it by reference, as if fully stated herein.  Itamar's Original Complaint alleged Ectosense had already "made unauthorized use of the PAT Marks <u>in commerce</u> by making false and misleading statements about the NightOwl product."  [D.E. 1, ¶ 36]. <u>This statement is false</u>.  Itamar also

alleged Ectosense had <u>already</u> "attempted to derive financial benefits from residents of the State of Florida." [D.E. 1, ¶8]. <u>This statement is false</u>. Further, Itamar alleged at the time of the Original Complaint, "Virtuox, Inc. is Ectosense's United States distributor." [D.E. 1, ¶16]. <u>This statement is false</u>. Itamar alleged "[t]he NightOwl Instructions for use also claims that the product diagnoses sleep apnea," implying Ectosense had already disseminated it in the U.S. [D.E. 1, ¶23]. <u>The implication Itamar created is false</u>, which Itamar knew. Moreover, Itamar is referring to a manual describing a software-only product for the European market, not the United States. Itamar claimed Ectosense's materials describing NightOwl as "PAT-based," disseminated in the U.S., ([D.E. 1, ¶¶8; 17-21]) were already "diverting sales" before the lawsuit was filed. [D.E. 1, ¶29]. <u>That was false</u>.

## III.   **THE SLAPP APPLIES HERE**.

The Florida SLAPP applies here. All of Itamar's claims constitute an attack on Ectosense's freedom of expression and speech. The documents and activities Itamar is suing Ectosense for are "protectable under applicable law" and "made in connection with an issue under consideration or review by a governmental entity, or is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." Fla. Stat. § 768.295. With respect to the Ectosense's actions in facilitation of clinical scientific research, that is activity and speech connected with a core First Amendment right, clearly protected by SLAPP.

Itamar has not demonstrated how any of Ectosense's advertising was false and misleading. Itamar simply doesn't like that Ectosense's products are approved by both the AASM and the FDA. Itamar falsely accused Ectosense of seeking to poach customers before the lawsuit was filed. Contacting potential customers is inherently speech. Itamar complains of various forms of

advertising and a presentation at a conference, but as explained in Ectosense's 12(b)(1) motion, all of that is protected speech not actionable under the Lanham Act.  "Courts have noted that where, as here, a defendant simply expresses an intent to use a particular mark by filing an application with the PTO or by presenting an idea at a conference, these activities, without more, are not sufficient to constitute use in commerce."  *Combe v. Dr. Aug. Wolff GmbH*, 309 F. Supp. 3d 414, 419 (E.D. Va. 2018).  Ectosense's distribution of promotional materials in the U.S. is not "'use in commerce' [even if] defendant had [a] website, product catalogue, and price quotes but had not sold or transported the good in United States commerce."  *Id.* at n.8 (quoting *Southco*, 982 F.2d at 511).  That merely conveys "ideas, concepts, or [describes] manufacturing expertise," which doesn't meet 15 U.S.C § 1127's requirement that trademarks be affixed to goods, packaging, associated displays, ancillary documents, tags, or labels.  *Potucek*, 738 F. Supp. at 470.

Itamar complains about a manual for NightOwl, suggesting it was disseminated in the United States.  Bart Van Pee explains that ].  <u>The implication Itamar created is false</u>, which Itamar knew.  Moreover, Itamar is referring to a manual describing a software-only product for the European market, not the United States.  Itamar claimed Ectosense's materials describing NightOwl as "PAT-based," disseminated in the U.S., ([D.E. 1, ¶¶8; 17-21]) were already "diverting sales" before the lawsuit was filed.  [D.E. 1, ¶29].  <u>That was false</u>.

Ectosense incorporates its arguments within its 12(b)(1) motion to dismiss as if fully stated herein.  Summarized, however, Ectosense didn't "use in commerce" Itamar's marks as the Lanham Act requires.  As a result, there is no Lanham Act jurisdiction, and without a federal question, Itamar's state law claims fall, because there is no diversity jurisdiction, either.  Ectosense didn't "use in commerce" its own devices until months after Itamar filed its case under false pretenses. <u>When this lawsuit was filed, it was literally impossible for Ectosense to engage in U.S.</u>

"commerce."  Ectosense didn't have a registered U.S. Agent with the FDA – a prerequisite to importing medical devices to the U.S. – when Itamar falsely alleged to the contrary.  It was impossible for Ectosense to even attempt to "derive financial benefits from residents of the State of Florida" when Itamar falsely claimed to the contrary.  Ectosense didn't have a U.S. distributor before Itamar falsely claimed to the contrary. Virtuox was not and never was Ectosense's U.S. distributor, and never made a presentation at a medical conference as Ectosense's U.S. distributor, notwithstanding Itamar's false claims to the contrary.  That would have been impossible, Virtuox has never been Ectosense's legal agent or legal representative, and Ectosense has never authorized Virtuox to speak on its behalf.  Ectosense hadn't distributed its NightOwl instructions in the U.S., when Itamar falsely claimed to the contrary.  Ectosense wasn't already U.S. "diverting sales," before Itamar falsely claimed to the contrary.  Itamar had no standing then, or now.  Florida courts apply SLAPP to Lanham Act claims, and other state's courts have as well.  *See, e.g., John v. Douglas*, 219 P.3d 1276 (Nev. 2009).  And, Florida Courts apply it in precisely this setting – where a complaint is dismissed for lack of jurisdiction.  *Boling v. WFTV, LLC*, 2018 WL 2336159, at *2 (Fla.Cir.Ct. Feb. 28, 2018)(granting SLAPP fees where Complaint dismissed due to lack of standing); *Davis*, 2017 WL 8809359, at *17 (S.D. Fla. 2017), *report and recommendation adopted,* 2018 WL 1813897 (S.D. Fla. 2018)(appearing to grant SLAPP fees due in part to lack of facts supporting federal jurisdiction).  Not applying SLAPP here would violate due process as explained by *Erie*, and encourage gamesmanship and forum-shopping.  It appears that is what the 11th Circuit would do in a Lanham Act case.  *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1394 (11th Cir. 1996).

Finally, Ectosense incorporates is 12(b)(6) motion to dismiss filed contemporaneously, as if fully stated herein.  The problem with Itamar's previous pleadings was that Itamar's allegations

that Ectosense made certain statements were never true. Throughout the Third Amended Complaint, Itamar now attributes these statements to VirtuOx—a distinct entity that Itamar claims is simultaneously a customer, distributor, principal, and agent of Ectosense and that Ectosense is similarly a principal and agent of VirtuOx. *See* ECF 121 ¶¶ 4, 6. This legal absurdity leaves Ectosense bewildered as to whether Itamar is attempting to hold Ectosense liable for the statements of VirtuOx or VirtuOx liable for the statements of Ectosense. The case is too far progressed, and far too much discovery has been provided to allow such facially absurd allegations to continue.

Itamar's continued indiscriminate confusion of the parties and failure to specify its claims improperly circumvents the pleading requirements for contributory and secondary liability doctrines for claims of infringement or false advertising premised on statements of another party. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015) (adopting the contributory liability doctrine of secondary trademark infringement and applying it to false advertising claims, and noting: "This means that the plaintiff must allege that the defendant had the necessary state of mind—in other words that it "intended to participate in" or 'actually knew about' the false advertising."). Itamar makes no efforts to meet this pleading burden, and instead just repeatedly attributes series of quotes and materials and then claims that the two defendants are simultaneously each other's principals and agents.

Moreover, Itamar fails to establish the "use in commerce" requirement of proving that Ectosense marked a product, or its ancillary documents, associated display, tags, or labels with any of Itamar's marks.  Without that, Itamar's claims fail.  Trademarks are "any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods ... from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. §

1127. Itamar's Claimed PAT Marks are for goods. Itamar cannot satisfy 15 U.S.C. § 1127's[4] "use in commerce" requirement. That requires: (1) a trademark; (2) is placed on a good, ancillary documents, or associated displays; and (3) the good is actually used in commerce.[5] Itamar describes all conduct at issue in Paragraph 48. That paragraph demonstrates "use in commerce" is absent. Itamar alleges Ectosense distributed written materials referencing "PAT," gave conference presentations, and has an internet presence. Itamar has not alleged those materials simultaneously accompanied the goods, as required by 15 USC 1127's "use in commerce" definition. "[M]ere advertising or promotion . . . is insufficient to constitute 'use' of the mark 'in commerce[.]'" *Southco v. Fivetech*, 982 F. Supp. 2d 507, 511–12 (E.D. Pa. 2013). There is a "requirement that for such a display to show the requisite use in commerce, it must be a "point of sale" display and not mere advertising." *In re Siny*, 920 F.3d 1331, 1334–35 (Fed. Cir. 2019). Websites, advertisements and documents, and displays separated from the good are not "use in commerce." They must be coupled with the unmarked good. "[M]ere advertising and documentary use of a notation apart from the goods do not constitute technical trademark use." *Id.*

Itamar is attempting its Claimed PAT Marks for goods to "proprietary technology." Itamar's pursuit of dominion over any "technology" that measures peripheral arterial tone is

---

4.      "In the construction of this chapter . . . [t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce — (1) on goods when – (A) it is placed in any manner on the goods or their contains or the displays associated therewith or the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and (B) the goods are sold or transported in commerce[.]" 15 U.S.C. § 1127. Use of "this chapter" indicates this definition applies to the entire Lanham Act, contained in U.S. Code Title 15, Chapter 22, 15 U.S.C. §§1051 – 1141n. *See also*, legislative intent paragraph of 15 U.S.C. § 1127 That provision states an intent to apply a "use in commerce" requirement over the Itamar's Lanham Act claims. *See also*, *Frida* 2014 WL 11880681, *2 (same); *Roor v. 902 N. Dixie*, 2016 WL 10952930, *2 (S.D. Fla. 2016)(applying to trademark infringement); *Potucek v. Taylor*, 738 F. Supp. 466 (M.D. Fla. 1990)(applying to false origin/unfair competition); *Jellibeans v. Skating Clubs*, 716 F.2d 833, 838 (11th Cir. 1983)(applying to false advertising).
5.      The alternate test applicable where "the nature of the goods makes such placement impracticable" only applies if a good's physical characteristics render affixing a trademark impracticable. *Southco v. Fivetech,* 982 F. Supp. 2d 507, 510 (E.D. Pa. 2013), *aff'd*, 611 F. App'x 681 (Fed. Cir. 2015).

negated by trademark law. Itamar acknowledges that it is a medical device manufacturer, and not

a physiological signal. Its trademark for PAT is for goods, not technology. Trademarks for goods

must be used for goods, and they do not extend to proprietary ideas or concepts. *See Potucek v.*

*Taylor,* 738 F. Supp. 466, 470 (M.D. Fla. 1990). The court in *Potucek* observed:

> The confusion in Plaintiffs' unfair competition claim is caused by
> Plaintiffs' assertion that "goods" as used in 15 U.S.C. § 1125
> (Lanham § 43(a)) includes proprietary information. Plaintiffs have
> not cited any cases that support Plaintiffs' contention that "goods"
> in section 43(a) extends to ideas, concepts, or manufacturing
> expertise. The cases cited by Plaintiffs do not support this
> proposition; but either merely restate the general rule that a
> photograph of a competitor's product used in advertising to
> represent another's product is false advertising and a violation of
> section 43(a) or the obvious rule that a publisher's "goods" are
> magazines and other printed material.

Itamar does not have a trademark to PAT-technology, and it cannot extend the PAT mark to the

concept or allegedly proprietary methods of measuring PAT. *See* ECF 121 ¶ 23 (claiming Itamar

owns the rights to "proprietary PAT® technology."); *cf Potucek,* 738 F. Supp. at 470. Itamar is

using "PAT® technology" throughout the Third Amended Complaint not as a single-source

identifying trademark, but rather as code for its definition of the techniques *it says* are required to

measure or monitor peripheral arterial tone. *See e.g.* ECF 121 ¶¶ 23, 57, 75.

Itamar is left with sever additional allegations that demonstrate legitimate scientific uses

of PAT by the FDA, the AASM guidelines, and the CPT reimbursement code:

- Peripheral arterial tone: A measure of pulsatile volume changes at the
  fingertip that reflects changes in sympathetic tone.

- Peripheral arterial tonometry (PAT): A technique allowing noninvasive
  moment-to-moment measurement of sympathetic tone using finger
  plethysmography (measurement of pulsatile volume changes in the
  fingertip that reflects changes in sympathetic tone). [...] used to detect
  respiratory events.

Despite the non-trademark uses for PAT evident on the face of the complaint, Itamar improperly alleges that its purported rights to the Claimed PAT Marks cover "all products" and seemingly all uses of "PAT"—regardless of whether such uses are fair, descriptive, non-trademark, or used in a manner that is not affixed to a good. *See* ECF 121 ¶ 1, 11, 20. Itamar's alleged rights to and registrations of the Claimed Pat Marks cannot create a monopoly to control the science of measuring physiological signals. Trademark law, unlike patent law, does not provide any rights to exclude others from practicing a certain kind of "technology." What is more, trademark law does not prevent the use of words or acronyms that fairly describe a certain type of technology—even if such technology was previously patented. *Kellogg Co. v. Nat'l* Biscuit, 305 U.S. 111, 118 (1938).

The alleged rights and registrations for the Claimed PAT Marks, even if valid, only extend to the use of a mark as a source indicator for "medical apparatus, namely, non-invasive, diagnostic units used to assess and measure body functions and states and physiological conditions which affect the vasculature." ECF 121 ¶ 20. Itamar is conflating patent and trademark law, and attempting to shoehorn a patent protections into a trademark. This position conflicts with over a hundred years of patent and trademark law. *See id.* at 117 – 118. *see also Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 185 (1896). The distinctions between a trademark for goods and an un-protectable concepts is not abstract. These distinctions define what a trademark owner must do for the goods it sells under the mark, and limits how a purported infringer can infringe on a trademark for goods. Itamar provides no allegation that Ectosense ever marked its NightOwl-branded product with PAT within the meaning of § 1127. Without the coupling, Itamar is left with an internet presence, and a few pre-market brochures that were not at point of sale—indeed the product was not yet for sale. [6] This conduct cannot constitute infringement of a trademark for

___
6.    Ectosense maintains that Itamar failed to plead anything beyond fair use as previously argued, but recognizesthat no meaningful developments have occurred that warrant raising the argument with this Court again in

goods because Ectosense did not mark its NightOwl branded product with any of Itamar's trademarks.

Further, Itamar's claims are barred by the doctrine of preclusion and the FDCA.  In prior motion practice, the parties briefed the impact of the primary case on the intersection between the exclusive enforcement provision of the FDCA and the private right of actions provided by Lanham Act is *POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102 (2014) (holding that the FDA's exclusive enforcement authority did not preclude a Lanham Act claim for false advertising simply because FDA-regulated labeling was implicated). Ectosense pointed out that because *POM Wonderful* involved food labels, several courts have subsequently recognized that preclusion should still bar claims that require interpretation of the FDCA or directly conflict with a decision of the FDA. Itamar's primary argument during the earlier briefing on preclusion was summarized by this Court:

> Plaintiff argues that the nature of the 510(k) clearance process demonstrates that the FDA has not "approved" statements that the NightOwl relies on a PAT measurement and that the 510(k) Clearance Letter from the FDA does not support preclusion. Plaintiff argues that Ectosense, even considering the 510(k) Clearance Letter, cannot show the FDA agrees with every claim made in the 510(k) Summary. Further, Plaintiff contends the Clearance Letter clearly states that the FDA has not made a determination that the NightOwl's labeling meets any Federal statutes or regulations.

ECF 52 at 13. Further, during hearing on the earlier motion to dismiss, Itamar likened the 510(k) clearance process to a *pro hac vice* motion, ECF 51 T. at 35, and relied upon the *Medtronic* cases to cast the 510(k) process out as something insignificant. ECF 51  T. at 34 ("By sharp contrast, as the *Medtronic* case explains, the 510(k) process, and the Medtronic case said is in no

---

light of the Court's prior ruling. *See* ECF 121 at 6 ("Defendant Ectosense has failed to demonstrate that a fair use defense is clear from the face of the complaint.").

way comparable to the PMA process. It is a very short process. It takes only 17 about 20 hours total, and there's very little information provided to the FDA."). This Court was persuaded by these arguments and found that because the Court does not need to interpret the FDCA, and because there is no specific regulation that could conflict with Itamar's claims, preclusion and preemption are no bar. ECF 52 at 14, 20.  Ectosense's 12(b)(6) explains that Itamar misrepresented the nature of the 510(k) process, so the result here should be different.  It is dispositive to Itamar's specific claims because the 510(k) clearance is indeed a safety and effectiveness determination that looks at the particular device being applied for, and all safety and effectiveness determinations made by the FDA <u>must be based upon valid scientific evidence</u>. *See* 21 C.F.R. § 860.7(c)(1) ("Although the manufacturer may submit any form of evidence to the Food and Drug Administration in an attempt to substantiate the safety and effectiveness of a device, the agency relies upon only valid scientific evidence to determine whether there is reasonable assurance that the device is safe and effective."). Itamar's FDUTPA claim fails, for similar reasons.  If enforced, would bar Ectosense from *accurately* advertising its product with the attributes that formed the basis of FDA clearance. These claims are preempted.

"Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Planetary Motion v. Techsplosion*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001). Here, because Itamar's common law trademark and unfair competition claims are predicated on the same allegations as its Lanham Act claims, Itamar's state-law claims turn on the success or failure of the federal claims. *See Natural Answers v. SmithKline*, 529 F.3d 1325, 1333 (11th Cir. 2008). Thus, Itamar's common law claim, Count V, should be dismissed for the same reasons set forth above regarding Itamar's Lanham Act Claims.

## IV.   <u>CONCLUSION AND RELIEF REQUESTED</u>

Itamar's efforts to quell the marketplace of ideas must be stopped.  If not stopped now, it would only encourage Itamar to engage in similar conduct, against similarly innocent victims.  Ectosense files this motion to stand up for itself, and all others similarly situated.  Ectosense requests an award of attorney's fees and costs, and all other relief to which it is justly entitled.

Respectfully submitted,

*/s/  B. George Walker*
Seth J. Donahoe, Esq. (FL Bar No. 1004133)
B. George Walker, Esq. (FL Bar No. 0071049)
**Tripp Scott PA**
**Counsel for Ectosense *nv***

<u>**CERTIFICATE OF SERVICE**</u>

Counsel for Ectosense *nv* hereby certifies that on the __th day of _____ 2021, I electronically filed the foregoing document via cm/ecf and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/  Seth J. Donahoe*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

**SERVICE LIST**
**CASE NO: 20-cv-60719-WPD**

| **Counsel for Plaintiff:** | **Counsel for Defendant ECTOSENSE:** |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 525-7500<br>Telefax: (954) 761-8475<br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN 55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>***Counsel for VirtuOx Inc.***<br><br>Jonathan B. Morton<br>Florida Bar No. 956872 |

<table>
<tr><td></td><td>

Jonathan.Morton@klgates.com
**K&L Gates LLP**
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, Florida 33131-2399
Telephone: 305-539-3357

Darlene F. Ghavimi, *Admitted Pro Hac Vice*
Texas Bar No. 24072114
Darlene.Ghavimi@klgates.com
Stewart Mesher, *Admitted Pro Hac Vice*
Texas Bar No. 24032738
Stewart.Mesher@klgates.com
**K&L GATES LLP**
2801 Via Fortuna Suite 350
Austin, Texas 78746-7568
Telephone: (512) 482-6919

</td></tr>
</table>