UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants      /

Case No. 20-60719-CIV-
DIMITROULEAS/SNOW

### ECTOSENSE'S MOTION TO RECONSIDER ORDER GRANTING GENE KLEINHENDLER'S MOTION FOR *PRO HAC VICE* ADMISSION AS ITAMAR'S COUNSEL OF RECORD, AND COROLLARY MOTION FOR ORDER TO SHOW CAUSE AS TO WHY ITAMAR AND GENE KLEINHENDLER SHOULD NOT BE HELD IN CONTEMPT OF COURT AND SANCTIONED

Ectosense objects to the *pro hac vice* admission of Gene Kleinhendler, and requests the

Court reconsider its order granting Mr. Kleinhendler the privilege to appear as Itamar's counsel of

record. Before Mr. Kleinhendler appeared as counsel of record, he engaged in prohibited *ex parte*

communications with an Ectosense director, for the sole and exclusive purpose of issuing a threat

of extortion— and he was so brazen that he touted the fact Itamar had retained him to do precisely

that. It gets even worse— Mr. Kleinhendler appears to have admitted to being in contempt of this

Court. He explicitly stated that the factual basis for his extortionate demand was a set of Ectosense

submissions to the FDA— which can only refer to a set of such documents marked "HIGHLY

CONFIDENTIAL" "ATTORNEY'S EYES ONLY" pursuant to the Confidentiality Order in this

case. Before his admission as *pro hac vice* counsel, Mr. Kleinhendler was not a person authorized

to receive documents marked "CONFIDENTIAL" under the Court's operative Stipulated

Protective Order Governing Confidential Materials.[1] [D.E. 66, ¶VII.B]. And, Mr. Kleinhendler

---

1.     Hereinafter the "Confidentiality Order." For convenience, the Confidentiality Order is attached hereto as **Exhibit A**.

was certainly not authorized to receive documents marked "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY"[2] under the Court's operative Confidentiality Order.   [D.E. 66,¶VII.C].  Not only should Mr. Kleinhendler still be barred from viewing the AEO Documents, he should also not be allowed the privilege of practicing in this forum for this case.  Ectosense should also be granted attorney's fees and costs incurred in connection with investigating the apparent breach of the Court's Confidentiality Order, drafting this Motion, and preparing for and participating in any hearings necessary.

Ectosense is mindful that *pro hac vice* motions are typically granted as a matter of course, as happened in this case on July 21, 2021. [D.E. 134]. That said, the Court ruled in only five days, and Ectosense had not yet had an opportunity to oppose the request. *Cf* [D.E. 129]; [D.E. 134].[3] During the pendency of Mr. Kleinhendler's Motion to Appear *pro hac vice*, Ectosense was finalizing complicated and nuanced research and briefing regarding the existence of subject matter jurisdiction over Itamar's Lanham Act claims [D.E. 136]; challenging Itamar's "Third Amended" Complaint as failing to state a cause of action, both through a distinct legal argument not articulated until then, and on expansions of previous legal arguments [D.E. 135]; and attacking Itamar's claims *in toto* as improperly brought in violation of the Florida Anti-Strategic Lawsuit Against Public Participation statute. *See*, Fla. Stat. § 768.295.[4] Ectosense strenuously objects to Mr. Kleinhendler's admission *pro hac vice*.

---

2.       The documents Ectosense marked as "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" are referred to herein as "the AEO Documents."  Should the Court need to review particular AEO Documents in connection with its ruling on this Motion, Ectosense will provide copies either *in camera* without filing copies on the docket, or under seal on the docket.

3.       N.B.: facially, the Order was entered July 21, 2021.  [D.E. 134, pg. 2].  The Court's docket (inaccurately, apparently) reflects July 20, 2021 was the entry date.  The circulation date of the Order indicates the Order itself, and not the court's docket, sets forth the correct (and intended) date.  The Order was automatically served through the Court's CM/ECF system on July 21, 2021.  *See*, **Composite Exhibit B**.

4.       The Motion and referenced statute are referred to respectively as Ectosense's "SLAPP Motion" and the Florida "SLAPP Statute."

Ectosense did not have a practical opportunity to contest the Kleinhendler *pro hac vice* Motion before the Court ruled.  The Federal Rules of Civil Procedure do not provide clear guidance on the standard of review for a motion to reconsider a nondispositive, interlocutory order[.]"  *Vinet v. BP Exploration*, 2019 WL 3574294, *3 (E.D. La. 2019).  It is at least clear, though, that "district courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order . . . [and is] less exacting than the standards enunciated in Rule [59 and 60(b)." *Id.*  The Court simply changing its mind is a sufficient basis to grant a motion to reconsider an interlocutory order, and a discretionary decision like that will be upheld.  *See, e.g., Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 863 (5th Cir. 1970) *abrogation on other grounds noted by Iturralde v. Shaw Group, Inc.*, 512 Fed. Appx. 430, 432 (5th Cir. 2013)(agreeing with *Bon Air* holding).The Kleinhendler *pro hac vice* Motion should not have been granted, and Ectosense believes it *would not* have been granted, if the Court had the benefit of this brief before granting the Kleinhendler *pro hac vice* Motion.  The Court should reconsider and withdraw its Order granting the Kleinhendler *pro hac vice* Motion; substitute an Order denying the Kleinhendler *pro hac vice* Motion in place of the existing Order; bar Mr. Kleinhendler from reviewing documents marked as AEO Documents (whether in the past, or in the future) in this case; deny Mr. Kleinhendler the privilege of practicing in this forum for this matter; sanction Itamar and Mr. Kleinhendler, and award Ectosense attorney's fees and costs.

Federal courts have discretionary power to grant admission to practice *pro hac vice*.  *Mike Woods v. On Baldwin Pond, LLC*, 2014 WL 12625077, at *1 (M.D. Fla. Nov. 26, 2014). A litigant does not have an unqualified freedom to hire the lawyer of his choice.  Choice of counsel can, and should be overridden when the applicant's attorney engaged in unethical conduct meriting disbarment in the forum, or the litigant's choice would interfere with the orderly administration of

3

justice. *See Schlumberger v. Wiley*, 113 F.3d 1553, 1562 (11th Cir. 1997); *In re BellSouth Corp.*, 334 F.3d 941, 956 (11th Cir. 2003) (applying *Schlumberger*, and refining articulation of when *Schlumberger* applies). Here, Mr. Kleinhendler engaged in the requisite unethical conduct to merit disqualification from serving as counsel of record.

Other courts have agreed in similar contexts. Attorneys are not permitted to contact board members of a party represented by counsel in ongoing litigation in *ex parte* fashion, threaten litigation absent settlement, and send accompanying written correspondence containing false misrepresentations. That should be obvious. *See, e.g., In re Hillbrandt*, 182 P.3d 1253, 1258, 1260-61 (Kan. 2008). That is a serious and aggravated violation of at least five ethics rules regulating attorney conduct, and warrants stripping an attorney of his license to practice. *Id.* at 1262. Mr. Kleinhendler's representation that his reaching out was unrelated to this litigation is flat out falsehood—what other connection to Itamar and Ectosense have? None. Even if they actually considered whether it was appropriate, they were required to err on the side of caution and *not* engage in *ex parte* communications, instead of commencing *ex parte* communications in willful blindness. *Univ. Patents, Inc. v. Kligman*, 737 F.Supp. 325, 326, 329-30 (E.D. Pa. 1990).

Further, Mr. Kleinhendler's inclusion as Itamar's counsel of record would interfere with the orderly administration of justice in the future, evidenced by the fact it has <u>already</u> interfered with the orderly administration of justice in this case. Ectosense is justifiably hesitant to produce AEO Documents in the future, based on the past conduct of Itamar and Mr. Kleindhendler. This has already interfered with the orderly administration of Ectosense's defense.

I.   **The Relevant Procedural History and Relevant Evidence Indicate Itamar and Mr. Kleinhendler Violated the Court's Operative Confidentiality Order, Then Threatened Criminal Prosecution by U.S. Regulatory Agencies against a Belgium-Based Non-Party Who Holds a Minority Investment in Ectosense.**

1.     The Court entered the operative Confidentiality Order in this case governing the designation of "Confidential" and AEO documents (referred to by the Confidentiality Order as "Highly Confidential – Attorneys' Eyes Only"), on March 7, 2021.  [D.E. 66].

2.     Ectosense, under protection of the Confidentiality Order, produced its communications to the FDA during the 510(k) review process of NightOwl and the entirety of Ectosense's four comprehensive submissions to the FDA, in native format on March 26, 2021 under an AEO designation for use in this case and *only for use in this case pursuant to the protective order*. [D.E. 59 at 2].

3.     Two weeks later, on April 12, 2021, Mr. Kleinhendler contacted a director of Ectosense—*ex parte*—requesting a meeting with one of Ectosense's minority shareholders, Saffelberg Investments *nv* ("Saffelberg"). Mr. Kleinhendler stated his *ex parte* contact was in connection with representing Itamar, which began 'a couple of weeks' prior, and that he was asked to look into Ectosense's 'communications with the FDA.' So, Itamar retained Mr. Kleinhendler precisely when Ectosense produced AEO Documents. *See* Declaration of Arnold Benoot attached as **Exhibit C**.

4.     Mr. Kleinhendler further asserted his meeting request had nothing to do with the litigation in the Southern District of Florida, and that it instead had to do with liability to Saffelberg for supposed misconduct of Ectosense during the 510(k) review process.

5.     Ectosense has not produced or shared the FDA documents and submissions with any third parties.

6.     As a direct result of Mr. Kleinhendler's communications, a Saffelberg representative promptly called Mr. Kleinhendler. **Ex. D**, ¶5. During the call, <u>Mr. Kleinhendler claimed that he had reviewed Ectosense's submissions to the FDA and that he and Itamar believe Ectosense defrauded the FDA</u>. **Ex. D**, ¶5.

7.     According to the Saffelberg representative, Mr. Kleinhendler was palpably evasive and used circumspect language during the call. **Ex. D**, ¶6.  The Saffelberg representative's impression was that Mr. Kleinhendler was intentionally trying to avoid committing himself to a specific accusation of fraud by Ectosense. **Ex. D**, ¶6. This prompted Saffelberg to request clarification on what *exactly* Mr. Kleinhendler or Itamar believed constituted fraud on the FDA, and clarification as to why he reached out to Saffelberg—an Ectosense investor—regarding these issues. **Ex. D**, ¶9.

8.     Mr. Kleinhendler then sent a letter to Saffelberg indicating he had "been retained by Itamar Medical Ltd. to advise on the liability of Ectosense directors and shareholders arising from Ectosense [sic] activities in the U.S." A copy of the letter is attached hereto as **Exhibit E**. Mr. Kleinhendler's letter immediately stated his specific intention was to present his thoughts "concerning potential liability of a private equity investor arising from the activities of its portfolio companies' dealings with U.S. government agencies." **Ex. E**.

9.     Mr. Kleinhendler then launched into a series of incendiary false allegations that Ectosense sought regulatory clearance to "intentionally mislead the FDA by failing to disclose material facts" to obtain approval to incorporate PAT incorporate the NightOwl 510(k) Summary, and used FDA clearance to qualify for reimbursement under Current Procedural Technology (CPT) code 95800, which allows reimbursement for: "Sleep study, unattended, simultaneous

recording; heart rate, oxygen saturation, respiratory analysis (e.g., by airflow or peripheral arterial tone), and sleep time." **Ex. E.**

10.     Mr. Kleinhendler's correspondence claimed Ectosense also engaged in "fraudulent inducement" to enable "false claims for reimbursement form U.S. government healthcare programs." **Ex. E.**

11.     Mr. Kleinhendler's escalated the gravity of his accusations, stating "Knowingly perpetrating a fraud or act of deception upon a government agency includes deliberate ignorance of the truth or falsified information. **Ex. E.** As the U.S. government agency empowered to enforce anti-bribery and corruption violations puts it: 'willful blindness is not a defense.'" **Ex. E.**

12.     **Most shocking about Mr. Kleinhendler's letter is that he demanded that Saffelberg open an investigation into Ectosense and warned, should Saffelberg fail to do so, Saffelberg itself could face *criminal prosecution* for the purported false claims**: "False claims for Medicare reimbursement based on a fraudulent submission to the FDA are aggressively prosecuted by U.S. criminal and civil authorities." "Saffelberg may be held liable for those false claims under U.S. law." **Ex. E.**

13.     Mr. Kleinhendler made his threats even more explicit in a follow up email in which he urged Saffelberg to "carry out it's [sic] legal responsibility" such that he could "avoid any further action in this matter."

14.     **Saffelberg never solicited Itamar's or Mr. Kleinhendler's legal "advice." The letter was not a friendly FYI, but rather had a far more insidious purpose: for Itamar to intimidate its adverse party's investor (who Itamar likely believes is funding the defense of this lawsuit), prejudicially affect Ectosense's defense further, and eventually, compel the investor to launch an investigation and thus give rise to discoverable evidence in this lawsuit,**

**by manipulating the investor into believing he had no other choice. If Mr. Kleinhendler or Itamar have any other plausible explanation for their conduct, the Court should require them to articulate it on the record, under oath. Mr. Kleinhendler had no legitimate purpose in reaching out to Saffelberg and threatening it with a criminal proceeding.**

15.     **Even meritorious threats of criminal prosecution are construed as extortion as a matter of law.  Mr. Kleinhendler's letter is far worse, because it is devoid of merit.**

16.     Every single statement of fact and law in the letter Mr. Kleinhendler made with respect to Ectosense or Saffelberg was manifestly false.

17.     The FDA reviewed—"at length," to borrow the FDA's wording—Ectosense's claims that NightOwl measures PAT. The FDA then issued a 510(k) clearance after evaluating the valid scientific evidence, as required by 21 C.F.R. § 860.7(c)(1), and published the 510(k) Summary definitively confirming NightOwl analyzes PAT. Ectosense is ready, willing, and able, to provide the AEO documents to this Court that demonstrate the dialogue and analysis the FDA and Ectosense engaged in on this exact point. There was no fraud. There was a scientific discussion about how NightOwl measures PAT. The content of the documents is almost beside the point though because the primary point is that Mr. Kleinhendler, premised a threat of criminal prosecution on documents that Mr. Kleinhendler could not have reviewed without violating this Court's Confidentiliaty Order—documents that neither he nor Itamar should have had access to.

18.     Further, Mr. Kleinhendler claimed CPT 95800 only applies to Itamar's technology, and stated Saffelberg could face civil and criminal liability for Ectosense securing reimbursement

under "Itamar's code."[5]  That statement is false.  The code is not exclusive to any medical device manufacturer, including Itamar.

19.    Further chronological context demonstrates the direct connection between Mr. Kleinhendler's threats of criminal prosecution on behalf of Itamar, the production of documents in this case that were designated AEO, and Mr. Kleinhendler's *pro hac vice* Motion.

20.    Exactly one day after Ectosense produced in this case its submissions to the FDA, Itamar demanded Ectosense de-designate the documents. When Ectosense refused in order to protect its confidential and valuable materials, Itamar filed a Motion to Compel De-Designation of Documents Marked Attorneys' Eyes Only ("De-designation Motion") after conferrals were productive, but not completely unsuccessful. *See* [D.E. 98].[6]

21.    Once Itamar filed the De-designation Motion, Ectosense informed Itamar's then-counsel, Latham & Watkins, Ectosense suspected an ulterior motive by Itamar – and that Itamar had been using Mr. Kleinhendler (who claims to have reviewed the FDA communications even before he appeared as counsel of record) to threaten Ectosense's shareholders with criminal prosecution by U.S. regulatory agencies.

22.    The Court denied Itamar's De-designation Motion on June 25, 2021.  [D.E. 118].

23.    Not even a week past the Court's denial of the De-designation Motion, on July 2, 2021, Latham & Watkins abruptly cancelled a conferral call scheduled earlier in the week, and vaguely indicated "something had come up" and they "would be in touch."

---

5.    The CPT code 95800 is a code that can apply to any provider of PAT-based HSAT that performs a "Sleep study, unattended, simultaneous recording; heart rate, oxygen saturation, respiratory analysis (e.g., by airflow or peripheral arterial tone), and sleep time."

6.    As recognized by the Court's Order denying Itamar's Motion to De-Designate Attorney's Eyes Only Marked Documents, the parties resolved, or Ectosense capitulated, to many of Itamar's requests to de-designate or reclassify the documents at issue.  However, this was done *after* Kleinhendler claims to have reviewed the documents, and after Kleinhendler threatened Saffelberg. Moreover, the AEO Documents that Ectosense did voluntarily de-designate or reclassify were irrelevant to the matters raised by Mr. Kleinhendler.

24.     A mere three business later, on July 7, 2021, Itamar's current counsel contacted undersigned counsel stating "Foley & Lardner LLP has just been retained as counsel for Itamar Medical Ltd., and we will be filing a Motion to Substitute as counsel today.  Please advise if we can file the motion as unopposed."

25.     There was no mention in this email, or any subsequent communication, that Mr. Kleinhendler was also being retained as counsel of record for this lawsuit.

26.     Ectosense confirmed it did not oppose Foley & Lardner's request – as to Foley & Lardner.  Had Ectosense known Itamar would seek a *pro hac vice* admission for Mr. Kleinhendler, Ectosense would have immediately objected.

27.     The Court entered it Order Granting Itamar's Motion for Substitution of Counsel on July 9, 2021. [D.E. 126].

28.     A short time later, on July 16, 2021, to Ectosense's shock, Mr. Kleinhendler requested *pro hac vice* admission, [D.E. 129], and this Court quickly granted the same, because, Ectosense assumes, the Court viewed the motion as perfunctory, and Ectosense's lack of opposition as to Foley & Lardner possibly applicable to Mr. Kleinhendler. [D.E.134].

29.     Latham & Watkins' Global Vice Chair of Intellectual Property Litigation previously represented Itamar. Mr. Kleinhendler, by contrast, does not appear to have ever prosecuted or defended an intellectual property case in the United States, nor does he even appear to be an active litigator in the United States.  The only trace of him is three 1980's cases.  From there, his trail grows cold – until his appearance here.

II.     **Mr. Kleinhendler Appears to Admit Reviewing AEO Documents in violation of this Court's Confidentiality Order, and Use of the Same AEO Documents to Threaten an Ectosense Investor with Criminal Prosecution – Mr. Kleinhendler Should not Be Allowed the Privilege of Practicing in this Forum for this Matter, and Itamar and Mr. Kleinhendler Should Be Required to Pay Ectosense Attorney's Fees and Costs.**

This issue is not complicated. The applicable facts and the applicable law are both straightforward.  Ectosense expects the only convoluted aspect of this matter will be Itamar and Mr. Kleinhendler's response. Given the protections of the Confidentiality Order, and assurances from its undersigned counsel of the Order's corresponding gravity in a federal court proceeding in the United States, Ectosense voluntarily self-collected and produced the entirety of its submissions and communications with the FDA. Ectosense did so early on—before the documents were even due to be produced—as a showing of good faith and in an effort to resolve the technical and factual misstatements permeating Itamar's claims. These documents should have necessitated Itamar's counsel advising Itamar the claims of literal falsity are without merit. The FDA reviewed Ectosense's scientific materials and technology. As a direct consequence, the FDA specifically disagreed with Itamar's position in this case. With Mr. Kleinhendler having claimed to have reviewed the FDA submissions and then using them to threaten an Ectosense investor with criminal prosecution, Ectosense believes it can no longer produce any confidential documents when Mr. Kleinhendler has access to them. The representations of security Ectosense's undersigned counsel made as an assurance to Ectosense have also been impeached in the eyes of Ectosense (and wrongfully so, in the eyes of undersigned counsel).

Compounding the unseemly fact that Mr. Kleinhendler claims to have reviewed (there is no reason to doubt this particular assertion, because it is a classic admission against interest), the AEO Documents, is the accompanying fact that Mr. Kleinhendler abused the AEO Documents by using them for the sole purpose of communicating with a non-party minority investor of Ectosense. That truth is not only inconvenient, it is unfortunate. Those facts, even viewed dryly in an objective assessment, do not capture the full scope of what occurred.  And, its dreadful extent laid bare, is appalling. Mr. Kleinhendler appears to have used AEO Documents to issue an overt threat of

criminal prosecution against a non-party, who has no involvement with Itamar or this lawsuit, and whose only involvement with Ectosense is passive investment. Mr. Kleinhendler's conduct facially violates the Model Rules of Professional Conduct; the Rules Regulating the Florida Bar; the Rules Regulating the New York Bar; and this Court's Confidentiality Order. Allowing Mr. Kleinhendler the privilege of practicing in this forum poses a significant risk of prejudice to Ectosense, and further disruptions to the orderly administration of this case.

**(a) Mr. Kleinhendler's conduct violated the Model Rules of Professional Conduct**

There is no question Itamar and Mr. Kleinhendler pursued an illicit objective in contacting Saffelberg, and accomplished – at a minimum – their objective to instill subjective concern and some level of doubt on the part of Saffelberg. Taking Mr. Kleinhendler's opening statement that he was retained to advise Itamar as true, he had no legitimate business contacting Saffelberg. Mr. Kleinhendler's communications were not "advice" – they were permeated with overt threats, and constitute only overt threats:

- The first sentence is an overt threat against Saffelberg of "liability;" and the second sentence overtly requires Saffelberg to draw the inference Mr. Kleinhendler was referring to criminal exposure.
- The second paragraph accuses Ectosense of Medicare fraud, and fraud on the FDA, and concludes by explicitly threatening Saffelberg with accessory criminal culpability.
- The third and fourth paragraphs repeat Mr. Kleinhendler's accusations Ectosense engaged in fraud on the FDA to achieve a further fraud on Medicare, and escalate the threat against Saffelberg by describing as a potential consequence, being "dealt with severely by U.S. government enforcement agencie[s"].
- The fifth paragraph makes clear Mr. Kleinhendler is specifically aiming his threats at Saffelberg, because he says "it is the policy of the U.S. government to hold all culpable parties liable in fraud cases," including "equity investor[s] . . . even when holding a minority position[.]"
- The sixth paragraph continues the threat against Saffelberg, and escalates the attempt to compel Saffelberg to take action adverse to Ectosense. Not only does it tell Saffelberg to refrain from further investments in Ectosense, it falsely characterizes U.S. law as

imputing a positive duty on Saffelberg to "take measures to ensure that its portfolio companies . . . require the ethical conduct of business in their industry [such as] bring[ing] compliance concerns [forward]; [and]conducting independent audits of compliance[.]" That sentence concludes with an explicit reference to the AEO Documents Mr. Kleinhendler shouldn't have possessed or reviewed, because it says Saffelberg's positive duties are heightened "especially when dealing with FDA and reimbursement matter [sic]." <u>Ectosense's communications and submissions to the FDA were categorically designated as AEO Documents at that time, and the specific documents Mr. Kleinhendler referenced have never been de-designated or reclassified, whether voluntarily, or as a result of a Court Order.</u>

- The seventh paragraph accuses Saffelberg of having a criminal scienter sufficient to satisfy the *mens rea* element of a crime.
- The eighth paragraph accuses Saffelberg of engaging in conduct that satisfies the causation and overt act elements of a crime.
- The ninth and concluding paragraph ties the entire content of the letter together, and explicitly voices its overarching intent to attempt to compel Saffelberg to launch an investigation, and withhold funding to achieve a pecuniary advantage over Ectosense.

Mr. Kleinhendler's conduct violates multiple Rules Regulating the Florida Bar. Rule 4-4.1 requires an attorney be truthful in dealing with others on a client's behalf. Mr. Kleinhendler said he reviewed Ectosense's submissions to the FDA.  If he was lying about having reviewed Ectosense's FDA submissions, he violated Rule 4-4.1.  If he was telling the truth, then both Itamar and Mr. Kleinhendler also violated the Confidentiality Order, and Mr. Kleinhendler still violated Rule 4-4.1, except through false statements in his letter's content. If Itamar and Mr. Kleinhendler confabulate a third possibility, then as the old adage goes, "they were lying then, or they're lying now."

Further, Rule 4-8.4(d) provides that an attorney shall not "engage in conduct that is prejudicial to the administration of justice." Florida Bar Ethics Opinion 89-3 provides that an attorney is prohibited from threatening criminal prosecution to gain advantage in a civil matter. The authoring Bar Committee noted that "[t]he criminal process was not intended to be used as a

means of settling private disputes and is undermined when it is misused in such a manner[,]" stating:

> In view of the rules discussed above, the Committee concludes that <u>it would be improper for an attorney to bring, participate in bringing, or threaten to bring criminal charges against someone solely to obtain an advantage in a civil matter</u> or if the <u>primary</u> purpose of such action is <u>harassment</u>. This conclusion recognizes that not every mention of possible criminal consequences is improper. It is important to distinguish between a permissible notice that is carefully tailored to serve a <u>legitimate</u> purpose and an <u>improper express or implied</u> threat to bring criminal charges if the recipient does not comply with certain demands related to a civil claim. (Emphasis supplied).

Issuing a written or verbal "extortionate" communication in connection with representation is a violation of the Rules Regulating the Florida Bar. *The Florida Bar v. Winn*, 208 So.2d 809, 810 (Fla. 1968) *receded from on other grounds by The Florida Bar v. Della-Donna*, 583 So.2d 307 (Fla. 1989) (holding "a member of The Bar may be properly disciplined for such condemned conduct.") An attorney "act[s] in bad faith when he ma[k]e[s] [a monetary] demand . . . [if] the demand is predicated upon the threat to disclose alleged [illegal conduct]." *Del Fuoco v. Wells*, 2005 WL 2291720 (M.D. Fla. 2005). When a threat of that ilk is leveled, the threat is not even appropriate if is ostensibly made in connection with settlement negotiations relevant to a pending case. *Id.*

Mr. Kleinhendler issued overt threats of criminal prosecution of an investor in the adverse party of his client, and admits he conspired with Itamar to that end, because he states it was Itamar's express purpose in retaining him. Although ostensibly under a claim that his communications were unrelated to this litigation, Mr. Kleinhendler intended to obtain pecuniary advantage over Ectosense by cutting of a source of funding. Otherwise, his objective of gaining advantage in this litigation is nevertheless clear –there is no legitimate reason for Mr. Kleinhendler to contact Saffelberg at any point in time. Mr. Kleinhendler was not altruistically reaching out to Saffelberg

with a friendly (and uninvited) assessment of U.S. law—he was threatening Saffelberg. Mr. Kleinhendler's assertion his accusations against Ectosense were unrelated to this case is a threadbare attempt to distance his threats from being correctly regarded as what they facially are – attempts to secure advantage in this litigation. Unsurprisingly, courts have found that issuing a threat unrelated to pending litigation in *sub rosa* fashion, is in and of itself evidence that it is connected to pending litigation. *See Cooper v. Austin*, 750 So.2d 711, 711 (Fla. 5th DCA 2000) (observing that issuing a threat to contact authorities and seek criminal prosecution of a litigation opponent for conduct unrelated to the lawsuit "constitute[s] classic extortion.").  Finally, before contacting Saffelberg, Mr. Kleinhendler engaged in *ex parte* communications with an Ectosense director. That conduct violates Rule 4-4.2.

The Court's job is easier here than it would be, had the threats at issue been veiled or even plausibly related to something else in a minimal way.  Here, Kleinhendler clumsily made brazen threats in a coarse way. Neither he nor Itamar had any legitimate purpose in contacting the Ectosense director, or Saffelberg. The only reason Itamar and Mr. Kleinhendler contacted the director was to reach Saffelberg, and the only reason Mr. Kleinhendler contacted Saffelberg was to intimidate Saffelberg and secure advantage in this proceeding by dissuading future investment by Saffelberg— in the hopes these efforts would compel Saffelberg to cut-off resources to Ectosense, and conduct a resource-consuming investigation during the pendency of this litigation. The reasons for their actions are not legitimate; they are tainted with malice and bad intentions. Mr. Kleinhendler's threat evidences the same, but it is underscored by the deeply flawed "legal analysis" Mr. Kleinhendler sets forth in his letter. Mr. Kleinhendler sought to scare Saffelberg, a foreign non-party investor, with potential criminal prosecution by unidentified U.S. regulatory authorities, and transmitted a sloppy letter sparsely dressed in legal jargon to do so.

**(b) Mr. Kleinhendler's Apparent Violation of the Confidentiality Order Disrupted the Orderly Administration of this Case, and Warrants a Finding of Contempt.**

Mr. Kleinhendler made two claims in apparent violation of the Confidentiality Order. First, Mr. Kleinhendler claims he reviewed Ectosense's FDA submissions and communications. Taking his statement at face value, it is an admission he and Itamar violated the Court's Confidentiality Order. Second, Mr. Kleinhendler represented to Saffelberg that his reaching out was unrelated to this litigation. Itamar and Ectosense have no relationship other than this litigation. His statement was a specious effort to distance the threat of criminal prosecution from the advantage sought by Itamar in this litigation, and manufacture a false justification for improper *ex parte* communications.  Close temporal proximity between dissemination of non-public information and the actions of defendant implying they gained access to the documents is evidence that should be considered by the Court.  A "suspicious chronology raises a reasonable inference that [a defendant] received such information [from an unauthorized source] . . . [t]his inference that [the defendant] possessed material nonpublic information is also supported by the chronology of telephone calls[.]" *S.E.C. v. Adler*, 137 F.3d 1325, 1341 (11th Cir. 1998).  Temporal proximity has evidentiary worth in civil cases, as well.  "As to temporal proximity, we have inferred causation 'where [an act] closely follows [other] activity.'" *Kamensky v. Dean*, 148 Fed. Appx. 878, 881 (11th Cir. 2005).

 Even if true, the use of AEO documents for purposes other than this litigation is another violation of the Confidentiality Order.[7]  Conversely, assuming Mr. Kleinhendler was lying about reviewing Ectosense's AEO-designated FDA submissions, but was telling the truth that his

---

7.     The Confidentiality Order provides "[a] Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this action only for prosecuting, defending, or attempting to settle litigation.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order."  [D.E. 66, pg. 11, Sec. VII.A].

involvement was unrelated to this litigation, then his letter accusing Ectosense of defrauding the FDA and engaging in an illegal scheme for reimbursement was necessarily sent without any due diligence and intended to mislead Saffelberg.   If that possibility is the most accurate characterization of Mr. Kleinhendler's improper conduct, it further highlights its true purpose: to intimidate an investor of Itamar's adverse party for no valid reason.

The threat Mr. Kleinhendler poses is not an abstract notion which may occur at an indefinite point in the future, nor is it even beyond the vanishing point of the portrait Mr. Kleinhendler painted for the Court.  Mr. Kleinhendler's involvement in this case is already prejudicial to the Court's orderly administration of the litigation, and undersigned counsel's orderly administration of Ectosense's defense. Ectosense has maintained from the inception of this litigation that it is a frivolous anti-competitive lawsuit designed to extinguish Ectosense by embroiling it in expensive litigation. Itamar has worn the cloak of an oppressor since the genesis of this case, and has disregarded the truth continuously. Itamar is more interested in using litigation as a tool of economic competition, which Itamar's and Mr. Kleinhendler's latest conduct at issue here exemplifies. Itamar has amended four times—often changing material allegations—issued nearly 200 requests for production, propounded series of compound interrogatories and requests for admission, and sued Ectosense's largest customer, VirtuOx. To Itamar's frustration, Ectosense still exists, and Itamar has not even stated a valid cause of action – nor does it appear it will be able. Thus, Itamar's efforts outside the litigation, with Mr. Kleinhendler captaining the vanguard of Itamar's assault, can only be viewed in the context of Itamar's overall efforts to financially burden Ectosense. Why else would Itamar and Mr. Kleinhendler put so much at risk through their egregious conduct?

Mr. Kleinhendler's overt threats of criminal prosecution are factually frivolous, but it matters not who would prevail in such a claim. Itamar and Kleinhendler were only after the damage inflicted by the taint of the allegations. Ectosense now has a well-grounded fear of producing <u>any</u> confidential documents in this case while Mr. Kleinhendler is involved, either as counsel of record, or informally as a "shadow" counsel exerting influence from the nethers. Itamar and Mr. Kleinhendler violated the Court's Confidentiality Order. They demonstrated they are willing to cast specious aspersions of wrongdoing to lodge incendiary false claims to call Ectosense a criminal. Their conduct has already been unfairly prejudicial, and Mr. Kleinhendler's continued involvement is prejudicial to the administration of this case.

An attorney's violation of a confidentiality order constitutes contempt under Florida law, and in federal court. *See, e.g., Roberts v. Bonati*, 133 So.2d 1212, 1216 (Fla. 2d DCA 2014). Should the Court find an attorney's violation of a confidentiality order willful or intentional, it is appropriate under Florida law to sanction the attorney. *Id.* Indeed, it can be regarded as elevated beyond that, and as a duty of the Court to police improper conduct brought to the attention of the tribunal. It is appropriate under federal law to sanction a party violating a confidentiality order, and to sanction an attorney who is not retained as counsel of record, yet is violating the confidentiality order in concert with a party. *See, e.g., HPC Fund v. Wood*, 2014 WL 12496560 (S.D. Fla. 2014) *report and recommendation adopted*, 2014 WL 12497998, (holding party in contempt, and third-party attorney in contempt as third-party contemnor).

Contempt comes in two forms; civil and criminal. *International Schools v. AAUG Ins.*, 2012 W L 4936054, *8 (S.D. Fla. 2012) (citing, *US. v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999)). A court's civil contempt power is measured solely by the "requirements of full remedial relief."" *U.S. v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999). "The absence of

willfulness is not a defense to a charge of civil contempt." *FTC v. Leshin*, 618 F.3d 1227, 1232 (1 1th Cir. 2010). "The only issue is compliance." *Id.* "The subjective beliefs or intent of the alleged contemnors" is irrelevant. *Id.* at 1233. The burden of proof is "clear and convincing," an intermediate burden of proof falling between "preponderance of the evidence" and "beyond a reasonable doubt." *Georgia Power v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007). "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Id.* To initiate civil contempt proceedings,

> [T]he plaintiff [*i.e.*, the party seeking a contempt order] moves the court to issue an order to show cause why the defendant should not be adjudged in civil contempt and sanctioned. The plaintiff's motion cites the injunctive provision at issue and alleges that the defendant has refused to obey its mandate. If satisfied that the plaintiff's motion states a case of non-compliance, the court orders the defendant to show cause why he should not be held in contempt and schedules a hearing for that purpose. At the hearing, if the plaintiff proves what he has alleged in his motion for an order to show cause, the court hears from the defendant. At the end of the day, the court determines whether the defendant has complied with the injunctive provision at issue and, if not, the sanctions necessary to ensure compliance.

*Alderwoods v. Garcia*, 682 F.3d 958, n. 20 (11th Cir. 2012). The Court has wide discretion in shaping civil contempt proceedings, bounded by what will satisfy the "requirements of full remedial relief." *Miami*, 195 F.3d at 1298. A court may award attorney's fees based on a finding of civil contempt. *Int'l Schools*, 2012 WL 4936054 at *9 (citing *Nat'l Union v. Olympia*, 140 F. App'x 860, 864 (11th Cir. 2005). A court may even imprison a contemnor for civil contempt in order to secure compliance with a prior order. *Commodity Futures v. Wellington*, 950 F,2d 1525, 1530 (11th Cir. 1992).

Criminal contempt proceedings are a different species altogether. Because they address "a crime in the ordinary sense, "they cannot result in criminal penalties . . . [unless the alleged

contemnor] has been afforded the protections that the Constitution requires of such proceedings."

*U.S. v. McCorkle*, 321 F.3d 1292, 1298 (11th Cir. 2003).

> The adjudication of a charge of criminal contempt does not require an assessment of the legal merits of the underlying controversy, so the court that hears the criminal contempt charge does not adjudicate a controversy over which it lacks jurisdiction. Whereas "proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause[,] . . . proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." [Additionally], like Rule 11 sanctions, a sanction for criminal contempt is punitive and aims to vindicate the authority of the court.

*U S. v. Straub*, 508 F.3d 1003, 1009 (11th Cir. 2007) (quoting *Gompers v. Buck's Stove*, 221 U.S. 418 (1911)). Here, the Court cannot issue criminal contempt sanctions in the underlying lawsuit between Itamar and Ectosense. If the Court deems it necessary, the Court must refer the matter to the United States of America for investigation and prosecution.

Setting aside criminal contempt, Ectosense believes that Itamar and Mr. Kleinhendler should be held in contempt of court, and Ectosense granted monetary sanctions. *HPC Fund*, 2014 WL 12496560 *report and recommendation adopted*, 2014 WL 12497998; *Roberts v. Bonati*, 133 So.2d 1212, 1216 (Fla. 2d DCA 2014). Ectosense also believes, because Mr. Kleinhendler's actions demonstrate he cannot be trusted to preserve the confidentiality of documents in this lawsuit, or use them for the defined scope allowable by the Confidentiality Order, that Mr. Kleinhendler should not be afforded the privilege to practice in this forum on this case. Ectosense requests Itamar and Kleinhendler immediately furnish a list of all documents that Mr. Kleinhendler accessed or reviewed, and be ordered to preserve computers they used to communicate for forensic examination. Further, Ectosense requests the Court consider Itamar's role in Mr. Kleinhendler's violation of the Confidentiality Order in connection with issuing sanctions or attorney's fees pursuant to the Florida SLAPP statute, or as an "exceptional" Lanham Act case. Ectosense requests the foregoing, and all other relief to which it is justly entitled.

20

Respectfully submitted,

/s/   *B. George Walker*
Seth J. Donahoe, Esq. (FL Bar No. 1004133)
B. George Walker, Esq. (FL Bar No. 0071049)
**Tripp Scott PA**
**Counsel for Ectosense *nv***

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 28th day of July 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

/s/   *B. George Walker*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
B. George Walker, Esq.
Florida Bar No. 0071049
bgw@trippscott.com (primary)
sxc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

**SERVICE LIST**
**CASE NO: 20-cv-60719-WPD**

| **Counsel for Plaintiff:** | **Counsel for Defendant ECTOSENSE:** |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL  33301<br>Telephone:  (954) 525-7500<br>Telefax:  (954) 761-8475<br><br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN  55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>***Counsel for VirtuOx Inc.***<br><br>Jonathan B. Morton<br>Florida Bar No. 956872 |

|  | Jonathan.Morton@klgates.com |
|  | **K&L Gates LLP** |
|  | Southeast Financial Center |
|  | 200 South Biscayne Boulevard, Suite 3900 |
|  | Miami, Florida 33131-2399 |
|  | Telephone: 305-539-3357 |
|  |  |
|  | Darlene F. Ghavimi, *Admitted Pro Hac Vice* |
|  | Texas Bar No. 24072114 |
|  | Darlene.Ghavimi@klgates.com |
|  | Stewart Mesher, *Admitted Pro Hac Vice* |
|  | Texas Bar No. 24032738 |
|  | Stewart.Mesher@klgates.com |
|  | **K&L GATES LLP** |
|  | 2801 Via Fortuna Suite 350 |
|  | Austin, Texas 78746-7568 |
|  | Telephone: (512) 482-6919 |