**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

                            **Case No. 20-cv-60719-**
                            **DIMITROULEAS/SNOW**

ECTOSENSE NV, and VIRTUOX, INC.,

        Defendants.

_____/

**PLAINITFF ITAMAR MEDICAL LTD.'S RESPONSE IN OPPOSITION TO**
**DEFENDANT ECTOSENSE NV'S 12(b)(6) MOTION TO DISMISS**

Plaintiff ITAMAR MEDICAL LTD. ("Itamar"), by and through undersigned counsel, hereby responds to Defendant ECTOSENSE NV'S ("Ectosense") Motion to Dismiss Third Amended Complaint Pursuant to Rule 12(b)(6) (ECF No. 135) (the "12(b)(6) Motion"). Itamar requests that the 12(b)(6) Motion be denied in its entirety and in support states as follows:

## **INTRODUCTION**

Nearly a year to the date after Ectosense filed its first motion to dismiss Itamar's complaint (ECF No. 28), and after answering the Second Amended Complaint (ECF No. 88), Ectosense now asks this Court to revisit its previous judicial labor and to reconsider arguments made and rejected. Ectosense's 12(b)(6) Motion is a motion for reconsideration in disguise. Ectosense attaches the same improper extrinsic evidence, makes the same arguments regarding substantive issues, and asserts the same FDA preemption arguments.  This Court should reject Ectosense's arguments and deny this Motion in its entirety—again.

1

## ARGUMENT

**I.   ECTOSENSE'S MOTION SHOULD BE DENIED BECAUSE IT IMPROPERLY RELIES ON EVIDENCE OUTSIDE OF THE COMPLAINT.**

This Court already ruled on Ectosense's improper attempt to rely on **the very same documents** that Ectosense again attaches to its current 12(b)(6) Motion in brazen disregard for the Court's decision. (Order, ECF No. 52 at 4–6.) This Court should not consider these documents beyond the very specific and narrow facts of which the Court took judicial notice.

Specifically, Ectosense again asks the Court to look at a June 2019 pamphlet distributed at two research conferences (12(b)(6) Mot., Ex. A), a pamphlet comparing Ectosense's product to Itamar's product (12(b)(6) Mot., Ex. B), and the FDA's March 6, 2020 Clearance Letter and the 510(k) Summary (12(b)(6) Mot., Ex. C). The Court did not rule specifically on the two pamphlets, but did not rely on those exhibits in denying Ectosense's previous motion to dismiss.[1] Regarding the FDA Clearance Letter and Ectosense's 510(k) Summary, this Court specifically ruled:

> Rather than asking the Court to take notice of a specific, undisputed fact, the Defendant requests that the Court take judicial notice of two documents, the 510(k) Summary prepared by Defendant and the FDA's Clearance Letter. The meaning of the documents is highly disputed by Plaintiff. The Court will take judicial notice of the fact that the FDA issues the Clearance Letter for the NightOwl product on March 6, 2020. However, the Court will not take judicial notice of the contents of the 510(k) Summary ad FDA Clearance Letter of any facts or statements there within.

(Order, ECF No. 52 at 6.) Nothing changed in Itamar's Third Amended Complaint (the "Complaint" or "Operative Complaint") that would require this Court to reconsider its ruling on the 510(k) Summary and FDA Clearance Letter.[2] This time, Ectosense cites to a new Utah state-

---

[1] Itamar maintains that these pamphlets should not be considered on a motion to dismiss. However, even if the Court were to consider them, the information contained in the pamphlets supports Itamar's claims. (Compl. ¶¶ 42–44, ECF No, 121.)

[2] Ectosense cites to paragraphs 45 and 50 of the Operative Complaint, which mention the 510(k) Summary and the FDA clearance. As this Court recognized, documents not attached to a complaint must be "central to a plaintiff's claim and their authenticity . . . undisputed." (Order,

court case, *Kelsey v. Alcon Laboratories, Inc.*, No. 180902756, 2019 WL 1884225 (Utah Dist. Ct. Apr. 22, 2019), that does not support Ectosense's argument. There, the Court took judicial notice that the FDA "has long been aware of and has approved the printing of package inserts inside the carton." *Id.* at *3. The Court, however, declined to take judicial notice of the predicate labeling that the applicant was required to include with its 510(k) submission because nothing in the predicate labeling indicated that the FDA approved the contents. *Id.* at *6 n.36, *11. In other words, the court in *Kelsey* took judicial notice of a very specific and narrow fact, much like this Court did on Ectosense's previous motion to dismiss.

This Court should, again, not consider the extrinsic evidence submitted by Ectosense. Evidence attached to a motion to dismiss may be considered only where "the plaintiff refers to [the] documents in the complaint and those documents are central to the plaintiff's claim." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Importantly, as this Court has aptly explained, the relevant inquiry is whether the evidence is "central to the plaintiff's claim"—not whether it is "central to the Defendants' defenses." *Santos v. Fed. Nat'l Mortg. Ass'n*, 889 F. Supp. 2d 1363, 1366 (S.D. Fla. 2012) (Dimitrouleas, J.). Indeed, in that case, the defendants moved to dismiss a complaint, relying primarily on documents outside of the complaint that the defendants submitted in support. *Id.* at 1365. This Court denied the motion, noting that under Eleventh Circuit precedent, a court is typically "confined to the four corners of the complaint," although an "exception exists for documents that were not attached to the complaint if they are central to a plaintiff's claim and their authenticity is undisputed." *Id.* at 1366. Ectosense's documents, however, were not central to the plaintiff's claims but instead were central

---

ECF No. 52 at 5.) Neither the 510(k) Summary nor the FDA clearance are central to Itamar's claims, and Itamar, as this Court noted, highly disputes the meaning of those documents. (*Id.* at 6.)

to Ectosense's defenses, and thus could not be "properly considered."[3] *Id.*

So too here. The FDA Clearance Letter and attached 510(k) Summary are not central to Itamar's Operative Complaint, and Itamar disputes the meaning of the contents in each of these extrinsic documents. On a motion to dismiss, this Court must "accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1188 (11th Cir. 2018). Accordingly, Ectosense's arguments fail to the extent they are based on documents the Court cannot consider in ruling on the 12(b)(6) Motion. *Id.* at 1189; *Santos*, 889 F. Supp. 2d at 1366; *see also Sream, Inc. v. Habsa Enter., Inc.*, No. 16-81662, 2017 WL 6409008, at *2 (S.D. Fla. Feb. 24, 2017) (denying motion to dismiss Lanham Act and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claims where the motion "relie[d] on evidence outside of the allegations of the Complaint and its attachments, and [took] a position in direct contradiction to the factual allegations set forth in the Complaint").

## II.   ECTOSENSE'S ARGUMENTS REGARDING THE RELATIONSHIP BETWEEN CO-DEFENDANTS ARE IMPROPER, AND ITAMAR'S COMPLAINT COMPLIES WITH RULE 8 PLEADING REQUIREMENTS.

In Ectosense's previous motion to dismiss, it raised identical arguments regarding Itamar's attribution of statements to Ectosense and attempted to insert identical factual assertions beyond the allegations of the Complaint. (ECF No. 28 at 18–19.) This Court rejected those arguments and factual assertions, ruling: "Whether Ectosense actually made these statements or can be held liable for these statements, is not an appropriate determination for the Court to make on a motion to dismiss. As such, Defendant's arguments that statements in the Amended Complaint cannot be attributed to Ectosense will not prevent Plaintiffs claims from proceeding at this time." (Order,

---

[3] The Court also pointed out that the defendants—with remarkable similarity to this case—had advanced an argument that improperly sought dismissal based on a factual dispute the defendants created. *Id.* at 1367 n.2. The issue was "a factual dispute not properly before the Court on the motion to dismiss," and the Court explained that "[s]uch issues may be brought again on a motion for summary judgment." *Id.*

ECF No. 52 at 18–19.) Undeterred by this ruling, Ectosense now improperly seeks reconsideration of the Court's decsion under the guise of a new motion to dismiss. This Court should reject, again, Ectosense's improper arguments. (*See also* ECF No. 35 at 15–16.)

Even if this Court considers these identical arguments, Itamar's Third Amended Complaint does not improperly lump together allegations against Ectosense and VirtuOx and does not allege a relationship between Ectosense and Virtuox that amounts to a "legal absurdity." (*See* 12(b)(6) Mot., ECF No. 135 at 13.) First, Ectosense complains that Itamar "indiscriminate[ly] confus[es] . . . the parties and fail[s] to specify its claims[.]" (*Id.*) To the contrary, Itamar's allegations are more than sufficient to meet the pleading standards of Rule 8 of the Federal Rules of Civil Procedure, which do not require distinct allegations against each defendant. *See, e.g. Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("[A] complaint that can be fairly read to aver that all defendants are responsible for the alleged conduct" may refer to defendants collectively); *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) (plaintiffs sufficiently stated a cause of action against defendant where the complaint referred to "defendants" generally, rather than identifying each party individually). Here, Itamar properly differentiates the role of each Ectosense and VirtuOx by separately pleading factual allegations against each individual Defendant, and plainly stating the nature of the relationship between Ectosense and VirtuOx. (*Compare* ECF. No. 121, Compl. ¶¶ 32–51 *with* ¶¶ 52–66.) Itamar only uses "Defendants" when it refers to conduct in which both Ectosense and VirtuOx engaged. (*See, e.g.*, Compl. ¶¶ 67–68.)

Ectosense also takes issue with Itamar's agency allegations. (*See* 12(b)(6) Mot., ECF No. 135 at 13–14.) This argument, like Ectosense's previous arguments, should not be resolved on a motion to dismiss. "The existence of [an] alleged agency relationship is usually a question of fact that is not properly considered on a motion to dismiss." *Flamenbaum v. Orient Lines, Inc.*, 2004 WL 1773207, *9, n.5 (S.D. Fla. 2004); *see also Moreno v. Carnival Corporation*, 488 F.Supp.3d 1233, 1236 (S.D. Fla., 2020) ("Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between principal and agent (in which case the question is an issue of

law), the relationship is generally a question of fact and should be analyzed by looking at the totality of the circumstances.").

Lastly, Ectosense relies on inapposite authority to support its faulty proposition that Itamar failed to allege Ectosense "intended to participate in" or "actually knew about the false advertising." (*See* 12(b)(6) Mot., ECF No. 135 at 14 (citing *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015)).) Itamar already explained in response to Ectosense's previous motion to dismiss that the elements from *Duty Free Americas* establish what a plaintiff must show to state a contributory false advertising claim. (Resp., ECF No. 35 at 15 n.2.) Itamar is not asserting a claim for contributory false advertising. Instead, Itamar has adequately pleaded direct claims that both Ectosense and VirtuOx are making false statements and that both Defendants have engaged in deceptive conduct. (Compl. ¶¶ 46, 67, 68, ECF No. 121.) Ectosense raises only factual issues and denials that cannot be addressed on a motion to dismiss. The elements for a contributory false advertising claim have no bearing on this Court's analysis of the claims in the Operative Complaint.

## III.  THIS COURT ALREADY DECIDED THAT ITAMAR STATES CLAIMS FOR TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN.

Ectosense again rehashes its fair-use arguments—that this Court already rejected—albeit under the guise of arguments about "technology." (*Compare* 12(b)(6) Mot., ECF No. 135 at 17 *with* Mot., ECF No. 28 at 20–21; Order, ECF No. 52 at 6–9.)  Careful not to say that its use of PAT® is permissible fair use, Ectosense still argues that it should be allowed to say PAT-based technology because "trademark law does not prevent use of the word or acronym that fairly describes a certain type of technology." (12(b)(6) Mot., ECF No. 135 at 17.)  This is, for all intent and purposes, a fair use argument. Itamar will not waste this Court's resources by reiterating its previous arguments and instead incorporates them here by reference. (Resp., ECF No. 35 at 8–9, 12–14.)  Additionally, Ectosense argues that Itamar does not state claims for trademark infringement and false designation of origin because Ectosense did not use the PAT® Marks "in commerce." Ectosense focuses very narrowly on a purported "point of sale" requirement, which

is nothing more than a re-purposing of Ectosense's arguments in its simultaneously filed motion to dismiss for lack of subject matter jurisdiction. (12(b)(1) Mot., ECF No. 136 at 4–5, 9–17.) To accept Ectosense's arguments, this Court would need to find that a competitor could make unauthorized use of an incontestable mark merely by not placing that mark directly on the device, or that a competitor can make false statements about a product as long as those false statements are not "coupled" with the product.  This argument flies in the face of the protections afforded to trademark owners or victims of false advertising under the Lanham Act.

With respect to the purported "point of sale" requirement, Ectosense cites to *In re Siny Corp.*, 920 F.3d 1331 (Fed. Cir. 2019) to support its assertion that goods are used in commerce if used on a display **only** when used at a "point of sale." (12(b)(6) Mot., ECF No. 135 at 15.) *Siny* imposes no such across-the-board requirement. 920 F.3d at 1335–36. Instead, the Court in *Siny* affirmed the denial of an application to register a mark for a kind of fabric because the company's website did not contain any pricing, ordering, or shipping information beyond a simple notification that "for sales information" a customer could call or email the company. *Id.* at 1334. Notwithstanding the absolute lack of similarities between a fabric for industrial use and a medical device not available for purchase without the involvement of doctors and insurers, and ignoring that *Siny* involved the requirements for registration of a trademark, not a claim for trademark infringement or false advertising,  the *Siny* Court held that whether a display is at a point-of-sale location is a factual question and not subject to bright-line rules. *Id.* at 1336. In other words, determining whether Ectosense's wrongful and unauthorized use of the PAT® Marks occurred on a display at a point of sale is simply not an appropriate determination on a motion to dismiss.

As already fully set forth in Itamar's response to Ectosense's motion to dismiss for lack of subject matter jurisdiction, Itamar alleges the following: (1) Ectosense makes unauthorized use of the PAT® Marks on brochures, instructions, operation manuals, materials, information, websites (Compl. ¶¶ 32, 35, 38–42, 44, 47, 48); (2) Ectosense maintains three websites used to promote its product and compare its product to Itamar's products, and its client VirtuOx promotes and sells on its website diagnostic tools and services related to Ectosense's product  (*id.* ¶¶ 13, 27, 35, 48, 53,

4851-0353-3812

64, 66); (3) Ectosense presented and distributed information with unauthorized references to the PAT® Marks at two professional conferences in Texas (*id.* ¶¶ 39–40); (4) Ectosense "sells, promotes, and/or markets its product in the United States through various distributors, healthcare providers and physicians, dentistry centers and dentists, as well as through clients like VirtuOx who use Ectosense's NightOwl to perform sleep tests" (*id.* ¶ 26); and (5) Ectosense conducted a validation U.S. study with over 100 participants (*id.* ¶ 13).

Itamar's allegations regarding Ectosense's website, which Ectosense does not deny, are sufficient standing alone to support Itamar's claims that Ectosense's conduct constituted and constitutes "use in commerce" for purposes of the Lanham Act. Internet activity and maintaining a website, on their own, "can place an [entity] 'in commerce[,]' . . . especially . . . when the internet activity is alleged to interfere with the interstate and foreign commerce of another entity." *Sit N' Stay*, 2017 WL 3866026, at *5 n.7; *see also United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) ("[T]ransfer of information by means of the internet satisfies [the statutory requirement of interstate commerce]."); *AvePoint, Inc. v. Power Tools, Inc.*, 981 F.Supp.2d 496, 512 (W.D. Va. 2013) ("Because the internet is an 'instrumentality of interstate commerce,' courts have repeatedly held that the unauthorized use of a trademark on the internet satisfies the 'in commerce' requirement [of the Lanham Act].").

Furthermore, the "use in commerce" analysis focuses not only Ectosense's conduct, but on that conduct's effect on Itamar. *See Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 CIV. 0629 (KMW), 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997), *aff'd,* 152 F.3d 920 (2d Cir. 1998) ("Thus, even assuming, *arguendo,* that defendant's activities are not in interstate commerce for Lanham Act purposes, the effect of those activities on *plaintiff's* interstate commerce activities would place defendant within the reach of the Lanham Act." (citing *Franchised Stores of New York. Inc. v. Winter,* 394 F.2d 664, 669 (2d Cir. 1968)). Itamar has alleged, and Ectosence cannot refute and has not proffered any evidence to refute, that Ectosense's unauthorized use of the PAT® Marks on its websites has adversely affected Itamar's commercial activities. (Compl. ¶¶ 7, 32–36, 48).

The Eleventh Circuit does not require that all unauthorized uses of the mark occur at a point of sale, or in the context of a sale at all. In *BTG Patent Holdings, LLC v. Bag2Go, GmbH,* 193 F. Supp. 3d 1310 (S.D. Fla. 2016), the plaintiff sued for trademark infringement under the Lanham Act even though the defendants "never sold an infringing product in the United States, [but] they did promote an allegedly infringing mark . . . and indicated . . . that they were planning to launch competing products." *Id.* at 1314. Further, the defendants "appeared at [a] trade show in Las Vegas . . . displaying new [goods]," and "issued a press release about their intent to collaborate and produce a . . . product that uses the [infringing] mark." *Id.* The defendants moved to dismiss for failure to state a claim, contending that "to state a Lanham Act claim for infringement or unfair competition, [plaintiff] had to allege the type of 'use in commerce' contemplated by § 1127—that [defendants] actually sold or transported goods or rendered services in the United States using the [infringing] Mark." *Id.* at 1322. However, the court rejected the defendants' argument, noting that "[t]he problem with this argument is that § 1127's definition of 'use in commerce' applies only in the trademark qualification context and not in the trademark infringement context." *Id.* In other words "use in commerce" is strictly defined to bona fide sales or transportation of goods as defined in § 1127 for the purpose of registering a trademark, but "use in commerce" is more broadly defined to be anything that can be regulated by Congress under the Commerce Clause for the purpose of deciding whether a defendant is infringing an existing trademark. *Id.* Therefore, the court denied the defendants' motion to dismiss.

In reaching this decision, the court extensively relied on *North American Medical Corporation, et al. v. Axiom Worldwide Inc.*, 522 F.3d 1211 (11th Cir. 2008). There, the Eleventh Circuit held that defendant's unauthorized use of a competitor's trademarks in meta tags of its website, which use was not visible to consumers, but which use nonetheless caused those trademarked terms to appear in search result descriptions of defendant's website, was in fact a "use" in commerce. *Id.* at 1218–20. The marks were not being used to indicate the source of the products. Other than in meta tags, plaintiff's trademarks appeared nowhere on defendant's website. *Id.* at 1217. Nonetheless, the Eleventh Circuit held the "use of commerce" element of trademark

infringement was satisfied. *Id.*; *see also TracFone Wireless, Inc. v. Dixon*, 475 F. Supp. 2d 1236, 1236 (M.D. Fla. 2007) (individuals who sold no products but used cellular company trademarks to advertise cell phone unlocking services for consumers were found to have made "use in commerce" of the cell phone company trademarks).

Finally, because dismissal of Itamar's federal claims is not warranted, dismissal of Itamar's claim under the Florida Deceptive and Unfair Trade Practices Act and common-law claim under Florida's unfair competition and trademark infringement law is also not warranted. *See Coach, Inc. v. Swap Shop, Inc.*, No. 12-60400, 2012 WL 12887010, at *9 (S.D. Fla. Sept. 21, 2012); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001).

## IV.  ECTOSENSE'S PREEMPTION ARGUMENT FAILS—AGAIN.

This Court already ruled that "Plaintiff Itamar's false advertising claim under the Lanham Act is not precluded." (Order, ECF No. 52 at 15). In doing so, this Court conducted a thorough analysis and rejected of each of the arguments Ectosense is regurgitating in its current 12(b)(6) Motion. (*Id.* at 12–16.)  There is no basis for this ruling to be disturbed.  Ectosense's argument that Itamar's claims are precluded should be rejected again.

It is entirely unclear what "new" argument Ectosense is advancing in the current 12(b)(6) Motion.  Ectosense seems to be relying on a Fourth Circuit decision, *In re GNC*, 789 F.3d 505 (4th Cir. 2015), as part of its preclusion argument. (*See* 12(b)(6) Mot., ECF No. 135 at 20).  This case does not even mention the FDA, much less discuss preclusion of Lanham Act claims. *In re GNC* stands for the unremarkable proposition position that "marketing statements that accurately describe the findings of duly qualified and reasonable scientific experts are not literally false." *Id.* at 509. The court made this ruling because the plaintiffs conceded that the scientific evidence was equivocal. *Id.* at 515. "When litigants concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is 'literally false.'" *Id.* Itamar has not made any such concession here. *Ectosense* is asserting (wrongfully) that

the FDA determined that the NightOwl measures and analyzes peripheral arterial tone. Itamar disagrees with this characterization. In fact, as this Court emphasized when it refused to take judicial notice of the 510(k) Summary, "the meaning of [the 510(k) Summary prepared by Defendant and the FDA's Clearance Letter] is highly disputed by Plaintiff." (Order, ECF No. 52 at 6).

Undeterred by the Court's prior ruling, Ectosense once again argues that the 510(k) process "is dispositive to Itamar's specific claims." (*See* 12(b)(6) Mot., ECF No. 135 at 20). Ectosense contends that "the 510(k) clearance is a safety and effectiveness determination," based on "valid scientific evidence." *Id.* at 20–21. This Court expressly rejected this argument as a basis to dismiss Itamar's claims.

> The 510(k) process is not a process for the FDA to preapprove the safety and efficacy of a medical device. *See Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1317 (11th Cir. 2017). Rather, it is a process by which a manufacturer can earn an exemption to the FDA's premarket approval process for medical devices by demonstrating that the device in question is "substantially equivalent" to legally marketed devices. *Id*. At this stage of the litigation, the Court finds that resolving Plaintiff's claims under the Lanham Act will not intrude on the dominion of the FDA under the FDCA.

(Order, ECF No. 52 at 15–16). There is nothing in the four corners of the Operative Complaint, or even in extraneous documents Ectosense wants to add to the Complaint, that changes this analysis. But, Ectosense does not stop there. Ectosense seems to want this Court to rely on "volumes of documents" that purportedly require Itamar to admit that "the FDA [sic] vetted NightOwl and agreed that it measures PAT." (*See* 12(b)(6) Mot., ECF No. 135 at 20). Itamar admits no such thing. Instead, this is a factual dispute that goes way beyond the pleadings and has no place in this Court's analysis of a 12(b)(6) motion. (*See* Order, ECF No. 52 at 4 ("a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'").)

As a last ditch effort to improperly have this Court reconsider its prior ruling on preclusion, Ectosense attacks Itamar's reliance on *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 52 (2d Cir. 2016). This Court already considered *Church & Dwight Co., Inc.,* found the case to be instructive, and held that "as the Second Circuit found in *Church & Dwight, Inc.*, the Court sees 'no reason why the subjugation of Defendant's Product labeling to FDA regulation through the § 510(k) process should categorically immunize it from Lanham Act claims by competitors regarding the regulated labeling.'" (Order, ECF No. 52 at 15.) Ectosense offers no legitimate reason for the Court to retreat from this ruling, nor is a 12(b)(6) Motion the proper vehicle to do so.

Boiled down to its essence, Ectosense wants this Court to accept **<u>as an undisputed fact</u>** that the FDA determined that the NightOwl measures PAT because, by doing so, Ectosense could claim that "Itamar is arguing that that the FDA was incorrect in determining that NightOwl measures PAT." (*See* 12(b)(6) Mot., ECF No. 135 at 22). Thus, as Ectosense's argument goes, the Lanham Act claims are precluded and the state law claims are preempted because "all of Itamar's claims conflict directly with the basis of the FDA's decision to clear NightOwl." *Id.*

Not only is this argument circular, it, too, has already been rejected by this Court:

> Concluding that this allegation is sufficient either because the NightOwl is in fact PAT-based or because the 510(k) Summary and FDA Clearance Letter evidence that the NightOwl provides a PAT measurement would require the Court to conduct a fact-intensive inquiry and draw inferences in favor of Defendant. Such an analysis is not appropriate at the motion to dismiss stage.

(Order, ECF No. 52 at 18.)

In this most recent 12(b)(6) Motion, Ectosense does not just want this Court to draw inferences in its favor. Ectosense wants this Court to decide a disputed issue of fact in its favor based on purported "volumes of documents" outside the Operative Complaint. Ectosense's entire

12(b)(6) Motion is a sham, and a waste of judicial resources. Its preclusion argument, and every other argument in what is essentially an improper motion for reconsideration, should be rejected, again.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant Ectosense's Motion to Dismiss in its entirety.

Dated: August 6, 2021                        Respectfully submitted,

*/s/ Laura Ganoza*
**FOLEY & LARDNER LLP**
Laura Ganoza, Esq.
Florida Bar No. 0118532
lganoza@foley.com
atownsend@foley.com
Ana Romes, Esq.
Florida Bar No. 101179
aromes@foley.com
avargas@foley.com
Hawwi W. Edao
Florida Bar No. 1026550
hedao@foley.com
hmoreno@foley.com
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131
Tel.: (305) 482-8400

***Counsel for Plaintiff***

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court on this  6th day of  August, 2021 using CM/ECF, which serves all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Laura Ganoza*
Laura Ganoza

4851-0353-3812

**SERVICE LIST**
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 20-cv-60719- DIMITROULEAS/SNOW

**TRIPP SCOTT, P.A.**
Paul O. Lopez, Esq.
eservice@trippscott.com
pol@trippscott.com
sxc@trippscott.com

Seth J. Donahoe, Esq.
eservice@trippscott.com
sjd@trippscott.com
sgc@trippscott.com

B. George Walker, Esq.
eservice@trippscott.com
bgw@trippscott.com
sxc@trippscott.com

*Counsel Ectosense NV*

**GREENBERG TRAURIG, LLP**
Paul B. Ranis, Esq.
ranisp@gtlaw.com
scottlaw@gtlaw.com
FLService@gtlaw.com

*Co-Counsel Ectosense NV*

**FOLEY & LARDNER LLP**
Laura Ganoza, Esq.
lganoza@foley.com
atownsend@foley.com
Hawwi Edao, Esq.
hedao@foley.com
hmoreno@foley.com
Jessica N. Walker, Esq.
*(pro hac vice to be filed)*
jwalker@foley.com

*Counsel for Plaintiff Itamar Medical Ltd.*

**GK ADVISORY**
Anna Adamsky, Esq.
*(pro hac vice filed)*
anna@gk-ad.com

Gene Kleinhendler, Esq.
*(pro hac vice filed)*
gene@gk-ad.com

*Co-Counsel for Plaintiff Itamar Medical Ltd.*

**K&L GATES LLP**
Jonathan Bart Morton
jonathan.morton@klgates.com
Darlene F. Ghavimi, Esq.
darlene@ghavimi@klgates.com
(*admitted pro hac vice*)
Stewart Mesher
stewart.mesher@klgates.com
(*admitted pro hac vice*)

*Counsel for Defendant VirtuOx, Inc.*