UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants    /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

**ECTOSENSE'S REPLY IN SUPPORT OF ITS FACTUAL SUBJECT MATTER JURISDICTION MOTION TO DISMISS ITAMAR'S "THIRD-AMENDED" COMPLAINT**

Itamar attacks Ectosense's 12(b)(1) motion by mischaracterizing: (1) the applicable law in the 11th Circuit; (2) the facts of this case; (3) the applicable law governing the interplay between amendments and standing; and (4) a host of cases from outside the 11th Circuit, with zero relevance—they facially apply a rule the 11th Circuit doesn't. Itamar also invites the Court to draw a factual inference Itamar knows is false. This lawsuit should be dismissed. The Court should award Ectosense attorney's fees and costs.

### A.     Itamar Misstates Basic Article III Standing Law, and Improperly Applies the Rule a Party Can Amend their Pleadings to Cure Defects in Allegations.

Itamar confuses timely amendment of pleadings to cure a defect in allegations—which is proper—with trying to retroactively cure a lack of standing when the suit was originally filed. Itamar also suggests what is required by the Lanham Act to establish Article III standing, does not really address subject matter jurisdiction. Itamar cites cases from far-flung jurisdictions that don't matter, because Itamar doesn't like the 11th Circuit's (and this Court's) holdings that "use in commerce" is jurisdictional, and the "use in commerce" Lanham Act definition applies throughout the Lanham Act. No one cares what a Court in Oklahoma did. The Court can safely ignore the several pages of Itamar's brief discussing non-binding opinions, and inapplicable law.

A plaintiff has the burden of proof, and must defend subject matter jurisdiction when challenged— bare recitations of legal elements, or statements like "there is a federal question involved" are not sufficient. *Johnson v. Ocwen,* 2009 WL 10697370, at *1 (S.D. Fla. 2009), *aff'd,* 374 F. App'x 868 (11th Cir. 2010)(affirming J. Dimitrouleas).When Lanham Act jurisdiction is factually challenged, a plaintiff is required to come forward with evidence of the plaintiff's standing. "A mark is 'used in commerce when (1) the mark is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto *and* the goods are sold or transported in commerce." *GhostBed v. Casper*, 2018 WL

2

2213002, *4 (S.D. Fla. 2018)(J. Dimitrouleas). The party asserting "use in commerce" occurred at a certain time "bears the burden of showing [it]." *Id.* "[Defendant] argues that Plaintiff has introduced no evidence that it ever used the [Plaintiff's] mark. The Court agrees." *Armour Grp., Inc. v. Labock*, 2012 WL 12837289, at *4 (S.D. Fla. 2012)(J. Dimitrouleas)(allegations did not sufficiently describe details of "use in commerce."). *See also*, *Martinick v. Media*, 2013 WL 12049084, at *3 (S.D. Fla. 2013) (J. Dimitrouleas)(dismissing pleadings insufficiently alleging trademark "use"); *Pentair v. Superior*, 2013 WL 12091625, at *2 (S.D. Fla. 2013)(J. Dimitrouleas)(dismissing due to insufficient "use in commerce" allegations; requiring party to plead where and when infringement took place);

Itamar argues the Court cannot look beyond the four corners of the pleadings to rule on Ectosense's 12(b)(1) motion to dismiss, because the 12(b)(1) motion attacks jurisdiction by attacking something which is an element of the claim. Itamar argues the Court must ignore extrinsic documents, and instead, must accept Itamar's allegations of "use in commerce" as true. This badly misreads the cases cited by both parties. Itamar is also expressly relying exclusively on non-binding opinions, almost all from other Circuits, despite knowing the 11th Circuit follows a different rule. It doesn't matter what the Ninth Circuit, or the District Court of Oklahoma, or the Western District of New York think. Itamar should not even be suggesting the Court read those cases, especially to the extent they directly conflict with 11th Circuit law. Itamar ignores what appears to be the uniform rule in the 11th Circuit— the "use in commerce" requirement is considered jurisdictional, and the 11th Circuit and Florida district courts allow factual subject-matter jurisdiction attacks on Lanham Act claims. If Itamar wanted to apply California, New York, or Oklahoma precedent, Itamar should have tried to file its lawsuit in a different venue.

This Court has ruled on similar issues, and accepted that the 11th Circuit views "use in commerce" as jurisdictional. *Select v. Richeson*, 2011 WL 13135114, at *6 (S.D. Fla. 2011)(J. Dimitrouleas)(applying "use in commerce" requirements to trademark infringement; dilution; and false advertising, and to establishing trademark rights through prior use). *Chanel v. Mason*, 2006 WL 8432246, at *2 (S.D. Fla. 2006)(J. Dimitrouleas)(holding "use in commerce" satisfied, where goods at issue bore protected marks and were shipped in connection with transaction).

Itamar provides exactly one case from Florida supporting its claims that "use in commerce" is not jurisdictional— *BTG v. Bag2Go*, 193 F.Supp.3d 1310 (S.D. Fla. 2016). There is a reason Itamar could only find one case. *BTG* can safely be categorized as an aberration. It is far and away from the mainstream as to how courts in the 11th Circuit interpret the phrase "use in commerce."The *BTG* court asserts "the Eleventh Circuit expressed hesitation about whether 1127's definition of 'use in commerce' applied in the infringement context[.]" *Id*. At 1322 (citing *N. Am. Med. Corp. v. Axiom*, 193 F.Supp.3d 1310, 1321 (S.D. Fla. 2016)). The *Axiom* court acknowledged "use in commerce" applied to trademark infringement claims, but pointed out in dicta the definition of "use in commerce" as applied to trademark infringement, potentially contemplated something different than how that term is used in 11 U.S.C. § 1127. The *Axiom* court still appears to have applied the "use in commerce" definition under 11 U.S.C. § 1127 to its facts, however. *Axiom's* holding is unremarkable; when a Defendant is sued for attaching misleading "meta tags" to a website that in fact offers and ships goods in U.S. commerce, "use in commerce" in connection with goods is satisfied. *Id. Axios* also warns it should not be used as precedent: "use of [trademarks in hidden] meta tags [on websites] constitutes a 'use in commerce' . . . <u>under the facts of this case</u>." *Axiom*, 522 F.3d at 1220. Itamar is applying dicta from the footnote of an opinion expressly limiting its holding to its facts— next to another footnote explaining *Axios* is not even factually on

4

point, because it distinguishes the conduct involved there, from the exact type of conduct at issue here. Itamar uses *Axiom* to explain the 11th Circuit has its doubts as to what "use in commerce" means in the infringement setting, but *Axios* applied the "use in commerce" test used in connection with goods under 15 U.S.C. § 1127. Moreover, *Axiom* guts Itamar's argument that "use in commerce" is not jurisdictional, because it states, "use in commerce [i]s a jurisdictional prerequisite."*Id.* At n.5 (citing *Planetary Motion v. Techsplosion*, 261 F.3d 1188, 1194-95 (11th Cir. 2001)). Finally, *Axiom* facially explains it is limited to hidden meta tags causing misleading descriptions under the facts of that case, and provides that websites of the type Itamar complains of do not satisfy "use in commerce." "[O]ur holding is narrow, and emphasize what kind of case and kind of facts are *not* before us . . . [t]his is . . . not a case where the defendant's website includes an explicit comparative advertisement[.]" *Id.* At n.10.

### B. The 11th Circuit Allows Attacks on Lanham Act Subject-Matter Jurisdiction Through a 12(b)(1) Motion to Dismiss, Regardless of Any Overlap Between Jurisdiction and the Elements.

Next, Itamar argues the Court cannot grant a 12(b)(1) motion, if the motion is attacking jurisdiction by attacking an element of the cause of action. "Use in commerce" (as to goods) examines whether a mark is applied to a product which is then transported or sold in commerce. While a lack of "use in commerce" necessarily would mean a lack of redressable injury, the "use in commerce" element of a Lanham Act claim is conceptually distinct from whether a plaintiff has damages. As is the case with respect to other arguments from Itamar, Itamar does not cite any binding authority, or even any persuasive Lanham Act cases from the 11th Circuit or Florida district courts. No one arguing 11th Circuit law usually cares what the Southern District of Ohio or Eastern District of Michigan held. The fact Itamar has to resort to pulling non-binding opinions that expressly contradict 11th Circuit precedent is informative with respect to the strength of Itamar's position. The Court must apply cases from the 11th Circuit if there is binding precedent,

and the Court should otherwise look to the approach of other Florida district courts. The 11th Circuit has upheld subject-matter jurisdiction dismissals of Lanham Act claims on the exact grounds argued by Ectosense, here— Itamar cannot establish "use in commerce" sufficient to invoke the Lanham Act. *Int'l Cafe, S.A.L. v. Hard Rock Cafe*, 252 F.3d 1274, 1279 (11th Cir. 2001)(explaining use in commerce with respect to extraterritorial conduct requires shipment of a good). "The district court correctly dismissed Plaintiff's complaint for lack of subject-matter jurisdiction." *Id.* at 1279.  The Supreme Court, as to Lanham Act jurisdiction, agrees jurisdiction is met as to a foreign Defendant if the Defendant ships goods within the United States. *Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952). The Southern District of Florida still recognizes that "use in commerce" implicates subject-matter jurisdiction.  *Chanel v. HandbagStore*, 2021 WL 3060329, at *6 (S.D. Fla. 2021)(citing 11th Circuit opinion), *report and recommendation adopted, Chanel v. Handbag*, 2021 WL 3053396 (S.D. Fla. 2021).

    C.  **Itamar Fails to Appreciate the Importance of the Commerce Clause Itself**.

Itamar does not grasp the importance of the Commerce Clause analysis in Ectosense's motion. Itamar basically "pooh poohs" the whole topic. Itamar shouldn't have. This Court agrees with Ectosense post-*Lopez* Commerce Clause analysis requires a "commercial" transaction or exchange for value, by using the good with the mark "in commerce."Plaintiffs must allege "use [of the mark] is commercial and in commerce." *Chanel, Inc. v. Mason*, 2006 WL 8432246, at *3 (S.D. Fla. 2006)(J. Dimitrouleas). This Court's reference to the requirement that activity be "commercial" and "in commerce" for purposes of jurisdiction is a clear reference to *Lopez*, which explained that the Commerce Clause cannot be used to regulate activities that are either not "commercial," or not "in commerce." *U.S. v. Lopez*, 514 U.S. 549, 560, 561 (1995).

And, this is important because of what Itamar points out— that Congress routinely states it intends the scope of the Lanham Act to be as broad as allowed by the Commerce Clause. Because

6

*Lopez* places limits on the Commerce Clause, those limits are transposed and function as limits on Lanham Act jurisdiction. Ectosense makes the exact arguments contemplated by *Chanel's* recitation of the requirements of "commercial" activity "in commerce." Ectosense argued Itamar did not sue for any activity that was "commercial," and Ectosense argued that because it did not engage in transactional conduct or an exchange of value, the "in commerce" requirement could not be satisfied. Itamar fails to address this Ectosense argument. Courts now follow *Lopez* and its progeny, disregarding overbroad statements from Congress about the scope of Commerce Clause power, in the Lanham Act setting. *See, e.g., Combe v. Dr. Aug. Wolff GmbH*, 309 F. Supp. 3d 414, 419 (E.D. Va. 2018)(disregarding Lanham Act legislative history).

### D.   Itamar Cannot Overcome Ectosense's Evidence Negating Standing, So Itamar Tries to Distract the Court With Irrelevant Allegations.

Itamar cannot establish pre-suit "use in commerce" leading to an injury as a factual issue; Itamar's allegations are also problematic as a pleading issue, because Itamar did not sufficiently allege actionable uses by Ectosense.  Ectosense also does not have to accept Itamar's allegations as true. Ectosense's Declaration explains it would be impossible for Itamar to have standing when it filed the lawsuit. Ectosense had not sold a single good to U.S. consumers. Ectosense's declaration also corrects gross misstatements of fact from Itamar. As a result, Itamar is actually asking the Court to ignore evidence of a lack of standing upon filing, by holding the defect was cured as a result of later events. There is no applicable bar on reviewing extrinsic documents on a 12(b)(1) motion. Itamar should concede this in candor, as opposed to asking the Court to ignore existing facts negating Itamar's demonstrably false allegations— for a second time in ruling on a motion to dismiss. Itamar abused the judicial process, and seeks to perpetuate its illusory jurisdiction.

A Plaintiff that does not have sufficient evidence to demonstrate standing should disclose that to the Court— not mislead the Court by suggesting "use in commerce" can be satisfied simply

7

by accepting Itamar's false allegations of fact it uses to support "use in commerce."*Sream v. Habsa*, 2018 WL 1463655, at *1 (S.D. Fla. 2018)(J. Dimitrouleas)(dismissing claims; "Plaintiff's response concedes . . . it lacks sufficient evidence to establish standing for [trademark infringement and counterfeiting]"). Itamar is not just failing to candidly volunteer it had no damages and could not establish "use in commerce" before filing this case. Itamar is bold enough to use the same tactic it used for the last motion to dismiss— suggest to the Court it accept a legal proposition Itamar knows will cause the Court to draw an incorrect factual inference. While <u>one would hope</u> Itamar would be forthcoming and candid, <u>one would expect</u> Itamar would refrain from intentionally leading the Court to an incorrect conclusion. But that is exactly what Itamar is doing, for a second time. Misleading the Court on a material jurisdictional standing issue merits severe sanctions. *Martin v. Automobili*, 2000 WL 36745514, *2 (S.D. Fla. 2000) *report and recommendations adopted*, 2000 WL 36745512 (J. Dimitrouleas), *aff'd*, 307 F.3d 1332, n.2 (11th Cir. 2002). That is "outrageous" conduct. *Id.* at *2. Delaying Defendants' discovery of lack of standing represent improper "efforts to delay, thwart, suppress, and protract discovery. . . deliberate[ly]." *Id.* "[T]he court rejects [the] contention . . . Plaintiff should be allowed to fraudulently deceive this Court and the opposing parties, and then be allowed to merely patch up the defects in his case when his deception comes to light. This vexatious tactic drains judicial resources as well as those of opposing parties, who must expend their energies uncovering Plaintiff's deception." *Id.*

Itamar conflates timely amendments of defects in allegations—which are proper—with attempts to retroactively create standing that did not exist at the outset, which are improper. Itamar ignores cases correctly explaining the prohibition on creating standing retroactively, then argues the Court shouldn't look at the Original Complaint at all— it should only look at the Third Amended Complaint. Itamar is trying to avoid the application of a rule it knows is dispositive as

8

to whether jurisdiction exists. It was impossible for a Lanham Act claim to exist when it filed this lawsuit, because Itamar knew Ectosense had not sold a single good to U.S. consumers.

"[S]tanding must be determined as of the time at which the plaintiff's complaint is filed[.] [W]e should not speculate concerning the existence of standing[.] [W]e lack the power to create jurisdiction by embellishing a deficient allegation[.]" *GhostBed*, 2018 WL 2213002, *6 (S.D. Fla. 2018)(J. Dimitrouleas)(citing *DiMaio v. DNC*, 520 F.3d 1299, 1301 (11th Cir. 2008)). "[E]ach element must be supported in the same way as any other matter . . . plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at [every] stag[e] of the litigation."*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, n.5 (1992). "Article III requires [a] claim be live . . . when [plaintiff] first brings suit [and] throughout the litigation . . . [p]laintiff cannot create standing by referencing [a] later [occurring event].""*MSPA v. Covington*, 212 F. Supp. 3d 1250, 1258 (S.D. Fla. 2016)(citing *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir. 1987)) (abrogated; other grounds)). "[T]hat subject-matter jurisdiction 'depends on the state of things at the time of the action brought' does not suggest a different interpretation. The state of things and the originally <u>alleged</u> state of things are not synonymous; <u>demonstration that the original allegations were false will defeat jurisdiction</u>."*Rockwell v. U.S.*, 549 U.S. 457, 474-74 (2007). "Article III standing must be determined as of the time at which the plaintiff's complaint is filed[.]" *Hollywood v. Seminole*, 641 F.3d 1259, 1265 (11th Cir. 2011)(affirming J. Dimitrouleas subject matter dismissal).

Parties can amend jurisdictional allegations to fix technical defects, and conform them to existing facts. In contrast, Itamar cannot fix a standing problem that threatens the basic viability of its lawsuit. Itamar cannot "clean up" the fact it concealed a lack of standing for over a year by characterizing its issues as mere "technical" problems. Itamar's Original Complaint infects the

9

entirety of the proceeding. Jurisdiction will always be lacking, until dismissal and re-filing. Events occurring after a lawsuit is filed cannot cure a lack of standing at the time of filing.

  E. **The Court Should Prioritize Fixing Jurisdictional Problems Itamar is Solely Responsible for in this Case Correctly, Over Itamar's Notions of Convenience**.

Itamar makes a policy argument echoed in other cases involving similar standing defects—what purpose is served by dismissing the lawsuit, knowing it would simply be refiled? Ensuring jurisdiction exists, for one. Article III standing must when a lawsuit is filed, through the end of the case. If Ectosense did not raise the issue now, Itamar could hypothetically scuttle jurisdiction even after trial. It doesn't matter if an event occurred after filing that creates standing. A lack of standing at the beginning of the lawsuit cannot be cured. "The rule is inflexible and without exception . . . [it] requires this court . . . to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States[.]"*Morris v. Gilmer*, 129 U.S. 315, 325-26 (1889).

Itamar complains Ectosense used PAT Marks on printed materials, maintains websites about Ectosense products which compare them to Itamar's products, gave presentations at a conference, and sell, promotes, or markets its product in the United States. Ectosense explained this was impossible. Ectosense had not sold goods to U.S. consumers when the lawsuit was filed. The activities described are not even actionable. "Websites hosted in the United States that d[o] not provide the ability for online ordering d[o] not provide subject matter jurisdiction." *Chanel v. Handbag*, 2021 WL 3060329, at *6 (S.D. Fla. 2021)(citing 11th Circuit), *report and recommendation adopted,* 2021 WL 3053396 (S.D. Fla. 2021). A "defendant's website [which] includes an explicit comparative advertisement" it is not actionable. *Axiom*, 522 F.3d at n.10. "Courts have noted that where, as here, a defendant simply expresses an intent to use a particular mark by filing an application with the PTO or by presenting an idea at a conference, these activities, without more, are not sufficient to constitute use in commerce."*Combe*, 309 F. Supp. 3d

10

at 419. *Potucek v. Taylor*, 738 F. Supp. 466 (M.D. Fla. 1990). Ectosense explains it did not disseminate printed materials in a way that satisfied the "use in commerce" requirement. Itamar mixed up documents not applicable to the U.S., and had also not alleged (or shown evidence) an Itamar mark was placed on the product at issue, or placed on written materials accompanying the product if applying a mark to the product is impracticable.

Itamar also constructs a logic fallacy, and draws the hyperbolic conclusion that "[t]o ascribe any importance at all to these temporal qualifications [i.e., Ectosense's sworn testimony that no sales occurred prior to the filing of this lawsuit], this Court would have to agree that a defendant could never face liability for wrongful conduct initiated after the start of a lawsuit." [D.E. 145, pg. 9]. This argument is premised on an incorrect legal assumption— that once an amendment occurs, the Court can never review whether standing existed when the lawsuit was filed. "The state of things and the originally <u>alleged</u> state of things are not synonymous; <u>demonstration that the original allegations were false will defeat jurisdiction</u>. "*Rockwell*, 549 U.S. at 474-74. Itamar asserts Ectosense cited a case supporting Itamar's argument only the "operative" pleading should be examined. Itamar is badly-misreading the case, and Ectosense's arguments. *Logan v. IRS*, 2018 WL 3067892, *5 (M.D. Fla. 2018). *Logan* holds a plaintiff must have standing to assert a claim upon filing; to determine if standing existed, the Court looks to the circumstances existing at the time of the first pleading containing the cause of action; and if no standing existed when the claim was brought, lack of standing cannot be retroactively cured. *Id. Logan* does not hold only the operative pleading matters. Standing must exist at all times in a lawsuit— All the pleadings matter.

## CONCLUSION AND RELIEF REQUESTED

Ectosense requests the Court fix Itamar's standing problem; force Itamar to acknowledge its false allegations of standing; dismiss this case; retain jurisdiction to determine entitlement to, and the amount of, reasonable attorney's fees; and issue all other relief to which it is justly entitled.

11

Respectfully submitted,

*/s/  B. George Walker*
B. George Walker, Esq. (FL Bar No. 0071049)
**Tripp Scott PA**
**Counsel for Ectosense** *nv*

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 17th day of August 2021, I electronically filed the foregoing document via cm/ecf and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/   B. George Walker*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
B. George Walker, Esq.
FL Bar No. 0071049
bgw@trippscott.com (primary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

## SERVICE LIST
## CASE NO: 20-cv-60719-WPD

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ. | PAUL O. LOPEZ, ESQ. |
| Florida Bar No. 0118532 | eservice@trippscott.com (primary) |
| lganoza@foley.com | pol@trippscott.com (secondary) |
| atownsend@foley.com | sxc@trippscott.com (secondary) |
| HAWWI EDAO, ESQ. | SETH J. DONAHOE, ESQ. |

Florida Bar No. 1026550
hedao@foley.com
hmoreno@foley.com
**FOLEY & LARDNER LLP**
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131
(305) 482-8400
(305) 482-8600 (fax)

**Co-Counsel for Plaintiff:**

JESSICA N. WALKER, ESQ.
jwalker@foley.cOM
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
(213) 972-4675

GENE KLEINHENDLER, ESQ.
gene@gk-ad.com
ANNA ADAMSKY, ESQ.
anna@gk-ad.com
**GK ADVISORY**
72 Ahad Haam St.
Tel Aviv 6520512, Israel
(972) 3-735-6168

eservice@trippscott.com (primary)
sjd@trippscott.com (secondary)
sgc@trippscott.com (secondary)
B. GEORGE WALKER, ESQ.
bgw@trippscott.com
sxc@trippscott.com
cab@trippscott.com
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

**Co-Counsel for Defendant ECTOSENSE:**

Stephen Baird, Esq.
(*pro hac vice to be filed*)
GREENBERG TRAURIG, LLP
90 South 7th St., Suite 3500
Minneapolis, MN 55402
bairds@gtlaw.com

Paul B. Ranis, Esq.
Florida Bar No. 64408
GREENBERG TRAURIG, P.A.
401 E. Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
ranisp@gtlaw.com
scottlaw@gtlaw.com
FLService@gtlaw.com

*Counsel for VirtuOx Inc.*

Jonathan B. Morton
Florida Bar No. 956872
Jonathan.Morton@klgates.com
**K&L Gates LLP**
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, Florida 33131-2399
Telephone: 305-539-3357

Darlene F. Ghavimi, *Admitted Pro Hac Vice*
Texas Bar No. 24072114
Darlene.Ghavimi@klgates.com

|  | Stewart Mesher, *Admitted Pro Hac Vice* <br> Texas Bar No. 24032738 <br> Stewart.Mesher@klgates.com <br> **K&L GATES LLP** <br> 2801 Via Fortuna Suite 350 <br> Austin, Texas 78746-7568 <br> Telephone: (512) 482-6919 |
|---|---|

15