UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

    Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

    Defendants    /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

## **ECTOSENSE'S ANTI-SLAPP MOTION PURSUANT TO FLA. STAT. § 768.295**

*"In the end we shall make thoughtcrime literally impossible, because there will be no words in which to express it. Every concept that can ever be needed will be expressed by exactly one word, with its meaning rigidly defined and all its subsidiary meanings rubbed out and forgotten. […] Every year fewer and fewer words, and the range of consciousness always a little smaller. Even now, of course, there's no reason or excuse for committing thoughtcrime. It's merely a question of self-discipline, reality-control."*

—GEORGE ORWELL, <u>1984</u>

It is good Itamar is offended at Ectosense's "violent" rhetoric, because it means Itamar's distorted perceptions have been jolted. If Ectosense's rhetoric is "violent," so be it. Federal Court litigation is not for the faint of heart, and Ectosense is <u>fighting</u> for rights of singular importance to <u>everyone</u>. Ectosense is protecting core, fundamental liberty interests, and in so doing, is protecting the public and competitors from Itamar. Itamar is literally trying to accomplish the same ends as the government in 1984— sweep alternative meanings of words under the rug, and then allow only one state-sanctioned—state-sanctioned, because Itamar is using the powers of government to quell Ectosense's speech—interpretation. The Court cannot allow itself to be made a party to that kind of effort, particularly where they are predicated on false statements of fact. Itamar's claims should be dismissed entirely.

1

### A.     <u>Itamar Mischaracterizes the Relevant Law</u>.

Itamar starts its analysis with an incorrect statement that the 11th Circuit "has held that state anti-SLAPP tsatutes do not apply in federal court." That implies the 11th Circuit refuses to apply them across the board. While it is true the 11th Circuit and other federal courts have refused to apply <u>other</u> state's SLAPP statutes, the 11th Circuit has recognized (albeit in dicta) Florida's SLAPP statute does not present the same obstacles to its application in federal court. The dozens of federal opinions applying it in state court also contradict Itamar's argument.

Itamar questions whether the SLAPP statute can apply at all in a diversity case. Itamar claims if federal causes of action are brought alongside state law claims, federal courts are prohibited from applying state law. Itamar is ignoring the federal rules of evidence. "In a civil case, state law governs the effect of a presumption regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 302. "The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege . . . state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501. Rule 302 and Rule 501 each apply. The Florida SLAPP statute governs the effect of the presumption a SLAPP motion raises with respect to Itamar's claims, and Rule 302 requires it be applied here. All of Itamar's claims may be brought in state court as the law of the state—including the Lanham Act claims—and state law provides the rule of a decision. Rule 501 applies for the same reasons, but also because the federal courts already recognize the privilege raised by the First Amendment and corollary provisions of the Florida Constitution. There is no reason a federal court "in the light of reason and experience" would ever refuse to recognize a Constitutional privilege. The *Erie* doctrine should already require application of the SLAPP statute, but just in case a federal court misapplied the *Erie* doctrine, the drafters of the

evidence rules enacted Rule 302 and Rule 501: "The Committee also included in its amendment a proviso modeled after Rule 302 and similar to language added by the Committee to Rule 601[.] The proviso is designed to require the application of State . . . law [on the topics addressed] [and was] necessary in the light of the Advisory Committee's view . . . that this result is not mandated under *Erie* [alone]." Comm. Notes, FED. R. EVID. 501.

If Itamar sued in state court, there is no doubt it could have asserted its Lanham Act claims, because they are concurrent jurisdiction causes of action. State and federal courts can preside over them. Ectosense could file a SLAPP motion in state court. Why then, does Itamar think Ectosense should not be able to file a SLAPP motion here? The only difference is the forum. Accepting Itamar's view would ignore nearly a century of precedent applying the *Erie* doctrine, and would raise the key problem identified by *Erie*: the potential for inconsistent outcomes based purely on what court presides over the case. That is why, even where federal law governs substantively, "unless some federal interest requires a different result, there is no reason why the state interests should be analyzed differently simply because an interested party is involved in a [core federal] proceeding." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 19 (2000). Itamar's analysis has nothing holding it together where there is no conflict between state and federal policy on a given issue, particularly here where they are positively aligned: "[The federal rule] does not replace such policy determinations found in state law. [Federal and state law] can exist side by side, therefore, each controlling its own intended sphere of coverage without conflict." *Walker v. Armco*, 446 U.S. 740, 751 (1980). Where a federal statutory scheme is carried out and given effect by states through application of complementary state law, the Court is "called upon to examine a statutory scheme that has the potential for the optimum of federalism . . . The success of their federalist venture will

depend not only upon the grace, but also the substance of movement by both partners in the ballet. We have endeavored to ink a most self-effacing role for the federal judiciary, one which should foster a harmonious background to the dance and necessitate intervention only when a point of unmelodious discord seriously threatens the contrapuntal balance." *Save the Bay v. Administrator*, 556 F.2d 1282, 1297 (5th Cir. 1977)(discussion in context of state and federal administration of EPA statutes). [1]

When Itamar argues state law has no place, even in a diversity action with mixed state-law and federal question causes of action, Itamar is arguing against precedent. "Because these are diversity cases, the Rules of Decision Act, and *Erie* . . . mandate that the substantive law applied be that of the relevant state[.]" *Cimino v. Raymark*, 151 F.3d 297, 311 (5th Cir. 1998)(holding in context of case in which federal Foreign Sovereign Immunities Act statute applied, and noting state law applied in federal court nonetheless, and federal privileges would similarly apply to state law causes of action, nonetheless). Even where "the substantive dimension of the claim asserted finds its source in state law . . .the characterization of that state-created claim . . . must be made by recourse to federal law." *Simler v. Conner*, 372 U.S. 221, 222 (1963).

And finally, Itamar misses a key point; federal courts can refuse to enforce federal rules if doing so would strip a party of a substantive right under state law. There is no conflict here anyway, but even if there was, the SLAPP statute is a substantive defense protecting a right enshrined in both federal and state law. If a federal rule would bar freedom of speech from being protected (by both state and federal law), the federal court should apply the state substantive right instead. 28 U.S.C. § 2072(b). "Such rules shall not abridge, enlarge or modify any substantive right." *Id.* As

---

[1] *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981)("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981, handed down by that court to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and bankruptcy courts in the circuit.").

a result, federal courts cannot interpret the rules in ways that "abridge" "substantive right[s]." *Semtek v. Lockheed Martin*, 531 U.S. 497 (2001)(refusing to apply federal rule that stripped a party of a substantive right). If Itamar was correct, it would "violate the federalism principle of *Erie v. Tompkins* by engendering 'substantial variations in outcomes between state and federal litigation' which would 'likely influence the choice of a forum.'" *Id.*

### B. This Court Must Apply the SLAPP Statute, Because Federal Law Adopts State Law Protections for Fundamental Rights.

Itamar wants state law to bend before it, purely because the parties are in federal court, rather than state court. It is not okay to shred the U.S. and Florida Constitutions just a bit to protect the monopolistic endeavors of a foreign litigant. Federal courts are loathe to completely disregard state law complementary to state laws providing the rule of decision, even where the case involves mixed federal question and state law claims, as here. When applied in state court, the Lanham Act is applied as state law. *See also*, *Janvey v. Brown*, 767 F.3d 430, 434 (5th Cir. 2014)(applying state law in case where federal statutory scheme generally governed federal receivership). "It is well-settled that choice of law issues for supplemental state law claims . . . are governed by the forum state in which the federal court is sitting." *Id.* "Supplemental claims" includes state law claims brought alongside concurrent-jurisdiction federal claims. 28 U.S.C. § 1367(a). "In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related." *Id.*

Where a situation like this case presents itself, Itamar's approach is wrong. The Supreme Court has applied a state privilege not provided for in the Federal Rules, because that is what the Federal Rule of Evidence 501 requires. *Jaffee v. Redmond*, 518 U.S. 1, 12–13 (1996). Rule 501 mandates federal courts apply "common law principles . . . in the light of reason and experience." *Id. Jaffee* gave effect to a state law spousal-immunity privilege, which was not recognized at the

federal level prior to *Jaffee*. Here, freedom of speech is already protected by the U.S. and Florida Constitution, and it is a fundamental right. Just as the *Jaffee* court gave effect to a state law defense of an important substantive right, this Court should give effect to the SLAPP statute, which also protects an important substantive right. *Jaffee* was just like this case— the plaintiff brought federal question claims alongside state law claims. So when Itamar tells the Court it cannot apply the SLAPP statute, Itamar is telling the Court something that is not true; Itamar is telling this Court to ignore the United States Supreme Court; and Itamar is telling the Court it doesn't matter if an entirely different outcome would occur in state court. True to form, Itamar is advocating for centralized power in a federal government that bluntly decides what rights or privileges a person has, instead of the states. So, where there is no conflict between a federal rule and a state statute, even where other federal and state law claims already govern different aspects of the case, the Court should not "exclude the idea of a power in the several states . . . and where [a right] is expressly made by a state statute, we consider it a right given to a successful [party] of which he ought not to be deprived of by [the happenstance] of his case [pending in] federal court. The courts of the state and the federal courts sitting within the state should be in harmony." *Massachusetts v. Miles*, 137 U.S. 689, 690 (1944)(presence of complementary, but not conflicting state and federal rules should result in the federal court applying both).

      C.     <u>**No Federal Law or Rule Conflicts With the SLAPP Statute.**</u>

If there was a potential conflict between a federal rule and the SLAPP statute, a federal court should be flexible and give effect to as much as possible. The Court can "adopt a limiting instruction" of the federal rules, precisely to give effect to state law, as the United States Supreme Court did in *Ortiz v. Fibreboard* with respect to Rule 23. *Id.* (quoting, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 842 (1999)). Echoing the language of Rules 302 and 501, the Supreme Court held

"[t]his is . . . <u>a classic case for adopting, as the federally prescribed rule of decision, the law that would be applied by state courts</u> in the State in which the federal diversity court sits . . . any other rule would produce the sort of 'forum shopping and inequitable administration of the laws' that *Erie* seeks to avoid, since filing in, or remove to federal court would be encouraged by the divergent effects that the litigants would anticipate from likely grounds of dismissal." *Id*. at 508-509 (emphasis supplied).

The United States Supreme Court has extended application of *Semtek* to require interpreting the Federal Rules of Civil Procedure in a manner that ensures a defendant will "be entitled to litigate its statutory defenses to individual claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011)(striking down contrary interpretation of Rule 23). Thus, a federal rule of civil procedure can only displace state law if there is a federal rule not "susceptible of two meanings" that "unambiguously" addresses the issue at hand. *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 405-06 (2010). If there is not a federal rule of civil procedure that unambiguously governs the issue and can only be interpreted in one way, the United States Supreme Court proclaims that "we can (and must) interpret [a federal rule] in a manner that avoids overstepping its authorizing statute." *Id.* at 406. Therefore, "in some instances, the 'plain meaning' of a federal rule will not come into 'direct collision' with the state law, and both can operate. In other instances, the rule 'when fairly construed' with 'sensitivity to important state interests and regulatory policies' will not collide with the state law." *Id.* at 421 (J. Stevens, concurring).

    **D.**    <u>**The Court Does Not Have to Struggle With Applying SLAPP Specifically to the Lanham Act Claims.**</u>

There is scant authority that actually analyzes in a substantive way whether SLAPP statutes apply to concurrent jurisdiction claims in federal court. So the Court should not base a ruling on cases that simply accept the same proposition Itamar advances at face value. Many federal courts

7

see no issue whatsoever with using a state SLAPP statute to dismiss a concurrent jurisdiction claim in federal court. *Shire City v.* Blue, 410 F.Supp.3d 270, 298 (D. Mass. 2019). "The Court previously dismissed five of Plaintiff's claims under [the state's] anti-SLAPP statute [including] violation of the Lanham Act[.]" *Id.* at n.21. But, if the Court is uncertain as to whether to apply the SLAPP statute to the Lanham Act claims, it can still apply the SLAPP statute to the entirety of the "lawsuit" in general. Fla. Stat. § 768.295(3). For example, when a case is dismissed due to lack of standing (as this case should be) the SLAPP statute applies when it is raised. *Boling v. WFTV, LLC*, No. 2017-CA-6488, 2018 WL 2336159, at *2 (Fla. Cir. Ct. Feb. 28, 2018)(granting SLAPP fees where Complaint dismissed due to lack of standing). That applies in federal court, as well. *Davis v. McKenzie*, 2017 WL 8809359, at *17 (S.D. Fla. 2017), *report and recommendation adopted*, 2018 WL 1813897 (S.D. Fla. 2018)(granting SLAPP fees due in part to lack of facts supporting federal jurisdiction). Not many courts have actually analyzed the question with respect to concurrent jurisdiction claims, but those that have support Ectosense. One federal court applied the law of the state to determine the applicability of a state SLAPP statute to Lanham Act claims. *Abbey Dental Center v. Consumer Opinion*, 2017 WL 3444695, *2 (D. Nev. 2017). Another Court applied the D.C. SLAPP statute in a federal case which included Lanham Act claims, where the defendant asked for (and received) the same relief Ectosense asks for— complete dismissal, in part because there was no jurisdiction under the Lanham Act with respect to the type of speech at issue. *Farah v. Esquire*, 863 F.Supp.2d 29, n.10 (D. D.C. 2012). One Court, rather than refuse to apply a SLAPP statute, dismissed a case involving a Lanham Act claim because the defendant could "refile his motion to dismiss [the Lanham Act claim] under the [SLAPP statute] in state court, he could essentially use the same brief he filed here." *Baker v. DeShong*, 90 F.Supp.3d 659, n.7 (N.D. Tex. 2014).

E.   **The SLAPP Statute Applies to the Issues Here**.

Itamar asserts its lawsuit is not an attack on freedom of speech, because the statements it is attacking are false. Itamar, however, does not provide any evidence proving Ectosense's statements are false. Itamar is not attacking false speech; Itamar is attacking speech it simply doesn't like.  Ectosense is educating the public, potential customers, medical professionals, and clinical researchers about PAT; Ectosense's products; how Ectosense's products work; and how Ectosense's products compare to Itamar's products. Ectosense is engaging in commercial speech, and speech protected by the core of the First Amendment— scientific and medical literature. "If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." *U.S. v. Alvarez*, 567 U.S. 709, 727-28 (2012).

The SLAPP statute can be used to target a "lawsuit" or an "action" or a "claim," and the speech need not be in a category protected by the SLAPP statute to also be protected— it must simply be "connected with" one of those categories.  Fla. Stat. § 768.295(3).  Itamar explains it is suing Ectosense for making unauthorized use of trademarked language that is disseminated to the public.  It is protected speech, because if it is not, Itamar is conceding the Lanham Act claims all fail. The Lanham Act governs "commercial speech." *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017). Itamar explains it is suing Ectosense for seeking FDA clearance, in part so it could disseminate Ectosense's products and product documentation and documents in Florida. So, Ectosense's efforts to conduct business (including through speech) in Florida is "connected with" Ectosense's petitioning of the FDA, and advertisements. Fla. Stat. § 768.295(3).  Itamar explains it is suing Ectosense for websites discussing Ectosense's products and comparing them with Itamar's; similar presentations at medical conferences; in printed promotional materials

9

disseminated to the public; and a validation study conducted in Florida. Websites addressing medical issues, even if they are attempting to sell something (incidentally, at the time this lawsuit was filed, the websites Itamar complains of did not), address "core protected speech," and even if the advertising it is connected with is afforded lower protection as commercial speech, both are protected by the U.S. and Florida Constitutions, and therefore the SLAPP statute. *First Resort v. Herrera*, 860 F.3d 1263, 1276 (9th Cir. 2017). All of this is at least commercial speech that is protected. The validation study involved core First Amendment protected speech, and the other speech was connected with it, because all of it constitutes "giving advice to patients about the use of [medical] devices and disseminating information about [the use of medical devices]" *Nat'l Inst. Of Fam. v. Becerra*, 138 S. Ct. 2361, 2374, 201 L. Ed. 2d 835 (2018). So, when Itamar says none of the speech at issue is protected by the SLAPP statute, Itamar is simply wrong.

Beyond whether the type of speech is protected by the SLAPP statute, Itamar must also prove each factual statement made by Itamar challenged by Ectosense's 12(b)(1) and 12(b)(6) motions is correct. These are factual "claims," that support positions of legal authority ("legal claims") to give rise to a "cause of action" in a "lawsuit." Each of these can be targeted by a SLAPP motion. "Claim" must be broader than just "cause of action," because otherwise both words wouldn't appear in the statute. Indeed, "claim" means a variety of things, including fact claims. *See, e.g., Yaralli v. American*, 165 So.3d 785 (Fla. 4th DCA 2015)("claim" means any right to recovery); *Foster v. Cianci*, 2000 773 So.2d 1181 (4th DCA 1984)("claim" includes liabilities of a person); *Tobin v. Damian*, 723 So.2d 396 (Fla. 4th DCA 1999)(discussing "factual claims" brought by a party). So, Itamar must back each of its factual "claims" up with evidence, and Itamar must show the facts render its "legal claims" viable. Itamar cannot. It's lawsuit must be dismissed, and Ectosense granted attorney's fees and costs.

WHEREFORE, Ectosense requests the Court dismiss Itamar's claims with prejudice or grant summary judgment pursuant to the Florida SLAPP statute; grant attorney's fees and costs; and reserve jurisdiction to determine the amount of fees and costs; and for all other relief to which it is justly entitled.

Respectfully submitted,

/s/   B. George Walker
Seth J. Donahoe, Esq. (FL Bar No. 1004133)
B. George Walker, Esq. (FL Bar No. 0071049)
**Tripp Scott PA**
**Counsel for Ectosense *nv***

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 18th day of August 2021, I electronically filed the foregoing document via cm/ecf and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

/s/   Seth J. Donahoe

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

## SERVICE LIST
## CASE NO: 20-cv-60719-WPD

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL  33301<br>Telephone:  (954) 525-7500<br>Telefax:  (954) 761-8475<br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN  55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>***Counsel for VirtuOx Inc.***<br><br>Jonathan B. Morton<br>Florida Bar No. 956872 |

|  | Jonathan.Morton@klgates.com<br>**K&L Gates LLP**<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |
|---|---|