UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants    /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

## ECTOSENSE'S MOTION TO DISQUALIFY GENE KLEINHENDLER AND INCORPORATED MOTION FOR SANCTIONS

Ectosense moves to disqualify Gene Kleinhendler and for sanctions. Itamar and Mr. Kleinhendler engaged in prohibited *ex parte* communications to intimidate Ectosense's board. Mr. Kleinhendler then sent extortionate letters to Ectosense's Belgium-based minority investor trying to disrupt Ectosense's investor relations and thus funding, as well as Ectosense's ability to make NightOwl available for insurance reimbursement, which evidences the extortionate purpose of gaining advantage in this litigation. The evidence further establishes that the two either (1) violated the Court's operative confidentiality order, or (2) lied about having reviewed AEO documents to make their meritless extortionate threats of criminal prosecution appear to be based on a comprehensive review of such documents. This Court should disqualify Gene Kleinhendler from representing Itamar, and sanction Itamar and Gene Kleinhendler for their misconduct.

## Factual Background

1. The Court entered the operative Confidentiality Order in this case governing the designation of "Confidential" and AEO documents (referred to by the Confidentiality Order as "<u>Highly</u> <u>Confidential</u> – <u>Attorneys' Eyes Only</u>"), on March 7, 2021. ECF 66.

2. Just over a year into this litigation, Ectosense, under protection of the Confidentiality Order, produced its email communications to the FDA during the 510(k) review process of NightOwl and the entirety of Ectosense's four submissions to the FDA, in native format on March 26, 2021 under an AEO designation for use in this case and *only for use in this case pursuant to the protective order*. ECF 59 at 2.

3. Two weeks later, at 3:00 pm on April 12, 2021, Mr. Kleinhendler contacted an Ectosense director—*ex parte*. *See Declaration of Ectosense's Board Member* attached hereto as **Exhibit A.** Mr. Kleinhendler stated during his *ex parte* contact with the Ectosense board member that he had specifically reviewed Ectosense's "statements" in its "FDA submissions." **Ex. A ¶ 5** He claimed that Ectosense's investors "would be concerned" about what he had to say and that "US authorities" could get involved. **Ex. A ¶ 5**. He claimed that his call was not related to the litigation in Florida and PAT, but that this was something "more serious." **Ex. A ¶ 5**. Mr. Kleinhendler also volunteered that he specialized in anti-bribery, money laundering, and compliance issues with governmental agencies. **Ex. A ¶ 9**. Mr. Kleinhendler then asked for the contact information of the general counsel to Ectosense's investor, Saffelberg. **Ex. A ¶ 8**. Yet, typing "Saffelberg general counsel" into Google yields all of the contact information for Saffelberg's leadership in the very first result: https://www.saffelberg.com/team.

4. Given the intensity and gravity of Mr. Kleinhendler's accusations, the board member immediately notified Saffelberg, and Mr. Arnold Benoot then immediately called Mr. Kleinhendler. *See Declaration of Arnold Benoot* attached as **Exhibit B**.

5. During the call with Mr. Benoot, Mr. Kleinhendler asserted that he was retained by Itamar 'a couple of weeks' earlier, and that he was asked to look into Ectosense's 'communications with the FDA.' So, Itamar retained Mr. Kleinhendler <u>precisely</u> when Ectosense produced AEO Documents.

6. Also during this call, <u>Mr. Kleinhendler claimed that he had reviewed Ectosense's "submissions" to the FDA and that he and Itamar believe Ectosense defrauded the FDA</u>. **Ex. B** ¶5. Mr. Kleinhendler again claimed his that this call <u>had nothing to do with the litigation in the Southern District of Florida, and that it instead had to do with liability to Saffelberg for supposed misconduct of Ectosense during the 510(k) review process, and then actions taken by Ectosense based upon its clearance as a device that measures and analyzes PAT.</u>

7. Ectosense has not produced or shared the FDA communications and submissions with any third parties, and had just produced two weeks earlier the very documents that Mr, Kleinhendler was claiming he had just reviewed and concluded evidence criminal conduct.

8. Mr. Kleinhendler was palpably evasive and used circumspect language during the call. **Ex. B** ¶6. Mr. Benoot's impression was that Mr. Kleinhendler was avoiding any a specific accusation of fraud by Ectosense. **Ex. B** ¶6. This prompted Saffelberg to request clarification on what *exactly* Mr. Kleinhendler or Itamar believed constituted fraud on the FDA, and clarification as to why he reached out to Saffelberg—an Ectosense investor—regarding these issues. **Ex. B** ¶9.

9. Mr. Kleinhendler then sent a letter to Saffelberg indicating he had "been retained by Itamar Medical Ltd. to advise on the liability of Ectosense directors and shareholders arising from Ectosense [sic] activities in the U.S." A copy of the April 22, 2021 letter is attached hereto as **Exhibit C.** He used very specific words in his letter when referencing "submissions," "applications,"—words with specific meaning in the context of the 510(k) process, and are not ones that are interchangeable with a 510(k) summary document.

10. In the same manner that one would not mistake a "complaint" with a "final judgment", one would not mistake a "submission" or "application", which refers to an initial comprehensive application to the FDA, with a "510(k) summary", which is the document the FDA publishes as the basis for its determination to clear a device.

11. Mr. Kleinhendler stated: "Ectosense has made *submissions to the FDA* in its efforts to secure U.S. regulatory clearance […]." **Ex. C.** (emphasis added). He then claims that Ectosense sought regulatory clearance to "intentionally mislead the FDA by failing to disclose material facts…" **Ex. C.** It is significant that Mr. Kleinhendler claims to have reviewed Ectosense's "submissions" and "application" because these are the exact documents that are marked AEO and were produced two weeks prior to Mr. Kleinhendler's first contact.

12. Moreover, Mr. Kleinhendler specifically claims that there are material omissions in Ectosense's "application" to the FDA and that Ectosense misled the FDA through such purported omissions. **Ex C** ("…amounting to gross misrepresentation by omission. Instead of full and honest disclosure, Ectosense simply wanted the descriptive term "Peripheral Arterial Tone" or PAT to appear in the application.")[1]  In order to allege fraud by omission, an attorney should of course—at a minimum—have reviewed the documents that allegedly omitted material facts.

13. Next, Mr. Kleinhendler intensifies his rhetoric and allegations suggesting that Ectosense has illegally sought reimbursement for its device NightOwl. Mr. Kleinhendler accurately sates that: "The initial critical step is the submission to the FDA for a 510(k) clearance…" and that "The essence of the submission is the comparison of the device receiving clearance to the predicate device that has already been cleared." The use of "submission" in these two sentences is precise, and describes the exact AEO documents Ectosense produced.

14. Mr. Kleinhendler closed his April 22, 2021 letter demanding that Saffelberg investigate and demand that Ectosense discontinue making its device available for reimbursement. **Ex. C**. The explicit demand as of April 22, 2021 is that Saffelberg investigate Ectosense and issue a demand to Ectosense about it having made NightOwl available under CPT95800, or face prosecution by US regulatory agencies. **Ex. C.**

15. One week later, on April 29, Mr. Kleinhendler emailed Mr. Benoot: "I'm following up on my letter to you of April 22. Please let me know if you would like to discuss. I am hopeful that Saffelberg will carry out it's [*sic*] legal responsibility as requested in my letter and we can avoid any further action in this matter." This email builds upon the April 22 letter by stating that unless Saffelberg complies by investigating Ectosense and prohibiting Ectosense from having

---

[1] The Court should observe that for the entire last year and a half, Itamar has been representing to this Court that PAT has no descriptive function, but is recognizing the descriptive functions when issuing extortionate demands to its adverse party.

NightOwl available for insurance reimbursement, that Saffelberg will face "further action." The action described in the April 22 letter, of course, is prosecution by US regulatory agencies.

16. Mr. Kleinhendler then sent the May 10, 2021 letter repeating his threats of regulatory prosecution, and adding explicit threats criminal prosecution. The May 10, 2021 letter is attached as **Exhibit D**. ("False claims for Medicare reimbursement based on a fraudulent submission to the FDA are aggressively prosecuted by U.S. criminal and civil authorities." "Saffelberg may be held liable for those false claims under U.S. law.").

17. At the core, Mr. Kleinhendler falsely stated that Ectosense defrauded the FDA in order to be deemed a PAT-based device, and then used the FDA's determination that NightOwl is a PAT-based to qualify for insurance reimbursement.

18. To support the meritless false claims act allegations, Mr. Kleinhendler claimed CPT 95800 only applies to Itamar's technology, and stated Saffelberg could face civil and criminal liability for Ectosense securing reimbursement under "Itamar's code." That statement is false.

19. As Itamar stated in amending its own investor disclosures with the SEC on November 26, 2018: "It should be noted that CPT 95800 is not device-specific but rather covers unattended sleep studies with simultaneous recording of heart rate, oxygen saturation and respiratory analysis by airflow or peripheral arterial tone (PAT) as well as sleeptime." Compare this with Itamar's allegations in this case that: "Ectosense has also advertised the NightOwl to be reimbursable under the same CPT code that covers Itamar's PAT® based devices, implying that the NightOwl is also based on PAT® technology, which is false." ECF 121 ¶ 101. The code is not exclusive to any medical device manufacturer, including Itamar. Yet, when Itamar is filing pleadings in this Court and intimidating Ectosense's investors, CPT95800 is Itamar's code and refers to Itamar's purported trademarked PAT technology, but when Itamar is communicating with its own investors and with the SEC, the code is available for any device that measures PAT.

20. It is noteworthy that all of the allegations were built upon Mr. Kleinhendler's repeated claims that he had reviewed Ectosense's FDA application and determined that the documents contain material *omissions*—documents he now denies having ever reviewed.

21. While even meritorious threats of criminal prosecution are construed as extortion as a matter of law. Mr. Kleinhendler's letter is far worse, because it is devoid of merit.[2]

---

[2] There are layers of frivolousness in these letters. As a tangential example, notably absent in the letters is any discussion or application of the elements of a false claims act lawsuit such as

22. The FDA reviewed—"at length," to borrow the FDA's wording—Ectosense's claim that NightOwl measures the physiological signal PAT. The FDA then cleared NightOwl after evaluating the valid scientific evidence, as required by 21 C.F.R. § 860.7(c)(1), and published the 510(k) Summary definitively confirming NightOwl analyzes PAT. Ectosense is ready, willing, and able, to provide the AEO documents to this Court that demonstrate the dialogue and analysis the FDA and Ectosense engaged in on this exact point. There was no fraud. There was a scientific discussion about how NightOwl measures PAT. The content of the documents is almost beside the point though because the primary point is that Mr. Kleinhendler premised a threat of criminal prosecution on documents that Mr. Kleinhendler could not have reviewed without violating this Court's Confidentiality Order—documents that neither he nor Itamar should have had access to.

23. Further chronological context demonstrates the direct connection between Mr. Kleinhendler's threats of criminal prosecution on behalf of Itamar, the production of documents in this case that were designated AEO, and Mr. Kleinhendler's *pro hac vice* Motion.

24. Exactly one day after Ectosense produced in this case its submissions to the FDA, Itamar demanded Ectosense de-designate the documents. When Ectosense refused in order to protect its confidential and valuable materials, Itamar filed a Motion to Compel De-Designation of Documents Marked Attorneys' Eyes Only ("De-designation Motion") after conferrals were productive, but not completely unsuccessful. *See* ECF 98.³

25. Once Itamar filed the De-designation Motion, Ectosense informed Itamar's then-counsel, Latham & Watkins, Ectosense suspected an ulterior motive by Itamar – and that Itamar had been using Mr. Kleinhendler (who claims to have reviewed the FDA communications even before he appeared as counsel of record) to threaten Ectosense's shareholders with criminal prosecution by U.S. regulatory agencies.

---

presentment. Itamar does not once identify any conduct of Saffelberg that could give rise to liability. They focus exclusively on the purported misconduct of Ectosense and even then fail to discuss conduct that would give rise to the claims Kleinhendler and Itamar are suggesting exist, which further demonstrates that these were not garden variety demand letters.

3  As recognized by the Court's Order denying Itamar's Motion to De-Designate Attorney's Eyes Only Marked Documents, the parties resolved, or Ectosense capitulated, to many of Itamar's requests to de-designate or reclassify the documents at issue.  However, this was done *after* Kleinhendler claims to have reviewed the documents, and after Kleinhendler threatened Saffelberg. Moreover, the AEO Documents that Ectosense did voluntarily de-designate or reclassify were irrelevant to the matters raised by Mr. Kleinhendler.

26. The Court denied Itamar's De-designation Motion on June 25, 2021. ECF 118.

27. On July 7, 2021, Itamar's current counsel contacted undersigned counsel stating "Foley & Lardner LLP has just been retained as counsel for Itamar Medical Ltd., and we will be filing a Motion to Substitute as counsel today. Please advise if we can file the motion as unopposed."

28. There was no mention in this email, or any subsequent communication, that Mr. Kleinhendler was also being retained as counsel of record for this lawsuit.

29. Ectosense confirmed it did not oppose Foley & Lardner's request – as to Foley & Lardner. Had Ectosense known Itamar would seek a *pro hac vice* admission for Mr. Kleinhendler, Ectosense would have immediately objected.

30. The Court entered its Order Granting Itamar's Motion for Substitution of Counsel on July 9, 2021. ECF 126.

31. A short time later, on July 16, 2021, to Ectosense's shock, Mr. Kleinhendler requested *pro hac vice* admission, ECF 129, and this Court quickly granted the same, because, Ectosense assumes, the Court viewed the motion as perfunctory, and Ectosense's lack of opposition as to Foley & Lardner possibly applicable to Mr. Kleinhendler. ECF 134.

32. Latham & Watkins' Global Vice Chair of Intellectual Property Litigation previously represented Itamar. Mr. Kleinhendler, by contrast, does not appear to have ever prosecuted or defended an intellectual property case in the United States, nor does he even appear to be an active litigator in the United States. The only trace of him practicing in a United States court is three 1980's cases. From there, his trail grows cold – until his appearance here.

33. Mr. Kleinhendler has no legitimate reason to appear in this case, and his presence is either (a) to cover up a prior violation of this Court's Confidentiality Order, or (b) gain access to documents marked AEO for an ulterior purpose. Mr. Kleinhendler's letters were not garden variety demand letters. They served a far more insidious purpose: for Itamar to intimidate its adverse party's investor, prejudicially impact Ectosense's defense further, and compel the investor to launch an investigation and incidentally create discoverable evidence in this lawsuit. The means adopted to serve this sinister purpose were as improper as the purpose itself because the contents of the letters were manifestly false and designed to manipulate the investor into believing it had no other choice. Taking the entire context into account, the (1) timing and target of the letters (a year into litigation and an investor in Itamar's adverse party), and (2) content of the letter along

with the demands therein, all evidence that Itamar's goal was to cut off Ectosense's access to financial resources by (a) driving a wedge between Ectosense and its investor, and (b) by having that same investor demand that NightOwl not be made available for insurance reimbursement.

## Legal Memorandum

The 11th Circuit recognizes two relevant attorney disqualification standards. The first applies "[i[f the conduct at issue threatens disruption of the court proceedings [such as] in-court misconduct . . . or is a deliberate challenge to the authority of the district court [such as] [an] attorney deliberately advising client to disobey the district court's protective order[.]" *Schlumberger v. Wiley*, 113 F.3d 1553 (11th Cir. 1997). There need not be a violation of a court order. *In re BellSouth Corp.*, 334 F.3d 941, 959 (11th Cir. 2003). Rather than requiring violation of an order, the focus is whether an attorney's conduct within, or directly impacting a case, gives rise to a need "to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Id.* The second applies where the movant demonstrates a "violation of specific Rules of Professional Conduct[.]" *Id.* Each standard provides an independently sufficient reason to disqualify Mr. Kleinhendler.

Here, the disqualifying conduct disrupts the orderly administration of this case, and constitutes violation of multiple ethical rules. As to the first standard, Ectosense now has a well-grounded fear of producing <u>any</u> confidential documents in this case while Mr. Kleinhendler is involved, either as counsel of record, or informally as a "shadow" counsel exerting influence from the nethers. Taking Mr. Kleinhendler's claims of reviewing FDA submissions as true, Itamar and Mr. Kleinhendler violated the Court's Confidentiality Order. Taking the claims of reviewing AEO documents as false, means that Mr. Kleinhendler was willing to manipulate the fact that the documents had just been produced to dress up meritless claims in a veil of legitimacy by claiming that he did review the documents. He did this to support incendiary claims that Ectosense was engaged in criminal conduct. Mr. Kleinhendler's actions have already been unfairly prejudicial, and his continued involvement is prejudicial to the administration of this case.

As to the ethical rules, Mr. Kleinhendler engaged in a prohibited *ex parte* communication when he contact Ectosense's board member. *See* FLA. BAR R. 4-4.2 ("In representing a client, a lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented[.]"). The violation here is aggravated by the fact that his purpose was to intimidate Ectosense's board, and facilitate contact with Saffelberg so he could send an

extortionate "demand letter." The latter conduct violates multiple more bar rules, but the *ex parte* conduct by itself merits disqualification. *See Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir 1985)(disqualifying attorney who "communicate[d] *ex parte* with bank customers in an effort to promote their opting out of the plaintiff class [in that case]").

In addition, Florida Bar Rule 4-4.1 prohibits a lawyer from knowingly making a false statement of material fact or law to a third party, and Florida Bar Rule 4-4.8(c) states that "[a] lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]" Mr. Kleinhendler said he reviewed Ectosense's submissions to the FDA. He now says he never reviewed the submissions (although he notably does not address that he would then have had no good faith basis to claim fraud by omission). If he was lying about having reviewed Ectosense's FDA submissions, he violated Rules 4-4.1 and 4-4.8(c). He stated specifically that he reviewed Ectosense's submissions, and used that as a basis to legitimize meritless claims of fraud by omission. On the other hand, if he was telling the truth about reviewing the submissions, then he violated the Confidentiality Order. As the old adage goes, 'they were lying then, or they're lying now, but they are lying either way.'

Even apart from the review of documents, Mr. Kleinhendler still violated Rules 4-4.1 and 4-4.8(c) through false statements in his letter's content. The entire letter is a fabrication, but an easy example is the suggestion that CPT 95800 was issued only for WatchPAT, which is defied by logic, but most directly by Itamar's own investor disclosures. *See* Ex. D ("…based on the existence of predicate device [WatchPAT] (which has been issued the sought-after reimbursement code)." It bears repeating that Itamar is precise in its representations to the SEC and its own investors, but is outright lying in this proceeding and to Ectosense's investors about CPT 95800. The dishonesty about reviewing the submissions (in either version of events) and about the CPT code violates Rules 4-4.1 and 4-4.8(c) merit disqualification.

Finally, Mr. Kleinhendler issued overt threats of criminal prosecution of an investor in the adverse party of his client and admits he conspired with Itamar to that end because he states it was Itamar's express purpose in retaining him. This violates at least two ethical rules. "A lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." FLA. BAR R. 4-3.4(g). "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or

fraudulent." FLA. BAR R. 4-1.2. In addition to being unethical, extortion is a crime and Mr. Kleinhendler assisted Itamar in extorting Ectosense. Thus, he violated Rules 4-3.4(g) and 4-1.2.

While claiming that his communications were unrelated to this litigation, Mr. Kleinhendler sought to impact this litigation as the goal was to obtain pecuniary advantage over Ectosense by cutting of a source of funding, and exert improper settlement pressure on Ectosense. This is why Kleinhndler explicitly targeted (1) reimbursement, and (2) Ectosense's investor. The objective of gaining advantage in this litigation is clear –there was no legitimate reason for Mr. Kleinhendler to contact Saffelberg at any point in time. Mr. Kleinhendler was not altruistically reaching out to Saffelberg with a friendly (and uninvited) assessment of U.S. law—he was threatening Saffelberg. Mr. Kleinhendler's assertion that his accusations against Ectosense were unrelated to this case is a threadbare attempt to distance his threats from being correctly regarded as what they facially are – attempts to secure advantage in this litigation. Unsurprisingly, courts have found that issuing a threat unrelated to pending litigation in *sub rosa* fashion, is in and of itself evidence that it is connected to pending litigation. *See Cooper v. Austin*, 750 So.2d 711, 711 (Fla. 5th DCA 2000) (observing that issuing a threat to contact authorities and seek criminal prosecution of a litigation opponent for conduct unrelated to the lawsuit "constitute[s] classic extortion."). The Court's job is easier here than it would be had the threats at issue been veiled or even plausibly related to something else in a minimal way. Here, Kleinhendler clumsily made brazen threats in a coarse way strewn with clearly frivolous claims, but it matters not who would prevail in such claims.

**Itamar and Kleinhendler were only after the damage inflicted by the taint of the allegations.** Neither he nor Itamar had any legitimate purpose in contacting Ectosense's director, or Saffelberg. Kleinhendler contacted the director to intimidate Ectosense, and to prelude his contacting Saffelberg with a mystique of "serious issues" with Ectosense. Kleinhendler contacted Saffelberg to intimidate Saffelberg and secure advantage in this proceeding by cutting of reimbursement, and dissuading future investment by Saffelberg—in the hopes these efforts would compel Saffelberg to cut-off resources to Ectosense, and conduct a resource-consuming investigation during the pendency of this litigation. The demands targeted money: investigate and demand that NightOwl not be made available for insurance reimbursement in the United States.

Disqualification is clearly warranted. Mr. Kleindhendler engaged in *ex parte* communications, issued extortionate threats, and claims to have reviewed AEO documents produced in this case to buttress the extortionate threats, which would violate this Court's

Confidentiality Order. He has violated multiple ethical rules and his presence in this case disrupts the orderly administration of this case. This Court should disqualify Mr. Kleinhendler.

Sanctions are also warranted. In a case on point, the Eleventh Circuit upheld this Court's sanctions of parties and attorneys due to their (1) misrepresentations about standing; (2) extortionate threats of civil litigation; (3) discovery violations; and (4) abuse of judicial process. *Martin v. Automobili Lamborghini,* 307 F.3d 1332, 1336–37 (11th Cir. 2002)(affirming J. Dimitrouleas). The facts here are aggravated by *ex parte* communications and threats of criminal referrals. This Court struck the plaintiff's pleadings, awarded attorney's fees as a sanction against the plaintiff and his attorneys, and referred attorneys to the Florida Bar and prosecutors. *Id.*[4] The same sanctions should apply here. This Court should strike Itamar's pleadings and award Ectosense its attorneys' fees for the entire case. The Court should also require Mr. Kleinhendler and Itamar to produce documents they exchanged when preparing the extortionate letters. *In re Oxbow*, 2014 WL 12862276, at *1 (S.D. Fla. 2014)(Judge Snow)(crime-fraud exception triggered by party committing crime by falsely stating product sales occurred in U.S.). Finally, in the event that this Court does not strike Itamar's pleading altogether and desires for a less severe sanction, this Court should still award Ectosense's its reasonable attorneys' fees, and make a finding that the CPT 95800 and term "PAT" has a usage which refers to the biophysical signal, peripheral arterial tone, neither of which refer exclusively Itamar's products; or, at the very least, that Itamar is using the term in a manner inconsistent with its allegations in this lawsuit. *See e.g. Coquina v. TD Bank*, 760 F.3d 1300, 1308 (11th Cir. 2014).

---

[4] *See also*, *Florida Bar v. Thompson*, 2008 WL 4456933, *1 (Fla. 2008)(disbarring attorney for false statements; violating court order; *ex parte* communications; disparaging correspondence; undermining judicial process; and accusing people of crimes); 2021 WL 1897072 (Fla. 3d DCA 2021)(dismissing pleadings in case related to extortionate threat to reveal private information to the public). The Court should also consider factors the Florida Bar considers to be aggravating, meriting harsher punishment, which are: Dishonest motives; a pattern of misconduct; multiple offenses; bad faith failures to comply with orders; submission of false evidence or false statements; a refusal to acknowledge the wrongful nature of the conduct; vulnerability of the victim; substantial experience in the practice of law; and indifference to making restitution. *Fla. Standard for Imposing Lawyer Sanctions 3.2*.

## Certificate of Good Faith Conferral

Given what is described throughout this motion, and that Ectosense had raised these issues with Itamar's former counsel, who denied knowing that Itamar was having an attorney send threats of criminal prosecution to Ectosense's investors and then abruptly withdrew from the case, Ectosense expected that conferring would be futile. Moreover, Ectosense was concerned that the conferral conversations themselves could be construed as extortion. Thus, Ectosense filed this motion initially without conferring with Itamar's new counsel. Itamar protested and claimed that this could have been resolved through conferral. ECF 140. The Court ordered the parties to confer. ECF 155. The Parties conferred by phone on August 11, 2021. Mr. Kleinhendler denied that he reviewed the AEO documents, reasserted that he had only reviewed the 510(k) Summary without explaining the discrepancy with his prior statements, and protested that he did not understand why anyone would lodge the allegations that Ectosense had lodged. Itamar spent the remainder of the time accusing Ectosense's counsel of lodging these allegations without any evidence, threatening Rule 11 sanctions, and dismissing the severity of the misconduct set forth herein. The Parties were unable to resolve this dispute. Ectosense refiled an earlier version of this motion, ECF 176, and the Court denied it without prejudice requiring that it be filed as a Motion to Disqualify and Motion for Sanctions, ECF 179, and ordering further conferral after Itamar files its response. Ectosense will confer as required by the Court's order. *See* ECF 179.

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 3rd day of September 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/   Seth J. Donahoe*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.

                                  Florida Bar No. 1004133
                                  sjd@trippscott.com (primary)
                                  sgc@trippscott.com (secondary)
                                  B. George Walker, Esq.
                                  Florida Bar No. 0071049
                                  bgw@trippscott.com (primary)
                                  sxc@trippscott.com (secondary)
                                  Tripp Scott, P.A.
                                  110 SE 6th Street, 15th Floor
                                  Fort Lauderdale, FL  33301
                                  Telephone: (954) 525-7500
                                  Telefax: (954) 761-8475

# SERVICE LIST
## CASE NO: 20-cv-60719-WPD

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL  33301<br>Telephone:  (954) 525-7500<br>Telefax:  (954) 761-8475<br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN  55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>*Counsel for VirtuOx Inc.*<br><br>Jonathan B. Morton<br>Florida Bar No. 956872 |

|  | Jonathan.Morton@klgates.com<br>**K&L Gates LLP**<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |
|---|---|