UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

      Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

      Defendants    /

Case No. 20-60719-CIV-
DIMITROULEAS/SNOW

### DECLARATION OF ARNOLD BENOOT

1. My name is Arnold Benoot. I am over the age of 18, am of sound mind, and am otherwise competent to offer this testimony. I make these statements on behalf of Saffelberg Investments *nv* ("Saffelberg"), and based upon my knowledge of the events described herein.

2. These statements are based on my own personal knowledge; my own personal review of documents I have authored; and documents with which I am familiar.

3. Saffelberg is a non-controlling, financial minority shareholder in Ectosense. Trough subsequent capital raises, Saffelberg has contributed funds to Ectosense to sustain operating losses originating from the litigation with Itamar Medical.

4. On or around April 12, 2021, I was informed that an attorney named Gene Kleinhendler, representing Itamar, had reached out to Ectosense's independent board member to request a meeting with Saffelberg, claiming that he wanted to discuss "serious misrepresentations to the FDA."

5. I called Mr. Kleinhendler almost immediately. During the call, Mr. Kleinhendler asserted that he had reviewed Ectosense's communications with and submissions to the FDA and

that he was reaching out on behalf of Itamar to advise Saffelberg that Ectosense had committed a fraud on the FDA.

6. Mr. Kleinhendler remained otherwise vague during the call, and did not identify any particular instance of fraud.

7. Saffelberg had not itself seen or otherwise received access to the communications between Ectosense and the FDA, which it understands contain highly technical information as to the underlying development and validation of the NightOwl home sleep testing device.

8. I had never heard of Mr. Kleinhendler before he reached out to Saffelberg, and I based on the series of events described herein, and I viewed his contacting Saffelberg as a deliberate effort to intimidate Saffelberg.

9. I explained that Saffelberg would take these issues seriously, but without intimate knowledge of the 510(k) process or the underlying communications, I requested clarification on what *exactly* Mr. Kleinhendler or Itamar believe constituted fraud on the FDA. I requested clarification as to why he reached out to Saffelberg—an Ectosense investor—with these issues. Mr. Kleinhendler promised to contact me at a later time to further elaborate on those matters.

10. Awaiting Mr. Kleinhendler's communication in order to fulfil our duty of proper corporate governance at Saffelberg after such serious accusations are levied, I emailed Mr. Kleinhendler on April 20, 2021, to understand if he was still intent on following-up. Mr. Kleinhendler responded on the same day that he would provide a memo by the end of that week. Mr. Kleinhendler then sent me a letter on April 22, 2021 indicating that he had "been retained by Itamar Medical Ltd. to advise on the liability of Ectosense directors and shareholders arising from Ectosense [sic] activities in the U.S." He went on to state that he would like to present his thoughts

"concerning potential liability of a private equity investor arising from the activities of its portfolio companies' dealings with U.S. government agencies."

11. Mr. Kleinhendler claimed that Ectosense engaged in "fraudulent inducement" to enable "false claims for reimbursement form U.S. government healthcare programs".

12. He stated: "Knowingly perpetrating a fraud or act of deception upon a government agency includes deliberate ignorance of the truth or falsified information. As the U.S. government agency empowered to enforce anti-bribery and corruption violations puts it: 'willful blindness is not a defense.'"

13. In his letter, Mr. Kleinhendler demanded that Saffelberg open an investigation into Ectosense and warned that Saffelberg could face *criminal prosecution* for the purported false claims: "False claims for Medicare reimbursement based on a fraudulent submission to the FDA are aggressively prosecuted by U.S. criminal and civil authorities.", "Saffelberg may be held liable for those false claims under U.S. law".

14. On April 29, 2021, Mr. Kleinhendler followed-up to express that he was "hopeful that Saffelberg will carry out it's [sic] legal responsibility" such that he could "avoid any further action in this matter."

15. Given Mr. Kleinhendler's earlier letter, I received this email as a direct threat.

16. On the same day, I responded that I had received his letter, and I requested that Mr. Kleinhendler further specify exactly which particular elements of Ectosense's communications and submissions to the FDA were purportedly containing intentional misrepresentations.

17. On May 03, 2021, Mr. Kleinhendler responded that he would provide a "detailed description of the various misrepresentations later this week."

18. In the meantime, Saffelberg engaged U.S. counsel and informed Ectosense of the seriousness of the accusations made.

19. I understand that while Mr. Kleinhendler was issuing the threats of criminal prosecution against Saffelberg, Itamar was simultaneously asking the Court to lift the attorneys' eyes only designation from the very documents that Mr. Kleinhendler claimed he reviewed.

20. I further understand that after the Court denied Itamar's request to remove the attorneys' eyes only designation, Itamar almost immediately requested a substitution of counsel and then Mr. Kleinhendler sought admission *pro hac vice* during the course of the substitution of counsel.

21. Saffelberg sees no legitimate basis for Mr. Kleinhendler's and Itamar's conduct, and views the entire situation as an effort by Itamar that is carried out by Mr. Kleinhendler to threaten and intimidate Saffelberg for holding an investment in Ectosense.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 28, 2021.

Arnold Benoot
General Counsel
Saffelberg Investments *nv*