UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants    /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

**<u>ECTOSENSE'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY GENE KLEINHENDLER AND INCORPORATED MOTION FOR SANCTIONS</u>**

Itamar believes nothing improper happened here. Itamar believes it is free to hire foreign attorneys to contact Ectosense's board members *ex parte* and to threaten Ectosense's international Belgium-based investors with regulatory and criminal prosecution in the United States. Itamar suggests that Mr. Kleinhendler's written claims that he had reviewed documents Ectosense's FDA "application" and "submission", which had just been produced under an AEO designation two weeks prior, should not be read to mean what they say. Itamar argues that it is frivolous for Ectosense to even suggest that Mr. Kleinhendler was either telling the truth and violated this Court's confidentiality order, or lying and violated ethical rules. There is nothing routine or acceptable about Itamar and Mr. Kleinhendler's conduct, and this Court should not tolerate *ex parte* communications, breaches of confidentiality order or claims of such a breach, or extortion.

### (a) **Mr. Kleinhendler engaged in conduct that is prejudicial to the administration of this case, and that merits disbarment.**

Itamar argues that Ectosense has identified the wrong standard, ECF 187 at 3, but it appears that Itamar is ignoring that holding of *In re Bellsouth*, which interpreted *Schlumberger* for the exact standards Ectosense cited. ECF 181 at 8. In short, Itamar argues that Ectosense failed to disclose the aspect of *Schlumberger* holding that the misconduct must rise to a level meriting disbarment, which is exactly what the petitioner argued in *In re Bellsouth*:

> [Petitioner argues] the court was required to make a finding that his appearance violated a specific Rule of Professional Conduct of a nature rising to the level of disbarment, which the district court did not do. We disagree; we conclude that *Schlumberger* does not control here.
> In *Schlumberger* we expressly recognized and reconciled two lines of cases within the circuit involving attorney disqualifications. One line of cases, the line which we found applicable in *Schlumberger,* involved disqualification based on an alleged ethical violation that did not threaten the orderly administration of justice. There, the higher *Schlumberger* standard applied. The other line of cases involved conduct disruptive of the proceedings or constituting a threat to the orderly administration of the laws.

334 F.3d 941, 958–59 (11th Cir. 2003). This clarified that the higher standard of meriting disbarment only applies if the conduct at issue does not impact the orderly administration of justice, and confirmed that the pre-existing "orderly administration of justice" standard set forth in *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985) is valid law. *Id.* Notably, in *Kleiner*, the attorney was disqualified for engaging in *ex parte* communications. 751 F.2d 1193 (reversing

disqualification for lack of an evidentiary hearing, but explicitly noting that the reversal was not to be construed as a "disapproval of the district court's views on Langway's credibility or on the propriety of the sanction" and only that an evidentiary hearing was required for due process). Regardless of whether this Court views Mr. Kleinhendler's conduct through the 'orderly administration' cases, or the 'misconduct warranting disbarment' cases, he should be disqualified.

Mr. Kleinhendler admits that he called Ectosense's board member. He also admits that he was aware of this lawsuit stating that he had reviewed the filings in this case in preparation for contacting the board member and ultimately Saffelberg. *See* ECF 187-1 ¶ 6 -7 (explaining that the document he was relying upon in his communications was attached to Ectosense's Motion to Dismiss). Itamar actually argues that Mr. Kleinhendler's accusations are the same as Itamar is making in this case. ECF 187 at 7 ¶ 2 ("If this were true and, to be "ethical," Mr. Kleinhendler could only accuse Ectosense of fraud on the FDA or of falsely using CPT Code 95800 based on AEO documents, then Itamar itself would not have been able to file this lawsuit…"). Mr. Kleinhendler nevertheless submits that calling Ectosense's board member did not constitute a prohibited *ex parte* communication because he was only seeking contact information for Saffelberg's counsel—information that is publicly available through google search of "Saffelberg general counsel." He conspicuously never states why he was contacting Saffelberg at all. Mr. Kleinhendler's purported objective in contacting Ectosense's board member is irrelevant though because he admits the fact that he contacted a represented party and he does not deny that he spoke to the board member about what he intended to raise with Saffelberg, which tracks several issue in this case. It is inconceivable that over a year into this litigation, Itamar's attorney contacted a board member instead of Ectosense's counsel in this case. This is a pure and simple prohibited *ex parte* communication warranting disqualification. *See e.g. Bedoya v. Aventura,* 861 F.Supp.2d 1346 (S.D. Fla. 2012) (disqualifying counsel due to ex parte communications to opposing party, disparaging opposing counsel in the course of seeking to influence settlement negotiations).

Mr. Kleinhendler's additional ethical violations of engaging in dishonest conduct, making false representations, and issuing extortionate demands disrupt the orderly administration of this case and warrant disbarment. Itamar claims Ectosense's "entire theory is based on suppositions and innuendo." Contrary to this claim, Ectosense relies upon on the direct evidence of what Mr. Kleinhendler claims in writing that he reviewed, and the specific timing in which he claimed to review such documents (over a year into the litigation, but only two weeks after the documents

were produced), to establish there are only two possible explanations here: either the confidentiality order was violated, or Mr. Kleinhendler was lying about reviewing the documents to legitimize meritless extortionate threats.

Without addressing the words Mr. Kleinhendler used and Ectosense's framing of the issue as two equally bad alternatives, Itamar submits multiple affidavits claiming that no breach of the confidentiality order occurred, and that Latham & Watkins did not conspire with Itamar to facilitate such a breach, which is a strawman argument that Ectosense never made. Itamar then lambasts Ectosense for even suggesting something so improper could ever occur given the reputations of everyone involved. Itamar spends more time claiming the motion is frivolous than it does addressing Ectosense's arguments and evidence. Ectosense's argument has always been framed in the alternative that Mr. Kleinhendler either breached the confidentiality order **or** lied about having reviewed AEO documents to legitimize meritless extortionate threats because that is what Mr. Kleinhendler's letters demonstrate.[1] Ectosense has submitted Mr. Kleinhendler's written statements of what he reviewed as direct evidence of what happened. He admits that he sent the letters. In those letters, Mr. Kleinhendler claims to have reviewed Ectosense's "application" and "submissions", which stand in stark contrast to what he claims he reviewed now, the 510(k) summary published by the FDA. ECF 187-1 ¶ 6. Thus, Mr. Kleinhendler is in a thicket of contradicting statements that all lead down a path of ethical violations.

In an attempt to reconcile the inconsistencies, Itamar would have this Court believe that words have no precise meaning, and that when Mr. Kleinhendler referenced "application" or "submissions" in his letters, he just meant an entirely different (and singular) document: the NightOwl 510(k) summary that the FDA published on its website. This is irreconcilable with the words in Mr. Kleinhendler's letters and the content of his accusations. He claimed, in writing, that he reviewed the NightOwl "application" and stated that Ectosense had engaged in "fraud by omission" with the FDA. He claimed: "Instead of full and honest disclosure, Ectosense simply wanted the *descriptive term "Peripheral Arterial Tone" or PAT to appear in [the] application.*" (emphasis added). To support this claim, Mr. Kleinhendler specifically stated: "The requirements

---

[1] Itamar accuses Ectosense of changing its argument about whether Mr. Kleinhendler viewed AEO documents: "Without proof on its side, Ectosense now changes its theory. If Mr. Kleinhendler did not review AEO documents, then he purportedly lied about doing so." ECF 187 at 5. This is not true. Ectosense's argument has always been the same alternative argument. *See e.g.* ECF 140 pp. 16 – 17 (explaining that either Mr. Kleinhendler was telling the truth about what he reviewed and violated the confidentiality order, or lying to bolster his accusations).

Page 3 of 12

of the device under the CPT code are not met by the Ectosense device and *clearly absent from the technological feature comparisons listed in the FDA application*." (emphasis added). How could Mr. Kleinhendler know what is "absent" from the feature comparisons in the NightOwl application if he did not review the application?

Later in the May 10th letter, he references the 510(k) summary as a distinct document from an application: "The key challenge to Ectosense was how to include the general term "PAT" *in the summary*, but still avoid the comparison to the technological characteristic of the predicate device, as required by the FDA rules." (emphasis added). He is arguing that PAT was not in the *application*, but that Ectosense somehow snuck it into the *summary* that the FDA published. The statement is meritless, but demonstrates that Mr. Kleinhendler was the one who claimed he reviewed AEO documents.

Whether or not he actually reviewed AEO documents only changes whether he violated this Court's confidentiality order or whether he lied about doing so to make baseless extortionate threats of criminal prosecution appear legitimate. Either way merits disqualification and sanctions because he violated Rules Regulating the Florida Bar 4-4.1 (prohibiting knowingly false statements), 4-4.8(c) (prohibition against dishonesty, fraud, deceit, or misrepresentation), and 4-3.4(g) (prohibition against extortion). Violating these rules in this case disrupts the orderly administration of justice, and, even if it did not, would merit disbarment. *See e.g. The Florida Bar v. Thompson*, 994 So. 2d 306 (Fla. 2008) (disbarring an attorney for an array of misconduct, including making false statements of fact and issuing extortionate threats); *In re Glucksman*, 37 A.D.2d 290, 324 N.Y.S.2d 561 (1971) (finding that in New York, where Mr. Kleinhendler is licensed, "Conviction of conspiracy to extort and of attempted extortion requires disbarment."); *Bedoya,* 861 F. Supp. 2d 1346, 1360 (S.D. Fla. 2012) (disqualifying an attorney who, *inter alia,* engaged in *ex parte* communications).

### (b) Severe inherent powers sanctions are appropriate.

Itamar argues that because the conduct at issue is purportedly not as severe as conduct this Court has previously sanctioned in other cases, that Ectosense's request for sanctions is "frivolous." Itamar misses the point that the inherent power to sanction necessarily contemplates a quantum of sanctions for a quantum of misconduct. Discussing the inherent power to sanction, the Eleventh Circuit has observed that:

> A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* For example, circumstances which may dictate the exercise of inherent power to assess attorney's fees against counsel, include those where a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (citations omitted). The imposition of sanctions in that circumstance "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.' " *Id.,* 501 U.S. at 46, 111 S.Ct. at 2133, 115 L.Ed.2d at 46 (citation omitted).

*In re Mroz*, 65 F.3d 1567, 1574–75 (11th Cir. 1995). In order to impose such sanctions under the inherent power of this Court, "the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions." *Id.* at 1575–76. Ectosense's motion put Itamar on notice that Ectosense is seeking sanctions. Itamar has had an opportunity to respond, but instead of trying to justify its actions, it claims that nothing inappropriate occurred here at all and that it is Ectosense that should be sanctioned "for wasting time and resources on *three* baseless motions." ECF 187 at 2.

Itamar argues that there are distinctions between its conduct in this litigation and the conduct at issue in *Martin v. Automobili Lamborghini,* 307 F.3d 1332, 1336–37 (11th Cir. 2002) (affirming J. Dimitrouleas) where this Court struck the plaintiff's pleadings, awarded attorney's fees as a sanction against the plaintiff and his attorneys, and referred attorneys to the Florida Bar and prosecutors. Itamar says "the facts in this case are not remotely similar to the conduct in *Martin"*, and that is the end of its efforts to address the case. *Martin* illustrates this Court's use of inherent powers to sanction severe misconduct. *Ex parte* communications and extortion is clearly on the more extreme side of misconduct. In *Martin,* the plaintiff lied about having standing in order to issue extortionate threats, and abused discovery. Here, Itamar and Mr. Kleinhendler either told the truth about reviewing Ectosense's AEO documents and violated a confidentiality order, or lied about having done so to bolster meritless claims of criminal misconduct by Ectosense when threatening Ectosense's investor with regulatory and criminal prosecution. They targeted Ectosense's lifeblood demanding that the investor mandate Ectosense discontinue seeking reimbursement in the United States and conduct an investigation into Ectosense. This was all

aggravated by the fact that Mr. Kleinhendler used an *ex parte* communication to start the entire chain of events. The facts are different, but the misconduct is not comparatively any less severe.

The material evidence is undisputed. Mr. Kleinhendler contacted Ectosense's board member, and sent the letters in question. Thus, Mr. Kleinhendler indisputably engaged in an *ex parte* communication, and sent letters threatening Ectosense's investor with criminal prosecution if the investor refused to investigate Ectosense and issue a demand that Ectosense discontinue insurance reimbursement in the United States. This is classic extortion. There was no reason for Mr. Kleinhendler to contact Saffelberg, and Itamar's Response does not even attempt to offer one.

With respect to the specific issue of extortionate demands, courts routinely observe that they merit invocation of the inherent powers doctrine, and have previously struck pleadings, and awarded attorneys' fees for an entire case. *See del Fuoco v. Wells*, 8:03CV161T-23TGW, 2005 WL 2291720, at *10 (M.D. Fla. Sept. 20, 2005). In *del Fuoco*, the court held an evidentiary hearing on allegations that a plaintiff had made a settlement demand with a threat of exposing criminal conduct. *Id.* The court invoked the inherent powers doctrine and concluded that "Del Fuoco has been found to have acted in bad faith when he made the settlement demand of $500,000, plus an attorney's fee, since the demand was predicated upon the threat to disclose alleged campaign finance violations. The use of this case as a vehicle for the bad faith demand clearly constitutes a litigation abuse defiling the judicial process." *Id.* The court invoked the inherent powers doctrine and awarded the movant his attorneys' fees from the date requested by the movant (the filing of a second amended complaint). *Id.* Other courts have observed that extortion should never be tolerated in civil litigation, and that courts should reject all attempts to minimize threats that are facially extortionate. *See e.g. Gladney v. Seagraves,* 308CV1052J25JBT, 2011 WL 13295123, at *3 (M.D. Fla. Feb. 10, 2011) (imposing sanctions for threats to use the existence of a criminal proceeding to gain advantage in civil litigation in violation of Rule 4-3.4(g).); *Cooper v. Austin,* 750 So.2d 711, 713 (Fla.App.2000) ("In this case, the wife's 'wake-up call,' which demanded the husband either give in to her demands or go to jail, was clearly extortionate and her presentation of the extorted agreement to the court was a fraud on the court making the trial court an instrument of her extortion. Mrs. Cooper should not profit from her actions. Nor should this Court, or any court, ignore them."); *Berger v. Berger,* 466 So.2d 1149 (Fla.App.1985) (husband did not have right to settlement with wife by threatening that to report her and her business partners to the IRS).

**(c) Itamar attacks a strawman with its description of Ectosense's argument**

To borrow Itamar's own turn of phrase, Itamar attacks a strawman when arguing that Latham & Watkins was not a co-conspirator here. Ectosense has never accused Latham of being a co-conspirator here. Ectosense has previously explained that it disclosed what was going on to Latham before putting these facts into the response in opposition to the de-designation motion precisely because Ectosense did not believe Latham would be involved in such misconduct, but could not understand why Mr. Kleinhendler would be claiming he reviewed AEO documents. Ectosense explained that Latham stated it was unaware that Itamar had commissioned an attorney to issue threats of criminal prosecution against Ectosense's investors while claiming he had reviewed AEO documents. This was explained in Ectosense's first filing in which it expressed concern about Mr. Kleinhendler's conduct and Itamar's intent with the pursuit of AEO documents. *See* ECF 110 at 7[2]. Latham withdrew almost immediately after the de-designation motion was denied. Ectosense just laid the facts out as they occurred and has not suggested it was a cover up by Latham or that Latham was behind the extortionate threats. Perhaps Latham withdrew because it would not be associated with Itamar's attempts to extort Ectosense. Perhaps for a different reason altogether, but the sequence suggests that Itamar has been deliberate in every move it has made.

The relevant of this sequence is as follows: Ectosense raised the extortion and AEO issues to Latham right away when expressing concern about Itamar's intent with the de-designation motion, Latham expressed surprise and stated it was not involved or aware that Mr. Kleinhendler was contacting Ectosense's investors, and then withdrew right after this Court denied Itamar's de-designation motion. Mr. Kleinhendler appeared in the case immediately thereafter. Itamar is the common denominator that could make each one of the decisions in the sequence.

Ectosense acknowledges that if Mr. Kleinhendler was telling the truth that he reviewed Ectosense's FDA application, the implicit question is how did he obtain the documents? This is not a question for Ectosense to answer though. Ectosense has provided the evidence that Mr.

---

[2] Ectosense stated in the response: "Ectosense is unaware at this time whether Mr. Kleinhendler actually reviewed the documents Ectosense submitted to the FDA and produced in this case with an AEO designation, or whether he just claims to have done so. Thus, Ectosense does not mean to suggest that the AEO designation was breached by Itamar's counsel in this case." The argument always focused on Mr. Kleinhendler's claim that he reviewed the documents, and all arguments in Ectosense's Kleinhendler motions have been phrased in the alternative of either he did review them and violated the confidentiality order, or he did not and is lying about doing so.

Page **7** of **12**

Kleinhendler claims he reviewed the exact documents Ectosense had produced under an AEO designation. If he was lying, then Latham should be incensed with Itamar and Mr. Kleinhendler, not Ectosense. If he was telling the truth, then the question remains open: how did he obtain the documents? It is true that Ectosense cannot answer this question. However, it was Mr. Kleinhendler who made the claim, and Mr. Kleinhendler who should be called in to answer it. His explanation that he only reviewed the 510(k) summary is contradicted by his written statements that he reviewed Ectosense's application, and claims of fraud by omission. Mr. Kleinhendler's words had precise meaning and his revision of their meaning is not credible.

## Conclusion

Itamar and Mr. Kleinhendler should be held to account for their conduct. This Court should not condone *ex parte* communications, extortionate demands, and violations of this Court's confidentiality order, or, alternatively, false statements of reviewing documents that are protected by this Court's confidentiality order. Itamar and Mr. Kleinhendler had no legitimate reason to contact Ectosense's investor. Imagine a reverse scenario. What if Ectosense engaged a Belgium-based attorney to review the filings in this case, contact an Itamar board member to obtain a contact list for Itamar's shareholders, and then sent letters to major foreign shareholders in Israel threatening regulatory and criminal prosecution in the United States for purported criminal misconduct of Itamar in the United States? What if the hypothetical attorney actually reviewed, or bolstered his allegations by claiming he reviewed, documents that Itamar had just produced with an AEO designation? The situation is hard to conceive because there are so many steps in that process in which one should immediately stop and discontinue the efforts. Mr. Kleinhendler had no legitimate reason to contact Ectosense's board member, much less Ectosense's Belgium-based investor. Itamar sought to distance Saffelberg from Ectosense by having Saffelberg conduct an investigation, and make Saffelberg demand that Ectosense discontinue insurance reimbursement in the United States—two explicit objectives that would on their face directly influence funding to create advantage in this litigation. Itamar and Mr. Kleinhendler's conduct merits disqualification of Mr. Kleinhendler and sanctions.

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 20th day of September 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/   Seth J. Donahoe*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
B. George Walker, Esq.
Florida Bar No. 0071049
bgw@trippscott.com (primary)
sxc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

SERVICE LIST
CASE NO: 20-cv-60719-WPD

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL  33301<br>Telephone:  (954) 525-7500<br>Telefax:  (954) 761-8475<br><br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN  55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>*Counsel for VirtuOx Inc.*<br><br>Jonathan B. Morton<br>Florida Bar No. 956872 |

|  | Jonathan.Morton@klgates.com<br>**K&L Gates LLP**<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |
|---|---|