UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants      /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

**ECTOSENSE NV'S RESPONSE IN OPPOSITION TO ITAMAR'S MOTION FOR EXTENSION AND MOTION FOR EXPEDITED DISCOVERY**

**Introduction**

Itamar cannot get its stories straight. When responding to Ectosense's Motion to Disqualify Gene Kleinhendler and for Sanctions (the "Motion to Disqualify"), Itamar claims the motion is "clearly tactical and an attempt to divert from addressing the merits of this case." ECF 183 at 10. Itamar calls the Motion to Disqualify frivolous. ECF 183 at 9. Itamar argues to this Court that Mr. Kleinhendler did nothing wrong when he engaged in an *ex parte* communication with Ectosense's board member and then sent multiple letters wherein he claimed to have reviewed Ectosense's FDA applications, which Ectosense had just produced under protection of this Court's confidentiality order. Or when he told Ectosense's board member that his *ex parte* call was more serious than the litigation and that "US authorities" could get involved. Or when he threatened Ectosense's investor with regulatory and criminal prosecution in the United States. At the threat of such prosecution, he demanded that the investor investigate Ectosense and prohibit Ectosense from making NightOwl available for insurance reimbursement. Itamar does not dispute that any of these events occurred. Itamar concedes that Mr. Kleinhendler called the board member, and sent the letters that Ectosense attached to its Motion to Disqualify. Itamar simply claims that the conduct was acceptable, and accuses Ectosense of bringing a frivolous motion before the Court.

Although Itamar does not actually dispute the material facts upon which the Motion to Disqualify is based, it claims that it needs near-immediate responses to forty six document requests (31 to Ectosense and 15 *duces tecum* requests to Saffelberg), and three depositions (two individuals and a corporate representative—all of whom are in Europe) before it can defend the Motion to Disqualify. When requesting all of this, Itamar failed to abide by any of the Federal Rules of Civil Procedure or Federal laws that govern Itamar's requests. The only party engaging in tactical efforts to divert from the merits is Itamar with its efforts to turn the Motion to Disqualify into a time consuming and distracting discovery battle burdening non-parties in foreign jurisdictions. Ectosense's primary position is that Itamar does not need any of the discovery it has requested, but in an effort to avoid burdening the Court with motions for protective order, Ectosense is trying to facilitate resolution of Itamar's requests, where possible, as quickly as possible.

Itamar's Motion for Extension and for Expedited Discovery, ECF 183, (the "Expedited Discovery Motion") is in practical impact a premature motion to compel as it presented several issues to the Court that were not ripe for consideration. Itamar's requests are the following:

1

(i) allow expedited discovery and shorten the time frame to ten (10) days for Ectosense to respond to the Plaintiff's Expedited Requests for Production of Documents Related to the Motion to Disqualify;
(ii) allow the deposition of Mats Dahlqvist five (5) business days after the production of documents;
(iii) expedite the issuance of Letters Rogatory so that Itamar may pursue document requests and deposition testimony of Saffelberg and Arnold Benoot;
(iv) extend the deadline for Itamar to respond to the Motion to Disqualify pending the requested discovery;
(v) and (v) enter any other just and proper relief.

Itamar had not served any of the discovery, subpoenas, or notices contemplated by these requests when it filed the Expedited Discovery Motion, and had only notified Ectosense that it would be seeking any discovery one business day before filing the motion. To narrow the ground for dispute, in the week that has followed, Ectosense elevated substance over form and simply asked that Itamar provide the finalized request for production to Ectosense and agreed to serve responses and objections by October 1, and responsive documents and a privilege log, if any, by October 14. Itamar has already filed its response to the Motion to Disqualify. Thus, requests for relief I and IV are resolved. As a result now only requests II and III remain unresolved.

Federal Rules of Civil Procedure 30, 45, and 28 U.S.C § 1783 govern Itamar's outstanding requests. Itamar has not followed any of the procedures set forth in these rules, but is asking that this Court "allow the deposition of Mats Dahlquist (5) business days after the production of documents" and "expedite the issuance of Letters Rogatory so that Itamar may pursue document requests and deposition testimony of Saffelberg and Arnold Benoot." By failing to follow the applicable authorities, Itamar is trying to bypass the protections afforded by the rules of procedure and statute. Moreover, it has reversed the order in which things would typically unfold. Because Itamar failed to serve any of the necessary notices or subpoenas to take this discovery and instead just sought immediate expediting of the discovery, Ectosense had never been served with a notice of non-party subpoena, or deposition notice, that it could file objections to, or move to quash or for a protective order. Itamar skipped every step in order to deprive Ectosense of its right to file specific objections to specific requests and fully address the nuanced issues raised by each of Itamar's discovery efforts. Then, as set forth more fully below, Itamar failed to propose any limitations on any of the discovery sought that would help facilitate resolution.

2

### (a) Deposition of Mats Dahlquist

Given that Itamar concedes the material facts upon which the Motion to Disqualify is based, and that there are categorical areas where obvious privilege applies, Itamar's broad discovery efforts here cannot be justified. Neither Mr. Dahlquist, Mr. Benoot, nor Saffelberg are parties to this litigation or identified on any witness list or initial disclosures as individuals with information relevant to Itamar's claims of trademark infringement and false advertising, or Ectosense's counterclaims for declaratory relief and false advertising. They were thrust into this dispute by Mr. Kleinhendler's *ex parte* communications and Itamar's inappropriate conduct.

Mats Dahlquist offered extremely narrow testimony in his affidavit. He explained that he is the board member of Ectosense, that Mr. Kleinhendler called him on April 12, 2021, and that he took detailed notes of the call. *See* ECF 181-1. He provided the notes with his affidavit and explained what Mr. Kleinhendler said to him on the call. ECF 181-1 at 4. He noted the following: Mr. Kleinhendler claimed it was more serious than the litigation in Florida, and that a US authority could get involved. ECF 181-1 ¶ 6, 8. Mr. Kleinhendler said on the call that he had reviewed Ectosense's statements in its FDA submission and that he believed Ectosense's investors would want to know about what he had to say. Finally, he said that he wanted to obtain the contact information for Ectosense's investor, Saffelberg, to discuss these purported issues. ECF 181-1 ¶8. Mr. Kleinhendler admits that he called Mr. Dahlquist, and, although he claims the extent of his communications with Mr. Dahlquist was to obtain a the contact information for Saffelberg, he does not dispute any of the specific statements Mr. Dahlquist said Mr. Kleinhendler made. *See* ECF 187-1 ¶ 13 (affidavit of Gene Kleinhendler).

Ectosense notes that there is one interesting point in dispute. Itamar challenges Mr. Dahlquist's characterization of the events surrounding Mr. Kleinhendler reaching out. Itamar states in ECF 183 ¶ 7:

> Of course, had Ectosense's counsel raised the notion that Mr. Dahlquist felt "threatened" back on April 12, 2021, the parties could have discussed the fact that Itamar would have expected him to just pick up the phone and call Itamar's CEO, Gilad Glick, just as Mr. Dahlquist had done just a couple of weeks before on or about March 24, 2021. Interestingly, Mr. Dahlquist fails to mention that communication with Itamar in his August 18, 2021, declaration.

Contrary to Itamar's suggestion that Ectosense was hiding facts from the Court, Ectosense would very much like the ability to discuss the conversations between Mr. Glick and Mr. Dahlquist

3

because they have explanatory power for why Mr. Kleinhendler calling Mr. Dahlquist in particular is even worse than what is already in the record. What *Itamar* did not explain is that shortly after Itamar filed this case, it asked Ectosense to sign a Confidentiality and Non-Use Agreement so that Mr. Gilad Glick could engage in conversations with Mr. Mats Dahlquist directly, and without concern that any such conversations—or even the existence of such conversations—would be used in the litigation. The agreement states in relevant part:

> The parties agree that the terms hereof, the negotiations and discussions between the parties, relating to the Purpose including any statements made by the Parties in the course of such discussions and that any discussions or negotiations are taking place, shall constitute Confidential Information, **and the Parties shall not be permitted to use the existence of any such discussion in the pending litigation between them.**

(emphasis added). Thus, Mr. Dahlquist became Ectosense's channel for Mr. Glick to engage in direct settlement conversations—at least until the final call with Mr. Glick that Itamar references in March of 2021. The next call Mr. Dahlquist received was the *ex parte* call from Mr. Kleinhendler described in Mr. Dahlquist's affidavit. Indeed, when Mr. Glick and Mr. Dahlquist ended their communications, Itamar had Mr. Kleinhendler pursue the very person who had been discussing settlement with Itamar's CEO, and then tell that person that US Authorities could get involved.

Ectosense was absolutely not hiding from the Court the fact that Mr. Glick and Mr. Dahlquist had telephone conversations regarding potential settlement as it makes Mr. Kleinhendler's conduct even worse, and establishes a clear motive. Ectosense's hands were tied by the non-use agreement. It was not able to disclose what happened on the call with Mr. Glick, or that Mr. Glick and Mr. Dahlquist even had a call, or that Mr. Kleinhendler had contacted the very board member who was handling the direct settlement communications with Itamar. Yet, Itamar breached that very agreement and used the fact that Ectosense had abided by its terms to suggest that Ectosense was hiding information from the Court. Once this Court ordered Ectosense to respond, Ectosense sent the letter attached as **Exhibit A** indicating that Itamar had breached and that Ectosense needed the ability to substantively respond to Itamar's accusations and characterization of the call between Mr. Glick and Mr. Dahlquist. **Unsurprisingly, Itamar disagreed and refused to allow Ectosense to respond with the substance of what transpired, or explain what the conversation was about. Itamar has taken the position that Ectosense is still bound by the non-use restrictions**.

4

Setting aside the non-use agreement issues, there are no material facts in dispute with respect to what happened on the call between Mr. Kleinhendler and Mr. Dahquist. Mr. Kleinhendler admits the material point that he called Mr. Dahlquist, and he did not specifically deny having made any of the statements Mr. Dahlquist said he made. Itamar does not need any discovery from Mr. Dahlquist about this, and Itamar is also free to simply ask Mr. Kleinhendler what was discussed. To the extent Itamar really thinks it needs to depose Mr. Dahlquist to determine whether Mr. Kleinhendler's call was appropriate, Ectosense proposed the following limitations:

> <u>Mats Dahlquist</u>: One hour deposition via Zoom regarding his singular conversation with Mr. Kleinhendler referenced in his affidavit, the notes he took during that call that were attached to the affidavit, and his conversation with Mr. Gilad Glick that Itamar suggested Ectosense failed to disclose.

In the event that Itamar agrees to this, or the Court orders that the deposition be limited as such, Ectosense would have no objection to Itamar taking Mr. Dahlquist's deposition. The concern is that Itamar wants to use this deposition to go into an array of other issues is not remote. Undersigned counsel requested a general description of the topics Itamar wanted to explore, and Itamar responded indicating that it believes it is entitled to go into, as a few examples, Ectosense's funding, Ectosense's strategy and discussions in response to Mr. Kleinhendler's threats, and any investigations either Saffelberg or Ectosense did in response to Mr. Kleinhendler's threats, or any allegations made by Mr. Kleinhendler. These topics are totally irrelevant to the *ab initio* question of whether Mr. Kleinhendler's conduct and threats were appropriate or whether they merit disqualification and sanctions.

Thus, Ectosense asks that the Court deny Itamar's request that Mr. Dahlquist's deposition be had at all, or alternatively, impose the restrictions that Ectosense has proposed regarding the time and scope of the deposition.

### (b) Itamar has failed to show that Letters Rogatory should issue, on an expedited basis or otherwise

Saffelberg and Mr. Benoot are foreign nationals that are nonparties to this litigation. Mr. Benoot's declaration simply confirmed that Mr. Kleinhendler called him, and authenticated the letters that Mr. Kleinhendler sent, and described the course of his conversations with Mr. Kleinhendler. *See* ECF 181-2. Ectosense has placed the letters that Mr. Kleinhenlder wrote into

5

the record, and everyone agrees that they are the letters that he sent to Saffelberg. Itamar has not disputed anything in Mr. Benoot's declaration whatsoever, but claims it needs this Court to issue letters rogatory and request the assistance of the Federal Public Service Justice of Belgium to force Mr. Benoot and Saffelberg to respond to 15 documents requests and be subjected to depositions. Itamar failed to cite any authority for issuing letters rogatory, or case law analyzing when it is appropriate and the specific findings this Court must make. The relevant framework is as follows:

> Pertaining to the question of accessibility to foreign witnesses, a court of the United States is empowered to subpoena U.S. nationals and residents located in a foreign country if the court finds that testimony or production of documents is "necessary in the interest of justice." 28 U.S.C. § 1783 (2006). Foreign nationals however, are outside the reach of this Court's jurisdiction. Therefore, in the interest of justice, courts within the United States may, at its discretion, secure relevant evidence from foreign nationals in a foreign country through letters rogatory, pursuant to 28 U.S.C. § 1781.

*Barboza v. Drummond Co., Inc.,* 06-61527-CIV, 2007 WL 8025825, at *5 (S.D. Fla. July 17, 2007). Although, 28 U.S.C. § 1783 applies to U.S. nationals, rather than foreign nationals, the standard set forth therein tracks the interest of justice issues that have guided courts in determining whether the discovery would be in the interest of justice:

> …the court finds that particular testimony or the production of the document or other thing by him is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner

Itamar has not attempted to make a showing that the letters rogatory would be in the interest of justice in the body of the Expedited Discovery Motion, and it cannot make this showing. This Court should deny Itamar's request for expedited issuance of Letters Rogatory because Itamar has failed to offer any argument in its Expedited Discovery Motion as to why they should be issued at all, let alone on an expedited basis. The only place any discussion of these items appear is buried in an attachment to the Expedited Discovery Motion on pages 19 and 20 of exhibit 3 that comprises the proposed letters rogatory that Itamar wants issued. *See* ECF 183-3 at 19—20. Instead of affirmatively asking this Court to evaluate whether Itamar meets the statutory requirements, Itamar asked for expedited issuance of a proposed letters rogatory that contained specific findings by this

Court that the testimony sought and documents requested would ordinarily be subject to subpoena under Rule 45, and are in the interest of justice.

Itamar offers no analysis of the factors this Court should consider, or that Ectosense could respond to. However, even without that, the face of the requests demonstrate that Itamar's requests are not in the interest of justice, and would just burden a nonparty foreign national with unnecessary depositions and cumulative document requests. Itamar's *duces tecum* requests, which doubled as proposed corporate representative deposition topics, show that Itamar intends to use these depositions as a fishing expedition into Ectosense's finances, internal communications about FDA submissions (which are under a sustained objection), and other matters that bear no relevance to determining whether Mr. Kleinhendler should be disqualified and Itamar should be sanctioned. Itamar proposed the following document requests and topics for the desired corporate representative deposition of Saffelberg:

   a. All notes of any telephone or video conversations between Arnold Benoot and Gene Kleinhendler.
   b. All recordings of any telephone or video conversations between Arnold Benoot and Gene Kleinhendler.
   c. All communications between Arnold Benoot and Gene Kleinhendler.
   d. All notes taken by Arnold Benoot related to conversations with Gene Kleinhendler.
   e. All emails sent or received between Arnold Benoot and Ectosense regarding Gene Kleinhendler.
   f. All emails sent or received between Arnold Benoot and any third parties regarding Gene Kleinhendler.
   g. Any communications with anyone where Arnold Benoot expresses that he felt intimidated or threated by Gene Kleinhendler.
   h. Any handwritten notes where Arnold Benoot expresses that he felt intimidated or threated by Gene Kleinhendler.
   i. All documents evidencing any investigation undertaken by Arnold Benoot or Saffelberg into the statements made by Gene Kleinhendler.
   j. Documents sufficient to show the funding Saffelberg made to Ectosense prior to the communications with Gene Kleinhendler in April and May of 2021.
   k. Documents evidencing any additional funding Saffelberg was planning to provide Ectosense.
   l. Communications between Saffelberg and Ectosense between April 12, 2021, to the present, related in any way to Saffelberg's funding of Ectosense.

      m. All communications between Saffelberg and Ectosense regarding the CPT reimbursement codes, including, but not limited to, CPT 95800, for the NightOwl devices.
      n. All documents between Saffelberg and Ectosense regarding Ectosense's 510(k) clearance application for the NightOwl device.
      o. All documents between Saffelberg and Ectosense regarding Ectosense's communications with the FDA regarding the NightOwl device.

Mr. Benoot serves as general counsel to Saffelberg, and the topics and document requested in a, d, e, f, g, h, and i, are categorically protected by work product, common interest, or attorney-client privilege. In each instance, Itamar is looking for Mr. Benoot's notes, communications, discussions (internal and with Ectosense), or investigations in response to a threat of criminal prosecution from Mr. Kleinhendler. Requests j – o seek communications and documents that have no relevance or probative value on whether Itamar's and Mr. Kleinhendler's conduct merits disqualification or sanctions. As to the requests related to Saffelberg's funding of Ectosense (j – l), this is just a bald effort by Itamar to harass Ectosense and obtain competitively sensitive information. Requests m, n, and o, all seek documents and communications that are totally irrelevant to Itamar's proffered reason for needing discovery of needing to more facts about what transpired with Mr. Kleinhendler. Moreover, this Court already sustained Ectosense's objection to producing internal communications about Ectosense's 510(k) clearance application. *See* ECF 118. Thus, Itamar has failed to argue, much less show, that the discovery it seeks from an attorney in Belgium and a private equity company in Belgium would be in the interest of justice, or that it could not be obtained by other means.

     It is not in the interest of justice for Itamar to burden a foreign national with discovery requests for documents that Itamar itself should have, such as communications between Mr. Kleinhendler and Mr. Benoot, particularly where it appears that all the communications have been attached to the parties' filings. Nor is it in the interest of justice for Itamar to pursue requests that it has already served on Ectosense, and to the extent responsive documents are discoverable, they are available from a party in this litigation without burdening a nonparty in a foreign jurisdiction. Finally, seeking production of privilege documents is not in the interest of justice.

     Itamar failed to follow the proper procedures in pursuing letters rogatory, and failed to make any argument as to why their issuance—particularly considering the breadth of discovery sought—would be in the interest of justice. It bears repeating that Itamar did not dispute anything

in Mr. Benoot's declaration, and that Ectosense's Motion to Disqualify relies upon Mr. Kleinhendler's communications—which Itamar obviously has access to. Thus, this Court should deny Itamar's request for issuance of letters rogatory, regardless of whether expedited.

### (c) Ectosense is still trying to cooperate

In light of Itamar's obviously overbroad ideas of what it needs in terms of documents and deposition testimony to defend a motion it repeatedly calls frivolous, Ectosense has been trying to facilitate a stipulated resolution by suggesting limitations that Ectosense believes Saffelberg would agree to without the necessity of letters rogatory and service through the Hague Convention. Ectosense of course would need to propose the scope for Saffelberg to consider, but because Itamar rejected Ectosense's efforts to propose a limited scope, the parties were unable to reach agreement. In order to avoid obviously privileged areas of inquiry, and irrelevant areas for inquiry, and even though Ectosense does not believe any of this discovery is necessary, Ectosense suggested that the parties (Ectosense and Itamar) agree to the following limitations:

- Arnold Benoot: One hour deposition via Zoom regarding his communications with Mr. Kleinhendler. With respect to the *duces tecum* requests, everything Itamar is seeking is privileged, irrelevant, or already under a sustained objection by Ectosense, with the exception of his communications with Mr. Kleinhendler. Those are documents that Itamar should have access to though.
- Saffelberg Corporate Representative: No deposition. There is no reason that Itamar needs to depose a Belgium-based private equity firm in this case,

Ectosense believes that if the Court were to impose these limitations, or if Itamar were to agree to them, then Ectosense could discuss the requested discovery with Saffelberg and see if the requested discovery could be obtained without the necessity of service through the Hague and letters rogatory, but this is largely outside of Ectosense's ultimate control. To the extent this Court believes discovery is warranted from Saffelberg or Mr. Benoot at all, Ectosense requests that the Court limit the discovery to Mr. Benoots conversations and communications with Mr. Kleinhendler as that would likely result in a stipulated resolution of the remaining issues.

9

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 23rd day of September 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/   Seth J. Donahoe*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
B. George Walker, Esq.
Florida Bar No. 0071049
bgw@trippscott.com (primary)
sxc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

**SERVICE LIST**
**CASE NO: 20-cv-60719-WPD**

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 525-7500<br>Telefax: (954) 761-8475<br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN 55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>*Counsel for VirtuOx Inc.*<br><br>Jonathan B. Morton<br>Florida Bar No. 956872 |

|  | Jonathan.Morton@klgates.com<br>**K&L Gates LLP**<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |