UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants    /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

**ECTOSENSE NV'S MOTION TO COMPEL ITAMAR TO PRODUCE DOCUMENTS AND DATA IN THE FORMAT DESIGNATED BY ECTOSENSE, IN RESPONSE TO ECTOSENSE'S SECOND REQUEST FOR PRODUCTION (CLINICAL DATA)[1]**

---

[1] Itamar's Responses and Objections to Ectosense's Second Request for Production of Documents to Plaintiff (Clinical Data), served June 22, 2021, are the subject of this motion. They are attached as **Exhibit A**.

Ectosense is countersuing Itamar for its false advertising of clinical performance that its devices are "97% accurate", "have PSG-like accuracy", and that Itamar's purported "true sleep time" "avoids a 20% misdiagnosis". These claims are patently false, but Itamar persists with its false advertising. Ectosense propounded requests for production seeking clinical data Itamar created or received that relate to these marketing claims (i.e. benchmark experiments against a gold-standard PSG, sleep stage testing, failure rates, and ability to accurately diagnose sleep apnea). The most efficient and accurate manner to evaluate clinical performance claims such as these is with clinical data from such clinical performance testing—which is data that medical device manufacturers in Europe and the U.S. are obligated to preserve and have ready for regulatory inspectors as part of their post market surveillance obligations. Itamar refuses to produce any clinical data at all.

Whether Itamar's advertising is accurate is the fundamental issue raised by Ectosense's false advertising claims. Whether Itamar's advertising is accurate also has an impact on Ectosense's equitable defense of unclean hands by demonstrating that Itamar is engaging in rampant false advertising about its clinical performance. Ectosense is entitled to discovery to prove its primary claims, and in support its defenses. Despite Itamar's advertising of such superlative clinical performance, Itamar refuses to produce any clinical data whatsoever and objects that that the requests are overbroad and unduly burdensome. The content of the objections are red herrings that do not actually demonstrate that there is any burden at all, or that the data sought is overbroad. The objections should be overruled, and Itamar should promptly produce responsive clinical data.

A.  **The Request Seeks Clinical Data in a Standardized Form and in a Manner That The Parties Already Worked Through**

Itamar first objected to the definitions and instructions "to the extent they seek to impose obligations beyond the Federal Rules of Civil Procedure." *See* **Ex. A.** The objection does not specify that the instructions actually do so and thus is a meaningless general objection that should be overruled. Moreover, the instructions were previously worked out between the parties to manage production of clinical data ESI. By way of background, at the same time the parties worked through the primary ESI protocol in this case, they created a protocol for managing the production of clinical data. This process involved weeks of back and forth and culminated to an agreed protocol for the production of clinical data ESI in a standardized format that is readily accessible because it calls for production of the clinical data ESI in the same format that is natively exportable

through commercial use, or in a format otherwise used between researchers. When finalizing the protocol, Itamar indicated at the last minute that because no requests for production were yet necessitating the production of clinical data, no protocol was needed at that time. Ectosense therefore promptly served its Second Request For Production seeking categories of clinical data that are necessary for demonstrating the falsity of Itamar's clinical claims in advertising, and adapted the clinical data protocol as its instructions. Any objection Itamar has regarding burden or scope relating the format of production called for by the instructions, is without merit and was otherwise not supported by affidavit or specific examples of how the production format would be too burdensome. Under the instructions, Itamar can take the clinical data that it is required to preserve and produce in the same format that would be ordinarily exportable for someone having ordinary skill in handling data. By crafting the clinical data protocol in a manner that allowed production of clinical data ESI just as would be available through ordinary commercial use, Itamar should be able to batch produce without any meaningful burden. Simply put, Ectosense's instructions, while appearing complex, are nothing more than instructions that were mutually worked out so that the Parties could exchange raw clinical data.

      **B.**      **Itamar's Burden and Scope Objections Violate this Court's Order Governing Discovery Procedures.**

Despite agreeing to produce non-controversial clinical data, Itamar has produced nothing and during conferrals indicated that it intends to produce nothing because the scope of the requests are too broad and burdensome. In its objections, despite the fact that Itamar's present day marketing relies heavily on clinical data obtained two decades ago, Itamar complains that there is not a limited time period, but offers no time period for which it will produce. Itamar violated the Court's discovery order: "If there is an objection based upon an unduly broad scope, such as time frame or geographic location, discovery should be provided as to those matters within the scope that is not disputed." ECF 67, pg. 2, sec. 2. Itamar is the party who cites clinical data from the early 2000s to justify its present day marketing claims. If Itamar were to concede that 20 year old clinical data is not relevant to evaluating present-day clinical performance, of a different device, then it would be a simple summary judgment because that is the entire point of Ectosense's counterclaims! Regardless, Itamar should be producing its clinical data, and Ectosense should be awarded its fees for Itamar's refusal to produce any data in violation of ECF 67.

      **C.**      **Itamar's Objections of Undue Burden Are Premised on Illusory Hardships.**

Itamar objects on undue burden grounds and complains it has over "1,121 publications" that *potentially* have responsive information, and removing sensitive information would be too hard. This is a red herring. On September 1, Ectosense wrote a conferral to Itamar's counsel explaining that publications have nothing to do with clinical data, and are certainly not a proxy for evaluating how much clinical data may exist that is responsive to Ectosense's requests. The letter is attached as **Exhibit B**. Despite Itamar obviously failing to do its own review of how much data existed, Ectosense reluctantly took the bait—because the clinical data sought is fundamentally important to the case—and undertook an effort of reviewing the volume of publications to see if there was any potential merit to Itamar's objection. Ectosense spent several days reviewing publications that reference Itamar or its devices, and concluded that this objection was likely made by searching "Itamar" on google scholar, or some similar method. Of the ~1,200 results, only 27 actually involved benchmark experiments that one would expect to have produced clinical data. Of the 27, approximately half were *not* sponsored by or conducted by Itamar and thus Itamar would presumably not have any clinical data from them. That Ectosense even needed to explain this to Itamar, 16 months into a litigation over highly technical issues, is baffling:

> The problem is that published manuscripts are not a proxy for evaluating the quantity of responsive clinical data. Many of those results are meta analysis of prior studies in which no clinical testing was performed, or simply academic publications about sleep apnea, again without clinical testing. We also take note that Itamar has complained that some of the studies date back almost twenty years. This is true, but that is because Itamar is citing twenty year old studies in support of its current marketing claims.
> …
> Because Itamar's objections reveal that Itamar did not actually investigate the universe of responsive data to evaluate burden, we emphasize again that Itamar has forced *Ectosense* to investigate the burden *for Itamar* by locating studies, marketing materials, training materials etc. for determining the scope of what would be responsive to the requests for production. Even with this in mind, the objections Itamar lodged focused on the existence of a large volume of published manuscripts referencing Itamar. Manuscripts are not even relevant to determining the production burden because the vast majority of them presumably did not generate or rely upon clinical data. It seems as though Itamar has again failed to investigate the actual burden and instead propped up an objection that has little, if any, relevance to the discovery requests.

Itamar never wrote back to Ectosense and on telephonic conferrals just indicated that it would not produce any data. Itamar then fell back on its objection to producing what it

characterized as a large volume of materials (although it still has not identified what the volume is), and told Ectosense that Ectosense should have to specifically identify the clinical data that Ectosense thought would be responsive. Notably, Itamar has not yet indicated what responsive clinical data it actually has, which makes the issue circular, but should result in Itamar's objections being overruled as unsubstantiated. Ectosense requested clinical data; Itamar objected and asserted it was too burdensome. Ectosense explained why Itamar's objections made no sense and Itamar is taking the position Ectosense should have to identify specific clinical data—despite Itamar failing to explain what data it has. That erroneous position essentially assumes Ectosense is omnipotent. Itamar is demanding the impossible, and it knows this.

Ectosense is entitled to the clinical data in the possession, custody, and control of Itamar, and should not have to guess what precise clinical data sets Itamar has, or even know exactly what data exists that may be responsive. This was Itamar's job to find out, and instead of doing so, Itamar raised objections that made no sense. Again, the number of manuscripts that mention Itamar's products is not a proxy for evaluating, even roughly, how much clinical data Itamar may have that is responsive to Ectosense's requests. Itamar should have just investigated what clinical data it has that is responsive to Ectosense's requests, produced the clinical data that it is amenable to producing, object to whatever it believes is objectionable, and explain to the Court why whatever clinical data is being withheld should not be produced. Instead, Itamar believes it is appropriate for a discovery "response" to object and ask the requesting party to specify what data the producing party might have. Itamar of course uses different principles for its own discovery requests.

     **D.**    **Itamar's Burden Objection is Further Negated by its Data Retention Obligations**.

Itamar's burden objections are negated by Itamar's legal obligations to retain clinical data. Ectosense explained in its conferral letter that: "Itamar is a heavily regulated company both in the United States and in Europe. Assuming Itamar is in compliance with its regulatory obligations, it should have retained all of the clinical data sought." **Ex. B**. Bearing on both Itamar's objections about producing sensitive information as well as some of the older clinical data, Ectosense pointed out that Itamar had legal obligations to retain data in a way that protected confidentiality rights, in both the United States, and in Europe:

> Given the U.S. HIPAA and post-market surveillance obligations, as well as the European records retention and post-market surveillance obligations we find it unlikely that Itamar has any meaningful burden here at all. Under FDA regulations,

medical device manufacturers who enjoy 510(k) clearance as Itamar does for all of its WatchPAT devices, Itamar must conduct post market surveillance and preserve its clinical testing data. *See* https://www.fda.gov/medicaldevices/device-advice-comprehensive-regulatory-assistance/postmarket-requirements-devices. If Itamar is complying with its U.S. HIPAA and post-market surveillance obligations, it must have the clinical data in a reasonably accessible format that is either already stored in a de-identified manner, or that can be readily processed to strip PHI. It is inconceivable that Itamar would not have an efficient method of processing clinical data to remove PHI as a part of its normal business practice and compliance with U.S. regulatory obligations. Moreover, given Itamar's presence in Europe and the fact that Itamar is certified to operate in Europe, Ectosense believes that Itamar also complies with the European Medical Device Regulation ("MDR." *See* Regulation (EU) 2017/745 of the European Parliament and of the Council of 5 April 2017 on medical devices, amending Directive 2001/83/EC, Regulation (EC) No 178/2002 and Regulation (EC) No 1223/2009.) Under the MDR, medical device manufacturers are obligated to maintain documented records of clinical data in support or in defiance of their cleared scientific claims.

**Ex. B**. Itamar has never responded to these points, but is steadfastly refusing to produce any clinical data.

Itamar knows that it possesses clinical data that undermines its marketing claims, and simply does not want that data to come to light. Itamar wants to paint a narrative that Ectosense is the bad actor here and is refusing to produce the very data that evaluates its present-day marketing claims. Ectosense asked for five categories of documents and clinical data: (1) Clinical Study Data (several different types); (2) materials created to discus the results of Benchmark Experiments; (3) correspondence and documents exchanged with review boards or committees about Itamar's clinical studies; (4) correspondence and documents exchanged with third parties discussing whether or not to publish clinical data, or the results of analysis of clinical data, and correspondence with third parties Itamar sponsored; and (5) communications between Itamar and clinical study investigators regarding Itamar's representations about how WatchPAT performed. Taking these narrow request together with instructions and definitions that narrow them even further, there should not be any real issue here with producing what Ectosense has been asking for since April of 2021.

Ectosense requests the Court compel Itamar to produce responsive materials immediately, in the format requested, award Ectosense its attorneys' fees, and award any other such relief that this Court deems appropriate.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for Ectosense, Seth J. Donahoe, conferred with counsel for Itamar, both in writing and telephonically. I have attached hereto a copy of the conferral correspondence that I sent, and that was discussed over the phone. The parties were unable to resolve the relief requested herein.

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 24th day of September 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/   Seth J. Donahoe*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
B. George Walker, Esq.
Florida Bar No. 0071049
bgw@trippscott.com (primary)
sxc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

## SERVICE LIST
## CASE NO: 20-cv-60719-WPD

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL  33301<br>Telephone:  (954) 525-7500<br>Telefax:  (954) 761-8475<br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN  55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>***Counsel for VirtuOx Inc.***<br><br>Jonathan B. Morton<br>Florida Bar No. 956872 |

|  | Jonathan.Morton@klgates.com<br>**K&L Gates LLP**<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |
|---|---|