IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and VIRTUOX, INC.,

        Defendants.

_____/

Case No. 20-cv-60719
DIMITROULEAS/SNOW

**PLAINTIFF ITAMAR MEDICAL LTD.'S RESPONSES AND OBJECTIONS TO DEFENDANT ECTOSENSE NV'S SECOND REQUEST FOR PRODUCTION (CLINICAL DATA)**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Itamar Medical Ltd. ("Itamar"), by its attorneys, responds and objects as follows to the Second Request for Production (each a "Request" and collectively, the "Requests") of Defendant Ectosense *nv* ("Ectosense").

**PRELIMINARY STATEMENT**

The responses set forth below are based upon a reasonable and diligent search of the information presently in the possession, custody, and control of Itamar, and no incidental or implied admissions are intended. These responses are provided without prejudice to Itamar's right to modify, amend, or supplement these responses if additional facts or information come to its attention in the course of Itamar's continuing investigation. This reservation, however, is not to be construed as an undertaking by Itamar of an affirmative duty to alter or supplement these responses, except as otherwise required by law or the Federal Rules of Civil Procedure. Itamar objects to the Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine.

4841-9785-0868.1

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Itamar objects to the Definitions and Instructions to the extent they seek to impose obligations beyond the Federal Rules of Civil Procedure. Based on representations by Ectosense's counsel that this approach was negotiated between Ectosense and Itamar's prior counsel, Itamar will seek to produce responsive, non-privileged documents and Clinical Data in accordance with the Definitions and Instructions, and will meet and confer with Ectosense if doing so will present an undue burden disproportionate to the needs of the case.

**RESPONSES AND OBJECTIONS TO REQUESTS**

Without waiving its objections to Ectosense's Definitions and Instructions, Itamar objects and responds to each Individual Request as follows:

**REQUEST NO. 1:**

Produce all Clinical Study Data, including any Clinical Line Data; Clinical Raw Data resulting from a Benchmark Experiment; all PMS Reports that refer to any Benchmark Experiment; Recording Data; Annotations Data; Information Tables; Enhanced Manual Analyses; BD Analyses; scoring methodologies, information, and results; and Latest Released Version Information Table, for the following studies:

A. in which Itamar or a third-party compared WatchPAT against the polysomnography device, and/or NightOwl;

B. in relation to WatchPAT's purported ability to diagnose obstructive sleep apnea and/or central sleep apnea patients by estimation of the Apnea-Hypopnea-Index ("AHI");

C. in relation to WatchPAT's purported ability to determine "true sleep time;"

D. in relation to WatchPAT's purported ability to determine "real sleep time;"

E. in relation to WatchPAT's purported ability to determine "actual sleep time;"

F. in relation to WatchPAT's purported ability to accurately determine complete "sleep architecture" and "all sleep stages;"

G. in relation to WatchPAT's purported ability to accurately estimate Rapid Eye Movement ("REM") time;

H. in relation to WatchPAT's purported ability to accurately estimate the REM-AHI;

I. in relation to WatchPAT's purported ability to accurately estimate "light sleep;"

J. in relation to WatchPAT's purported ability to accurately estimate "deep sleep;"

K. in relation to WatchPAT's purported ability to accurately determine the percentage of sleep time in "Cheyne-Stoke-respiration" ("%CSR");

L. underlying your claim that WatchPAT has the "accuracy of the PSG," or is "as accurate as polysomnography," or is "as close as you can get to polysmnography" ("PSG") or similar claims;

M. underlying your claim that "accuracy of the WatchPAT is in the 90% range," or that "the accuracy of the WachPAT in detecting sleep disordered breathing events and sleep apnea indices and sleep staging ranges at 90% accuracy," or similar claims;

N. underlying your claim that the WatchPAT calculates an "AHI" based on the AASM's definition of "sleep time," instead of a Respiratory Event Index, or REI, based on the AASM's definition of "Monitoring Time;"

O. underlying your claim that WatchPAT's True Sleep Time calculation is unique when compared to other HSAT devices, and "mitigates a high rate of misdiagnosis," or "prevents up to

20% misdiagnosis," or similar claims;

P. underlying your claim that "among the different HSAT devices available on the market, WatchPAT is the only FDA cleared device that reliably measures total sleep time;"

Q. underlying your claim that the WatchPAT's sleep stages are "incredibly accurate," or that WatchPAT provides a "precise hypnogram," or "really good reliable presentation of sleep architecture," or similar claims;

R. underlying your claim that the WatchPAT can avoid a "risky misdiagnosis" of not correctly having determined the REM sleep stage dependency of a patient's sleep disordered breathing;

S. underlying your claim that the results obtained from Ioachimescu's October 2020 paper ("Performance of peripheral arterial tonometry-based testing for the diagnosis of sleep apnea in large sleep clinic cohort") "differ significantly from all other published PAT-apnea-hypopnea (AHI) validation studies" (see, https://doi.org/10.5664/jcsm.9216 );

T. underlying your claim that WatchPAT is the "most accurate HSAT on the market;"

U. provided by third parties to Itamar Medical that indicates a 4-class categorization accuracy (i.e. no, mild, moderate, severe sleep apnea) of the WatchPAT's AHI estimate against the gold-standard PSG -derived AHI below 85%;

V. provided by third parties to Itamar Medical that indicates correlation of the WatchPAT's AHI estimate against the gold-standard PSG-derived AHI below 90%;

W. provided by third parties to Itamar Medical that indicates a correlation between WatchPAT's "true sleep time" and a gold-standard EEG-derived sleep time of less than 95%.

**RESPONSE TO REQUEST NO. 1:**

Itamar objects to this Request as unduly burdensome, overbroad, oppressive, and seeking information irrelevant and disproportional to the needs of this case, to the extent that it seeks all Clinical Data for studies captured by one of the 23 sub-parts of the Request and thus seeks all of the Clinical Data for all studies conducted by Itamar or third parties with no limitation as to time or subject matter, and seeks "all" Clinical Data for each category of studies instead of limiting the Request to studies sufficient to show, for instance, "WatchPAT's purported ability to diagnose obstructive sleep apnea and/or central sleep apnea patients by estimation of the Apnea-Hypopnea-Index ("AHI")", or limiting the Request to the most recent or most relied-upon studies for each category. *See e.g., Dixon v. Bank of Am., N.A.*, No. 19-80022-CIV, 2019 WL 4955211, at *3 (S.D. Fla. Oct. 8, 2019) (denying motion to compel responses to discovery requests as irrelevant and disproportional); *Cerrato v. Nutribullet*, LLC, 8:16-cv-3077-T-24JSS, 2017 WL 3608266, at *1 (M.D. Fla. Aug. 22, 2017) (sustaining the defendant's relevancy and overbreadth objections as to plaintiff's request for "all accident reports and records relating to any injury allegedly caused by the product"); *Guerrero v. Apple Computer, Inc.*, No. 18-CV-22654, 2019 WL 1333735, at *2-3 (S.D. Fla. Feb. 12, 2019) (finding plaintiff's discovery for "every instance of any products manufactured by [the] [d]efendant using the battery found in the [p]roduct, where any of the products smoked, exploded or overheated" overbroad and exceeded the scope of relevance).

Itamar has identified at least 145 publications related to WatchPAT conducted over the past 20 years. Out of these publications, only seven studies were sponsored by Itamar, and two of the sponsored studies are from more than 15 years ago. The remaining studies were not sponsored by Itamar, and thus Itamar does not own or control the data. For the sponsored clinical studies, before being able to produce the Clinical Data, Itamar will need to apply to the Institutional Review

Board for each trial to request their approval for use of the data that is outside the use that was permitted under the Institutional Review Board approval for each trial. Itamar has also identified 1,121 publications including WatchPAT and EndoPAT, of which 145 relate solely to WatchPAT. Before being able to provide any underlying data for any of these publications, which Itamar may not have in its possession or custody, Itamar would need to go to each investigator or institute to ask for consent and for access to the data. Itamar is analyzing these publications to determine which publications were sponsored by Itamar such that Itamar may have some rights to the data. In instances where Itamar does have possession or some rights to data, it typically does not own or have the right to share personal or medical information. Any production of Clinical Data would need to exclude any personal or medical information, and implementing a de-identification process will be a significant burden on Itamar, particularly given the volume of publications sought by this Request. Because the Request seeks Clinical Data provided by third parties, and is not limited to Clinical Data in studies sponsored by Itamar, Itamar also objects to the Request to the extent it seeks Clinical Data outside of Itamar's possession, custody, and control. The Request is not limited to Clinical Data relevant and proportional to the needs of the case; while Ectosense has stated that it is seeking Clinical Data for studies relating to the accuracy of WatchPAT's measurements, a subset of studies should be sufficient for this purpose. Itamar also objects to the Request to the extent it seeks information that would violate the privacy rights of third parties; consistent with Instruction I.A., to the extent Itamar determines that Clinical Data cannot be shared for privacy related information, Itamar will provide the requested privacy objection.

Subject to the foregoing objections, Itamar will meet and confer with counsel for Ectosense to narrow the Request to a smaller universe of Clinical Data that is both proportionate to the needs of the case and relevant to the case. Once the parties agree on a smaller universe, Itamar will

4841-9785-0868.1

produce the Clinical Data in its possession, custody, or control.

**REQUEST NO. 2:**

Produce all versions of summaries, reports, articles, or documents discussing the results of Benchmark Experiments.

**RESPONSE TO REQUEST NO. 2:**

Itamar objects to this Request as unduly burdensome, overbroad, oppressive, and seeking information irrelevant and disproportional to the needs of this case, to the extent that it seeks all versions of summaries, reports, articles, or documents discussing the results of the Benchmark Experiments, with no limitation as to time or subject matter. *See e.g., Dixon*, 2019 WL 4955211, at *3; *Nutribullet*, 2017 WL 3608266, at *1; *Guerrero*, 2019 WL 1333735, at *2-3. Itamar has identified at least 145 publications related to WatchPAT conducted over the past 20 years. Out of these publications, only seven studies were sponsored by Itamar, and two of the sponsored studies are from more than 15 years ago. The remaining studies were not sponsored by Itamar, and thus Itamar does not own or control the data. For the sponsored clinical studies, before being able to produce the Clinical Data, Itamar will need to apply to the Institutional Review Board for each trial to request their approval for use of the data that is outside the use that was permitted under the Institutional Review Board approval for each trial. Itamar has also identified 1,121 publications including WatchPAT and EndoPAT, of which 145 relate solely to WatchPAT. Itamar is reviewing the clinical trials and publications to determine which ones constitute a Benchmark Experiment. Because the Request is not limited to Benchmark Experiments fully sponsored by Itamar, Itamar also objects to the Request to the extent it seeks documents outside of Itamar's possession, custody, and control. The Request is not limited to Benchmark Experiments relevant and proportional to the needs of the case; Benchmark Experiments are not

limited to comparisons with Ectosense's products, but rather all third party products or devices. Itamar also objects to the extent that any versions of the documents sought by the Request might be protected by the attorney-client privilege, work product doctrine, or other privileges.

Subject to the foregoing objections, Itamar will meet and confer with counsel for Ectosense to narrow the Request to a smaller universe of Benchmark Experiments that is both proportionate to the needs of the case and relevant to the case. Once the parties agree on a smaller universe, Itamar will produce non-privileged responsive documents in its possession, custody, or control.

**REQUEST NO. 3:**

Produce all correspondence and documents exchanged with an institutional review board or ethics committee discussing or pertaining to clinical studies conducted or proposed by Itamar.

**RESPONSE TO REQUEST NO. 3:**

Itamar objects to this Request as unduly burdensome, overbroad, oppressive, and seeking information irrelevant and disproportional to the needs of this case, to the extent that it is not limited by time, is not limited by product, is not limited by subject matter of the correspondence and documents beyond "discussing or pertaining to clinical studies . . ." and includes not only studies conducted but also seeks all studies proposed by Itamar, which will be challenging to identify. *See e.g., Dixon*, 2019 WL 4955211, at *3; *Nutribullet*, 2017 WL 3608266, at *1; *Guerrero*, 2019 WL 1333735, at *2-3. Itamar has identified seven clinical studies sponsored by Itamar, and two of the sponsored studies are from more than 15 years ago. Itamar has also identified 1,121 publications including WatchPAT and EndoPAT, of which 145 relate solely to WatchPAT. Itamar may also need to seek approval of the institutional review boards or ethical boards before it can produce documents and communications exchanged with them. Not all correspondence and documents "discussing or pertaining to clinical studies conducted or proposed

4841-9785-0868.1

by Itamar" will have any relevance to the subject matter, claims, and defenses in the case. Itamar also objects to the Request to the extent that it seeks documents protected by the attorney client privilege, the work product doctrine, the right of privacy, or other privileges.

Subject to the foregoing, Itamar will meet and confer with Ectosense's counsel to narrow this Request. Itamar proposes limiting the Request to only clinical studies conducted by Itamar, rather than any proposed studies that were not conducted, and also proposes discussing limitations to the subject matter of the documents and correspondence sought in the Request. Once the parties agree on a narrowed request, Itamar will produce non-privileged responsive documents in its possession, custody, or control.

**REQUEST NO. 4:**

Produce all correspondence and documents exchanged with any persons or entities between Itamar and any clinical studies investigators pertaining to whether or not to publish Clinical Data or results or statistics derived from Clinical Data, and all correspondence and documents with any persons or entities which Itamar sponsors, or is sponsored by, discussing or pertaining to clinical studies conducted or proposed by Itamar.

**RESPONSE TO REQUEST NO. 4:**

Itamar objects to this Request as unduly burdensome, overbroad, oppressive, and seeking information irrelevant and disproportional to the needs of this case, to the extent that it seeks correspondence and documents with any clinical studies investigators and any persons or entities Itamar sponsors or is sponsored by, and is not limited to time, by product, or to relevance to the subject matter, claims, and defenses of the case. *See e.g., Dixon*, 2019 WL 4955211, at *3; *Nutribullet*, 2017 WL 3608266, at *1; *Guerrero*, 2019 WL 1333735, at *2-3. Itamar has identified 1,121 publications including WatchPAT and EndoPAT, of which 145 relate solely to WatchPAT,

which means this Request seeks communications for a 20 year time period relating to more than a thousand publications. Itamar also objects to the portion of the Request seeking "correspondence and documents with any persons or entities which Itamar sponsors, or is sponsored by, discussing or pertaining to clinical studies conducted or proposed by Itamar," as it is not limited to a proportional subject matter, as many documents and correspondence pertaining to clinical studies will have no relevance to the subject matter, claims, or defenses in the case, and clinical studies proposed by Itamar that were never conducted will be difficult to identify. Itamar may also need to seek approval of the clinical study investigators or other persons or entities sought by the Request before it can produce documents and communications exchanged with them. Itamar also objects to the Request to the extent that it seeks documents protected by the attorney client privilege, the work product doctrine, the right of privacy, or other privileges.

Subject to the foregoing, Itamar will meet and confer with Ectosense's counsel to narrow this Request. Itamar proposes limiting the second portion of the Request to only clinical studies conducted by Itamar, rather than any proposed studies that were not conducted, and also proposes discussing limitations to the time and subject matter of the documents and correspondence sought in the second portion of the Request. Once the parties agree on a narrowed request, Itamar will produce non-privileged responsive documents in its possession, custody, or control.

**REQUEST NO. 5:**

Provide all documents constituting or relating to communication between Itamar and clinical study investigators regarding Itamar's representation of clinical performances of WatchPAT.

**RESPONSE TO REQUEST NO. 5:**

Itamar objects to this Request as unduly burdensome, overbroad, oppressive, and seeking

4841-9785-0868.1

information irrelevant and disproportional to the needs of this case, to the extent that it seeks correspondence and documents with any clinical study investigators, and is not limited to time or to relevance to the subject matter, claims, and defenses of the case.  *See e.g., Dixon*, 2019 WL 4955211, at *3; *Nutribullet*, 2017 WL 3608266, at *1; *Guerrero*, 2019 WL 1333735, at *2-3. Itamar has identified 1,121 publications including WatchPAT and EndoPAT, of which 145 relate solely to WatchPAT, which means this Request seeks communications for a 20 year time period relating to at least 145 publications.  Itamar may also need to seek approval of the clinical study investigators or other persons or entities sought by the Request before it can produce documents and communications exchanged with them.  Itamar also objects to the Request to the extent that it seeks documents protected by the attorney client privilege, the work product doctrine, the right of privacy, or other privileges.

Subject to the foregoing, Itamar will meet and confer with Ectosense's counsel to narrow this Request.  Itamar proposes discussing limitations to the time subject matter of the documents and correspondence sought in the second portion of the Request.  Once the parties agree on a narrowed request, Itamar will produce non-privileged responsive documents in its possession, custody, or control.

4841-9785-0868.1

Dated: August 4, 2020

Respectfully submitted,

*/s/ Laura Ganoza*
**FOLEY & LARDNER LLP**
Laura Ganoza, Esq.
Florida Bar No. 0118532
lganoza@foley.com
atownsend@foley.com
Ana Romes, Esq.
Florida Bar No. 101179
aromes@foley.com
avargas@foley.com
Hawwi W. Edao
Florida Bar No. 1026550
hedao@foley.com
hmoreno@foley.com
One Biscayne Tower, Suite 1900
2 South Biscayne Boulevard
Miami, Florida 33131
Tel.: (305) 482-8400

*Counsel for Plaintiff*

4841-9785-0868.1

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on the 4th day of August 2021, a true and correct copy of the foregoing was electronically served on all counsel of record as listed in the Service List below.

                                             */s/ Jessica N. Walker*

                                             Jessica N. Walker

## SERVICE LIST

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 20-cv-60719- DIMITROULEAS/SNOW

**TRIPP SCOTT, P.A.**
Paul O. Lopez, Esq.
eservice@trippscott.com
pol@trippscott.com
sxc@trippscott.com

Seth J. Donahoe, Esq.
eservice@trippscott.com
sjd@trippscott.com
sgc@trippscott.com

B. George Walker, Esq.
eservice@trippscott.com
bgw@trippscott.com
sxc@trippscott.com

*Counsel Ectosense NV*

**GREENBERG TRAURIG, LLP**
Paul B. Ranis, Esq.
ranisp@gtlaw.com
scottlaw@gtlaw.com
FLService@gtlaw.com

*Co-Counsel Ectosense NV*

**FOLEY & LARDNER LLP**
Laura Ganoza, Esq.
lganoza@foley.com
atownsend@foley.com
Ana Romes, Esq.
aromes@foley.com
avargas@foley.com
Hawwi Edao, Esq.
hedao@foley.com
hmoreno@foley.com
Jessica N. Walker, Esq.
*(pro hac vice to be filed)*
jwalker@foley.com

*Counsel for Plaintiff Itamar Medical Ltd.*

**GK ADVISORY**
Anna Adamsky, Esq.
*(pro hac vice filed)*
anna@gk-ad.com

Gene Kleinhendler, Esq.
*(pro hac vice filed)*
gene@gk-ad.com

*Co-Counsel for Plaintiff Itamar Medical Ltd.*

**K&L GATES LLP**
Jonathan Bart Morton
jonathan.morton@klgates.com
Darlene F. Ghavimi, Esq.
darlene@ghavimi@klgates.com
(*admitted pro hac vice*)
Stewart Mesher
stewart.mesher@klgates.com
(*admitted pro hac vice*)

4841-9785-0868.1

*Counsel for Defendant VirtuOx, Inc.*