UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants     /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

**ECTOSENSE NV'S AMENDED[1] MOTION TO OVERRULE ITAMAR'S REMAINING OBJECTIONS TO ECTOSENSE'S FIRST REQUEST FOR PRODUCTION, AND TO COMPEL ITAMAR TO PRODUCE DOCUMENTS[2]**

---

1.     The original version of this Amended Motion inadvertently exceeded the page limits, which appears to have occurred as a result of conversion to a pdf format. No content was added here.
2.     Itamar's Amended Responses and Objections to Ectosense's First Requests for Production are the subject of this motion, and are attached as **Exhibit A.**

This motion seeks to resolve Itamar's remaining objections. To the extent any of Itamar's objections remain to be resolved, Itamar should have complied with the Court's order by producing, or stating it will produce, documents within the scope it finds non-objectionable.

A. **Itamar's Broadly-Applied Scope Based Objections Are Not Materially in Dispute, and the Court Should Overrule Any Which Remain.**

Itamar makes scope objections: geographical, temporal, and an objection to phrases such as "produce any and all documents [in a category]." Unless a request asks about non-U.S. issues, or a request is based on allegations or positions implicating non-U.S. issues, Ectosense agreed with Itamar's prior counsel the default geographic scope should be the U.S. Unless circumstances dictate otherwise, the parties should expect discovery bearing on the parties' U.S. activities; documents created in the U.S. pertaining to the parties and issues in the case; and documents about the products at issue, and Itamar's interactions with third parties about them, on issues related to the U.S. market or regulations. This case raises U.S. law, and is about matters affecting the U.S. market. It reasonable to impose a geographic scope of the U.S. as a default.

In response to Itamar's objections to terms such as "any and all," Ectosense narrowed the applicable requests. With respect to all scope objections, Ectosense told Itamar it should have produced, or agreed to produce, unobjectionable core documents responsive to the request's substance, which the Court ordered. [D.E. 67].

> Your objection to the terms "any" or "all" is well-taken, as I told you. . . . I asked if you would . . . produc[e] in response to a narrowed scope [for] [those] requests. I . . . believe you were obligated [by the] discovery orde[r] to produce . . . within the scope you considered reasonable, if you objected based on scope. My interpretation . . . is that it extends to temporal, and in this case, the products relevant to the lawsuit— WatchPAT, EndoPAT, CloudPAT, and zzzPAT[.] . . . [Y]ou raised geographic scope . . . but I believe we told you. . . the geographic scope was agreed to with Latham as the U[.]S[.] . . . in many instances you did not produce or indicate you would . . . in a scope you considered reasonable[.][3]

This implicates Itamar's claims it doesn't know the subject matter of many requests, even where a request references a party's products, which most do. Ectosense agreed with Itamar's prior counsel the products at issue are Ectosense's NightOwl products, and Itamar's WatchPAT, EndoPAT, CloudPAT, and zzzPAT products. Itamar put the functions and characteristics of each at issue. Itamar must establish each one of these products enjoy trademark protections, and that

---

3.   *See,* **Exhibit B,** September 23, 2021 Conferral Letter.

1

Ectosense's product infringes on the trademarks. Conversely, the functions and characteristics of the devices are important to Ectosense. Ectosense must demonstrate its product does not infringe Itamar's trademarks, and Ectosense needs to demonstrate Itamar's representations about Itamar's products are false or misleading. So, Itamar should assume requests refer to those products.

Itamar also asserts a hybrid scope/burden objection. Itamar refused to produce where it disagreed with the temporal scope, or limited the temporal scope to a period deemed acceptable. The parties' conferrals resolved most temporal objections. Itamar created the remaining issues leading to its objections. Itamar filed this case, alleged details of the superlative qualities of its products, explicitly relying and basing allegations on historical data. Some documents have been around longer, but that should not be an issue. Itamar has a legal duty to maintain most documents Ectosense seeks.[4] Maintaining them as reasonably accessible and producible is expected in the medical device industry. Data retention laws aid regulators outside of litigation. If Itamar complied with its obligations before this lawsuit, it should not have a problem producing the documents.

### B.   Itamar's Remaining Specific Objections Are Untenable, or Unreasonable.

In light of the assumptions on scope, Itamar's specific objections are addressed, *seriatim*:

RFPs 10, 11, and 15: 10 and 11 ask for documents evidencing usage of the term "PAT" and PAT®" and 15 asks for scientific papers evidencing Itamar use of the term "peripheral arterial tone." Itamar unilaterally tried to limit its production obligations temporally, to 2010 onward, the date Itamar received a particular trademark. That misses the point, probably intentionally. Ectosense is asking Itamar for documents evidencing how Itamar used these terms, because it will demonstrate that Itamar itself uses these terms in a manner other than purely as a reference to its own products exclusively. Itamar's attempt to limit the request to 2010 onward seeks to avoid producing from a time frame containing probably the most relevant documents to Ectosense— before Itamar had a trademark on "PAT," if Itamar used these terms, it could only have been in reference to products it was developing, or in reference to "PAT" in the sense of PAT being a physiological signal capable of being measured. Itamar alleges PAT is exclusively a reference to Itamar products, but this completely ignores nearly a century of literature pre-existing Itamar.  Itamar should be ordered to produce documents reflecting how it used these terms from the relevant date in its own pleadings, and onward: 1997. Itamar alleged "[i]n or around 1997, Itamar coined the term

---

4.   *See*, Ectosense's Motion to Compel filed contemporaneously pertaining to Itamar's Responses and Objections to Ectosense's Second Request for Production (Clinical Data).

2

'Peripheral Arterial Tonometry or Tone' . . . Itamar and its products have been and continue to be exclusively associated with all uses of the PAT mark, PAT term, and Peripheral Arterial Tonometry or Tone terms for the last two decades." [D.E. 121, ¶16]. Itamar made that allegation, but now claims that time period is overbroad. Ectosense doesn't have to take Itamar's allegations as true, and is entitled to test them, so it needs documents from the time frame described. In conferrals, Ectosense clarified that it was not asking for every paper or email containing these terms, but instead, documents reflecting the different ways Itamar historically used these terms.

RFP 29:   29 asks for financial documents relating to revenues and profits derived from the Itamar products at issue which use the trademarks at issue. Ectosense needs these to assess the impact of Ectosense's entry into the marketplace on Itamar's income stream. Ectosense's product entered the U.S. market in 2020, so in conferrals, Ectosense offered to narrow the temporal scope to 2016 onward. This is a sufficient window to compare recent historical financial performance, with later performance. This is relevant to Itamar's damages. Ectosense suggested that consolidating (as opposed to consolidated)[5] financial workpapers and documents which reflected the relevant finances pertaining to the relevant products would probably suffice, because documents of that type should provide separate financial information for each product at issue. Ectosense has no objections to Itamar redacting financial material that is not related to the products.

RFP 32 and 33:   32 seeks Itamar advertising using "PAT," "PAT®," or any of the PAT Marks. 33 seeks advertising analytics. Itamar stated it would produce documents sufficient to show advertising of Itamar products "using its family of PAT® marks in the United States." If Intended to operate as a *sub silentio* objection to producing materials using the term "PAT" (as opposed to that term with a trademark symbol), the Court should order Itamar to also produce advertisements using "PAT" without a trademark symbol. This may support Ectosense's assertions that even Itamar uses the term "PAT" in reference to the physiological signal known as "PAT," and not just Itamar's own products. The analytics requested should reflect the impact of Itamar's advertising, and when viewed over a time frame before and during competition by Ectosense, may show how Ectosense's entry into the market influenced public perception of Itamar's advertising.

RFP 39 and 40:   39 and 40 seek Itamar's copies of allegedly false or misleading Ectosense advertising, and documents supporting its allegations Ectosense recently engaged in a U.S.

---

5.   Should the Court compel production, Ectosense requests the Court distinguish between "consolidated" financial returns and "consolidating" financial work papers and documents.

3

marketing campaign, evidencing to whom Itamar believes Ectosense sent materials. Itamar asserted producing every paper or email was a burden, or implicated privilege. Ectosense clarified it did not seek privileged materials. It sought documents evidencing substantive communications between Itamar and third parties about Ectosense marketing, and documents suggesting Itamar or a third party viewed Ectosense materials as false or misleading, or evidencing someone was misled. This issue may be resolved. If not, the Court should order production of such documents.

<u>RFP 48</u>: 48 seeks documents supporting Itamar's allegations usage of the terms "peripheral arterial tone or tonometry" dates back to 1990 and 1993, but they didn't become widely used until 2000, when they began to refer to Itamar products; documents supporting the allegations the <u>only</u> usage of such terms by medical articles was to reference Itamar products, not generically or in a commonplace way; and documents supporting the allegations that only one Ectosense study refers to Itamar technology in relation to Ectosense's product. Itamar objects a time frame Itamar put at issue: "The terms 'peripheral arterial tone or tonometry' were used twice in 1990 and sporadically in 1993, without becoming a common term. Extensive use in relation to Itamar's PAT® based devices started in 2000, as demonstrated by hundreds of usages in more than 500 publications . . . [o]nly in October 2018 did one study (promoted by Ectosense) refer to Itamar's PAT® technology in relation to Ectosense's device[.]" [D.E. 121, ¶24]. If Itamar has documents reflecting the frequency and way the terms were used in 1990 and 1993, or if its allegations are based on readily available documents, it should produce them. If Itamar asserts few or no independent studies, and only Ectosense studies use the terms to refer to Ectosense's product, Itamar should produce them.

<u>RFP 69</u>: 69 seeks Itamar's engagement/retainer agreements, and billing/payment records, from this case. Itamar asserts it "will not produce any documents in response to this Request" because it conflicts with "[Rule] 54 (d)(2), and the procedure in the Local Rules for motions for attorney's fees, and Itamar will instead comply with the procedures in Local Rule 7.3 after a judgment is entered in its favor." Rule 54(d)(2) doesn't bar discovery on fees during pending litigation. It contemplates the opposite, stating a motion for fees may be made during the pendency of the case, if fees are part of the substantive component of damages sought. Itamar seeks fees under the Lanham Act, if it establishes this is an "exceptional" case, linking its fees requests to its substantive claims. Rule 54 speaks to when a <u>motion</u> for fees is filed, not the timing of discovery on fees. Until judgment, fee entitlement is usually unclear. The exception is, "unless the substantive law requires those fees to be proved at trial as an element of damages." The local rule

4

Itamar cites doesn't limit when fees may be sought, or discovery on them, to post-judgment; quite the opposite. It states fees claims can arise interlocutorily. "This rule provides a mechanism to assist parties in resolving attorneys fee and costs disputes by agreement." Assessing entitlement and reasonableness of fees requires the supporting documents. Retainer/engagement agreements are also relevant to Mr. Kleinhendler's issues. He swore under oath he wasn't retained in connection with this case; Ectosense has a right to confirmation with his retainer and engagement agreements. He characterizes his conduct and the timeline in a certain way under oath; his billing entries will shed light on the accuracy of his statements. If Ectosense cannot initially view billing entries due to work-product concerns, the entries should be viewed *in camera* to assess if the crime-fraud rule applies. If the crime-fraud rule may apply, the burden shifts to the respondent to defend privilege.

> The [issue] is whether . . . the crime-fraud [rule] must be established by "independent evidence" (*i.e.,* without reference to the content of the contested communications themselves), or, alternatively, whether the applicability . . . can be resolved by an *in camera* inspection of the allegedly privileged material. We reject the "independent evidence" approach[.] [T]he district court. . . at the behest of the party opposing [ ] privilege, may conduct an *in camera* review[.] Nor does it make sense . . . once the attorney-client nature of the contested communications is established, [that] those communications [are] *presumptively* privileged . . . until the privilege is "defeated" . . . by proof that the communications took place in [ ] planning future crime or fraud[.] [N]o prior holding of this Court requires the imposition of a strict progression of proof in crime-fraud cases. We see no basis for holding [ ] the [materials] must be deemed privileged . . . while the question of crime or fraud remains[.] If the *proponent* of the privilege [can] sustain its burden only by submitting the communications to the court for *in camera* review . . . the court is not required to avert its eyes [ ] once it concludes that the communication would be privileged, if the court found the crime-fraud exception inapplicable[.] [T]he court [can] consider the same communications to determine if the opponent of the privilege has established that the crime-fraud [rule] applies.

*U.S. v. Zolin*, 491 U.S. 554, 556-57, 567–68 (1989). The propriety of Mr. Kleinhendler's conduct is at issue; the records will reflect motives and conduct. He gave an affidavit, and Itamar used it to support its positions. The affidavit topics are no longer privileged, regardless of the crime-fraud rule. "A party 'waives its attorney-client privilege when it injects into this litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct." *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001).

The Court should overrule the objections, order production, and issue all other just relief.

5

**CERTIFICATE OF GOOD FAITH CONFERENCE**

I hereby certify that counsel for Ectosense, B. George Walker, conferred with counsel for Itamar, Laura Ganoza and Jessica Walker, for several hours, on more than one occasion during the week beginning September 19, 2021. The parties also exchanged several detailed good faith conferral letters to narrow the issues. The conferral process was productive, and narrowed the issues before the Court substantially.

*/s/ B. George Walker*

**CERTIFICATE OF SERVICE**

Counsel for Ectosense *nv* hereby certifies that on the 27th day of September 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/   B. George Walker*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
B. George Walker, Esq.
Florida Bar No. 0071049
bgw@trippscott.com (primary)
sxc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

**SERVICE LIST**
**CASE NO: 20-cv-60719-WPD**

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL  33301<br>Telephone:  (954) 525-7500<br>Telefax:  (954) 761-8475<br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN  55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>***Counsel for VirtuOx Inc.***<br><br>Jonathan B. Morton<br>Florida Bar No. 956872<br>Jonathan.Morton@klgates.com<br>**K&L Gates LLP** |

|  | Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |
|---|---|