UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ITAMAR MEDICAL LTD.,

        Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

        Defendants      /

Case No. 20-60719-CIV-DIMITROULEAS/SNOW

**ECTOSENSE'S AMENDED[1] MOTION TO OVERRULE ITAMAR'S OBJECTIONS TO ECTOSENSE'S THIRD REQUEST FOR PRODUCTION, AND TO COMPEL ITAMAR TO PRODUCE DOCUMENTS[2]**

---

1. The original version of this Amended Motion inadvertently exceeded the page limits, which appears to have occurred as a result of conversion to a pdf format. No content was added here.
2. Itamar's Responses and Objections to Ectosense's Third Request for Production are the subject of this motion, and are attached as **Exhibit A.**

### A. Itamar's Generalized Scope-Based Objections Create an Artificial Dispute.

Itamar objects to materials Ectosense's Third Request for Production seeks, which Itamar should want to produce for its own case. Most documents at issue are sought to test Itamar's scientific assertions. Others pertain to Itamar's interactions with non-parties about Ectosense or the products at issue. All documents sought are relevant to Itamar's claims. Many are also relevant to Ectosense's defenses and counterclaims. The requests are not controversial, because they were propounded to explore Itamar's own allegations, and Itamar's statements outside this lawsuit.

Similar to Itamar's objections to the First RFPs, Itamar makes geographic, temporal, and subject-matter scope-based objections. Ectosense incorporates its statements in the motion to compel pertaining to the First RFPs by reference.[3] Summarized, unless a request indicates otherwise, the parties already agreed the scope was the parties' U.S. activities; documents created in the U.S. about the parties the issues; documents about the relevant products; and Itamar's interactions with third parties regarding them, as to issues related to U.S. markets or regulations. The products at issue are Ectosense's NightOwl, and Itamar's WatchPAT, EndoPAT, CloudPAT, and zzzPAT. The timeframe has not been agreed to for all requests. For any remaining, Itamar should produce in the timeframes described in its pleadings. As to Itamar's objections to language such as "any and all," Ectosense narrowed the applicable requests during conferrals. While Itamar is entitled to make scope-based objections, it did not comply with the Court's Order requiring production of materials within the scope Itamar deems reasonable. For almost all of requests where Itamar objects to the scope, it did not. Ectosense is now asking the Court to order Itamar to comply with an existing Order. Itamar should produce the documents, and the Court should order the same.

### B. Itamar's Specific Objections Are Largely Immaterial, and Seek to Preclude Production of Documents on Which Itamar Itself Will Have to Rely.

With the scope issues in mind, Ectosense addresses Itamar's objections *seriatim*:

RFPs 1 and 2: These seek documents authored by Itamar personnel, and refer to a list of scientific journals and authors. The list is comprised of articles pertaining to scientific issues relevant to both parties' claims about aspects of peripheral arterial tone. Itamar itself refers to many of the same

---

3. *See also*, Conferral Letter attached hereto as **Exhibit B**.

Page 1

generally to support its own pleadings: "The terms 'peripheral arterial tone or tonometry' were used twice in 1990 and sporadically in 1993, without becoming a common term. Extensive use in relation to Itamar's PAT® based devices started in 2000, as demonstrated by hundreds of usages in more than 500 publications . . . [o]nly in October 2018 did one study (promoted by Ectosense) refer to Itamar's PAT® technology in relation to Ectosense's device[.]"[D.E. 121, ¶24]. If Itamar has identified all relevant articles with enough precision to describe how "PAT" is used "in more than 500 publications," Itamar can produce documents pertaining to much smaller subsets of the same literature relevant to Ectosense's claims and defenses.

<u>RFP 14:</u>   This seeks internal approval documents which comprise or constitute requirements or rules governing the interaction of Itamar personnel with third parties, specifically with respect to Ectosense or NightOwl. (For example, if Itamar has a policy discussing what types of information can be disclosed to a clinical researcher, or if an explicit instruction was given to a non-attorney as to a statement to be made about Ectosense or NightOwl). This appears to be resolved, but is included here to preserve the issue, if not.

<u>RFPs 16, 19, and 21:</u>   These seek documents pertaining to measuring PPG dynamic range; documents analyzing the signal to noise characteristics of PPG measurement (to draw a comparison, this would be like comparing the amount of static on an old T.V. with the amount of the broadcasted program that is viewable through the static); and documents analyzing the signal to noise characteristics of WatchPAT's measurement of PAT. Both parties' products use PPG, the abbreviation for photoplethysmography, so the manner in which they do so is relevant to the lawsuit in general. It is also relevant to analyses by Ectosense's experts of the accuracy of Itamar's claims, as well as to analyses performed by its own experts. Itamar should want to produce these materials, so it can use them at trial, regardless of whether Ectosense requested them.

<u>RFP 29:</u>   This seeks Itamar documents describing third-parties' products as able to measure PAT, or as unable to measure PAT. Itamar interpreted the request as seeking any reference by Itamar to any medical device, "because a device or technology will either measure peripheral arterial tone or it will not." It is true that unrelated products, for example, a toothbrush, does not measure PAT, but that is not what was asked. The request seeks Itamar materials which explicitly discuss whether a product measures PAT, or does not measure PAT, not every reference to any product. This was clarified for Itamar during conferrals, and does not appear to be disputed any

Page 2

longer, because Itamar's counsel does not believe any products besides Itamar's and Ectosense's claim to measure PAT. It is included here to preserve the issue, if not resolved.

RFP 30:   This seeks documents demonstrating how the "sleep medicine community" understands or measures the accuracy of sleep medicine devices. In other words, the request seeks to elicit documents which persons other than Itamar and Ectosense use to benchmark sleep medicine devices. Itamar claims to not know what the term "sleep medicine community" means, or to what devices the request refers. The devices at issue are NightOwl, WatchPAT, EndoPAT, CloudPAT, and zzzPAT. Itamar refers to the "Sleep Medicine" community in its own pleadings, so its claims that it lacks knowledge of what the community is are not plausible. For example, Itamar describes "the American Academy of Dental Sleep Medicine annual meeting," and "the American Academy of Sleep Medicine," both of which are materially important to several of Itamar's primary claims— including whether Ectosense's advertisements representing compliance with AASM standards are accurate. Other than independent bodies like the AASM or American Academy of Dental Medicine, other members of the sleep medicine community would include at least the sub-divisions of the Medicare and Medicaid programs which address approved usage of sleep medicine devices; the FDA; the USPTO, to the extent it would have a position on the accuracy of various claims about intellectual property; competitors; clinical researchers; insurance company divisions responsible for assessing efficacy and determining whether a device is covered; and Itamar's own clients. This is a non-exhaustive list, and if Itamar in good faith believes additional persons are within the sleep medicine community, at least in the manner that Itamar uses that term, it should produce responsive documents pertaining to them, as well.

RFPs 33 and 34:   This seeks documents pertaining to Itamar's competitors, namely, documents reflecting their sales, and documents reflecting the number of signal recording channels a competitor's devices uses. This appears to be resolved, because Itamar's counsel does not believe any companies compete with the products at issue, and is included here to preserve the issue.

RFPs 35 and 38:   These seek diagnostic reports which include the percentages which Itamar's WatchPAT provides for Cheyne-Stokes respiration ("%SCR"), and documents demonstrating the proportion of Itamar's diagnostic reports applying AASM rules for annotating sleep hypopnea. Cheyne-Stokes respirations are an abnormal breathing pattern usually occurring during sleep, referred to as apneas, and hypopnea is a sleep breathing disorder that causes shallow breathing.

Detection and diagnoses of %CSR and hypopnea are relevant to Itamar's claims, the capabilities of Itamar's products, and the precision with which they measure these disorders.

RFP 39:   This asked for documents supporting Itamar's basic assertion that WatchPAT estimates AHI more accurately than NightOwl. AHI is the abbreviation for Apnea Hypopnea Index. These are relevant, because Itamar will have to use such documents to prove its own case, but also because Ectosense contends Itamar's claims are inaccurate.

RFPs 40 and 41:   These seek documents pertaining to specific failures of Itamar devices, and overall failure rates. Subject to the previous discussion on what the assumed scope should be generally, which addresses Itamar's geographic and temporal objections, Itamar claims that it doesn't know what the word "failure" means, nor does it know what the phrase "failure rate" means. <u>It is somewhat jarring, then, to find that Itamar had no problem answering requests for documents pertaining to specific failures of Ectosense devices, and overall failure rates, in literally the next two requests for production</u>. Itamar should use a dictionary and apply the ordinary meaning of the term. The authoritative Oxford English Dictionary defines failure as "omitting to perform something due or required," which suffices here. "Failure rate" means documents assessing the rate (i.e., the frequency) with which failures occur, for whatever reason.

RFPs 44 and 46:   These seek documents supporting Itamar's claims (*See*, [D.E. 121, ¶24] describing references to PAT "in more than 500 publications, including peer-reviewed medical studies") of peer reviewed studies demonstrating a high degree of agreement between WatchPAT's AHI estimations, and the standard PSG and sleep studies. Itamar says there are hundreds of articles which support its assertions, so it should produce them, and it should want to produce them. The fact Itamar does not want to suggest its assertions may be exaggerations.

RFPs 47-49:   These seek contracts with current or past clients in which Itamar agreed to measure "real," "accurate," and "true" sleep times, and in which Itamar agreed to demonstrate or certify WatchPAT's clinical accuracy performance. These are relevant to Ectosense's claims that Itamar's representations about the capabilities of its products are inaccurate. They are also relevant to Itamar's damages, if Itamar asserts any of these customers are now using NightOwl, and they are also relevant as to Itamar's own allegations about the capabilities and accuracy of its products.

RFPs 50 and 51:   These seek documents and correspondence relating to SEC inquiries, questions, or investigations; and documents and correspondence exchanged with the SEC, with both requests limited to such documents bearing on the "STATEMENTS AT ISSUE," a term

defined by the requests as "all allegedly false or misleading statements made by ECTOSENSE that ITAMAR identifies in its Amended Complaint" and "all allegedly false or misleading statements made by Itamar that ECTOSENSE identifies," with a list of discrete statements provided. Itamar should be required to produce any such materials, because they speak to Itamar's allegations in the case. They have also become relevant with respect to any interactions and documents involving Mr. Kleinhendler's interactions, correspondence, and documents exchanged with the SEC.

RFP 53: This seeks documents known to Itamar in which a third party uses the abbreviated term "PAT." Itamar objected to the scope and burden of the request, and tried to limit any obligation to produce to the time period after Ectosense began commercial advertisement of NightOwl. During conferrals, Itamar's counsel took the position that "searching for PAT for Ectosense, is different than searching for PAT for Itamar." That is not really the case, Itamar's counsel is simply complaining about a perceived imbalance in the volume of documents, which Ectosense proposed during conferral to resolve by providing several search strings which Itamar asked Ectosense to run across its document set, which Ectosense did in fact perform, and then told Itamar exactly what the results were. This may be resolved, but Itamar's counsel had not articulated a final position at the time of filing, so it is included here to preserve the issue.

RFP 54: This seeks documents pertaining to Itamar's marketing and advertising expenses for the last five years. Itamar objected to the scope. It should not be difficult for Itamar to gather responsive documents regarding this topic. Five years is reasonable, because it will reflect expenses before and after Ectosense's entry into the marketplace, which is relevant to Itamar's damages. The geographic scope is the United States. The subject is the products described above as the products at issue. Ectosense clarified that it is not requesting every single receipt or email with a third-party advertising agency, Ectosense is instead seeking documents which will allow an assessment of what Itamar's actual expenses for advertising and marketing were.

RFP 56: This seeks social media posts by Itamar personnel mentioning NightOwl, Ectosense, or Ectosense personnel. Itamar construed this to include personal social media of Itamar personnel. Ectosense clarified it meant social media postings on pages created by Itamar personnel, for Itamar itself. Itamar's social media statements, in other words. Itamar's public characterizations of Ectosense, its products, and personnel will expand on Itamar's positions asserted here, and also pertain to Ectosense's defenses and claims based on alleged misrepresentations by Itamar.

The Court should overrule the objections, order production, and issue all other just relief.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for Ectosense, B. George Walker, conferred with counsel for Itamar, Laura Ganoza and Jessica Walker, for several hours, on more than one occasion during the week beginning September 19, 2021. The parties also exchanged several detailed good faith conferral letters to narrow the issues. The conferral process was productive, and narrowed the issues before the Court substantially.

*/s/ B. George Walker*

## CERTIFICATE OF SERVICE

Counsel for Ectosense *nv* hereby certifies that on the 27th day of September 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

**Counsel for Ectosense *nv*:**

*/s/ B. George Walker*

Paul O. Lopez, Esq.
Florida Bar No. 983314
pol@trippscott.com (primary)
eservice@trippscott.com (secondary)
sxc@trippscott.com (secondary)
Seth J. Donahoe, Esq.
Florida Bar No. 1004133
sjd@trippscott.com (primary)
sgc@trippscott.com (secondary)
B. George Walker, Esq.
Florida Bar No. 0071049
bgw@trippscott.com (primary)
sxc@trippscott.com (secondary)
Tripp Scott, P.A.
110 SE 6th Street, 15th Floor
Fort Lauderdale, FL  33301
Telephone: (954) 525-7500
Telefax: (954) 761-8475

**SERVICE LIST**

Page **6**

**CASE NO: 20-cv-60719-WPD**

| Counsel for Plaintiff: | Counsel for Defendant ECTOSENSE: |
|---|---|
| LAURA GANOZA, ESQ.<br>Florida Bar No. 0118532<br>lganoza@foley.com<br>atownsend@foley.com<br>HAWWI EDAO, ESQ.<br>Florida Bar No. 1026550<br>hedao@foley.com<br>hmoreno@foley.com<br>**FOLEY & LARDNER LLP**<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>(305) 482-8400<br>(305) 482-8600 (fax)<br><br>**Co-Counsel for Plaintiff:**<br><br>JESSICA N. WALKER, ESQ.<br>jwalker@foley.cOM<br>**FOLEY & LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2418<br>(213) 972-4675<br><br>GENE KLEINHENDLER, ESQ.<br>gene@gk-ad.com<br>ANNA ADAMSKY, ESQ.<br>anna@gk-ad.com<br>**GK ADVISORY**<br>72 Ahad Haam St.<br>Tel Aviv 6520512, Israel<br>(972) 3-735-6168 | PAUL O. LOPEZ, ESQ.<br>eservice@trippscott.com (primary)<br>pol@trippscott.com (secondary)<br>sxc@trippscott.com (secondary)<br>SETH J. DONAHOE, ESQ.<br>eservice@trippscott.com (primary)<br>sjd@trippscott.com (secondary)<br>sgc@trippscott.com (secondary)<br>B. GEORGE WALKER, ESQ.<br>bgw@trippscott.com<br>sxc@trippscott.com<br>cab@trippscott.com<br>Tripp Scott, P.A.<br>110 SE 6th Street, 15th Floor<br>Fort Lauderdale, FL  33301<br>Telephone:  (954) 525-7500<br>Telefax:  (954) 761-8475<br><br>**Co-Counsel for Defendant ECTOSENSE:**<br><br>Stephen Baird, Esq.<br>(*pro hac vice to be filed*)<br>GREENBERG TRAURIG, LLP<br>90 South 7th St., Suite 3500<br>Minneapolis, MN  55402<br>bairds@gtlaw.com<br><br>Paul B. Ranis, Esq.<br>Florida Bar No. 64408<br>GREENBERG TRAURIG, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, Florida 33301<br>ranisp@gtlaw.com<br>scottlaw@gtlaw.com<br>FLService@gtlaw.com<br><br>***Counsel for VirtuOx Inc.***<br><br>Jonathan B. Morton<br>Florida Bar No. 956872<br>Jonathan.Morton@klgates.com |

Page 7

|   |   |
|---|---|
|   | **K&L Gates LLP**<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |

Page **8**