## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

### Case No. 20-cv-60719- DIMITROULEAS/SNOW

ITAMAR MEDICAL LTD.,

       Plaintiff,

v.

ECTOSENSE NV, and VIRTUOX, INC.,

       Defendants.

### DECLARATION OF EFRAT LITMAN

1. My name is Efrat Litman. I am over the age of 18 and competent to offer this sworn Declaration. I make these statements based on my own personal knowledge and based on documents I have personally reviewed, authored and/or received.

2. Currently, I am the VP of Advanced Research and Development at Itamar Medical Ltd and am familiar with the matters in this declaration by virtue of my duties and responsibilities in my position and my involvement in the day-to-day activities of Itamar.

3. There are over 1,121 publications that reference WatchPAT and EndoPAT, of which 145 relate solely to WatchPAT.

4. Itamar does not have possession, custody, or control of much of the clinical data sought in Ectosense's Second Request for Production.

5. Itamar often collaborated with third parties, primarily universities, to conduct benchmark studies. The data remains in the possession and control of the third parties. However,

in about half of the publications cited by Ectosense, Itamar had no involvement (other than sale of devices), nor any collaboration with the investigators.

6. In order to obtain the clinical data Ectosense seeks, Itamar would have to contact the relevant clinical study investigators or other third-party persons or entities and request approval and clearance to produce the data to a non-governmental third party for the purposes of a litigation. Clearly, such third parties might not be obliged to respond, provide such approval or provide the underlying data. This will be costly and time-consuming. We anticipate it would take multiple Itamar employees at least hundreds of hours in order to run down the relevant permissions. Even then, Itamar cannot guarantee the third parties have retained the clinical data, or that they will agree to release the data for purposes of litigation.

7. Itamar will also need to seek approval of the institutional review boards or ethical boards before it can produce documents and communications related to the clinical studies. The same limitations regarding approvals and clearances would apply to them as well. This will also take tens of hours per each study of the list of 27 studies, at a minimum.

8. Ectosense seeks not only the raw clinical data (that Itamar does not have), but it also wants the analytics applied to that data, information that is sensitive and proprietary in nature.

9. In order for Ectosense or its experts to interpret the raw clinical data in the same manner done in the publication, Itamar and the applicable third party, would need to disclose its scoring methodologies, calculations and Itamar's WatchPAT signals.

10. The WatchPAT signals, which are recorded in a proprietary format, has evolved over the years. In 2008 (move from WatchPAT 100 to WatchPAT 200), the format underwent considerable changes.

11. In order to recreate the study results, Ectosense would need to engage in backwards

engineering of the raw clinical data it seeks.  Itamar believes such action by a competitor would be extremely harmful to Itamar.

12. Moreover, some clinical data contains confidential personal health information that must be removed, which would necessitate the work of an engineer to install automated techniques.

13. In many cases, the participants of the clinical studies must provide consent for the manner and scope of the use of their information.  Certain third-party sharing is prohibited in a number of clinical studies involving the WatchPAT.  In order to produce clinical data to Ectosense, Itamar, or the applicable third party, would have to review the patient consents of each of the studies in order to determine if it is permissible to produce documents to a third party for the purposes of a litigation.  That process, like the process to obtain approvals and clearance from third party researchers, would entail a significant amount of time and effort.

14. Producing documents in violation of patient consent implicates significant privacy concerns.  Surely, most patients who participated in sleep studies did not anticipate that their medical information would be provided to a third party with no affiliation to the study years later for the purposes of a litigation.

15. The data underlying some of the studies requested is more than 20 years old.

16. The clinical studies' publications Ectosense seeks are publicly available.

17. The publications are peer-reviewed and vetted by the medical community.

18. Itamar has no affiliation with many of the authors of the 27 benchmark studies that Ectosense references in its motion to compel.  As noted by Ectosense's request itself, Ectosense is aware of this fact.

I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed on October 15, 2021

_____
Efrat Litman