**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case Number: 20-cv-60719-WPD

ITAMAR MEDICAL LTD.,

      Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.

      Defendants.

_____/

## ECTOSENSE NV'S SUPPLEMENTAL REPLY BRIEF ON MOTION TO DISQUALIFY AND FOR SANCTIONS

Itamar indisputably engaged Mr. Kleinhendler to contact Ectosense's board member—who had just ended settlement discussions—and to threaten Ectosense's investor. Itamar's privilege log confirmed this was in the works for over two months and that Mr. Kleinhendler was well aware of who Mr. Dahlqvist was. The call to Mr. Dahlqvist related to the litigation and constituted an *ex parte* communication. Indeed, Mr. Kleinhendler conceded during the call that it was inappropriate for him to speak with Mr. Dahlqvist. He was right. Further, Mr. Kleinhendler sought to intimidate the board member going so far as to tell him that the situation was more serious than this litigation and that the shareholders and directors could face liability. He stated that US authorities could get involved. Mr. Kleinhendler then pursued Ectosense's investor and threatened it with criminal prosecution in the United States unless it agreed to commission a third party to investigate Ectosense. He followed up these demands seeking confirmation that Saffelberg was investigating Itamar's adverse party. Mr. Kleinhendler indicated that if so, he would not take "further action," which Mr. Benoot confirmed he perceived as an obvious threat.

To legitimize his allegations of criminal misconduct by Ectosense, Mr. Kleinhendler said he reviewed Ectosense's FDA "communications," "submissions," "application," and "510(k) Summary." Only the last document is publicly available. The first three had just been produced with an AEO designation two weeks prior to Mr. Kleinhendler's first contact. He also stated that Ectosense had engaged in fraud by *omission* with the FDA. Although he would have had to have reviewed and known what is actually in the FDA application that is marked AEO to conclude whether something was *omitted*, he now denies this and claims he never reviewed any protected documents. Thus, he was either lying then, or he is lying now. Itamar and Mr. Kleinehendler engaged in unethical conduct that is prejudicial to the administration of this case. Disqualification and severe sanctions are warranted.

1

### A) <u>Itamar's privilege log</u>

Itamar's log confirms that (1) Itamar had been scheming to go after Ectosense's investors for months, but only broke contact two weeks after Ectosense produced its AEO documents, and (2) that Mr. Kleinhendler was certainly aware of Mats Dahlqvist's role with Ectosense and that he was leading settlement talks with Mr. Glick. Here are three relevant entries:

| FLI-RP-ItamarEcto-0000019398 | 2/23/2021-2/24/2021 | Introduction - Noa Farkash | Shy Basson | Gene Kleinhendler; Noa Farkas; Gilad Glick | Email chain between outside counsel, Gene Kleinhendler, and Itamar's in-house counsel providing materials used in rendering legal opinions, and requesting legal advice, relating to Saffelberg. | Attorney Client |
|---|---|---|---|---|---|---|
| FLI-RP-ItamarEcto-0000019403 | 2/28/2021-3/1/2021 | Itamar/Ecto materials - Part 5 | Noa Farkas | Gene Kleinhendler; Shy Basson; Gilad Glick; Anna Adamsky | Email chain between outside counsel, Gene Kleinhendler, and Itamar's in-house counsel providing materials used in rendering legal opinions, and requesting legal advice, relating to Saffelberg. | Attorney Client |
| FLI-RP-ItamarEcto-0000019424 | 4/7/2021 | Mats | Gene Kleinhendler | Gilad Glick | Email from outside counsel, Gene Kleinhendler, providing legal advice regarding communications with Mats Dahlqvist. | Attorney Client |

These lines demonstrate that Itamar's senior leadership team and in house counsel began discussing Saffelberg in February 2021. They also demonstrate that *before contacting Mr. Dahlqvist,* Mr. Kleinhendler was advising Itamar's CEO about Mr. Dahlqvist. He of course then knew Mr. Dahlqvist's role as the board member leading settlement discussions, which is very likely the exact reason he called Mr. Dahlqvist.

Moreover, despite devising a plan to threaten Ectosense's investors as early as February 2021 with Itamar's senior leadership, Mr. Kleinhendler reached out only two weeks after Ectosense produced the very documents that Mr. Kleinhendler claimed he reviewed in his letters: Ectosense's FDA application and communications. Itamar suggests timing is irrelevant, but the chronology is important here. Itamar never once mentioned Saffelberg in a pleading or demand letter to Ectosense. It never contacted counsel in this case to suggest that Saffelberg would be added or even implicated in any way. Instead, over a year into this litigation, Itamar had an outside attorney begin reviewing the filings in this case, and then precisely two weeks after Ectosense provides FDA documents, Mr. Kleinhendler contacts Saffelberg and claims he reviewed the exact

documents Ectosense had just produced. He used that claim to make his assertion that Ectosense had engaged in criminal conduct and fraud with the FDA to appear credible.

Summarized simply: Mr. Kleinhendler indisputably knowingly engaged in an *ex parte* communication. He attempted to intimidate the board member during that communication, and then Saffelberg with criminal prosecution unless it investigated Itamar's adverse party. This is all worsened by the fact that if you take Mr. Kleinhendler at his word in April, he reviewed AEO documents. If you take him at his word now, he did not review AEO documents, but he claimed he did to legitimize his meritless threats that Saffelberg could face criminal prosecution in the US. Either way is unethical and Mr. Kleinhendler's actions have been, and will be, prejudicial to the administration of justice in this case. Mr. Kleinhendler should be disqualified and sanctioned.

**B) Discovery and Itamar's Defense**

The discovery Itamar took showed that Ectosense and Saffelberg immediately realized that Itamar was trying to intimidate and threaten Ectosense and Saffelberg with criminal prosecution to gain an edge in this litigation. Itamar, however, maintains it did nothing wrong and that Ectosense is trying to strategically distract from the merits of the underlying case. Nothing could be further from the truth, and the defense is implausible on its face.

Itamar has tried to make this about Saffelberg's response, and whether it actually investigated Ectosense. This is misdirection. The Court's inquiry here should be focused on Mr. Kleinhendler's intent and objective when threatening criminal prosecution—not whether he was successful in causing Saffelberg to exercise its power as a significant Ectosense shareholder to investigate Ectosense or influence Ectosense in this litigation. The inquiry is not even about whether he inspired fear. For over one hundred years, Court's recognize that success is not even relevant to whether an individual was attempting to extort, whether that be money or specified action. *See e.g. People v. Gardner*, 144 N.Y. 119, 124, 38 N.E. 1003 (1894):

> It is urged on behalf of the defendant that the fact that his threats did not inspire fear, inducing any action on the part of Mrs. Amos, an element essential to constitute the completed crime of extortion, renders it impossible to sustain an indictment and conviction for the lesser crime of an attempt at extortion, and so a majority of the judges constituting the general term held. We are of opinion that those learned judges fell into error. The threat of the defendant was plainly an act done with intent to commit the crime of extortion, and it tended, but failed, to effect its commission, and therefore the act was plainly, within the statute, an attempt to commit the crime.

During the depositions of Mr. Dahlqvist and Mr. Benoot,[1] both confirmed the accuracy of their declarations filed in this case, and explained that Mr. Kleinhendler's actions were brought to the highest levels of leadership within both companies immediately. Mr. Benoot confirmed that Saffelberg viewed Mr. Kleinhendler's communications as inappropriate threats. Indeed, only after Saffelberg conducted an internal review of Mr. Kleinhendler's claims and concluded they were meritless threats designed to intimidate Saffelberg and influence Ectosense in the litigation, did Saffelberg notify Ectosense about the content of the letters. At that point in time, everyone involved was shocked and gravely concerned AEO was breached. Given Mr. Kleinhendler's statements, Ectosense and Saffelberg coordinated a response asking Mr. Kleinhendler to clarify what exactly he believed was fraudulent "in Ectosense's FDA filing," precisely to have Mr. Kleinhendler confirm in writing what documents he reviewed. Mr. Kleinhendler did exactly that and stated he reviewed Ectosense's FDA application and submissions—again, all were just produced and marked AEO. He also went further threatening—in writing—that Saffelberg could face criminal prosecution in the US.

Notably, at this point in time, Itamar was unaware that Saffelberg told Ectosense what was going on, and Mr. Kleinhendler still likely believed he was covertly causing Saffelberg to launch

---

[1] Pursuant to ECF 59 ¶ 2, "All transcripts will automatically be designated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" from the day of the deposition or proceeding to 30 calendar days after the final original transcript becomes available for review." The two depositions are still under 30 day default designation, and Ectosense is therefore not filing the transcripts at this time, but is willing to do so if Itamar confirms that it has no designations.

an investigation into Ectosense. In this case, Itamar was simultaneously moving to de-designate the very documents Mr. Kleinhendler stated he reviewed. Thus, while Ectosense and Saffelberg were coordinating in an effort to have Mr. Kleinhendler identify in writing what documents he reviewed, Ectosense's response to the de-designation motion was coming due. Ectosense needed to brief the Kleinhendler issue, which would then tip Mr. Kleinhendler off that he had been caught.

On the eve of filing the response brief, Ectosense's counsel called Itamar's former counsel. Ectosense advised that Itamar had engaged a foreign attorney who claimed to be reviewing the AEO documents Ectosense had produced, and who was threatening Ectosense's investors with criminal prosecution. Itamar's former counsel indicated surprise and that he had no knowledge of what was going on. Ectosense did not believe anyone at Latham would be involved in such conduct either, and asked that the conduct be put to a prompt end. Ectosense then filed its response advising the Court that it suspected an improper motive by Itamar in moving to de-designate, ECF 105 pp 13 – 19. Ectosense expected Latham would investigate the claimed breach of AEO, and reproach its client by explaining how inappropriate the conduct was. Yet, Latham instead suddenly withdrew from the case. Foley & Lardner then filed notices of appearance, and Gene Kleinhendler sought *pro hac* admission. Ectosense immediately opposed *pro hac* admission.

Itamar's suggestion that Ectosense waited months to do anything is false. The chronology is that Ectosense was investigating the claimed breach of AEO by coordinating with Saffelberg. Ectosense then timely raised the issue with Itamar's former counsel. Itamar then fired that counsel and brought Mr. Kleinhendler into this case. Ectosense opposed immediately. There is no delay or strategic advantage here. Mr. Kleinhendler has no identifiable litigation experience in the United States in the last three decades, and he *ex parte* contacted Ectosense's board member and threatened its investors with criminal prosecution. The problems here are of Itamar's making.

5

## <u>CERTIFICATE OF SERVICE</u>

Counsel for Ectosense NV hereby certifies that on the 10th day of November, 2021, I electronically filed the foregoing document via CM/ECF and served this document on all counsel of record as listed in the Service List below.

/s/ *Seth J. Donahoe*
**PAUL O. LOPEZ**
**Florida Bar #983314**
**pol@trippscott.com**
**SETH J. DONAHOE**
**Florida Bar #1004133**
**TRIPP SCOTT, P.A.**
**110 S.E. 6th Street, 15th Floor**
**Ft. Lauderdale, FL  33301**
**(954) 525-7500 telephone**
**(954) 761-8475 facsimile**

6

**SERVICE LIST**
**CASE NO: 20-cv-60719-WPD**

| **Counsel for Plaintiff:** | **Counsel for Defendant ECTOSENSE:** |
|---|---|
| LAURA GANOZA, ESQ. | PAUL O. LOPEZ, ESQ. |
| Florida Bar No. 0118532 | eservice@trippscott.com (primary) |
| lganoza@foley.com | pol@trippscott.com (secondary) |
| atownsend@foley.com | sxc@trippscott.com (secondary) |
| HAWWI EDAO, ESQ. | SETH J. DONAHOE, ESQ. |
| Florida Bar No. 1026550 | eservice@trippscott.com (primary) |
| hedao@foley.com | sjd@trippscott.com (secondary) |
| hmoreno@foley.com | sgc@trippscott.com (secondary) |
| **FOLEY & LARDNER LLP** | B. GEORGE WALKER, ESQ. |
| One Biscayne Tower, Suite 1900 | bgw@trippscott.com |
| 2 South Biscayne Boulevard | sxc@trippscott.com |
| Miami, Florida 33131 | cab@trippscott.com |
| (305) 482-8400 | Tripp Scott, P.A. |
| (305) 482-8600 (fax) | 110 SE 6th Street, 15th Floor |
| | Fort Lauderdale, FL  33301 |
| | Telephone:  (954) 525-7500 |
| **Co-Counsel for Plaintiff:** | Telefax:  (954) 761-8475 |
| JESSICA N. WALKER, ESQ. | |
| jwalker@foley.cOM | **Co-Counsel for Defendant ECTOSENSE:** |
| **FOLEY & LARDNER LLP** | |
| 555 South Flower Street, Suite 3300 | Stephen Baird, Esq. |
| Los Angeles, CA 90071-2418 | (*pro hac vice to be filed*) |
| (213) 972-4675 | GREENBERG TRAURIG, LLP |
| | 90 South 7th St., Suite 3500 |
| GENE KLEINHENDLER, ESQ. | Minneapolis, MN  55402 |
| gene@gk-ad.com | bairds@gtlaw.com |
| ANNA ADAMSKY, ESQ. | |
| anna@gk-ad.com | Paul B. Ranis, Esq. |
| **GK ADVISORY** | Florida Bar No. 64408 |
| 72 Ahad Haam St. | GREENBERG TRAURIG, P.A. |
| Tel Aviv 6520512, Israel | 401 E. Las Olas Boulevard, Suite 2000 |
| (972) 3-735-6168 | Fort Lauderdale, Florida 33301 |
| | ranisp@gtlaw.com |
| | scottlaw@gtlaw.com |
| | FLService@gtlaw.com |
| | |
| | ***Counsel for VirtuOx Inc.*** |
| | |
| | Jonathan B. Morton |
| | Florida Bar No. 956872 |

7

|  | Jonathan.Morton@klgates.com<br>**K&L Gates LLP**<br>Southeast Financial Center<br>200 South Biscayne Boulevard, Suite 3900<br>Miami, Florida 33131-2399<br>Telephone: 305-539-3357<br><br>Darlene F. Ghavimi, *Admitted Pro Hac Vice*<br>Texas Bar No. 24072114<br>Darlene.Ghavimi@klgates.com<br>Stewart Mesher, *Admitted Pro Hac Vice*<br>Texas Bar No. 24032738<br>Stewart.Mesher@klgates.com<br>**K&L GATES LLP**<br>2801 Via Fortuna Suite 350<br>Austin, Texas 78746-7568<br>Telephone: (512) 482-6919 |
|---|---|