# DEFENDANT'S EXHIBIT 3

**CONFIDENTIAL ATTORNEY COMMUNICATION**

Arnold Benoot
General Counsel
Saffelberg
Oplombeekstraat 6
B-1755 Gooik
E-mail: Arnold.benoot@saffelberg.com

April 22, 2021

**Re: <u>Ectosense</u>**

Dear Arnold,

As I mentioned in our call, I have been retained by Itamar Medical Ltd. to advise on the liability of Ectosense directors and shareholders arising from Ectosense activities in the U.S. As discussed, I would like to present my thoughts concerning the potential liability of a private equity investor arising from the activities of its portfolio companies' dealings with U.S. government agencies.

As you may be aware, Ectosense has made submissions to the FDA in its efforts to secure U.S. regulatory clearance and consequentially has claimed availability of Medicare reimbursement benefits. It is my view that Ectosense chose a regulatory clearance designation offered by the FDA that presented the lowest possible approval hurdles, so as to allow it to intentionally mislead the FDA by failing to disclose material facts that, if disclosed, would have prevented its claim as to the existence of a predicate device and would certainly have disallowed any use of the reimbursement code that clearly applies to a device and technology not offered by the Ectosense product. It is my belief, based on the analysis below, that Saffelberg may be held liable for these false claims under U.S. law.

It is my understanding of the relevant U.S. law that false claims or "fraudulent inducement" may establish significant liability, since the regulatory clearance obtained by fraud not only clears a device for introduction into interstate commerce, but, more critically, it allows false claims for reimbursement from U.S. government healthcare programs, such as Medicare. The law in the U.S. is clear that acts that subvert the regulatory functions of the FDA, which are intended to protect the public health, are dealt with severely by U.S. government enforcement agencies, especially the inducement of false claims for payment.

The liability of a shareholder or a private equity investor arising from the fraudulent acts of its portfolio company rests on the expansive definition of "knowledge" under the relevant federal enforcement statutes. Knowingly perpetrating a fraud or act of deception upon a government agency includes deliberate ignorance of the truth or falsified information. As the U.S. government agency empowered to enforce anti-bribery and corruption violations puts it: "willful blindness is not a defense."

The issue of private equity investor liability (even when holding a minority position) is driven by the government's demand of oversight of portfolio companies dealing with governmental authorities.

ABC | AML | Crisis Management
www.gk-ad.com
Phone: +972-3-735-6168
Email: office@gk-ad.com
72 Ahad Haam St., Tel Aviv, Israel



Oversight is clearly mandated by U.S. law and it is the policy of the U.S. government to hold all culpable parties liable in fraud cases. This policy is not limited to individuals, such as officers and directors, but is used by government enforcement agencies to pursue private equity firms owning healthcare providers. U.S. courts have supported this enforcement effort and stated that a defendant may be liable for fraud claims "when the submission of false claims by another entity was a foreseeable result of a business practice".

This expanded responsibility is derived from the nature of the medical device industry in the U.S., its interaction with the federal regulator, and its access to U.S. government healthcare reimbursement programs, such as Medicare. A private equity firm may not passively sit by and ignore fraudulent activity of its portfolio company. Quite the opposite. A private equity firm investing in a medical device company doing business in the U.S., submitting requests to the FDA and inducing medical device practitioners to submit reimbursement claims, which of course hopes to directly financially benefit from these activities, must take measures to ensure that its portfolio companies have adopted and implemented compliance programs designed to require the ethical conduct of business in their industry. These include procedures to bring compliance concerns to the attention of the private equity firm; conducting independent audits of compliance, especially when dealing with FDA and reimbursement matter. In my opinion, U.S. law imposes an affirmative legal obligation on private equity investor to closely scrutinize a portfolio company's compliance. These programs must ensure that best practices are followed with adequate internal controls and reporting system and robust audit and investigative procedures, including receiving and relying on appropriate advice from outside experts.

U.S. governmental enforcement agencies consider the failure of the private equity firm to control, oversee and manage the activity of a portfolio company as a basis for determining "knowledge of fraud" in cases of false claims and fraudulent activity.

In the matter of Ectosense, it is my opinion, that certain actions were taken to deceive the FDA in order to illegally promote the use of a specific reimbursement code, that, but for the fraud, would not be available for the Ectosense product. This activity, in my opinion, if condoned or disregarded either by a failure to impose compliance and oversight requirements would, in the view of a U.S. government enforcement agency, establish a basis for liability for Saffelberg under U.S. law.

I believe that Saffelberg would not condone unethical behavior by its portfolio companies and would not tolerate fraudulent submissions before a U.S. government agency. Therefore, I strongly urge you to conduct an independent review of Ectosense actions and demand that Ectosense cease all false claims activity.

Please do not hesitate to contact me if you require further clarification regarding this letter.

Best regards,

Gene Kleinhendler, Advocate