UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60719-CIV-DIMITROULEAS/SNOW

ITAMAR MEDICAL LTD.,

    Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant Ectosense *nv*'s ("Ectosense") Motion to Disqualify Gene Kleinhendler and Incorporated Motion for Sanctions (the "Motion to Disqualify") (ECF No. 181) and Plaintiff Itamar Medical Ltd.'s ("Itamar") Motion for Sanctions (ECF No. 218). The Honorable William P. Dimitrouleas referred the Motions to the undersigned for appropriate disposition or report and recommendation pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida. (ECF Nos. 182; 219) An evidentiary hearing (the "Hearing") on the Motion to Disqualify was held before the undersigned via Zoom on November 22, 2021, pursuant to this Court's Order. (ECF No. 215) The Motions are now ripe for review.

## I. FACTUAL BACKGROUND

On July 6, 2021, Plaintiff Itamar Medical Ltd. filed its Third Amended Complaint (ECF No. 121) against Defendants Ectosense *nv* and VirtuOx, Inc.

asserting trademark infringement; unfair competition/false designation of origin and false advertising under the Lanham Act, and unfair competition, deceptive trade practices, and trademark infringement under Florida law. (ECF No. 121 at 1) According to the Third Amended Complaint, Plaintiff develops, manufactures, and sells home sleep apnea tests that use its own proprietary peripheral arterial tone, or "PAT", technology. (ECF No. 121 at ¶ 1) Ectosense is a digital health and medical device company that, like Plaintiff, focuses much of its attention on sleep disorders. (ECF No. 121 at ¶ 26) Plaintiff seeks damages as well as other relief for Ectosense's alleged continued use of, and association of its products with, the PAT name and proprietary PAT marks, despite the fact that Ectosense's products are not PAT devices and do not provide a PAT measurement. (ECF No. 121 at ¶ 32; 35-38)

Mr. Kleinhendler testified at the Hearing that he was first hired by Plaintiff in February of 2021. Mr. Kleinhendler stated that he has been a practicing lawyer for more than 40 years and is licensed in both the state of New York and the country of Israel, with his practice focused on the areas of anti-bribery, corruption, and fraud. Mr. Kleinhendler admitted in his testimony that he has little to no experience with Lanham Act or Intellectual Property claims which are at the heart of the instant case, and further stated that he defers to co-counsel on those issues. Mr. Kleinhendler testified that he has a longstanding relationship with Plaintiff as an entity and many of the members of Itamar's Board of Directors.

The Court entered a Protective Order Governing Confidential Materials (the "Protective Order") in the instant case, on March 7, 2021. (ECF No. 66; Ectosense

2

Ex. 1) On March 26, 2021, pursuant to the Protective Order, Ectosense produced, under an Attorneys' Eyes Only ("AEO") designation, communications and submissions to the FDA related to the 510(k) review of its product NightOwl. (ECF No. 181 at ¶ 2) At the Hearing, Bart Van Pee, a founder and Managing Director of Ectosense, and Mr. Kleinhendler both testified that Ectosense used Plaintiff's WatchPAT product as a "predicate" device in these FDA filings. A predicate device is one which has already been approved by the FDA and can be used as a comparator for the device seeking FDA approval. Mr. Kleinhendler further testified that he spent a great deal of time with representatives of his client, Plaintiff, in an effort to understand why they believed that WatchPAT was not a proper predicate for NightOwl.

      Two weeks after the AEO production of Ectosense's FDA submissions, Mr. Kleinhendler contacted by phone a member of the Ectosense Board of Directors, Mats Dahlqvist. By way of introduction, Mr. Kleinhendler mentioned a mutual friend, Shimon Eckhouse. Mr. Kleinhendler's purported purpose during the call with Mr. Dahlqvist was to obtain the contact information of Saffelberg Investment *nv*'s ("Saffelberg") in-house counsel. (ECF No. 181-1 at ¶ 8) At this time, Saffelberg, a private equity company located in Belgium, was a non-controlling, financial minority shareholder in Ectosense. (ECF No. 181-2 at 1) Although Saffelberg is not party in the instant case, Mr. Van Pee testified that had Saffelberg stopped funding Ectosense, Ectosense would have been unable to sustain this litigation or even continue as a viable business.

3

According to Mr. Dahlqvist, during his original communication with Mr. Kleinhendler, Mr. Kleinhendler stated that he had reviewed Ectosense's "statements" in its "FDA submission." (ECF No. 181-1 at ¶ 5) Mr. Kleinhendler went on to assert that a "U.S. authority" could be involved and that there was "real serious ground for concern." Id. Mr. Dahlqvist testified that he construed these statements as direct threats, stating, it was "like I was put into a Sopranos episode" because the conversation was polite, but there was a clearly threatening undertone. Moreover, Mr. Dahlqvist expressed that he was "puzzled" by Mr. Kleinhendler's call for two reasons. First, since Mr. Dahlqvist had worked with Plaintiff's CEO in the past, there was no need for Plaintiff's attorney to introduce himself via Shimon Eckhouse, a third party.. Additionally, the contact information for Saffelberg's general counsel, which Mr. Kleinhendler purportedly sought from Mr. Dahlqvist, was easily accessible on the Saffelberg website.

Nevertheless, Mr. Dahlqvist informed Saffelberg's in-house counsel, Arnold Benoot, that Mr. Kleinhendler wished to speak to him. Mr. Benoot "called Mr. Kleinhendler almost immediately" thereafter. (ECF No. 181-2 at ¶ 5) According to Mr. Benoot, during this phone call Mr. Kleinhendler asserted that he was reaching out to inform Saffelberg that Ectosense had committed fraud on the FDA. Id. Mr. Benoot testified that Saffelberg took this allegation seriously and Mr. Benoot asked Mr. Kleinhendler to specify the actions which he believed constituted fraud. (ECF No. 181-2 at ¶ 9)

When Mr. Kleinhendler did not provide the requested information, Mr. Benoot sent an email to Mr. Kleinhendler, again seeking a more detailed account of the alleged fraud. (ECF No. 181-2 at ¶ 10; Ectosense Ex. 10)  Mr. Kleinhendler responded with a letter on April 22, 2021, outlining his analysis of the fraud which he believed had been committed.  In that letter, Mr. Kleinhendler stated that he was "hopeful that Saffelberg will carry out [its] legal responsibility" so that he could "avoid any further action in this matter." (Ectosense Ex. 3) On May 10, 2021, Mr. Kleinhendler followed up with a second letter to Mr. Benoot which contained a more "detailed description of the various misrepresentations" which Mr. Kleinhendler alleged had occurred.  (Ectosense Ex's 4, 19)

Mr. Kleinhendler's second letter stated, in part, that the PAT requirements "under the CPT code are not met by the Ectosense device and clearly absent from the technological feature comparisons listed in FDA application." (ECF No. 181-4 at 2; Ectosense Ex. 4 at 3)  Mr. Kleinhendler further warned that "[f]alse claims for Medicare reimbursement based on a fraudulent submission to the FDA are aggressively prosecuted by U.S. criminal and civil authorities," such that Saffelberg might be held liable for those false claims under U.S. law. (Ectosense Ex. 4 at 3) Mr. Benoot testified that he perceived Mr. Kleinhendler's communications as putting external pressure on Ectosense by encouraging Saffelberg to cease funding it as a portfolio company.  Notably, at the time of the communications with Mr. Dahlqvist

and Mr. Benoot, Mr. Kleinhendler was not yet admitted pro hac vice in the instant case.[1]

The parties agree that Ectosense's submissions to the FDA related to the 510(k) review of its product NightOwl are protected under an Attorneys' Eyes Only designation pursuant to the Protective Order. (ECF No. 66; Ectosense Ex. 1) The parties dispute, however, whether Mr. Kleinhendler reviewed these documents or lied about whether he had done so. Mr. Kleinhendler testified that although he frequently used the word "submission" in his correspondence, the only FDA document to which he had access was the 510(k) Summary, a seven and one-half page public document which had been available since March 6, 2020. (Ectosense Ex. 18) He went on to state that "it would be an absolute impossibility" for him to have had access to AEO documents since at the time of his communications with Mr. Dahlqvist and Mr. Benoot he was not an attorney of record in the instant case and was conducting his research in Israel.

Mr. Benoot and Mr. Van Pee testified as to Mr. Kleinhendler's repeated use, of the word "submission." However, Mr. Benoot also stated, "I have no idea which documents [Mr. Kleinhendler] reviewed" since Mr. Kleinhendler's letters were vague. Nevertheless, Mr. Benoot assumed that Mr. Kleinhendler had reviewed Ectosense's entire submission packet for the NightOwl device because of his use of the word "submission." Also, Mr. Benoot believed that it would have been difficult

---

1. The Court granted Plaintiff's Motion for Mr. Kleinhendler to appear pro hac vice on July 20, 2021, nearly three months after the communications with Mr. Dahlqvist and Mr. Benoot. (ECF No. 134)

for Mr. Kleinhendler to have drawn his legal conclusions on fraud liability without reviewing the entire package Ectosense had submitted to the FDA.

Similarly, Mr. Van Pee testified that the word "submission" has a clear meaning in this context and does not refer to the FDA's public summary. Moreover, Mr. Van Pee stated that he also interpreted Mr. Kleinhendler's use of "submission" to mean the AEO documents since it would have been impossible for Mr. Kleinhendler to warn Saffelberg of Ectosense's "fraud by omission" after reviewing only the FDA's seven and one-half page summary.

Based on these facts, on September 3, 2021, Ectosense filed the Motion to Disqualify Mr. Kleinhendler. (ECF No. 181) In support of the Motion, Ectosense produced the declarations of Mats Dahlqvist and Arnold Benoot. (ECF Nos. 181-1 and 181-2) The parties agree that Mr. Kleinhendler contacted Mr. Dahlqvist and Mr. Benoot prior to being admitted pro hac vice in the instant case. (ECF No. 187 at 6) Their dispute is whether these discussions, as outlined above, are tantamount to ex parte communications or other ethical violations, warranting disqualification of Mr. Kleinhendler. (ECF Nos. 181 at 8-9 and 187 at 4-9)

On September 10, 2021, Plaintiff filed an Expedited Discovery Motion, seeking an extension of time and permission to conduct expedited discovery pertaining to Mats Dahlqvist, Arnold Benoot, and Saffelberg "in order to adequately respond to Ectosense's Motion to Disqualify." (ECF No. 183 at 1) The Court granted the Expedited Discovery Motion in part (ECF No. 204) and the Hearing on the

Motion to Disqualify was held before the undersigned via Zoom on November 22, 2021. (ECF No. 215).

## II. DISCUSSION

### A. Motion to Disqualify

"[M]otions to disqualify opposing counsel are highly disfavored in the Eleventh Circuit." Brown v. Blue Cross & Blue Shield of Fla., Inc., No. 11-80390-CIV, 2011 WL 11532078, at *3 (S.D. Fla. Aug. 8, 2011), aff'd sub nom. Brown v. Blue Cross & Blue Shield of Fla., Inc., 456 F. App'x 854 (11th Cir. 2012). "Disqualification . . . is an extraordinary remedy, and such motions are generally viewed with skepticism because they are often made for tactical purposes." Etkin & Co. v. SBD LLC, No. 11-21312-CIV, 2012 WL 5398966, at *2 (S.D. Fla. Nov. 5, 2012). Similarly, disqualification should be granted "sparingly" because "[d]isqualification is a harsh sanction, often working substantial hardship on the client." Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 (11th Cir. 1982). Thus, a party's presumptive right to counsel of its choice may be overridden only if the moving party demonstrates a "compelling reason" for disqualification. In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003).

Under this backdrop of disfavor, "[m]otions to disqualify are governed by two sources of authority:" the local rules of professional conduct and federal common law. Herrmann v. GutterGuard, Inc., 199 F. App'x. 745, 752 (11th Cir. 2006). Accordingly, there are "two distinct lines of Eleventh Circuit decisions on attorney disqualification." Schlumberger Technologies, Inc. v. Wiley, 113 F.3d 1553, 1560

(11th Cir. 1997).  First, where "the conduct at issue threatens the disruption of the court proceedings," such as in-court misconduct or deliberate challenges to the authority of the court, "great deference" is given to the trial court's decision to disqualify an attorney. Id. at 1561.

Ectosense argues that this "orderly administration of justice" standard is met because Mr. Kleinhendler's communications with Mr. Dahlqvist and Mr. Benoot suggest that he had reviewed AEO documents prior to being admitted pro hac vice in violation of this Court's Protective Order. (ECF No. 181 at 8)  Notably, the Eleventh Circuit has held that circumstantial evidence is insufficient to find that an attorney violated a court order. See Romero v. Drummond Co., 480 F.3d 1234, 1243 (11th Cir. 2007).  Therefore, direct evidence that Mr. Kleinhendler violated the Protective Order is necessary for disqualification under the "orderly administration of justice" standard.  The undersigned finds that there is no direct evidence that Mr. Kleinhendler reviewed AEO documents prior to being admitted pro hac vice in this case and he has testified under oath that he did not do so.  Accordingly, he cannot be disqualified on this ground.

Alternatively, the Court in Schlumberger held that if "the conduct at issue does not threaten the orderly administration of justice but is allegedly unethical, we insist that district courts rest their disqualification decisions on the violation of specific Rules of Professional Conduct." Schlumberger, 113 F.3d at 1561. "Absent a showing of unethical conduct rising to a level that would justify disbarment" the court must not disqualify the attorney. Id.  Moreover, even with a showing of

9

disbarrable conduct, the Court "must be further mindful that 'the power [to disbar] is one that ought always be exercised with great caution; and ought never be exercised except in *clear* cases of misconduct.'" Id. at 1562 (emphasis in original) (quoting Ex parte Wall, 107 U.S. 265, 288 (1883)).  Under this second standard for disqualification, the Eleventh Circuit requires clear evidence of a violation of a specific Rule of Professional Conduct warranting disbarment.  Ectosense contends that Mr. Kleinhendler violated several of these rules.

Fla. Bar R. 4-4.2(a)

Ectosense first argues that Mr. Kleinhendler's communication with Mr. Dahlqvist was a prohibited *ex parte* communication.  While Mr. Kleinhendler asserts that he contacted an Ectosense board member merely to get the contact information of Saffelberg's in-house counsel, Ectosense asserts that "Mr. Kleinhendler's purported objective . . . is irrelevant . . . because he admits the fact that he contacted a represented party and he does not deny that he spoke to the board member about what he intended to raise with Saffelberg, which tracks several issue[s] in this case." (ECF No. 193 at 3)  The Florida Rules of Professional Conduct speak directly to *ex parte* communications:

> In representing a client, a lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer.  Notwithstanding the foregoing, a lawyer may, without such prior consent, communicate with another's client to meet the requirements of any court rule, statute or contract requiring notice or service of process directly on a person, in which event the communication is strictly restricted to that required by the

> court rule, statute or contract, and a copy must be provided to the person's lawyer.

Fla. Bar R. 4-4.2(a). Since Mr. Kleinhendler was aware of the instant litigation (ECF No. 181 at ¶ 3), Ectosense characterizes Mr. Kleinhendler's communication with Dahlqvist as "pure and simple prohibited *ex parte* communication warranting disqualification." (ECF No. 193 at 3)

A review of the applicable caselaw reveals that disbarment for *ex parte* communications has been imposed in instances where the misconduct was far more egregious than in the case at bar. In Florida Bar v. Leon, 510 So. 2d 873 (Fla. 1987), the attorney engaged in *ex parte* communications with a trial judge in order to improperly secure the alteration of sentences in a criminal case, and agreed with the judge to falsely deny those communications. Similarly, in Florida Bar v. Bailey, 803 So. 2d 683 (Fla. 2001), a case involving a number of other serious ethical violations, the attorney attempted to further his own interests by disparaging his client in an *ex parte* letter to the judge who would be sentencing the client.

In the instant case, Mr. Kleinhendler communicated with a member of the board of directors of an opposing party for the ostensible purpose of obtaining contact information for the attorney representing a third party shareholder of the opposing party. During his conversation with the board member, Mr. Kleinhendler stated that he had read the opposing party's submission to the FDA and had identified serious problems in that submission which could cause federal authorities to become involved. The undersigned finds that this constituted an *ex parte*

11

communication which violated Fla. Bar R. 4-4.2(a), but it was not sufficiently severe to warrant Mr. Kleinhendler's disbarment.

Fla. Bar R. 4-4.1 and 4-8.4(c)

Ectosense next contends that if Mr. Kleinhendler did not in fact review the AEO documents, the second Schlumberger standard for disqualification is met because he falsely claimed to have read them. (ECF No. 181 at 9) Fla. Bar R. 4-4.1 prohibits a lawyer from knowingly making a "false statement of material fact or law" to a third party, and Fla. Bar R. 4-8.4(c) prohibits a lawyer from engaging in conduct "involving dishonesty, fraud, deceit, or misrepresentation...."[2]

Mr. Kleinhendler spoke to Mr. Dahlqvist and Mr. Benoot about Ectosense's FDA "submissions," which Ectosense maintains were the documents designated AEO, and were separate and apart from the publicly available summary which Mr. Kleinhendler admits to having read. Therefore, Ectosense argues, if Mr. Kleinhendler had not reviewed the AEO documents and thus had not violated the Protective Order, the language he used when communicating with Mr. Dahlqvist and Mr. Benoot suggested the opposite. Ectosense argues that Mr. Kleinhendler's use of the word "submission," which has a special meaning in this context, constitutes a "false statement of material fact or law" in violation of the Florida Rules of Professional Conduct. Ectosense further argues that Mr. Kleinhendler violated Fla. Bar R. 4-4.1 and 4-8.4 in his second, more detailed letter to Mr. Benoot

---

[2] Ectosense incorrectly cited Fla. Bar R. 4-4.8 for this proposition, instead of 4-8.4.

because the accusations and other statements in the Letter are false. (ECF No. 181 at 9)

Once again, the cases in which attorneys have been disciplined for violating these rules appear to involve conduct which is far more serious than the actions of Mr. Kleinhendler. For example, in Florida Bar v. Cox, 794 So. 2d 1278 (Fla. 2001), a prosecutor was ordered by a United States Magistrate Judge to disclose the name of a Government witness. Instead, the prosecutor elicited a false name from the witness during her trial testimony. Subsequently, it came to light that the witness had a criminal record under her true name. This revelation caused the trial judge to declare a mistrial and dismiss with prejudice of all charges against the defendant. Nevertheless, the Florida Supreme Court ordered a relatively mild punishment: suspension from the practice of law for a period of one year.

In this case, Mr. Kleinhendler may have implied that he had seen Ectosense's full submission to the FDA, but he did not say so explicitly. And the accusations and other statements contained in the detailed letter to Mr. Benoot were presented as Mr. Kleinhendler's own interpretation of the facts and the applicable law. It is too great a stretch to characterize these opinions as deliberate falsehoods sufficient to warrant disbarment.

Fla. Bar R. 4-3.4 and 4-1.2

Finally, Ectosense argues that Mr. Kleinhendler issued overt threats of criminal prosecution to an investor of Ectosense in order to adversely impact Ectosense in the instant litigation. (ECF No. 181 at 9) Fla. Bar R. 4-3.4(g) states

that a lawyer must not "present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter," and Fla. Bar R. 4-1.2(d) prohibits a lawyer from assisting or counseling a client to engage in criminal or fraudulent activity. Ectosense relies on the testimony of Mr. Dahlqvist and Mr. Benoot as evidence that Mr. Kleinhendler made threatening, extortionate demands. Ectosense claims that these threats were related to the instant litigation because "the goal was to obtain pecuniary advantage over Ectosense by cutting of[f] a source of funding, and exert improper settlement pressure on Ectosense." (ECF No. 181 at 10)

The undersigned could find no cases involving discipline for violation of Fla. Bar R. 4-3.4 and 4-1.2  However, as discussed above, the sanction of disbarment appears to result when the attorney's conduct is serious, unambiguous and deliberate. Thus, in Florida Bar v. Del Pino, 955 So. 2d 556 (Fla. 2007), the penalty imposed on an attorney convicted of tax evasion and mail fraud was merely a three-year suspension. In Florida Bar v. Davis, 149 So.2d 1121 (Fla. 2014), the attorney was disbarred for negligent representation of her client, including the failure to file divorce papers on the client's behalf. However, the court emphasized the facts that the attorney had been reprimanded in the past, and had failed to answer the bar complaint or in any way participate in the bar proceedings against her

In the instant case, the undersigned agrees with Ectosense that Mr. Kleinhendler's communications with Mr. Benoot were designed to put pressure on Ectosense by encouraging Saffelberg, an important shareholder, to withdraw

14

financial support. Nevertheless, Mr. Kleinhendler's verbiage constitutes, at worst, an implicit threat veiled by his ostensible concern that Saffelberg, a private equity company, be notified of its potential liability for the actions of Ectosense. Mr. Kleinhendler stopped short of threatening to institute criminal proceedings, suggesting instead that U.S. agencies might decide to do so. Perhaps by design, Mr. Kleinhendler's verbiage skirted the requirements of 4-3.4, and as a result, his conduct likely would not result in disbarment.

While the undersigned does not condone Mr. Kleinhendler's actions, binding precedent permits disqualification only when those actions threaten the orderly administration of justice or constitute a violation of a specific Rule of Professional Conduct sufficient to warrant disbarment. Under the facts of this case, neither standard has been met and this Court should not deprive Plaintiff of its counsel of choice.

<u>Alternative Sanctions</u>

Ectosense relies on <u>Martin v. Automobili Lamborghini</u>, 307 F.3d 1332, 1336-37 (11th Cir. 2002), for the proposition that other sanctions are warranted based on Mr. Kleinhendler's conduct. In <u>Martin</u>, the Eleventh Circuit approved dismissal of the case and an award of attorneys' fees based on "continual and flagrant abuse of the judicial process," including

> 1) misleading the court about the real party in interest in the case, 2) engaging in extensive discovery abuse to obstruct revelation of the known falsities in the complaint, 3) using letters threatening class-action litigation to extort settlement offers from Appellees without any

15

> intention of filing a case, and 4) filing with the court many documents where the signatures of lawyers were forged...

Martin, 307 F.3d at 1336 n.2. Ectosense argues that the facts of the instant case are even more egregious because they are "aggravated by *ex parte* communications and threats of criminal referrals." (ECF No. 181 at 11) As sanctions, Ectosense requests that the Court strike Plaintiff's pleadings and award Ectosense attorneys' fees for the entire case. Id.

Courts have the inherent authority to control proceedings before them, which includes the authority to impose "reasonable and appropriate" sanctions. Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1545 (11th Cir. 1993). However, exercising this inherent power, "requires a finding of bad faith." In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 49 (US 1991)).

The undersigned finds the instant case to be distinguishable from Martin. Here, there is no accusation that Mr. Kleinhendler did anything as heinous as forging documents or signatures presented to the Court. There is also no indication that Mr. Kleinhendler misled the Court about a fundamental aspect of the litigation, such as the appropriate parties to the case. As stated earlier, the undersigned finds Mr. Kleinhendler's actions troubling, but they are sufficiently within permissible bounds to avoid both disqualification and alternative sanctions. Ectosense's remedy, if any, must lie with the Bars which issued Mr. Kleinhendler's licenses to practice law.

B. <u>Plaintiff's Motion for Sanctions</u>

In this Motion, the Plaintiff seeks sanctions against Ectosense and its counsel (ECF No. 218), for the filing the Motion to Disqualify. "Rule 11 sanctions are properly assessed '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.'" <u>Massengale v. Ray</u>, 267 F.3d 1298, 1301 (11th Cir. 2001) (quoting <u>Worldwide Primates, Inc. v. McGreal</u>, 87 F.3d 1252, 1254 (11th Cir. 1996). When a court in this circuit is deciding a motion for Rule 11 sanctions it first determines whether the party's claims are "objectively frivolous." <u>See</u> <u>Jones v. Int'l Riding Helmets, Ltd.</u>, 49 F.3d 692, 695 (11th Cir. 1995). The undersigned finds that the issues presented in Ectosense's Motion to Disqualify were non-frivolous and warranted careful consideration. Accordingly, Plaintiff's Motion for Rule 11 Sanctions should be denied.

### III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that: Defendant Ectosense *nv*'s Motion to Disqualify Gene Kleinhendler and Incorporated Motion for Sanctions (ECF No. 181) and Plaintiff Itamar Medical Ltd.'s Motion for Sanctions (ECF No. 218) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1.

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 7th day of December, 2021.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable William P. Dimitrouleas

All counsel of record