UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60719-CIV-DIMITROULEAS/SNOW

ITAMAR MEDICAL LTD.,

     Plaintiff,

v.

ECTOSENSE NV, and
VIRTUOX, INC.,

     Defendants.

_____/

## OMNIBUS ORDER

THIS CAUSE is before the Court on Defendant Ectosense NV's ("Ectosense") Motion to Compel Itamar to Produce Documents and Data in Response to Ectosense's Second Request for Production ("First Motion to Compel") (ECF No. 200), Ectosense's Amended Motion to Overrule Itamar's Remaining Objections to Ectosense's First Request for Production, and to Compel Itamar to Produce Documents ("Second Motion to Compel") (ECF No. 201), and Ectosense's Amended Motion to Overrule Itamar's Objections to Ectosense's Third Request for Production, and to Compel Itamar to Produce Documents ("Third Motion to Compel"). (ECF No. 202). The Honorable William P. Dimitrouleas referred all pretrial discovery matters to the Honorable Lurana S. Snow for appropriate resolution pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida.. (ECF No. 56) The Court Ordered consolidated briefing and the Motions are now ripe for review. (ECF No. 203)

# I. <u>BACKGROUND</u>

On July 6, 2021, Plaintiff Itamar Medical Ltd. ("Itamar") filed its Third Amended Complaint (ECF No. 121) against Defendants Ectosense *nv* and VirtuOx, Inc. asserting trademark infringement, unfair competition/false designation of origin, and false advertising under the Lanham Act, and unfair competition, deceptive trade practices, and trademark infringement under Florida law. (ECF No. 121 at 1)   According to the Third Amended Complaint, Itamar develops, manufactures, and sells home sleep apnea tests that use its own proprietary peripheral arterial tone, or "PAT", technology. (ECF No. 121 at ¶ 1)  Ectosense is a digital health and medical device company that, like Itamar, focuses much of its attention on sleep disorders. (ECF No. 121 at ¶ 26) Itamar seeks damages as well as other relief for Ectosense's alleged continued use of, and association of its products with, the PAT name and proprietary PAT marks, even though Ectosense's products are not PAT devices and do not provide a PAT measurement. (ECF No. 121 at 11; 35-38)

Ectosense is countersuing Itamar for its alleged false advertising of clinical performance that its devices are "97% accurate ... have PSG-like accuracy," and that Itamar's purported "true sleeptime ... avoids a 20% misdiagnosis". (ECF No. 200 at 2) To prove these claims Ectosense seeks clinical data in a standardized form in the First Motion to Compel as well as internal documented discussions at Itamar pertaining to such clinical performance evaluations, in relation to specific marketing claims. (ECF Nos. 200 at 2; 212-1 at 3) In the Second Motion to Compel, Ectosense seeks an Order overruling Itamar's objections and compelling the

production of Requests for Production ("RFP") numbers 10, 11, 15, 29, 32, 33, 39, 40, 48, and 69 from Ectosense's First Request for Production. (ECF Nos. 201; 212) For some of these RFPs Ectosense acknowledges that Itamar has agreed to produce the applicable documents. (ECF No. 212 at 7-8) Despite this Ectosense asks the Court to enter an Order "requiring Itamar to follow through." Id. at 7.

Ectosense's Third Motion to Compel seeks an Order requiring Itamar to certify that its custodians made good faith and diligent efforts to self collect responsive and non privileged documents. (ECF No. 212 at 9) Ectosense further seeks an Order compelling Itamar to produce documents responsive to RFPs 1-2 and 47-51 from Ectosense's Third Request for Production. (ECF No. 212 at 10) As to RFPs 14, 16, 19, 21, 29, 30, 33, 34, 35, 38, 39, 40, 42, 44, 46, 53, and 56 sought in the Third Motion to Compel, Ectosense concedes that these issues have been resolved between the parties. (ECF No. 212 at 9-10)

## II. DISCUSSION

### A. General Background On Discovery

According to Rule 26(b)(1) of the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevance under Rule 26(b)(1) is construed broadly, but is not without limits. Discovery must not only be relevant to the claims and defenses in the case, but also must be proportional "to the needs of the case." Fed. R. Civ. P. 26(b)(1). The determination of what is relevant for discovery purposes depends on the parties' claims and defenses. Further, the Rules of Civil Procedure shall be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The discovery respondent bears the burden of establishing a lack of relevancy or some other basis for resisting production. See, e.g., Adelman v. Boy Scouts of Am., 276 F.R.D. 681, 697 (S.D. Fla. 2011) (noting that the court could grant motion to compel "solely based on [discovery respondent's] procedurally inadequate objections"). After a properly stated objection is presented, the proponent of a motion to compel seeking to overrule the objection must prove relevance of the requested discovery. See, e.g., Diamond State Ins. Co. v. His House, Inc., No. 10-20039-CIV, 2011 WL 146837 (S.D. Fla. Jan. 18, 2011).

## B. First Motion to Compel

In the First Motion to Compel, Ectosense seeks to compel the production of five categories of documents and clinical data. Those are as follows:

(1) Clinical Study Data (several different types as outlined in RFP 1 in Ectosense's Second Request for Production);

(2) Materials created to discuss the results of Benchmark Experiments;

(3) Correspondence and documents exchanged with review boards or committees about Itamar's clinical studies;

4

(4) Correspondence and documents exchanged with third parties discussing whether or not to publish clinical data, or the results of analysis of clinical data, and correspondence with third parties Itamar sponsored; and

(5) Communications between Itamar and clinical study investigators regarding Itamar's representations about how WatchPAT performed.

(ECF No. 200 at 6) In response to these requests Itamar generally objects on the basis that they are unduly burdensome, overbroad, oppressive, and seeking information irrelevant and disproportional to the needs of this case. (ECF No. 200-1 at 5, 7, 8, 9, 10-11) Following these objections however, Itamar stated that it would meet and confer with Ectosense's counsel to narrow the requests to a smaller universe which is both proportional to the needs of the case and relevant. Id. at 6, 8, 9, 10, 11.

To date it does not appear that the parties have had any success in narrowing the requests sought in the First Motion to Compel. Itamar's Response to the First Motion to Compel instead reemphasizes Itamar's position that Ectosense's requests are "grossly overbroad and lack any proportionality to the needs of this case." (ECF No. 208 at 4) Further, Itamar outlines the difficulty it would have in obtaining the applicable clinical data from third parties as well as the privacy concerns which Itamar believes producing the data would implicate. Id. at 7.

Ectosense first asks this Court to compel Itamar to produce the clinical data Ectosense seeks, in a standardized form consistent with the clinical data protocol which the parties allegedly spent weeks creating. (ECF No. 200 at 2-3) Itamar disputes that such an agreed protocol ever came to fruition and further argues that

the protocol proposed by Ectosense is "one-sided" and "imposes an unnecessarily high burden on Itamar." (ECF No. 208 at 3) On this point Itamar states that if "any clinical data is to be produced, this Court should permit Itamar to produce the data in the format that Itamar maintains the data." Id.

Next, Ectosense argues that Itamar's burden and scope objections violate this Court's General Order on Discovery Objections and Procedures (ECF No. 67), due to the fact that Itamar has not produced documents from a narrower set of categories which Itamar would not object to. (ECF No. 200 at 3) This Court's General Discovery Order provides as follows:

> If there is an objection based upon an unduly broad scope, such as time frame or geographic location, discovery should be provided as to those matters within the scope that is not disputed.  For example, if discovery is sought nationwide for a ten-year period, and the responding party objects on the grounds that only a five-year period limited to activities in the State of Florida is appropriate, the responding party shall provide responsive discovery falling within the five-year period as to the State of Florida.

(ECF No. 67 at 2)  In Itamar's responses to Ectosense's Second Request for Production, Itamar offered suggestions for narrowing the scope of Ectosense's requests.  For example in response to RFP 3 which seeks all correspondence and documents exchanged with an institutional review board or ethics committee discussing or pertaining to clinical studies conducted or proposed by Itamar[,]" Itamar proposed that the request be limited to only clinical studies conducted by Itamar, rather than any proposed studies that were not conducted...." (ECF No. 200-1 at 9)  Despite making this suggestion and stating in response to every other request at issue in the First Motion to Compel, that Itamar would produce

documents after the parties discussed narrowing the scope of the documents sought, it appears to the Court that Itamar has yet to produce any documents in response to Ectosense's requests at issue in the First Motion to Compel. (ECF Nos. 200-1; 208)

Ectosense's third argument in support of the First Motion to Compel is that Itamar's objections of undue burden are premised on illusory hardships. (ECF No. 200 at 3) Ectosense argues that out of the 1,121 publications which Itamar states potentially have responsive information, "only 27 actually involved benchmark experiments that one would expect to have produced clinical data." (ECF No. 200 at 4) Ectosense further states that of the 27 publications it has identified, approximately half were not sponsored or conducted by Itamar and thus Ectosense presumes that Itamar would not possess any clinical data from them. Id.  The 27 publications which Ectosense has identified are attached to the First Motion to Compel as Exhibit No. 2. (ECF No. 200-2 at 5-8)

In response Itamar first argues that Ectosense has failed to justify why it is entitled to "all raw clinical data underlying the research studies examining the WatchPAT's accuracy." (ECF No. 208 at 4) Second, Itamar argues that Ectosense is putting the peer-reviewed research articles on the WatchPAT's accuracy on trial and is engaged in a fishing exhibition to this end in violation of Rule 26's proportionality requirements. Id.  Itamar states that "until Ectosense identifies the specific studies it contends were false or inaccurate, Itamar should not be required to scour through its data materials – and third party data materials...." Id. at 5. Itamar further argues that even if the number of publications were narrowed to the

27 studies outlined by Ectosense, the request would remain "excessively broad and burdensome" because a "significant portion of the 27 articles... are unattainable due to Itamar's inability to access the data." Id. at 5-6.

Ectosense concedes this point in the First Motion to Compel by acknowledging the fact that half of the studies, out of the 27 it identified, were not sponsored by Itamar and thus Itamar presumably would not have the clinical data related to those studies. (ECF No. 200 at 4) Contrary to Itamar's position, Ectosense states that it is only seeking the clinical data "in the possession, custody, and control of Itamar...." Id. at 5. This undercuts Itamar's undue burden argument in regard to the 27 studies identified by Ectosense, as for those studies for which Itamar is not in possession, custody, and control of the clinical data, such data need not be produced.

Finally, Ectosense argues that Itamar's undue burden objection is further negated by its Data Retention Obligations in both the U.S. and Europe. (ECF No. 200 at 5) Ectosense cites to Itamar's HIPAA obligations in support of this. Id. at 6. Itamar argues that HIPAA, and privacy generally, is one of the primary grounds for Itamar's objections to producing the documents sought by Ectosense. (ECF No. 208 at 7) In response to Ectosense's Second Request for Production Itamar took the position that it would provide "the requested privacy objection" if it determined that Clinical Data could not be shared. (ECF No. 200-1 at 6) The Court notes that to date Itamar has not sought a protective order on the basis of privacy concerns and further, Itamar has not provided the Court with a more specific privacy objection

8

than the general objection raised in Itamar's response to Ectosense's Second Request for Production. Id.

As discussed above, Itamar, as the discovery respondent, bears the burden of establishing a lack of relevancy or some other basis for resisting production. See, e.g., Adelman v. Boy Scouts of Am., 276 F.R.D. 681, 697 (S.D. Fla. 2011).  As Itamar has yet to produce any responsive documents to Ectosense's Second Request for Production, the Court must consider whether Itamar has carried its burden in establishing that a legitimate basis exists to resist production of these documents in their entirely.   The Court finds that Itamar's responses and objections to Ectosense's Second Request for Production satisfy this initial burden and thus, the burden shifts to Ectosense to demonstrate that the documents they seek are relevant and proportional to the needs of the case. See, e.g., Diamond State Ins. Co. v. His House, Inc., No. 10-20039-CIV, 2011 WL 146837 (S.D. Fla. Jan. 18, 2011).

The Court finds that Ectosense has demonstrated the relevance of the clinical data they seek as the data goes directly towards proving Ectosense's false advertising counterclaim as well as Ectosense's equitable defense of unclean hands. (ECF No. 200 at 2) Ectosense alleges that Itamar's advertising claims that its devices are "97% accurate ... have PSG-like accuracy," and that Itamar's "true sleep time ... avoids a 20% misdiagnosis" are "patently false...." Id.  The clinical data related to and underlying these claims is clearly relevant to Ectosense's counterclaim.  Thus, the issue is whether RFP 1 and its accompanying 23 subparts

from Ectosense's Second Request for Production are proportional to the needs of the case.

Ectosense states that it is seeking the clinical data in the possession, custody, and control of Itamar which is what Rule 34(a) requires.  Control does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather "the right, authority or practical ability to obtain the documents from a non-party to the action." <u>Bush v. Ruth's Chris Steak House, Inc.</u>, 286 F.R.D. 1, 5 (D.D.C. 2012) (citing <u>In re NTL, Inc. Sec. Litig.</u>, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)); <u>see also</u> <u>United States ITC v. ASAT, Inc.</u>, 411 F.3d 245 (D.C. Cir. 2005) (defining control as "the legal right, authority or ability to obtain documents upon demand").

The parties' arguments in the First Motion to Compel and the Response thereto have narrowed the universe of clinical data sought significantly from "every single data point Itamar has collected regarding its product since inception" (ECF No. 208 at 3), to the studies which Itamar sponsored or conducted out of the 27 identified by Ectosense in Exhibit No. 2 to the First Motion to Compel. (ECF No. 200-2 at 5-8) While Itamar states that Ectosense has not agreed to limit the scope of its requests to the 27 studies which it identified (ECF No. 208 at 6), the Court finds that this narrowed universe of studies serves as an adequate starting point for the parties and Ectosense's request in RFP 1, to this extent is, proportional to the needs of the case.  Accordingly, Itamar shall review the 27 studies identified by Ectosense and produce the related clinical study data which Itamar has in its "possession,

custody, or control." Fed. R. Civ. P. 34(a); <u>see</u> <u>United States ITC v. ASAT, Inc.</u>, 411 F.3d 245 (D.C. Cir. 2005) (defining control as "the legal right, authority or ability to obtain documents upon demand"). To the extent that confidentiality concerns are raised by the productions, this Court's Confidentiality Order will protect Itamar's concerns.

Next, Ectosense asks the Court to Order Itamar to produce the clinical data in a standardized form consistent with a protocol the parties allegedly previously worked through. (ECF No. 200 at 2) Federal Rule of Civil Procedure 34(b)(2)(E)(ii) provides that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." <u>White v. Graceland College Center for Professional Development</u>, 586 F. Supp. 2d 1250, 1263 (D. Kan. 2008) The Rule also provides that "[a] party need not produce the same electronically stored information in more than one form." <u>Id.</u> (citing Fed. R. Civ. P. 34(b)(2)(E)(iii)). The advisory committee notes to the 2006 amendments to Rule 34 provide that the producing party's "option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." Fed. R. Civ. P. 34(b) advisory committee's notes (2006 amendments). The committee notes further provide that "[i]f the responding party ordinarily maintains the information it is producing in a way that

makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." Id.

In the instant case Estosense's request specifies a form for producing the clinical data. Itamar argues that the protocol proposed by Ectosense is "one-sided" and "imposes an unnecessarily high burden on Itamar." (ECF No. 208 at 3) In support of this however, Itamar does not present undue burden arguments specifically related to the form in which Ectosense requests the clinical data and instead only raises objections related to Ectosense's underlying request for the clinical data itself. Id. By contrast Ectosense states that the protocol they propose is "structured in an industry standard format for exchanging medical research data ... [and] specifically ... ensures that ... both sides would be producing only what is natively exportable through ordinary commercial use of each parties' respective products." (ECF No. 212 at 3) The Court finds that the form in which Ectosense requests the clinical data to be produced is reasonable and proportional to the needs of the case and accordingly, Itamar shall produce the applicable clinical data in the form specified by Ectosense in the Second Request for Production. (ECF No. 200-1 at 2-4)

The remaining RFPs at issue in the First Motion to Compel seek internal documented discussions at Itamar pertaining to clinical performance evaluations, in relation to specific marketing claims. Id. RFP 2 seeks the following:

> Produce all versions of summaries, reports, articles, or documents
> discussing the results of Benchmark Experiments.

(ECF No. 200-1 at 7) The Court finds this request is relevant and proportional to the needs of the case when limited to the 27 studies identified by Ectosense in Exhibit No. 2 to the First Motion to Compel. (ECF No. 200-2 at 5-8). Accordingly, Itamar shall produce all versions of summaries, reports, articles, or documents discussing the results of Benchmark Experiments limited to the 27 studies identified by Ectosense for which clinical data was created.

RFP 3 seeks the following:

> Produce all correspondence and documents exchanged with an institutional review board or ethics committee discussing or pertaining to clinical studies conducted or proposed by Itamar.

(ECF No. 200-1 at 8) The Court finds RFP 3 as written by Ectosense to be relevant, but not proportional to the needs of the case.  Itamar responded to this request suggesting that it be limited to "only clinical studies conducted by Itamar, rather than any proposed studies that were not conducted...." Id. at 9.  The Court finds the request as limited by Itamar's suggestion to be proportional to the needs of the case and the request to this extent should have been produced by Itamar in accordance with this Court's General Discovery Order. (ECF No. 67)  Further, to the extent that correspondence and documents exchanged with an institutional review board or ethics committee related to the 27 studies identified by Ectosense exist, Itamar shall also produce those documents.

RFP 4 seeks the following:

> Produce all correspondence and documents exchanged with any persons or entities between Itamar and any clinical studies investigators pertaining to whether or not to publish Clinical Data or results or statistics derived from Clinical Data, and all correspondence

and documents with any persons or entities which Itamar sponsors, or is sponsored by, discussing or pertaining to clinical studies conducted or proposed by Itamar.

(ECF No. 200-1 at 9) The Court finds this request as written to be relevant, but overbroad. The Court refashions Ectosense's request into two separate parts. Part one seeks "all correspondence and documents exchanged with any persons or entities between Itamar and any clinical studies investigators pertaining to whether or not to publish Clinical Data or results or statistics derived from Clinical Data...." The Court finds the request to this extent to be relevant and proportional to the needs of the case and accordingly Itamar shall produce responsive documents to this extent. The second part of the request seeks "all correspondence and documents with any persons or entities which Itamar sponsors, or is sponsored by, discussing or pertaining to clinical studies conducted or proposed by Itamar." The Court finds the second part of Ectosense's request to be duplicative in light of the other discovery granted herein and accordingly, the request to this extent is not proportional to the needs of the case.

To the extent that Itamar objects to this request on the basis of "attorney client privilege, the work product doctrine, the right to privacy, or other privileges" (ECF No. 200-1 at 10), Itamar is reminded that per this Court's General Discovery Order, generalized objections asserting attorney-client privilege or work product doctrine do not comply with the Local Rules. S.D. Fla. L.R. 26.1(e)(2)(B) requires that objections based upon privilege identify the specific nature of the privilege being asserted, as well as, inter alia, the nature and subject matter of the

communication at issue and the sender and receiver of the communication and their relationship to each other. If a general objection of privilege is made without attaching a proper privilege log, the objection of privilege may be deemed to have been waived.

> RFP 5 seeks the following:
>
> Provide all documents constituting or relating to communication between Itamar and clinical study investigators regarding Itamar's representation of clinical performances of WatchPAT.

(ECF No. 200-1 at 10) The Court refashions this request as follows: Provide all documents constituting or relating to communication between Itamar and clinical study investigators regarding Itamar's representation of clinical performances of WatchPAT **limited to the 27 studies identified in Exhibit No. 2 to the First Motion to Compel**. (ECF No. 200-2 at 5-8) When refashioned in this manner the Court finds the request to be relevant and proportional to the needs of the case and accordingly, Itamar shall produce documents responsive to this extent.

## C. Second Motion to Compel

In the Second Motion to Compel, Ectosense seeks an Order overruling Itamar's objections and compelling the production of RFPs 10, 11, 15, 29, 32, 33, 39, 40, 48, and 69 from Ectosense's First Request for Production. (ECF Nos. 201; 212) For some of these RFPs Ectosense acknowledges that Itamar has agreed to produce the applicable documents. (ECF No. 212 at 7-8) Despite this Ectosense asks the Court to enter an Order "requiring Itamar to follow through." Id. at 7.

RFP 10 seeks the following:

Any and all documents evidencing your use of the term "PAT" without the ® symbol.[1]

(ECF No. 208-2 at 5) Itamar's amended response states that it will "produce non-privileged documents sufficient to identify its use of the term 'PAT' without the '®' symbol in commercial advertisements in the United States, after November 2, 2010, the date on which Itamar received its trademark registration...." Id. Ectosense argues that Itamar incorrectly limited its production to 2010 onward as Ectosense specifically is seeking documents demonstrating Itamar's use of the term "PAT" before Itamar received a trademark on the term. (ECF No. 201 at 3) Ectosense states in response that "Ectosense has received, and will continue to receive, documents with the term 'PAT' both before and after federal registration." (ECF No. 208 at 11) The Court finds Ectosense's general request that Itamar be "ordered to produce documents reflecting how it used these terms from the relevant date in its own pleadings, and onward: 1997..." (ECF No. 201 at 3), to be overbroad and not proportional to the needs of the case in light of the other discovery Ordered herein. Accordingly, the Court finds that the documents Itamar states it has produced are sufficient to satisfy its obligations under this request. (ECF No. 208 at 11)

RFP 11 seeks the following:

Any and all documents evidencing your use of the term "PAT®," including each and every instance in which you have made use of "PAT®."

---

1. The attachment containing the correct RFPs and responses appears to only be included in Itamar's Response to the Second Motion to Compel and is not included in Ectosense's filings.

RFP 15 seeks the following:

> Any and all documents and papers of a scientific nature such as journal articles, peer reviewed studies, or informal scientific publications by you, that evidence your use of the term "peripheral arterial tone," including every instance in which you have made use of "peripheral arterial tone."

(ECF No. 201-1 at 11, 13-14) In response to RFP 11 Itamar states that it has "agreed to produce, and produced, 'non-privileged, non-work product documents sufficient to identify its use of the PAT® mark in connection with the goods and services that Itamar offers in the United States.'" (ECF No. 208 at 9) In response to RFP 15 Itamar states that it has "agreed to produce, and produced, 'documents sufficient to identify scientific publications in which Itamar has used the term 'peripheral arterial tone' to identify Itamar's products.'" Id. Itamar further states that it did not restrict its responses temporally and thus Ectosense's objection on this basis is moot. Id. On this point Ectosense agrees that Itamar has resolved Ectosense's "temporal and geographic scope objections...." (ECF No. 212 at 6) However, Ectosense argues that Itamar's response remains incomplete as Itamar has not produced documents showing how "Itamar used the terms [PAT] before... and after its products existed...." Id. at 7.

After a review of Ectosense's requests in RFPs 11 and 15, Itamar's amended responses thereto, as well as Itamar's response to the Second Motion to Compel, the Court finds Itamar's response to RFPs 11 and 15 to be adequate. The Court finds that Ectosense's request that Itamar produce documents showing how "Itamar used the terms [PAT] before ... and after its products existed..." is duplicative in light of

the other Discovery Ordered herein. Id. at 7.  Accordingly, no further production need be ordered in response to these two requests.

RFP 29 seeks the following:

Any and all documents relating to revenues, costs, and profits, including increasing, declining, or lost profits, of Itamar product and/or service offered, advertised, marketed, sold, provided, and/or promoted using "PAT," "PAT®," or any of the PAT Marks.

(ECF No. 208-2 at 12) Itamar states that it has "agreed to produce 'documents sufficient to identify its revenues, costs, and profits relating to Itamar's products that have been sold in the United States under Itamar's family of PAT® marks, from January 2018 to the present.'" (ECF No. 208 at 11) Ectosense states that in conferrals it offered to narrow the temporal scope to 2016 onward which Ectosense believes is a "sufficient window to compare recent historical financial performance, with later performance." (ECF No. 201 at 4) This request at its core seeks documents necessary to "assess the impact of Ectosense's entry into the marketplace on Itamar's income stream." Id.  Itamar argues that the three years of financial data, two years of which predate Ectosense's claimed U.S. launch date of 2020 are sufficient. (ECF No. 208 at 11) In the reply to the Second Motion to Compel, Ectosense asks the Court to compel Itamar to produce"the same number of years before, as it is disclosing for the time period after Ectosense entered the market." (ECF No. 212 at 8) Upon the Court's review it appears that this is exactly what Itamar has agreed to do.  Itamar states that it has agreed to produce financial data from January 2018 onward, this is two years before Ectosense entered the U.S.

market and nearly two years after as of the date of this Order.  Accordingly, the

Court finds Itamar's production in response to this request to be sufficient.

> RFP 32 seeks the following:

> Any and all documents relating to your advertising, marketing, and
> promotion of products and/or services using "PAT," "PAT®," or any of
> the PAT Marks.

> RFP 33 seeks the following:

> Any and all documents relating to analytics of your advertising,
> marketing, and promotion of products and/or services using "PAT,"
> "PAT®," or any of the PAT Marks.

(ECF No. 208-2 at 13-14) Itamar states that it has agreed to produced and has

produced documents "'sufficient to show that it advertises, markets, and promotes

its products using its family of PAT® marks in the United States,' and agreed

to produce, and has produced, analytics of these marketing, advertising, and

promotional efforts." (ECF No. 208 at 9) Itamar also states that it is "not

withholding any advertising, marketing, or promotional documents  based  on

whether the term 'PAT' appears instead of 'PAT®....'" Id. Ectosense states that

what it is ultimately seeking are documents which would show whether Itamar

advertisements used the term "PAT" in a generic way. (ECF No. 212 at 7) Ectosense

concedes that Itamar "appears to have capitulated" but that Ectosense requests

that the Court "enter an order requiring what Itamar says it will accomplish...." Id.

To the extent that Itamar has agreed to produce documents "'sufficient to show that

it advertises, markets, and promotes its products using its family of PAT®

marks  in  the  United States,' and agreed to produce, and has produced, analytics

of these marketing, advertising, and promotional efforts," Itamar shall ensure that

such documents are produced to Ectosense.

> RFP 39 seeks the following:

> Any and all documents supporting the allegations that Ectosense has
> promoted its NightOwl® product through false and misleading
> advertising and promotional materials, including, but not limited to
> such advertising and promotion materials that you consider to be false
> and/or misleading.

> RFP 40 seeks the following:

> Any and all documents supporting the allegations that Ectosense
> recently engaged in additional distribution of printed and electronic
> marketing materials through its U.S. distributors and contacted a
> variety of doctors, dentists, and others that may use HSATs to serve
> their patients, including, but not limited to, such printed and
> electronic materials; documents evidencing the names and identities of
> such alleged U.S. distributors; and documents evidencing the names,
> identities, and dates of contact of such doctors, dentists, and others.

(ECF No. 208-2 at 16-17) Itamar states that it has agreed to produce the documents

requested in RFPs 39 and 40, Ectosense request that the Court enter an Order

requiring Itamar to "follow through." (ECF No. 212 at 7) To the extent that Itamar

has agreed to produce "its copies of Ectosense's false and misleading

advertisements and evidence of Ectosense's marketing campaign, and agreed to

produce, ... correspondence with third parties regarding Ectosense's

advertisements and marketing efforts" (ECF No. 208 at 9-10), Itamar shall ensure

that these documents are produced to Ectosense.

> RFP 48 seeks the following:

> Any and all documents supporting allegations that the usage of
> "peripheral arterial tone or tonometry" dates back to 1990 and 1993,
> that the usage of "peripheral arterial tone or tonometry" became

extensive in 2000 and in relation to Itamar's PAT® devices, that peer reviewed medical publications did not use "peripheral arterial tone or tonometry" in a generic or commonplace manner, that one study refer to Itamar's PAT ® technology in relation to Ectosense's NightOwl®, and that Ectosense promoted such a study.

(ECF No. 208-2 at 21) Itamar states that it has "agreed to produce documents 'sufficient to show' the allegations listed in this request." (ECF No. 208 at 10) Further, Itamar states that the temporal objection it raised was meant to convey that the request was "unduly burdensome, overbroad, and seeks irrelevant information[,]" not that Itamar would not produce documents dating back to 1990, 1993, and 2000. Id.  Ectosense points to Itamar's Third Amended Complaint where Itamar stated that the "terms 'peripheral arterial tone or tonometry' were used twice in 1990 and sporadically in 1993, without becoming a common term." (ECF No. 121 at 8) Ectosense seeks documents which show what Itamar was referencing when it made this allegation. (ECF No. 212 at 8) The Court finds Ectosense's request to this extent to be relevant and proportional to the needs of the case. Accordingly, Itamar shall produce the documents referenced in the Third Amended Complaint where Itamar stated that the "terms 'peripheral arterial tone or tonometry' were used twice in 1990 and sporadically in 1993, without becoming a common term." (ECF No. 121 at 8)

RFP 69 seeks the following:

Any and all documents including, but not limited to, engagement letters, retainer agreements, retainer payments, billing records, time records, invoices, payments, and costs related to this lawsuit.

(ECF No. 208-2 at 28) Ectosense argues that these documents are relevant to Itamar's claim for attorneys' fees, and to the Motion to Disqualify Gene Kleinhendler. (ECF No. 201 at 5-6.)  To the extent that Ectosense sought the documents requested in RFP 69 to support its Motion to Disqualify, those issues are moot in light of the fact that an evidentiary hearing was held, this Court's Report and Recommendation on the Motion was entered (ECF No. 228), and subsequently adopted by the District Court. (ECF No. 236)  Accordingly, the Court will consider the relevance of this request as it pertains to Itamar's claim for attorneys' fees.

Itamar objects to this request on the basis that it seeks information "protected from disclosure by the attorney-client privilege and/or the work product doctrine...."  Itamar also objects on the basis that the request "conflicts with the both Federal Rule of Civil Procedure 54(d)(2) and the procedures set forth in ... Local Rule 7.3...." (ECF No. 208-2 at 29) Itamar argues that Ectosense has provided no authority to support its claim that it is entitled to attorneys' fees information at this stage of the litigation. Itamar further cites to authority demonstrating that prevailing parties in Lanham Act cases in the 11th Circuit file motions, after obtaining a judgment on the merits, to have the case determined to be exceptional in order to obtain an award of their attorneys' fees See, e.g., CarMax Auto Superstores, Inc. v. StarMax Finance, Inc., 192 F. Supp. 3d 1279 (M.D. Fla. 2016); Pergo (Europe) A.B. v. Stanley Black & Decker, Inc., No. 4:16-CV-319-HLM, 2018 WL 3949746 (N.D. Ga. May 7, 2018).

This is contrary to Ectosense's position that "Rule 54(d)(2) [does not] bar discovery on fees during pending litigation ... [and instead] contemplates the opposite, stating a motion for fees may be made during the pendency of the case, if fees are part of the substantive component of damages sought." (ECF No. 201 at 5) Ectosense argues that because Itamar seeks fees under the Lanham Act if it establishes its case to be "exceptional[,]" that this is an exception the general rule that fee entitlement is usually unclear until judgement is rendered in the case. Id.

The Court finds Itamar's argument regarding the timing of motions for attorneys' fees and its related discovery as set in Fed. R. Civ. P. 54(d)(2) and S.D. Fla. L.R. 7.3 to be persuasive.  Accordingly, the Court finds Ectosense's request for "engagement letters, retainer agreements, retainer payments, billing records, time records, invoices, payments, and costs related to this lawsuit" to be premature at this stage of the litigation.  The only other basis Ectosense puts forward to demonstrate entitlement to the requested discovery is that it relates to the Motion to Disqualify Gene Kleinhendler. (ECF No. 201 at 6) As discussed above, the Motion to Disqualify has been heard and determined, accordingly, the Court will not compel Itamar to produce the documents sought in RFP 69 at this time.

## C. Third Motion to Compel

Ectosense's Third Motion to Compel seeks an Order requiring Itamar to certify that its custodians made good faith and diligent efforts to collect responsive and non-privileged documents. (ECF No. 212 at 9) Ectosense further seeks an Order

compelling Itamar to produce documents responsive to RFPs 1-2 and 47-51 from Ectosense's Third Request for Production. (ECF No. 212 at 10)

> RFP 1 seeks the following:
>
> Produce all documents authored by the founders of Itamar Medical or Itamar's key researchers that refer to any of the authors or their respective works referred to in Ectosense's pleadings, including but not limited to: (Complete list at (ECF No. 202-1 at 2))

(ECF No. 202-1 at 2) Itamar objects to this request on that basis that it is "unduly burdensome, overbroad, oppressive, and seeking information irrelevant and disproportional to the needs of this case, to the extent it seeks '[a]ll documents authored by the founders of Itamar Medical or Itamar's key researchers that refer to any of the authors,' or their works, listed above. But, it is not limited to the list above." Id.  Itamar proposes narrowing the request to the published works that reference the authors specifically listed in RFP 1. Id.  The Court notes that to the extent that Itamar does not object to producing documents limited to the authors referenced by Ectosense in RFP 1, such documents should have already been produced in accordance with this Court's General Discovery Order. (ECF No. 67 at 2) Nevertheless, Ectosense appears to agree to Itamar's proposed limitation on the scope of RFP 1. In Ectosense's reply to the Third Motion to compel, Ectosense states that "Itamar should be ordered to produce responsive discussions of **these authors or their articles.**" (ECF No. 212 at 10) The Court finds the RFP 1 limited to this extent to be relevant and proportional to the needs of the case.  Accordingly, Itamar shall produce responsive documents limited to the authors specifically referenced in RFP No. 1. (ECF No. 202-1 at 2-3)

RFP 2 seeks the following:

> Produce all documents reflecting Itamar's analysis, review, commentary, marketing position, communication, both internally and externally (including with the authors), in relation to the following studies: (Complete list at (ECF No. 202-1 at 4-7))

(ECF No. 202-1 at 4) Itamar states that it has "produced and is producing non-privileged documents reflecting Itamar's analysis, review, commentary, marketing position, communication, both internally and externally (including with the authors), in relation to the listed studies and relating to the subject matter of the claims, defenses, or counterclaims in this action, in its possession, custody, or control." (ECF No. 208-3 at 10) The Court finds this to be sufficient to satisfy Itamar's production obligations pursuant to RFP 2 as Ectosense has not convinced the Court that additional production beyond what Itamar has agreed to produce is both relevant and proportional to the needs of the case. To the extent that Itamar is withholding any documents on the basis of attorney-client privilege, the Court once again notes that a privilege log is required for all documents withheld based on privilege.

RFPs 47-49 seek the following:

> Produce all contracts with current or past clients which include a requirement that WatchPAT measure "real," "accurate," or "true" sleep times, or which include a requirement that WatchPAT distinguish between periods of interrupted sleep and uninterrupted sleep.

> Produce a copy of Itamar's contracts with the Department of Veterans Affairs, or any of its divisions or sub-divisions.

> Produce all contracts with current or past clients that include a requirement of demonstrating or certifying WatchPAT's clinical accuracy performance.

(ECF No. 208-3 at 35-36) The Court finds that Itamar has carried its initial burden and established a lack of relevancy of the documents sought in RFPs 47-49. See, e.g., Adelman v. Boy Scouts of Am., 276 F.R.D. 681, 697 (S.D. Fla. 2011).  The Court further finds Ectosense's argument as to why the above requests are relevant and proportional to the needs of the case to be unconvincing.  Accordingly, Ectosense's Third Motion to Compel is denied as to RFPs 47-49.

RFPs 50-51 seek the following:

Provide all documents and correspondence relating to any Securities Exchange Commission inquiries, questions, or investigations with respect to the STATEMENTS AT ISSUE.

Provide all documents and correspondence sent to or received from the Securities and Exchange Commission which pertain to the STATEMENTS AT ISSUE.

(ECF No. 208-3 at 37) Itamar argues that Ectosense fails to show why the SEC documents sought in RFPs 50 and 51 are relevant. (ECF No. 208 at 16) Further, Itamar states that "any documents filed with the SEC are publicly available..." and that "Itamar is not presently aware of any responsive non-public and non-privileged documents." Id. The Court finds that Itamar has carried its burden in establishing a legitimate basis for resisting discovery in connection with the above requests and that Ectosense has not sufficiently demonstrated the relevance of the discovery they seek in order to warrant overruling Itamar's objections.  Accordingly, the Third Motion to Compel is denied as to RFPs 50 and 51.

To the extent that Ectosense seeks an Order requiring Itamar to certify that its custodians made good faith and diligent efforts to collect responsive and non-

privileged documents (ECF No. 212 at 9), the Court finds such an additional certification to be unnecessary. "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." <u>EEOC v. M1 5100 Corp.</u>, No. 19-cv-81320-DIMITROULEAS/MATTHEWMAN, 2020 U.S. Dist. LEXIS 117243 at *5 (S.D. Fla. July 2, 2020) (citing Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 26(g)).

"A party's discovery obligations also include the duty to use reasonable efforts to locate and produce ESI responsive to the opposing party's requests and within the scope of discovery." <u>Id.</u> at 5-6 (citing The Sedona Conference Working Group on Electronic Document Production, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production p. 119 (3d. ed 2018)). "To enforce these responsibilities, the attorney's signature on a discovery response 'certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information . . . responsive to the discovery demand' and has made 'reasonable inquiry into the factual basis of his response.'" <u>Id.</u> (citations omitted).  Itamar's counsel has made the certification necessary by signing Itamar's discovery responses in accordance with Rule 26(g), nothing further is required.

### III. <u>CONCLUSION</u>

After careful review of Defendant Ectosense NV's Motion to Compel Itamar to Produce Documents and Data in Response to Ectosense's Second Request for

Production (ECF No. 200), Ectosense's Amended Motion to Overrule Itamar's Remaining Objections to Ectosense's First Request for Production, and to Compel Itamar to Produce Documents (ECF No. 201), and Ectosense's Amended Motion to Overrule Itamar's Objections to Ectosense's Third Request for Production, and to Compel Itamar to Produce Documents (ECF No. 202), the Response, the Reply thereto, the court file, and applicable law, it is hereby

ORDERED AND ADJUDGED as follows:

(1) Defendant Ectosense NV's Motion to Compel Itamar to Produce Documents and Data in Response to Ectosense's Second Request for Production (ECF No. 200) is GRANTED IN PART and DENIED IN PART. The Motion is granted as follows, Itamar shall:

A. Review the 27 studies identified by Ectosense in Exhibit No. 2 to the First Motion to Compel (ECF No.200-2 at 5-8), and produce the clinical study data which Itamar has in its possession, custody, or control in the form specified by Ectosense in the Second Request for Production. (ECF No. 200-1 at 2-4)

B. Produce all versions of summaries, reports, articles, or documents discussing the results of Benchmark Experiments limited to the 27 studies identified by Ectosense for which clinical data was created. (ECF No. 200-1 at 7)

C. Produce all correspondence and documents exchanged with an institutional review board or ethics committee discussing or pertaining to

clinical studies, limited to only clinical studies conducted by Itamar, rather than any proposed studies that were not conducted. (ECF No. 200-1 at 8)   Further, to the extent that correspondence and documents exchanged with an institutional review board or ethics committee related to the 27 studies identified by Ectosense exist, Itamar shall also produce those documents.

D. Produce all correspondence and documents exchanged with any persons or entities between Itamar and any clinical studies investigators pertaining to whether or not to publish Clinical Data or results or statistics derived from Clinical Data. (ECF No. 200-1 at 9)   To the extent that Itamar objects to this request on the basis of "attorney client privilege, the work product doctrine, the right to privacy, or other privileges" (ECF No. 200-1 at 10), Itamar is reminded that a privilege log is required   for   all documents withheld based on privilege.

E. Produce all documents constituting or relating to communication between Itamar and clinical study investigators regarding Itamar's representation of clinical performances of WatchPAT limited to the 27 studies identified by Ectosense in Exhibit No. 2 to the First Motion to Compel. (ECF Nos. 200-1 at 10; 200-2 at 5-8)

(2) Defendant Ectosense's Amended Motion to Overrule Itamar's Remaining Objections to Ectosense's First Request for Production, and to Compel Itamar to

Produce Documents (ECF No. 201) is GRANTED IN PART and DENIED IN PART.
The Motion is granted as follows:

A. To the extent that Itamar has agreed to produce documents "'sufficient to show that it advertises, markets, and promotes its products using its family of PAT® marks in the United States,' and agreed to produce, and has produced, analytics of these marketing, advertising, and promotional efforts," Itamar shall ensure that such documents are produced to Ectosense. (ECF No. 208-2 at 13-14)

B. To the extent that Itamar has agreed to produce "its copies of Ectosense's false and misleading advertisements and evidence of Ectosense's marketing campaign, and agreed to produce, ... correspondence with third parties regarding Ectosense's advertisements and marketing efforts" (ECF No. 208 at 9-10), Itamar shall ensure that these documents are produced to Ectosense.

C. Itamar shall produce the documents referenced in the Third Amended Complaint where Itamar stated that the "terms 'peripheral arterial tone or tonometry' were used twice in 1990 and sporadically in 1993, without becoming a common term." (ECF No. 121 at 8)

(3) Defendant Ectosense's Amended Motion to Overrule Itamar's Objections to Ectosense's Third Request for Production, and to Compel Itamar to Produce Documents (ECF No. 202) is GRANTED IN PART and DENIED IN PART. The Motion is granted as follows:

A.  Itamar shall produce responsive documents limited to the authors specifically referenced in RFP 1. (ECF No. 202-1 at 2-3)

B.  To the extent that Itamar is withholding any documents in response to RFP 2 on the basis of attorney-client privilege, a privilege log is required for all documents withheld based on this basis. (ECF No. 202-1 at 4-7)

(4) Defendant Ectosense's request for an award of attorneys' fees incurred as a result of Itamar's refusal to produce any data in response to Ectosense's Second Request for Production is DENIED. (ECF No. 200 at 3, 6)

DONE AND ORDERED at Fort Lauderdale, Florida, this 28th day of December 2021.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record

31