UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60719-CIV-DIMITROULEAS

ITAMAR MEDICAL, LTD.,

      Plaintiff,

v.

ECTOSENSE NV and VIRTUOX, INC.

      Defendant.

_____/

**<u>OMNIBUS ORDER</u>**

THIS MATTER comes before the Court on Defendant Ectosense NV ("Ectosense" or "Defendant")'s Motion to Dismiss Third Amended Complaint Pursuant to Rule 12(b)(6) [DE 135] ("Ectosense's 12(b)(6) Motion"); Defendant Ectosense's Factual Subject Matter Jurisdiction Motion to Dismiss Itamar's Third-Amended Complaint [DE 136] ("Ectosense's 12(b)(1) Motion"); Defendant Ectosense's Anti-SLAPP Motion Pursuant to Fla. Stat. § 768.295 [DE 137] ("Ectosense's Anti-SLAPP Motion"); and Defendant VirtuOx, Inc. ("VirtuOx" or "Defendant")'s Motion to Dismiss Plaintiff's Third Amended Complaint [DE 138] ("VirtuOx's 12(b)(1) Motion" and "VirtuOx's 12(b)(6) Motion"). The Court has carefully considered the Motions [DEs 135, 136, 137, 138], the Responses [DEs 145, 146, 147, 150], the Replies [DEs 162, 166, 167, 169], and it otherwise fully advised in the premise.

**I.    <u>BACKGROUND</u>**

On April 9, 2020, Plaintiff Itamar Medical, Ltd. ("Plaintiff" or "Itamar") initiated this action. *See* [DE 1]. On January 4, 2021, the Court denied Defendant Ectosense *nv* ("Ectosense")'s Motion to Dismiss Amended Complaint ("AC"). *See* [DE 52]. The operative

complaint is now the Third Amended Complaint ("TAC") [DE 121], which is the subject of the instant Motions to Dismiss.[1] Plaintiff asserts the same five causes of action in the TAC as the AC against Defendant Ectosense for trademark infringement, unfair competition/false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and claims for unfair competition, deceptive trade practices, and trademark infringement under Florida law. *See* TAC. The TAC adds an additional Defendant, VirtuOx, Inc. ("VirtuOx"), and now brings the same claims against it.

Plaintiff Itamar is an Israeli medical device manufacturer. TAC ¶ 15. Itamar develops, manufactures, and sells products that use Itamar's "PAT" technology, or technology that measures peripheral arterial tone. TAC ¶¶ 15–16. The United States Patent and Trademark Office issued Itamar a U.S. Federal Trademark Registration in November 2010 for the mark "PAT." TAC ¶ 20.  Itamar's PAT technology enables sleep apnea testing without traditional, in-lab sleep apnea diagnostic devises, referred to as Home Sleep Apnea Tests ("HSATs"). TAC ¶ 23. Itamar's product line, including the WatchPAT 200U, WatchPAT 300, and WatchPAT ONE, uses the PAT technology. TAC ¶ 23.

According to the Third Amended Complaint, Defendant Ectosense *nv* is a digital health and medical devices company focused on sleep disorders. TAC ¶ 26. Ectosense sells, promotes, and/or markets its products throughout the United States through various distributors, as well as through clients like VirtuOx. TAC ¶ 26. Defendant VirtuOx is a medical technology services company that provides, among other things, diagnostic tools and services related to sleep apnea, namely using Ectosense's devices. TAC ¶¶ 27, 52. One of Ectosense's products is the NightOwl.

---

[1] The Court assumes the reader's familiarity with the background of this action, including the Court's previous Order Denying Defendant's Motion to Dismiss [DE 52].

TAC ¶ 3. In addition to the NightOwl, VirtuOx also advertises a product called the EZSlep. TAC ¶¶ 3, 27, 52.

Plaintiff claims that Ectosense has made unauthorized use of the PAT marks and has falsely described the NightOwl as a PAT based device. TAC ¶¶ 32. For example, Plaintiff claims that the NightOwl and EZSlep devices use photoplethysmography ("PPG") designed for oximetry. TAC ¶¶ 29, 31. According to Plaintiff, neither the NightOwl nor the EZSlep uses uniform pressure around the finger, which Plaintiff claims has been an inherent element of the PAT measurement. TAC ¶¶ 29–31. Recently, Ectosense has directly compared the NightOwl to Itamar's WatchPAT devices on its website, despite knowing that the NightOwl device does not provide "PAT" measurement. TAC ¶¶ 35–37. Ectosense has also marketed its NightOwl product as based on Peripheral Arterial Tonometry at meetings focused on sleep issues, namely the American Academy of Dental Sleep Medicine and the SLEEP annual meetings, both in 2019. TAC ¶¶ 39–40. Ectosense's marketing materials for the NightOwl also claim that the product is based on PAT or PAT-based. TAC ¶¶ 41–42, 44, 46–47. Plaintiff claims that the NightOwl does not meet the American Academy of Sleep Medicine's ("AASM") guidelines for an HSAT or a PAT-based device. TAC ¶¶ 44–45. According to Plaintiff, Ectosense is attempting to benefit from the medical community's acceptance and use of PAT-based technology by making false and misleading statements that the NightOwl uses PAT-based technology and is a PAT-based HSAT that complies to the AASM guidelines. TAC ¶ 48.

Plaintiff also claims VirtuOx has made unauthorized use of its PAT marks. TAC ¶ 54. For example, Plaintiff claims that VirtuOx markets the NightOwl and EZSlep devices in the United States as a home sleep apnea test and describes such devices as "PAT device[s]" that "use[] the same tech as Itamar[.]" TAC ¶¶ 54–55. Plaintiff claims that VirtuOx, like Ectosense,

advertises the NightOwl and EZSlep as PAT devices through its promotional materials, and has at other times claimed that the NightOwl device was its device. TAC ¶¶ 56–59. According to Plaintiff, VirtuOx is attempting to benefit from the medical community's acceptance and use of PAT-based technology by making false and misleading statements that the NightOwl and EZSlep products are based on PAT technology and qualify as a PAT device. TAC ¶ 66.

Plaintiff contends that Defendants' activities have caused Plaintiff to have to incur legal fees and expenses, and have caused irreparable harm to Itamar's goodwill, reputation, and customer relationships. TAC ¶¶ 67–68. In addition, Plaintiff contends Defendants' marketing of the NightOwl and EZSlep has led and will continue to lead to sales being diverted from Itamar. TAC ¶¶ 48, 66.

Plaintiff now brings its five count Third Amended Complaint against both Defendants. Count I alleges a claim for federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114. Count II alleges a claim for unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A). Count III alleges a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Count IV alleges a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUPTA"). Count V alleges a claim under Florida common law for unfair competition and trademark infringement. Plaintiff seeks to enjoin Defendants from using the PAT mark or claiming the NightOwl or EZSlep are PAT devices as well as obtain a judgment for damages and reasonable attorneys' fees.

## II.   <u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

Because a challenge to standing is a threshold challenge to the subject matter jurisdiction of the Court, the Court first considers Ectosense's 12(b)(1) Motion [DE 136] and VirtuOx's 12(b)(1) Motion [DE 138]. *See Region 8 Forest Service Timber Purchasers Council v. Alcock,*

993 F.2d 800, 804 (11th Cir. 1993); *Gardner v. Mutz*, 962 F.3d 1329, 1338–39 (11th Cir. 2020)

("[B]ecause standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff

has standing before proceeding to consider the merits of her claim, no matter how weighty or

interesting.") (citation omitted).

### A. Standards Governing Standing

"[F]ederal courts cannot exercise jurisdiction over cases where the parties lack standing."

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011). This

principle exists because there is "a constitutional limitation of federal-court jurisdiction to actual

cases or controversies" and "[o]ne element of the case-or-controversy requirement is that

plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Intern. USA*, 568

U.S. 398, 133 S.Ct. 1138, 1146 (2013) (internal citations and quotations omitted). To establish

standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Fla. Wildlife Fed'n, Inc.*,

647 F.3d at 1302 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

The party invoking federal jurisdiction bears the burden of proving standing. *See Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Moreover, each element of standing "must be

supported in the same way as any other matter on which the plaintiff bears the burden of proof,

i.e., with the manner and degree of evidence required at the successive stages of the litigation."

*Id.* At the motion to dismiss stage, general factual allegations of injury resulting from the

defendant's conduct may be sufficient to show standing. At the summary judgment stage,

5

however, the plaintiff "'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of summary judgment motion will be taken to be true." *Id.*

**B. Standards Governing a Rule 12(b)(1) Dismissal**

When a defendant challenges standing on a Motion to Dismiss, the motion attacks the jurisdiction of the Court and is governed by Rule 12(b)(1). Rule 12(b)(1) of the Federal Rules of Civil Procedure indicates that attacks on this Court's subject matter jurisdiction may be either facial or factual. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint. *Id.* at 1529. When courts review facial attacks on their subject matter jurisdiction, they must take the allegations of the complaint at face value and ascertain whether they adequately allege subject matter jurisdiction. *Id.* at 1529. Factual attacks challenge subject matter jurisdiction as a matter of fact. *Id.* When adjudicating factual attacks on its subject matter jurisdiction, the Court may look at materials from outside the four corners of the complaint insofar as they relate to jurisdictional questions. *Id.* In a factual review, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action. *Id.* If the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action, then:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction— its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

6

*Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977)).[2]

Conversely, if an attack on subject matter jurisdiction also implicates an element of the cause of action, then:

> [T]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion. . . . [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Williamson v. Tucker,* 645 F.2d 404, 415–16 (5th Cir.1981), *cert. denied,* 454 U.S. 897 (1981). In short, the exception to the general rule of factual attacks arises where the factual attack on jurisdiction involves facts that are also intertwined with a determination on the merits of the case. "[J]urisdiction becomes intertwined with the merits of a cause of action when 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *See Morrison v. Amway*, 323 F.3d 920, 926 (11th Cir. 2003).

### C. Framework for Analyzing Ectosense's 12(b)(1) Motion

In Ectosense's 12(b)(1) Motion, by challenging both the Lanham Act's "use in commerce" requirement and injury to Plaintiff, and thus Plaintiff's standing to bring this action, Ectosense is raising a factual attack on the Court's subject matter jurisdiction. The fundamental

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

dispute between the parties is whether Ectosense's 12(b)(1) Motion goes to the substantive elements of Itamar's trademark claims. If so, the Court is then forced to proceed under Rule 12(b)(6) or Rule 56, unless Itamar's federal claims are "clearly immaterial or insubstantial" *Id.*

Itamar contends that the "use in commerce requirement" does not appear in the Lanham Act's grant of subject matter jurisdiction and therefore is not a proper basis for a factual subject matter jurisdiction attack. In response, Ectosense argues that in the Eleventh Circuit that "use in commerce" is considered a jurisdictional requirement.

It is well-established that "use in commerce" is a jurisdictional requirement. "Federal courts have subject-matter jurisdiction over claims brought under the Lanham Act when a defendant uses a plaintiff's trademark in interstate commerce." *Frida Kahlo Corp. v. Tupperware Corp.*, No. 13-21039-CIV, 2014 WL 11880681, at *2 (S.D. Fla. Mar. 31, 2014) (citing 15 U.S.C. §§ 1114(1), 1125(a) and *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001) (describing "use in commerce" as a "jurisdictional predicate")). Nevertheless, Ectosense's arguments regarding the Lanham Act's "use in commerce" requirement appear to be an attack on the merits of Plaintiff's trademark infringement claims, namely the purported falsity of Plaintiff's jurisdictional allegations relating to "use in commerce" and Plaintiff's standing to bring the cause of action. *Sony Computer Ent. Am., Inc. v. NASA Elecs. Corp.*, No. 07-20819-CIV, 2008 WL 11333475, at *5 (S.D. Fla. Feb. 7, 2008) ("The existence of standing in the case at bar, as in most cases, is . . . intertwined with the merits of the case[.]"). As such, the Court will treat Ectosense's objection as an attack on the merits of Plaintiff's case. *See Williamson*, 645 F.2d at 415.  Moreover, because discovery is still ongoing and converting Ectosense's 12(b)(1) Motion into a motion for summary judgment would be premature at this stage, the Court declines to consider matters outside the Third Amended Complaint and proceeds under the standard for a

8

motion to dismiss. The Court must therefore accept all factual allegations as true and make all reasonable inferences in favor of the non-moving party, Itamar. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004).

### D. Whether Itamar Has Adequately Pled Use in Commerce

The Court first addresses the issue of whether Plaintiff has adequately alleged that Defendant Ectosense used the PAT marks "in commerce." Because "use in commerce" is discussed in the briefing on both Ectosense's 12(b)(1) Motion and Ectosense's 12(b)(6) Motion, the Court will address these arguments together.

As an initial matter, the Court notes that Ecotosense requests that the Court read the "use in commerce" requirement narrowly in a manner that restricts application of the Lanham Act. For example, Ectosense argues that goods are used in commerce if used on a display only when used at a "point of sale." But the Eleventh Circuit has instructed that "[t]he term 'use in commerce' as used in the Lanham Act denotes Congress's authority under the Commerce Clause rather than an intent to limit the Lanham Act's application to profit making activity." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194 (11th Cir. 2001); *BTG Patent Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1322–23 (S.D. Fla. 2016) (interpreting "use in commerce" broadly as a jurisdictional requirement for purposes of 15 U.S.C. §§ 1114 and 1125(a) and denying in part a motion to dismiss premised on the plaintiff's failure to allege such a use). "Because Congress's authority under the Commerce Clause extends to activity that 'substantially affects' interstate commerce, the Lanham Act's definition of 'commerce' is concomitantly broad in scope[.]" *Direct Niche, LLC v. Via Varejo S/A*, No. 15-CV-62344, 2017 WL 5952896, at *6 (S.D. Fla. Aug. 10, 2017), *aff'd,* 898 F.3d 1144 (11th Cir. 2018) (internal citation and quotation omitted). Further, determining whether Ectosense's use of Plaintiff's

marks occurred on a display at a point of sale is not an appropriate determination at this stage in

the litigation. *See In re Siny Corp.*, 920 F.3d 1331, 1336 (Fed. Cir. 2019) (holding that whether a

display is at a point-of-sale is a factual question).

Ectosense argues that Itamar fails to state a claim for trademark infringement and false

designation of origin and fails to establish subject matter jurisdiction under the Lanham Act

because Ectosense did not use the PAT marks "in commerce." Under the Lanham Act's

infringement provision:

> Any person who shall, without the consent of the registrant . . . *use in commerce*
> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in
> connection with the sale, offering for sale, distribution, or advertising of any goods
> or services on or in connection with which such use is likely to cause confusion . .
> . shall be liable in a civil action by the registrant.

15 U.S.C. § 1114 (emphasis added). Likewise, the Lanham Act's unfair competition provision

states:

> Any person who, on or in connection with any goods or services, or any container
> for goods, *uses in commerce* any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which . . . is likely
> to cause confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or association of such person with another person, or as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person . . . shall be liable in a civil action by any person who believes that
> he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (emphasis added).

Ectosense argues that § 1127's definition of "use in commerce" controls. That section

provides that "a mark shall be deemed to be in use in commerce . . . on goods when . . . it is

placed in any manner on the goods or their containers or the displays associated therewith or on

the tags or labels affixed thereto" and "the goods are sold or transported in commerce." 15

U.S.C. § 1127. Ectosense argues that to state a Lanham Act claim for trademark infringement or false designation of origin, and to otherwise establish Lanham Act jurisdiction, Plaintiff had to allege that Ectosense placed its PAT marks on a good that is actually used in commerce. Ectosense argues that Plaintiff instead makes allegations pertaining only to the distribution of written materials, conference presentations, and websites referencing the mark. *See* TAC ¶ 48.

In response, Plaintiff cites to *BTG Patent Holdings, LLC*. In that case, the plaintiff sued for trademark infringement under the Lanham Act though the defendants "never sold an infringing product in the United States" but nevertheless "promote[d] an allegedly infringing mark . . . and indicated that they were planning to launch competing products." 193 F. Supp. 3d at 1314. The defendants also "appeared at [a] trade show in Las Vegas . . . displaying their new [goods]." *Id.* The defendants moved to dismiss based on similar arguments to Ectosense, arguing that § 1127's "use in commerce" definition only contemplated goods using the infringing mark that were actually sold or transported. *Id.* at 1322. In rejecting this argument, the court noted that "[t]he problem with this argument is that § 1127's definition of 'use in commerce' applies only in the trademark qualification context and not in the trademark infringement context." *Id.* The Court acknowledged that the Eleventh Circuit has not directly decided whether § 1127's definition of "use in commerce" applies to the Lanham Act's infringement and unfair competition provisions, and other circuits have reached conflicting conclusions on the issues. *Id.*

Nevertheless, the Court declined to apply § 1127's definition of "use in commerce," relying on the Eleventh Circuit's decision in *North American Medical Corporation et al. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008). In that case, the Eleventh Circuit held that defendant's unauthorized use of trademarks in meta tags of its website, though not visible to consumers, was in fact "use" in commerce. *Id.* at 1218–20. In its holding, the Eleventh Circuit

expressed hesitation regarding whether § 1127's "use in commerce" definition applied in the infringement context. *Id.* at 1220 n.7 ("[A] a leading treatise on trademarks notes that §1127 'defines the kind of use needed to acquire registrable trademark rights—not to infringe them.'") (internal citation and quotations omitted).

The Court agrees with the reasoning in *BTG Patent Holdings* and finds that to the extent that Plaintiff's Third Amended Complaint alleges that Ectosense "used" the PAT marks at all, at least some of the alleged uses are uses "in commerce." Plaintiff alleges that Defendants used its trademark "in commerce" by: making unauthorized use of its PAT marks on its brochures, instructions, operation manuals, materials, and websites, *see* TAC ¶¶ 32, 35, 38–42, 44, 47, 48; maintaining websites promoting its product and comparing its product to Itamar's products, *see* TAC ¶ 13, 35, 48, 53, 64; presenting and distributing information with references to the PAT marks at two professional conferences in Texas, *see* TAC ¶¶ 39–40; and, importantly, by selling, promoting, and/or marketing "its product in the United States through various distributors, healthcare providers and physicians, dentistry centers and dentists, as well as through clients like VirtuOx who use Ectosense's NightOwl to perform sleep tests," *see* TAC ¶ 26.

Ectosense also argues that Plaintiff cannot establish "pre-suit" "use in commerce" because it never sold goods to U.S. consumers, making it impossible for Itamar to have standing before it filed the instant action. The problem with this argument is that several courts have found the fact that a defendant did not sell any infringing products immaterial, because liability under the Lanham Act can be based on advertising, promotion, or use of a website alone. *See Axiom*, 522 F.3d at 1218–20; *BTG Patent Holdings*, F. Supp. 3d at 1322–23; *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir. 1983) ("Advertising that affects interstate commerce and solicitation of sales across state lines . . . is . . . commerce within the

meaning of the Lanham Act."); *VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1364, 1365–66 (Fed. Cir. 2019) (holding that defendant's use of plaintiff's trademarks in advertising and brochures was sufficient to establish liability for trademark infringement); *BMW of N. Am., LLC v. Barreira*, 633 F. App'x 882, 884 (9th Cir. 2015) (finding irrelevant the fact that defendant "did not actually *complete* any sales," because "even an offer to sell goods with an infringing trademark establishes liability under the Lanham Act") (emphasis in original). Here, Plaintiff has specifically alleged that Ectosense sells, promotes, and/or markets its product in the U.S. through various distributors and clients, as well as through promotion of its product on various websites. The Court finds such allegations sufficient to plead "use in commerce" under a motion to dismiss standard.

### E.  Whether Itamar Has Adequately Pled Standing

The Court further finds that Plaintiff has alleged facts sufficient to establish standing. To have standing under § 1114 of the Lanham Act, the plaintiff must be the federal registrant of the trademark. *Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-20683-CIV, 2017 WL 5957743, at *8 (S.D. Fla. Nov. 30, 2017) ("The text of § 1114(1)(a) restricts recovery to trademark registrants only."). Moreover, § 1125(a) confers standing where a plaintiff pleads "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014); *Kroma Makeup EU, Ltd. v. Boldface Licensing ± Branding, Inc.,* No. 6:14-CV-1551-ORL, 2015 WL 1708757, at *5 (M.D. Fla. Apr. 15, 2015) (discussing the Supreme Court's two-pronged standing inquiry from *Lexmark,* which requires courts to determine (i) whether the plaintiff falls within the zone-of-interests of the statutory provision, and (ii) whether "his injuries were proximately caused by the defendant's wrongful conduct").

Here, Plaintiff alleges that it is the trademark registrant of the PAT marks. TAC ¶¶ 20–23. Plaintiff also alleges that Defendants' "pervasive and unauthorized use of the PAT marks has . . . harmed, and will continue to harm, the goodwill and reputation of these marks," which were caused by Defendants' conduct. *See*, *e.g.*, TAC ¶¶ 48, 54, 66–68, 83, 92, 95, 109. Accordingly, Plaintiff has standing to sue under both § 1114(1)(a) and § 1125(a).[3]

Ectosense's arguments in favor of dismissal focus on its contention that most of Plaintiff's jurisdictional allegations are false, contending that Itamar made "false allegations . . . to manufacture the appearance of standing." [DE 136] at 3. The Court notes that:

> [I]n nearly every case in which the defendant prevails it could be claimed, in hindsight, that the plaintiff lacked standing because he did not suffer an injury capable of a judicial remedy. That does not mean, however, that courts can view every case before them through the lens of a standing inquiry and permit dismissal of any case after an abbreviated, free-form proceeding in which it determines that the plaintiff's claims lack merit, without the benefit of a trial.

*Sony Computer*, 2008 WL 11333475, at *6 (internal citation omitted). Whether Itamar's allegations are true is a question better reserved for trial.

In sum, accepting Plaintiff's allegations as true and drawing all inferences in favor of Plaintiff, the Court finds Plaintiff has sufficiently pled "use in commerce" and an "injury-in-fact" sufficient to confer standing. Because VirtuOx's 12(b)(1) Motion merely adopts the arguments of Ectosense's 12(b)(1) Motion, both Motions are due to be denied.

## III.   <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

Ectosense's 12(b)(6) Motion [DE 135] and VirtuOx's 12(b)(6) Motion [DE 138] seek to dismiss Plaintiff's Third Amended Complaint [DE 121] for failure to state a claim.

---

[3] The Court notes that Ectosense's 12(b)(1) Motion disputes that standing exists but does not discuss the elements of standing.

### A.  Standards Governing a 12(b)(6) Motion

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334-36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183 (1984)).

### B.  Consideration of the FDA's 510(k) Summary and Other Documents

As an initial matter, Ectosense, throughout its 12(b)(6) Motion, relies on documents outside the four corners of the complaint. These documents include two pamphlets and the FDA's March 5, 2020 Clearance Letter and 501(k) Summary, the same documents the Court did not consider in ruling on the last motion to dismiss. *See* [DE 52] at 4–6. Defendant contends that

the Court can now rely on the 510(k) Summary because Plaintiff relies directly on the 501(k) Summary's content in its Third Amended Complaint. Specifically, Defendant points out that in paragraph 45 of the Third Amended Complaint, Plaintiff references the 501(k) Summary to support its allegations that NightOwl does not measure REM. TAC ¶ 45. In response, Plaintiff again requests that the Court not consider these documents for the same reasons it did not consider them in Defendant's previous motion to dismiss.

As the Court has previously stated, in considering a motion to dismiss, a court's review is confined to the four corners of the complaint. *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009). An exception exists for documents that were not attached to the complaint if they are central to a plaintiff's claim and their authenticity is undisputed. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id.*

Although it is true that the 501(k) Summary is now referenced in Plaintiff's complaint, it does not appear to be central to Plaintiff's claim. Rather, as Plaintiff argues, they are central to Defendant's defenses. *See, e.g., Santos v. Fed. Nat. Mortg. Ass'n*, 889 F. Supp. 2d 1363, 1366 (S.D. Fla. 2012). Moreover, the meaning of this document is still disputed by Plaintiff. The Court again will not consider them.[4]

---

[4] The Court notes that it continues to take judicial notice of the fact that the FDA issued the Clearance Letter for the NightOwl product on March 6, 2020. *See* [DE 52] at 7.

### C.  Itamar's Allegations Against VirtuOx

In the TAC, Plaintiff alleges that "[a]t all relevant times, Ectosense acted as the principal, agent, and/or representative of VirtuOx, and VirtuOx acted as the principal, agent, and/or representative of Ectosense" and that "[a]ny action by one of the Defendants was within the course and scope of the agency relationship between the Defendants[.]" TAC ¶ 4. In its 12(b)(6) Motion, VirtuOx argues Plaintiff's claims against it should be dismissed because this allegation, that VirtuOx acted as both a principal and agent of Ectosense, is a legal absurdity that fails to put VirtuOx on notice of the claims against it. Likewise, Ectosense's 12(b)(6) Motion argues Plaintiff's allegations against VirtuOx are legally implausible. In response, Plaintiff contends that its pleading of an agency relationship is sufficient at to meet Rule 12(b)(6) requirements, and discovery will resolve any doubt as to the nature of the relationship between Ectosense and VirtuOx.

While the question of whether an agency relationship exists is a factual question, it is proper for a district court to assess the sufficiency of the factual allegations at the motion to dismiss stage. *Fojtasek v. NCL*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009). Nevertheless, the Court need not decide the sufficiency of Plaintiff's agency allegations as to VirtuOx. Whether or not Plaintiff's claims against VirtuOx are sufficient is not dependent on whether Plaintiff has sufficiently pled a proper agency relationship or whether, as pled, the allegation is legally plausible. Plaintiff separately pleads factual allegations against each Defendant, alleging facts to support how they are each liable for the claims Plaintiff lodges against them. *Compare* TAC ¶¶ 32–51 *with* ¶¶ 52–66. The Court finds the allegations pertaining to VirtuOx's alleged liability are sufficiently specific to provide VirtuOx notice of the claims against it. *See, e.g.*, TAC ¶ 55 ("As another example of VirtuOx's deceptive and infringing conduct, VirtuOx describes the NightOwl

and the EZSlep as 'PAT device[s]' that 'use[] the same tech as Itamar.' Both statements are false, as well as misleading.").

Even assuming, *arguendo*, the Court were to find Plaintiff's allegation legally implausible, the Court is unpersuaded that the authority cited by VirtuOx would support dismissal of Plaintiff's Third Amended Complaint in its entirety. *See Kaufman, Englett & Lynd, PLLC v. Better Bus. Bureau of Cent. Fla., Inc.*, No. 6:12-CV-31-ORL-28KRS, 2013 WL 524931, at *4 (M.D. Fla. Feb. 13, 2013) (disapproving of plaintiff's agency allegation but dismissing the false advertising claim on grounds that the rating agency defendants did not compete with law firm plaintiff); *Designing Health, Inc. v. Erasmus*, No. CV-98-4758 LGB, 2000 WL 35789501, at *7 (C.D. Cal. Oct. 31, 2000) (striking an agency allegation from the complaint where plaintiffs did "not elaborate on this allegation further in the [complaint]"); *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 288 (Tenn. 2015) (determining agency allegations by mortgage industry plaintiff were insufficient based on a series of case law dealing specifically with that plaintiff).

Finally, in its 12(b)(6) Motion, Ectosense raises similar arguments regarding Plaintiff's attributing statements to other entities as it did in its previous Motion to Dismiss. *See* [DE 28] at 18–19. As the Court stated in its previous Order Denying Defendant's Motion to Dismiss:

> Whether Ectosense actually made these statements or can be held liable for these statements, is not an appropriate determination for the Court to make on a motion to dismiss. As such, Defendant's arguments that statements in the Amended Complaint cannot be attributed to Ectosense will not prevent Plaintiff's claims from proceeding at this time.

[DE 52] at 18–19. This time, Ectosense points out that Plaintiff now attributes these statements to VirtuOx. Consideration of this fact does not alter the Court's finding, as it appears from the face of the Third Amended Complaint that Plaintiff is attempting to hold both Defendants

18

directly liable for their own false statements. Taking these allegations as true and drawing all factual inferences in favor of Plaintiff, the Court sees no reason for Plaintiff's claims not to proceed at this time.

Accordingly, the Court will not dismiss Plaintiff's Third Amended Complaint on these grounds. VirtuOx and Ectosense are not foreclosed from raising issues pertaining to the relationship between Ectosense and VirtuOx at a later stage in the litigation.

### D. Whether Itamar's Claims State a Claim for Relief[5]

Ectosense seeks to dismiss all of Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Plaintiff argues Ectosense's 12(b)(6) Motion is merely a motion for reconsideration in disguise that makes the same arguments regarding substantive issues as its previous Motion to Dismiss [DE 28].

### 1. *Trademark Infringement and False Designation of Origin*

First, Ectosense argues that Itamar fails to state a claim for trademark infringement and false designation of origin because Ectosense did not use the PAT marks "in commerce." As discussed above, the Court finds that Plaintiff's Third Amended Complaint sufficiently alleges "use in commerce" for purposes of the Lanham Act. *See supra*.

Second, Ectosense argues Plaintiff's claims for trademark infringement and false designation of origin should be dismissed because Plaintiff's use of the term "PAT" is descriptive and merely refers to proprietary technology, not goods. Plaintiff responds that

---

[5] For purposes of judicial economy, the Court will not recite its analysis regarding whether Itamar states a claim for relief under each of its counts and limits its discussion to the issues raised in Ectosense's instant 12(b)(6) Motion. Further, the Court notes that VirtuOx merely adopts the arguments in sections III, IV, and V of Ectosense's 12(b)(6) Motion [DE 135] without specifying any additional arguments regarding whether Plaintiff states a claim on each count as to VirtuOx.

Ectosense's argument is nothing more than the same fair use argument the Court already considered and rejected in its previous Order.

Upon careful review of Ectosense's arguments, the Court agrees with Plaintiff. Though Ectosense asserts that it is not rearguing the fair use defense, it again raises that Plaintiff cannot attempt to claim exclusive use over a word or acronym that describes a type of proprietary technology. Implicit in this argument is the contention that Defendant's use of the PAT mark was fair use. The Court finds it unnecessary to recite its analysis and instead incorporates them here by reference. *See* [DE 52] at 6–11. For the reasons stated in its previous Order, the Court finds dismissal on these grounds inappropriate on motion to dismiss.

    2.   *Federal False Advertising Claim*

Ectosense contends the FDCA precludes or preempts Count III, for false advertising under the Lanham Act, and Count IV, brought under FDUPTA. According to Ectosense, Plaintiff's false advertising claim under the Lanham Act and FDUPTA claim are precluded and preempted, respectively, by 21 U.S.C. § 337(a) which provides the FDA with exclusive enforcement powers of the FDCA. In effect, Defendant contends that the FDA has effectively approved of the statement that the NightOwl measures PAT and, as such, any of Plaintiff's claims challenging these statements as false or misleading are precluded and preempted by the FDCA. Most of these arguments are identical to the arguments Ectosense raised in its previous Motion to Dismiss, which the Court already considered and addressed in its previous Order. [DE 52] at 12–16. The Court will not recite its reasoning once again.[6]

---

[6] For example, Ectosense contends that "the 510k clearance is safety and effectiveness determination," based on "valid scientific evidence." [DE 135] at 20–21. The Court already considered and rejected this argument, concluding that the "510(k) process is not a process for the FDA to preapprove the safety and efficacy of a medical advice" and is instead "a process by which the manufacturer can earn an exemption to the FDA's premarket approval process for medical devices by demonstrating that the device in question is 'substantially equivalent' to legally marketed devices." [DE 52] at 15–16.

Ectosense now relies on *In re GNC*, 789 F.3d 505, 516 (4th Cir. 2015) to support its preclusion argument. *GNC* concerned a dietary supplement label which stated that the active ingredients in the supplement—glucosamine and chondroitin—were "shown to improve joint comfort and function." 789 F.3d at 509. Plaintiffs filed suit under the Lanham Act, alleging that these representations constituted false advertising. *Id.* at 515. Critically, the complaint in *GNC* conceded that the scientific community remained divided as to whether glucosamine and chondroitin improved joint function. *Id.* at 511. Given the split in the scientific community, the district court dismissed the action, reasoning that the complaint failed plausibly allege the actual falsity of the claim. *Id.* at 511–12. In affirming the district court decision, the Fourth Circuit emphasized that where "litigants concede that some reasonable and duly qualified scientific experts agree with a scientific proposition, they cannot also argue that the proposition is 'literally false.'" *Id.* at 515.

Unlike *In re GNC*, nothing in Plaintiff's Third Amended Complaint concedes that NightOwl measures PAT. Moreover, Plaintiff continues to dispute the meaning of the 510(k) summary and FDA's clearance letter. While Ectosense now references the "volumes of documents" that it argues would require Plaintiff to admit that "the FDA vetted NightOwl and agreed that it measures PAT," the existence of these documents and whether they in fact would require Plaintiff to make such an admission is an inappropriate consideration at this stage in the litigation. As the Court already stated in its previous Order:

> Concluding that this allegation is sufficient either because the NightOwl is in fact PAT-based or because the 510(k) Summary and FDA Clearance Letter evidence that the NightOwl provides a PAT measurement would require the Court to conduct a fact-intensive inquiry and draw inferences in favor of Defendant. Such an analysis is not appropriate at the motion to dismiss stage.

[DE 52] at 18. Once again, accepting Plaintiff's allegations as true and drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has sufficiently pled that Ectosense's advertisements were false or misleading.

*3. State Law Claims*

Finally, Ectosense seeks dismissal of Plaintiff's state law claims under FDUPTA and common law trademark and unfair competition on grounds of preemption. It is unclear to the Court what new preemption argument Ectosense is making that was not addressed in the Court's previous Order. *See* [DE 52] 20–23. Rather, it appears that Ectosense merely disagrees with the Court's reasoning, asserting that "[t]he Court was persuaded that the 510(k) clearance is not device specific in a field preemption view . . . but did not focus on the fact that this is not a field preemption question—it is an issue specific preemption question." [DE 135] at 24. The Court states now as it did then: "At this stage in the litigation, the Court is not persuaded that Plaintiff's FDUPTA claim is preempted by the FDCA." [DE 52] at 23. Accordingly, and for the reasons discussed in its previous Order [DE 52], the Court finds no reason for Plaintiff's Counts IV and V not to proceed at this stage.

## IV.   MOTION TO DISMISS PURSUANT TO FLA. STAT. § 768.295

By its Anti-SLAPP Motion, Ectosense seeks to dismiss Plaintiff's complaint pursuant to Fla. Stat. § 786.295, Florida's statutory prohibition of strategic lawsuits against public participation (the "Anti-SLAPP statute"). In response, Plaintiff asserts that the Anti-SLAPP statute cannot be asserted in federal court to dismiss the TAC. Plaintiff further argues that the Anti-SLAPP Statute's plain language covers Itamar's claims.

Florida's Anti-SLAPP statute prohibits a person from filing a cause of action "against another person or entity *without merit* and *primarily* because such person or entity has exercised

the constitutional right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3)

(emphasis added). As used in this provision, "free speech in connection with a public issue"

means:

> any written or oral statement that is protected under applicable law and is made
> before a governmental entity in connection with an issue under consideration or
> review by a governmental entity, or is made in or in connection with a play, movie,
> television program, radio broadcast, audiovisual work, book, magazine article,
> musical work, news report, or other similar work.

*Id.* § 768.295(2)(A).

The Eleventh Circuit has not yet addressed whether Florida's Anti-SLAPP statute can be

applied to actions in federal court. *See Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir.

2020) (holding that appellant waived the argument "that Florida's anti-SLAPP statute should not

be applied in federal court" by raising it for the first time on appeal). Though the Court

acknowledges the parties' arguments for and against applying Florida's Anti-SLAPP statute in

federal court, the Court need not decide the question in the instant action. This is because, even

assuming the statute applies, the Court finds that application of Florida's Anti-SLAPP statute is

unwarranted in this action. As discussed above and in its previous Order Denying Defendant's

Motion to Dismiss, *see* [DE 52], Plaintiff has sufficiently stated a claim as to all five of its

counts. On this basis, the Court cannot conclude at this stage that Plaintiff's lawsuit was brought

"primarily" to suppress Ectosense's free speech or that its claims are "without merit." *Buckley v.*

*Moore*, No. 20-CIV-61023-RAR, 2021 WL 3173185, at *10 (S.D. Fla. July 26, 2021)

(determining that because plaintiff's claims were sufficient to survive a motion to dismiss, the

court could not "conclude on the face of the complaint that Plaintiffs' lawsuit was 'primarily'

filed to suppress Defendants' exercise of free speech"); *Pierre-Paul v. ESPN Inc.*, No. 16-21156-

CIV, 2016 WL 4530884, at *2 (S.D. Fla. Aug. 29, 2016) ("Assuming [Florida's Anti-SLAPP

statute] applies, this suit plainly has merit since two of its original three counts remain.").

Accordingly, Ectosense's Anti-SLAPP Motion is denied. [7]

**V.   CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.   Ectosense's Motion to Dismiss Third Amended Complaint Pursuant to Rule 12(b)(6) [DE 135] is **DENIED**. Though Ectosense requests oral argument on this Motion, the Court previously held oral argument on Ectosense's previous Motion to Dismiss [DE 28], which raised many of the same arguments as the instant Motion. As such, Ectosense's request for oral argument is **DENIED**.

2.   Ectosense's Factual Subject Matter Jurisdiction Motion to Dismiss Itamar's Third Amended Complaint [DE 136] is **DENIED**.

3.   Ectosense's Anti-SLAPP Motion Pursuant to Fla. Stat. § 768.295 [DE 137] is **DENIED**.

4.   VirtuOx's Motion to Dismiss Plaintiff's Third Amended Complaint [DE 138] is **DENIED**.

5.   Defendants shall file their answer to Plaintiff's Third Amended Complaint on or before **January 12, 2022**.

---

[7] Ectosense attaches extrinsic evidence to support its arguments, which may not properly be considered on a motion to dismiss. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (stating that in considering a motion to dismiss, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims"). The Court therefore declines to consider Ectosense's extrinsic evidence.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Broward County, Florida this

29th day of December, 2021.


WILLIAM P. DIMITROULEAS
United States District Judge


Copies furnished to:
All Counsel of Record