# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No. 20-cv-60719-WPD**

ITAMAR MEDICAL LTD.,

                              Plaintiff,

       v.

ECTOSENSE NV, and VIRTUOX, INC.,

                            Defendants.

**PLAINTIFF ITAMAR MEDICAL LTD.'S THIRD SET OF REQUESTS FOR THE**
**PRODUCTION OF DOCUMENTS TO DEFENDANT ECTOSENSE *nv***

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff Itamar Medical Ltd. ("Itamar") hereby requests that Defendant Ectosense *nv* ("Ectosense") respond to the following Requests for Production ("Requests"), separately and fully in writing and under oath, within thirty (30) days after service hereof. To the extent permitted by Federal Rule of Civil Procedure 26, these Requests are deemed continuing and the responses must be supplemented promptly upon acquisition of further or additional information.

**DEFINITIONS AND INSTRUCTIONS**

1.      "You," "your," and "Defendant" or "Ectosense" means Ectosense, its officers, directors, members, managers, agents, consultants, contractors, employees, attorneys, accountants, predecessors, successors, parents, subsidiaries, divisions, affiliates, assigns and representatives, and any person or entity, past or present, acting on its behalf.

2.      "Plaintiff" and "Itamar" mean plaintiff Itamar Medical, Ltd., its officers, directors, members, managers, agents, consultants, contractors, employees, attorneys, accountants,

predecessors, successors, parents, subsidiaries, divisions, affiliates, assigns and representatives, and any person or entity, past or present, acting on its behalf.

3.      "PAT MARKS" refers to (1) the following marks used as product names: the WatchPAT® 200, WatchPAT® 200U, WatchPAT® 300, WatchPAT® ONE, Endo PAT®, and CloudPAT®; and (2) the term "PAT" when used in connection with either of the parties' goods, technologies, services, or advertisements.

4.      "510(k)" refers to the 510(k) submission number K19130 and process by which Ectosense obtained premarket clearance from the FDA in connection with NightOwl device.

5.      "Person(s)" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

6.      "Identify" means: (a) with respect to a natural person, to set forth the person's full name, present or last known address, and present or last known employer; (b) with respect to a person who is an organization, government or business entity, to state the entity's full formal name(s) and any d/b/a, its form, and present or last known address; (c) with respect to a document, the (i) type of document, (ii) general subject matter, (iii) date of the document, and (iv) authors, addressees, and recipients.

7.      "Document" and "documents" are to be construed broadly in light of federal rule of civil procedure 34(a) and federal rule of evidence 1001, and mean every type of writing, recording, or photograph, including e-mail, and exhibits and attachments to documents. "document" or "documents" includes both the original of a document and each copy or draft of the document that contains any additional writing, notations or interlineations or is in any respect not an identical copy of the original. Attachments, exhibits, appendices, schedules, and enclosures to documents are considered part of the same document.

8.        The use of the terms "and," "or," and "and/or" should be construed conjunctively and disjunctively for the broadest possible meaning.

9.        The use of terms, phrases, and definitions is for convenience and no term, phrase, or definition shall be construed as an admission.

10.        Any word that is not defined has its usual and customary meaning.

11.        The singular use of any term or phrase includes its plural, and the plural of any term or phrase includes its singular.

12.        Each request set forth should be construed independently, and not in reference to any other interrogatory for purposes of limitation.

13.        Pursuant to Federal Rule of Civil Procedure 34, in producing the requested documents, furnish all documents in your actual or constructive possession, custody or control including, without limitation, documents which may be in the physical possession of another person or entity such as your advisors, attorneys, investigators, employees, agents, associates, affiliates, or representatives. You are to designate any information that is not within your personal knowledge, and as to that information, you are to state the name and address of every person from whom it was received, or if the source of the information is documentary, a full description of the document including its title and location.

14.        If a document otherwise responsive to a request was, but no longer is, in your actual or constructive possession, custody or control, please state whether the document (a) is lost or destroyed; (b) has been transferred to another person or entity either voluntarily or involuntarily; or (c) has been otherwise disposed of, and, in each instance; (d) explain the circumstance surrounding the disposition, including the date or approximate date of the disposition.

15.     If any requested document cannot be produced or cannot be produced in full, please produce it to the extent possible, indicating what portion or portions are being withheld and the reason it is being withheld.

16.     If there are responsive documents which constitute "electronically stored information" ("ESI") under Federal Rule of Civil Procedure 34, such as emails that are kept in electronic form in the ordinary course of your business (e.g., in a Microsoft Exchange server or outlook database, on network backup tapes, or on an individual user's workstation, personal computer, or laptop computer), then those documents shall be produced according to the terms of the Stipulated Order Regarding Electronic Discovery [ECF No. 87] agreed upon by the parties and entered by the court, or according to such other protocol regarding ESI as the parties may agree.

17.     Whenever a request requires you to describe an act or action, omission, meeting, conference, discussion, occurrence, happening, instance, or event, you are to provide a full description thereof, including a statement setting forth: (a) the date and place thereof; (b) the identity of each oral communication involved and each document that refers to or that was prepared or made during the course thereof or as a consequence thereof; and (c) the identity of all persons who were witnesses or participants.

18.     The use herein of a particular font, capitalization, italics, or other formatting in connection with the description of the trademarks that are the subject of a given request is not intended to be limiting, and you are to interpret references to any specified trademark broadly and without regard to such formatting elements.

19.     All requests must be answered completely, in writing, and under oath and signed by the person providing the answers. If any request cannot be answered completely after the exercise of reasonable diligence, the person providing the answer shall furnish as complete an

answer as possible and then explain in detail the reason a full answer cannot be given, which shall include a statement indicating what is needed in order to be able to give a full answer to the requests.

20.    If objection is made to the production of any document requested, please state the reasons for the objection. If objection is made to part of an item or category, please specify the part to which objection is made.

21.    With respect to any document responsive to any request which you contend you are not required to produce because of an alleged privilege (which you are not presently prepared to waive), state for each such allegedly privileged document the following: (1) the date of the document; (2) the identity and position of the author(s); (3) the identity and position of all addressees and recipients; (4) the document's present location; (5) the privilege asserted (e.g., attorney-client, etc.); and (6) a sufficient description of the contents of the document to allow Itamar to determine the merits of the claim of privilege.

## **REQUESTS FOR PRODUCTION**

REQUEST FOR PRODUCTION NO. 134:

    All Your internal documents relating to the FDA's Refuse To Accept Notification of May 3, 2019 (Bates no. ECTO0007322).

SUPPLEMENTAL RESPONSE:   Responsive documents, to the extent they exist, have already been produced. To the extent additional materials may be responsive to this request, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials.

REQUEST FOR PRODUCTION NO. 135:

    All communications between Ectosense and third parties relating to the FDA's Refuse To Accept Notification of May 3, 2019 (Bates no. ECTO0007322).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced. To the extent additional materials may be responsive to this request, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials.

REQUEST FOR PRODUCTION NO. 136:

All communications between Ectosense and the FDA regarding the FDA's Refuse To Accept Notification of May 3, 2019 (Bates no. ECTO0007322).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced. Should additional responsive documents be identified, Ectosense will promptly disclose their existence, and either produce them contemporaneously, or identify the privilege asserted as grounds for withhold them.

REQUEST FOR PRODUCTION NO. 137:

All Your internal documents relating to the FDA's Refuse To Accept Notification of May 28, 2019 (Bates no. ECTO0008128).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced. To the extent additional materials may be responsive to this request, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials.

REQUEST FOR PRODUCTION NO. 138:

All communications between Ectosense and third parties relating to the FDA's Refuse To Accept Notification of May 28, 2019 (Bates no. ECTO0008128).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced. To the extent additional materials may be responsive to this request, but which are primarily responsive to another request included herein, they will be contemporaneously produced

with those materials.

REQUEST FOR PRODUCTION NO. 139:

All communications between Ectosense and the FDA regarding the FDA's Refuse To Accept Notification of May 28, 2019 (Bates no. ECTO0008128).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced. To the extent additional materials may be responsive to this request, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials.

REQUEST FOR PRODUCTION NO. 140:

All Your internal documents relating to the FDA's Request for Additional Information Notification of August 9, 2019 (beginning at Bates no. ECTO0008317).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced, when Ectosense produced the entirety of its 510(k) submissions demonstrating 510(k)-compliant proof of PAT equivalency. Ectosense is presently unaware of any additional documents in existence which may be responsive on this topic, which is inclusive of and broader than the discrete topic of the request. To the extent any additional materials may be responsive to this request which have not been produced yet, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials. If Itamar seeks documents other than the 510(k) materials previously produced, then Ectosense objects on vagueness and ambiguity grounds, because it is unclear what is being requested. The type of scientific data and clinical studies this contemplates (those used to establish the equivalency of PAT with the FDA) has already been turned over. Otherwise, if the request is seeking materials in the vein of communications or dialogue, Ectosense has already produced the internal and external communications related to this request.

REQUEST FOR PRODUCTION NO. 141:

        All communications between Ectosense and third parties relating to the FDA's Request for Additional Information Notification of August 9, 2019 (beginning at Bates no. ECTO0008317).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced, when Ectosense produced the entirety of its 510(k) submissions demonstrating 510(k)-compliant proof of PAT equivalency. Ectosense is presently unaware of any additional documents in existence which may be responsive on this topic, which is inclusive of and broader than the discrete topic of the request. To the extent any additional materials may be responsive to this request which have not been produced yet, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials. If Itamar seeks documents other than the 510(k) materials previously produced, then Ectosense objects on vagueness and ambiguity grounds, because it is unclear what is being requested. The type of scientific data and clinical studies this contemplates (those used to establish the equivalency of PAT with the FDA) has already been turned over. Otherwise, if the request is seeking materials in the vein of communications or dialogue, Ectosense has already produced the internal and external communications related to this request.

REQUEST FOR PRODUCTION NO. 142:

        All communications between Ectosense and the FDA regarding the FDA's Request for Additional Information Notification of August 9, 2019 (beginning at Bates no. ECTO0008317).

SUPPLEMENTAL RESPONSE:  During conferrals, Itamar explained requests for FDA-related correspondence were not duplicative of materials later disseminated, marketed, or made available to the public, because Itamar was focused on internal communications about interactions with the FDA, as opposed to correspondence directly with the FDA. Notwithstanding this explanation,

which would seemingly place the request within the category of materials which Itamar conceded would likely be duplicative, responsive documents, to the extent they exist, have already been produced. To the extent additional materials may be responsive to this request, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials. If Itamar seeks documents other than the 510(k) materials previously produced, then Ectosense objects on vagueness and ambiguity grounds, because it is unclear what is being requested. The type of scientific data and clinical studies this contemplates (those used to establish the equivalency of PAT with the FDA) has already been turned over. Otherwise, if the request is seeking materials in the vein of communications or dialogue, Ectosense has already produced the internal and external communications related to this request.

REQUEST FOR PRODUCTION NO. 143:

        All drafts of the May 9, 2019 reply to the FDA's Refusal To Accept (RTA) Notification of May 3, 2019 (Bates no. ECTO0003686).

SUPPLEMENTAL RESPONSE:  Responsive documents, to the extent they exist, have already been produced, when Ectosense produced the entirety of its 510(k) submissions demonstrating 510(k)-compliant proof of PAT equivalency. Ectosense is presently unaware of any additional documents in existence which may be responsive on this topic, which is inclusive of and broader than the discrete topic of the request. Ectosense is unaware of any additional "drafts" intended to serve as a "reply" within the plain meaning of those terms, *to wit*, an unusual meaning is not being ascribed to those terms to justify statements no additional documents exist. If a different, atypical meaning is intended, such has not been disclosed at this time, but Ectosense will consider the request alongside any clarified definitions Itamar may offer in the future. To the extent any additional materials may be responsive to this request which have not been produced yet, but which are primarily responsive to another request included herein, they will be

contemporaneously produced with those materials. If Itamar seeks documents other than those this supplemental response appears to contemplate, then the request is vague and ambiguous.

REQUEST FOR PRODUCTION NO. 144:

All drafts of the June 3, 2019 reply to the FDA's Refusal To Accept (RTA) Notification of May 28, 2019 (Bates no. ECTO0005021).

SUPPLEMENTAL RESPONSE: Responsive documents, to the extent they exist, have already been produced, when Ectosense produced the entirety of its 510(k) submissions demonstrating 510(k)-compliant proof of PAT equivalency. Ectosense is presently unaware of any additional documents in existence which may be responsive on this topic, which is inclusive of and broader than the discrete topic of the request. Ectosense is unaware of any additional "drafts" intended to serve as a "reply" within the plain meaning of those terms, *to wit*, an unusual meaning is not being ascribed to those terms to justify statements no additional documents exist. If a different, atypical meaning is intended, such has not been disclosed at this time, but Ectosense will consider the request alongside any clarified definitions Itamar may offer in the future. To the extent any additional materials may be responsive to this request which have not been produced yet, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials. If Itamar seeks documents other than those this supplemental response appears to contemplate, then the request is vague and ambiguous.

REQUEST FOR PRODUCTION NO. 145:

All drafts of the February 3, 2020 reply to the FDA's Request for Additional Information Notification of August 9, 2019 (Bates nos. ECTO0003571– ECTO0003603).

SUPPLEMENTAL RESPONSE: Responsive documents, to the extent they exist, have already been produced, when Ectosense produced the entirety of its 510(k) submissions demonstrating 510(k)-compliant proof of PAT equivalency. Ectosense is presently unaware of any additional

documents in existence which may be responsive on this topic, which is inclusive of and broader than the discrete topic of the request. Ectosense is unaware of any additional "drafts" intended to serve as a "reply" within the plain meaning of those terms, *to wit*, an unusual meaning is not being ascribed to those terms to justify statements no additional documents exist. If a different, atypical meaning is intended, such has not been disclosed at this time, but Ectosense will consider the request alongside any clarified definitions Itamar may offer in the future. To the extent any additional materials may be responsive to this request which have not been produced yet, but which are primarily responsive to another request included herein, they will be contemporaneously produced with those materials. If Itamar seeks documents other than those this supplemental response appears to contemplate, then the request is vague and ambiguous.

REQUEST FOR PRODUCTION NO. 146:

All Your internal documents relating to the promotional material referencing PAT entitled "Ectosense Technology Into Perspective" dated March 2017 (Bates nos. ECTONAT-0000000145), a copy of which is attached hereto as **Exhibit 1**.

SUPPLEMENTAL RESPONSE: Ectosense interprets the request as implicitly-bound by the standard limitations to responsiveness previously stipulated to with Itamar's predecessor counsel (*e.g.*, the United States comprising the relevant geographic region, the products at issue in this lawsuit comprising the relevant products within the meaning of "responsive," and similar commonly-raised parameters governing discovery), and its understanding of the term "related to," as specifically related to the document described (as opposed to "related to" the general topics the document described addresses). Ectosense states the same not because an atypical meaning is being utilized to justify withholding documents, and not because Ectosense's responses to other requests apply a different understanding of the term "responsive," but rather, because the phrase "relating to the promotional material" is vague in the manner used by the request, and Ectosense is

unsure of Itamar's subjectively-intended meaning if it differs from Ectosense's interpretation. Responsive documents, to the extent they exist, have already been produced. If additional responsive documents exist, they are either being produced contemporaneously in response to a different request, or if they are identified in the future, Ectosense will disclose their existence together with another supplemental production, or an explanation of the basis upon which they are being withheld, notwithstanding Ectosense locating them. If Itamar seeks documents other than those this supplemental response appears to contemplate, then the request is vague and ambiguous with respect to the intended meaning of "promotional material."

REQUEST FOR PRODUCTION NO. 147:

        All communications between Ectosense and third parties relating to the promotional material referencing PAT entitled "Ectosense Technology Into Perspective" dated March 2017 (Bates no. ECTONAT-0000000145). *See* **Exhibit 1**.

SUPPLEMENTAL RESPONSE: Ectosense interprets the request as implicitly-bound by the standard limitations to responsiveness previously stipulated to with Itamar's predecessor counsel (*e.g.*, the United States comprising the relevant geographic region, the products at issue in this lawsuit comprising the relevant products within the meaning of "responsive," and similar commonly-raised parameters governing discovery), and its understanding of the term "related to," as specifically related to the document described (as opposed to "related to" the general topics the document described addresses). Ectosense states the same not because an atypical meaning is being utilized to justify withholding documents, and not because Ectosense's responses to other requests apply a different understanding of the term "responsive," but rather, because the phrase "relating to the promotional material" is vague in the manner used by the request, and Ectosense is unsure of Itamar's subjectively-intended meaning if it differs from Ectosense's interpretation. Responsive documents, to the extent they exist, have already been produced. If additional

responsive documents exist, they are either being produced contemporaneously in response to a different request, or if they are identified in the future, Ectosense will disclose their existence together with another supplemental production, or an explanation of the basis upon which they are being withheld, notwithstanding Ectosense locating them. If Itamar seeks documents other than those this supplemental response appears to contemplate, then the request is vague and ambiguous with respect to the intended meaning of "promotional material."

REQUEST FOR PRODUCTION NO. 148:

All documents evidencing any inspection on You or in relation to the NightOwl products conducted by the FDA.

SUPPLEMENTAL RESPONSE: Ectosense interprets the term "inspection" as referring to "inspections" conducted by the FDA in the ordinary course of reviewing or testing products already approved for sale in the United States. The FDA uses the term "inspection" generally to reference post-approval reviews, so in assessing Itamar's requests, Ectosense interprets them collectively as breaking the possible interactions with the FDA into different time frames, this request bearing on the time frame after approval. *To wit*, Ectosense interprets this request as seeking FDA-related materials created in connection with an "inspection" of NightOwl after it was approved for sale in the United States. To the extent Itamar intends the word "inspection" to include documents created during any earlier review of application or 510(k) submission materials, Ectosense already interprets other requests, for which responsive documents have already been produced, as seeking the same materials. In the event additional responsive documents are located, Ectosense will promptly disclose them, and either produce them contemporaneously, or state the basis upon which they are being withheld.

<u>REQUEST FOR PRODUCTION NO. 149</u>:

All documents collected by You for any inspection conducted by the FDA.

<u>SUPPLEMENTAL RESPONSE</u>: As stated previously, based on Ectosense's understanding of how Itamar organized its requests, Ectosense interprets the term "inspection" as referring to "inspections" conducted by the FDA that either did, or could, result in a Form 483 when objectionable conditions were identified, and not to include the review of application or 510(k) submission materials – which Ectosense already produced, as responsive to other requests squarely asking for those. To the extent Itamar intends the word "inspection" to include documents created during any earlier review of application or 510(k) submission materials, Ectosense already interprets other requests, for which responsive documents have already been produced, as seeking the same materials. In the event additional responsive documetns are located, Ectosense will promptly disclose them, and either produce them contemporaneously, or state the basis upon which they are being withheld.

<u>REQUEST FOR PRODUCTION NO. 150</u>:

Any FDA Form 483 received by You.

<u>SUPPLEMENTAL RESPONSE</u>: No responsive documents exist at this time.

<u>REQUEST FOR PRODUCTION NO. 151</u>:

All documents responding to any FDA Form 483 received by You.

<u>SUPPLEMENTAL RESPONSE</u>: Objection, the request begs the question and assumes Ectosense received an FDA Form 483 in the first place. Because Ectosense never received a Form 483 from the FDA, no responsive documents exists "responding to any FDA Form 483."

<u>REQUEST FOR PRODUCTION NO. 152</u>:

All meeting requests to the FDA made by You prior to Your 510k submission on

4827-2544-4857.3

March 29, 2019.

SUPPLEMENTAL RESPONSE: No responsive documents exist. Ectosense never "made" (Ectosense assumes the term "made" is used colloquially by Itamar to mean "issued a specific document containing a request") any "meeting requests to the FDA . . . prior to [Ectosense's] 510k submission."

REQUEST FOR PRODUCTION NO. 153:

All communications with the FDA made by You prior to Your 510k submission on March 29, 2019.

SUPPLEMENTAL RESPONSE: No responsive documents exist. Ectosense never "made" (Ectosense assumes the term "made" is used colloquially by Itamar to mean "issued a specific document containing a request") any "communications with the FDA . . . prior to [Ectosense's] 510k submission."

REQUEST FOR PRODUCTION NO. 154:

All notes of any meetings between You and the FDA.

SUPPLEMENTAL RESPONSE: Ectosense already produced reams of correspondence with the FDA, so if this request is different wording for earlier requests seeking the same, the request is duplicative and redundant. Ectosense interprets this as a follow-up to the immediately preceding requests, and interprets this as referring to the same set of hypothetical meetings Itamar assumed took place prior to Ectosense's submission of 510k materials to the FDA. If Itamar intends to elicit something different, the request is vague and ambiguous. The request is vague and ambiguous in other respects already, in that it begs the question and assumes Ectosense and the FDA conducted a meeting in which notes could be taken. Because Ectosense and the FDA never "met" before Ectosense submitted its 510k, no "notes" from meetings exist. Finally, the request is vague and ambiguous, because it could be referring to something formal, like minutes taken at a board

meeting, or informal, like notes taken on a napkin during business lunch. Neither exists here, so Ectosense points this out only to the extent it may bear on subsequent requests applying similar sets of understandings or assumptions.

REQUEST FOR PRODUCTION NO. 155:

      All FDA responses to meeting requests made by You.

SUPPLEMENTAL RESPONSE: No responsive documents exist. Ectosense never "made" (Ectosense assumes the term "made" is used colloquially by Itamar to mean "issued a specific document containing a request") any "meeting requests" to the FDA, assuming Ectosense correctly interprets this request as a follow-up to the same topics discussed in the immediately preceding requests. If Itamar is referring to something else, the request is vague and ambiguous.

REQUEST FOR PRODUCTION NO. 156:

      All recordings of meetings with the FDA.

SUPPLEMENTAL RESPONSE: No responsive documents exist, assuming Ectosense correctly interprets this request as a follow-up to the same topics discussed in the immediately preceding requests. If Itamar is referring to something else, the request is vague and ambiguous.

REQUEST FOR PRODUCTION NO. 157:

      All recordings of Your internal meetings regarding meetings with the FDA prior to Your 510(k) submission on March 29, 2019.

SUPPLEMENTAL RESPONSE: No responsive documents exist. So Itamar understands how the requests are being interpreted in general, Ectosense also notes the request makes explicit, and demonstrates this request (like the immediately preceding) bear on the same topic.

REQUEST FOR PRODUCTION NO. 158:

      All information or data You generated to show the substantial equivalency between the NightOwl® and the WatchPAT 200u.

<u>SUPPLEMENTAL RESPONSE</u>: Responsive documents have already been produced in connection with Ectosense's production of 510(k) submission documents. To the extent the request seeks information or data not yet produced which is distinct from the 510(k) submission materials, the request is inherently vague, because such an interpretation would rely on the objectionably-broad use of the term "all" as encompassing even materials which one person may subjectively view as plausibly responsive, as opposed to encompassing the set of documents which would be objectively viewed as responsive to the request. *To wit*, based on Ectosense's stated understanding of the request, Ectosense has produced all responsive documents it possesses. If additional responsive documents are located in the future, Ectosense will promptly disclose them and either produce contemporaneously, or state the basis upon which they are being withheld.

<u>REQUEST FOR PRODUCTION NO. 159</u>:

All information or data You submitted to the FDA to show the substantial equivalency between the NightOwl® and the WatchPAT 200u.

<u>SUPPLEMENTAL RESPONSE</u>: Responsive documents have already been produced in connection with Ectosense's production of 510(k) submission documents. To the extent the request seeks information or data not yet produced which is distinct from the 510(k) submission materials, the request is inherently vague, because such an interpretation would rely on the objectionably-broad use of the term "all" as encompassing even materials which one person may subjectively view as plausibly responsive, as opposed to encompassing the set of documents which would be objectively viewed as responsive to the request. *To wit*, based on Ectosense's stated understanding of the request, Ectosense has produced all responsive documents it possesses. If additional responsive documents are located in the future, Ectosense will promptly disclose them and either produce contemporaneously, or state the basis upon which they are being withheld.

<u>REQUEST FOR PRODUCTION NO. 160</u>:

Communications with Your shareholders, investors and/or potential investors

relating to Your 510k.

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials exchanged with the types of third parties identified, the request is duplicative. Finally, regardless of whether Ectosense has produced responsive documents and withheld some on a privilege basis, and regardless of whether Itamar asked for the identical set of documents previously, Ectosense reasserts its previously-made objections based on the common-interest doctrine exception to waiver of attorney-client privilege. Any privileged materials should already be logged.

REQUEST FOR PRODUCTION NO. 161:

Communications with Your shareholders, investors and/or potential investors relating to Your use of the PAT MARKS.

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials exchanged with the types of third parties identified, the request is duplicative. Finally, regardless of whether Ectosense has produced responsive documents and withheld some on a privilege basis, and regardless of whether Itamar asked for the identical set of documents previously, Ectosense reasserts its previously-made objections based on the common-interest doctrine exception to waiver of attorney-client privilege. Any privileged materials should already be logged.

REQUEST FOR PRODUCTION NO. 162:

Communications with Your shareholders, investors and/or potential investors relating to Your use of the term "PAT-based."

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials exchanged with the types of third parties identified, the request is duplicative. Finally, regardless of whether Ectosense has

produced responsive documents and withheld some on a privilege basis, and regardless of whether Itamar asked for the identical set of documents previously, Ectosense reasserts its previously-made objections based on the common-interest doctrine exception to waiver of attorney-client privilege. Any privileged materials should already be logged.

REQUEST FOR PRODUCTION NO. 163:

    Communications with Your shareholders, investors and/or potential investors relating to the present lawsuit.

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials exchanged with the types of third parties identified, the request is duplicative. Moreover, the request clearly exceeds the temporal scope which the parties have agreed should be the presumptively "responsive" time period. Finally, regardless of whether Ectosense has produced responsive documents and withheld some on a privilege basis, and regardless of whether Itamar asked for the identical set of documents previously, Ectosense reasserts its previously-made objections based on the common-interest doctrine exception to waiver of attorney-client privilege.

REQUEST FOR PRODUCTION NO. 164:

    Presentations, communications and/or disclosures made to Your board of directors regarding the PAT Marks.

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials considered responsive but privileged, Ectosense has designated them in its privilege log. To the extent the request contemplates exchanges between Ectosense and supervisory independent personnel sometimes termed "independent directors," the request is not clear, and even if the request explicitly sought such documents, Ectosense has already objected to this duplicative request on the basis of the

common-interest exception to waiver of attorney-client privilege, within its privilege log. If additional documents are identified which have not yet been produced or disclosed in its privilege log, Ectosense will promptly disclose them and either contemporaneously produce, or state the basis upon which they are withheld.

REQUEST FOR PRODUCTION NO. 165:

Presentations, communications and/or disclosures made to Your board of directors regarding the CPT Code 95800.

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials considered responsive but privileged, Ectosense has designated them in its privilege log. To the extent the request contemplates exchanges between Ectosense and supervisory independent personnel sometimes termed "independent directors," the request is not clear, and even if the request explicitly sought such documents, Ectosense has already objected to this duplicative request on the basis of the common-interest exception to waiver of attorney-client privilege, within its privilege log. If additional documents are identified which have not yet been produced or disclosed in its privilege log, Ectosense will promptly disclose them and either contemporaneously produce, or state the basis upon which they are withheld. Ectosense is also reviewing its privilege log materials, to determine if any pertain to the subject matter of this request, and if any are located, Ectosense will assess whether it will continue to assert privilege with this specific request in mind. Finally, while the parties previously stipulated formal documents presented during a board meeting would represent all which exists and is responsive to a request of this type, Ectosense has assessed this request from a broader assumption the request is in-artfully worded, and includes within the contemplated breadth of its scope, informal communications.

REQUEST FOR PRODUCTION NO. 166:

Presentations, communications and/or disclosures made to Your board of directors regarding Itamar.

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials considered responsive but privileged, Ectosense has designated them in its privilege log. To the extent the request contemplates exchanges between Ectosense and supervisory independent personnel sometimes termed "independent directors," the request is not clear, and even if the request explicitly sought such documents, Ectosense has already objected to this duplicative request on the basis of the common-interest exception to waiver of attorney-client privilege, within its privilege log. If additional documents are identified which have not yet been produced or disclosed in its privilege log, Ectosense will promptly disclose them and either contemporaneously produce, or state the basis upon which they are withheld. Ectosense is also reviewing its privilege log materials, to determine if any pertain to the subject matter of this request, and if any are located, Ectosense will assess whether it will continue to assert privilege with this specific request in mind. Finally, while the parties previously stipulated formal documents presented during a board meeting would represent all which exists and is responsive to a request of this type, Ectosense has assessed this request from a broader assumption the request is in-artfully worded, and includes within the contemplated breadth of its scope, informal communications.

REQUEST FOR PRODUCTION NO. 167:

Presentations, communications and/or disclosures made to Your board of directors regarding this lawsuit.

SUPPLEMENTAL RESPONSE: This request—facially—seeks "communications" which Ectosense gave internal team members (*i.e.* the "control group" always includes the board of directors) about fact and opinion work product "regarding this lawsuit." Stated differently, it

literally asks for "legal presentations containing legal analysis about this specific lawsuit, made by Ectosense's attorneys, or personnel assisting Ectosense's attorney's, to Ectosense's 'control group.'" Notwithstanding the invasion of privilege this request seeks to accomplish, to the extent responsive, non-privileged materials exist, they have already been produced. To the extent this seeks any other materials considered responsive but privileged, Ectosense has designated them in its privilege log. This request is clearly duplicative of previous requests, and clearly falls outside the time frame which the parties stipulated is the presumptive "responsive" time period. To the extent the request contemplates exchanges between Ectosense and supervisory independent personnel sometimes termed "independent directors," the request is not clear, and even if the request explicitly sought such documents, Ectosense has already objected to this duplicative request on the basis of the common-interest exception to waiver of attorney-client privilege, within its privilege log. If additional documents are identified which have not yet been produced or disclosed in its privilege log, Ectosense will promptly disclose them and either contemporaneously produce, or state the basis upon which they are withheld. Ectosense is also reviewing its privilege log materials, to determine if any pertain to the subject matter of this request, and if any are located, Ectosense will assess whether it will continue to assert privilege with this specific request in mind. Finally, while the parties previously stipulated formal documents presented during a board meeting would represent all which exists and is responsive to a request of this type, Ectosense has assessed this request from a broader assumption the request is in-artfully worded, and includes within the contemplated breadth of its scope, informal communications.

REQUEST FOR PRODUCTION NO. 168:

Presentations, communications and/or disclosures made to Your board of directors regarding VirtuOx.

SUPPLEMENTAL RESPONSE: To the extent responsive, non-privileged materials exist, they

have already been produced. To the extent this seeks any other materials considered responsive but privileged, Ectosense has designated them in its privilege log. To the extent the request contemplates exchanges between Ectosense and supervisory independent personnel sometimes termed "independent directors," the request is not clear, and even if the request explicitly sought such documents, Ectosense has already objected to this duplicative request on the basis of the common-interest exception to waiver of attorney-client privilege, within its privilege log. If additional documents are identified which have not yet been produced or disclosed in its privilege log, Ectosense will promptly disclose them and either contemporaneously produce, or state the basis upon which they are withheld. Ectosense is also reviewing its privilege log materials, to determine if any pertain to the subject matter of this request, and if any are located, Ectosense will assess whether it will continue to assert privilege with this specific request in mind. Finally, while the parties previously stipulated formal documents presented during a board meeting would represent all which exists and is responsive to a request of this type, Ectosense has assessed this request from a broader assumption the request is in-artfully worded, and includes within the contemplated breadth of its scope, informal communications.

REQUEST FOR PRODUCTION NO. 169:

All executed agreements between You and VirtuOx.

SUPPLEMENTAL RESPONSE: All responsive documents known to exist have already been produced by Ectosense, or attached to pleadings and/or motion practice by VirtuOx and Ectosense. Given the dismissal of VirtuOx with prejudice, the request is also seemingly moot, because it seeks documents which no longer bear on the litigation. Should additional responsive documents be located in the future, Ectosense will promptly disclose their existence, and either contemporaneously produce them or identify the basis upon which they are withheld. Notwithstanding the foregoing, Ectosense is reviewing its responsive documents and privilege log,

and will endeavor to specifically identify even more specific documents which speak to the relationship of which Itamar inquires, even if no further directly responsive materials are located.

REQUEST FOR PRODUCTION NO. 170:

All drafts of executed agreements between You and VirtuOx.

SUPPLEMENTAL RESPONSE: The natural meaning of the phrase "all drafts of executed agreements" is essentially, multiple copies of the same final version of a document, different only as to the signatory. Under that natural interpretation, all responsive documents known to exist have already been produced by Ectosense, or attached to pleadings and/or motion practice by VirtuOx and Ectosense. Should additional responsive documents be located in the future, Ectosense will promptly disclose their existence, and either contemporaneously produce them or identify the basis upon which they are withheld. Beyond that, if what is intended is, "earlier unsigned versions of the same documents containing the same general content, but with revisions comprising the difference between the unsigned versions and the versions which were ultimately executed," the phrase "all drafts of executed agreements" would seemingly impart the opposite meaning— facially, the request seeks all versions (copies, may be the appropriate label) of a single, final document which was executed. Otherwise, Ectosense incorporates its previously made objections that 1) the request is duplicative; 2) the request seeks privileged and work-product materials, and certain documents may be responsive, but if privilege or work-product attaches, are identified on Ectosense's privilege log, instead of being produced; 3) the Court previously upheld Ectosense's objections to previous requests for the same material, and notwithstanding Itamar's notions to the contrary and suggestions any concerns regarding maintaining competitive business or trade-secret materials is overblown in light of the confidentiality order, Ectosense nonetheless reasserts such objections; 4) Itamar has not demonstrated a compelling need overcoming work-product doctrine protections. If additional responsive documents are located which have not already been disclosed through production or on

the privilege log, Ectosense will promptly disclose them, and either produce them contemporaneously, or reiterate the bases upon which they are withheld as specifically applicable to such hypothetical documents.

REQUEST FOR PRODUCTION NO. 171:

        All communications between You and VirtuOx regarding the NightOwl products.

SUPPLEMENTAL RESPONSE: All responsive documents known to exist have already been produced by Ectosense, or attached to pleadings and/or motion practice by VirtuOx and Ectosense. To the extent this request seeks materials created after the anticipation of litigation, such materials are protected from disclosure by the common-interest exception to waiver of attorney-client privilege, and would have been disclosed on Ectosense's privilege log already. Should additional responsive documents be located in the future, Ectosense will promptly disclose their existence, and either contemporaneously produce them or identify the basis upon which they are withheld. Otherwise, Itamar's recent dismissal of VirtuOx with prejudice would appear to moot the need for Itamar to explore VirtuOx's communications at all, let alone more extensively than other Ectosense customers.

REQUEST FOR PRODUCTION NO. 172:

        All communications between You and VirtuOx regarding the EZSlēp products.

SUPPLEMENTAL RESPONSE: All responsive documents known to exist have already been produced by Ectosense, or attached to pleadings and/or motion practice by VirtuOx and Ectosense. To the extent this request seeks materials created after the anticipation of litigation, such materials are protected from disclosure by the common-interest exception to waiver of attorney-client privilege, and would have been disclosed on Ectosense's privilege log already. Should additional responsive documents be located in the future, Ectosense will promptly disclose their existence, and either contemporaneously produce them or identify the basis upon which they are withheld.

REQUEST FOR PRODUCTION NO. 173:

   Documents sufficient to show the relationship (whether formal or informal) between You and VirtuOx.

SUPPLEMENTAL RESPONSE: Ectosense has already produced the documents in its possession, custody, or control which it considers responsive to this request, or Ectosense has objected based on privilege or work-product. In any event, documents sufficient to show the relationship between Ectosense and VirtuOx have already been produced. As one example, Itamar's pleadings contemplate VirtuOx and Ectosense are simultaneously agents and principals of each other, and Ectosense and VirtuOx's pleadings and motions to dismiss sufficiently disclose the nature of the relationship between Ectosense and Virtuox in a clarifying manner. This colloquy exchanged through motion practice was quite literally undertaken in explicit contemplation of the exact question posed by the request— what is the nature of the legal relationship? The responsiveness is now at least partially moot as well, because Itamar dismissed its claims against VirtuOx with prejudice. Any tangential relevance of such materials which remains is clearly obviated by the fact this request has been satisfied in multiple ways, at multiple points in this litigation.

REQUEST FOR PRODUCTION NO. 174:

   All documents supporting the statement about the relationship between You and VirtuOx in the June 16, 2019 email from Bart Van Pee (Bates no. ECTO0002495) that "Your evaluation device was provided to you in partnership with Virtuox with whom we're partnering to bring the NightOwl to the US market."

SUPPLEMENTAL RESPONSE: To the extent Itamar is suggesting a comment made in passing by a non-attorney, outside the confines of litigation, to colloquially refer to an entity with whom

Ectosense has aligned-business interests in an ongoing fashion, the request unfairly ascribes legal significance to the word choice beyond the intended meaning. Otherwise, Ectosense has already produced the documents in its possession, custody, or control which it considers responsive to this request, or Ectosense has objected based on privilege or work-product. In any event, documents sufficient to show the evidence supporting the actual relationship between Ectosense and VirtuOx have already been produced. As one example, Itamar's pleadings contemplate VirtuOx and Ectosense are simultaneously agents and principals of each other, and Ectosense and VirtuOx's pleadings and motions to dismiss sufficiently disclose the nature of the relationship between Ectosense and Virtuox in a clarifying manner. This colloquy exchanged through motion practice was quite literally undertaken in explicit contemplation of the exact question posed by the request— what is the nature of the legal relationship? The responsiveness is now at least partially moot as well, because Itamar dismissed its claims against VirtuOx with prejudice. Any tangential relevance of such materials which remain to be produced is clearly obviated by the fact this request has been satisfied in multiple ways, at multiple points in this litigation.

REQUEST FOR PRODUCTION NO. 175:

Documents used to create Table 1 to Ectosense's Amended Answers to First Set of Interrogatories of "Selected financial information pertaining to Ectosense's commercial activities in the United States."

SUPPLEMENTAL RESPONSE: Ectosense already produced responsive materials in multiple formats, including in documents which contain the information contained in Table 1, but which were not specifically created in contemplation of Table 1. To the extent additional responsive documents may exist which have not yet been produced, the lack of production to date was based on an understanding Itamar would not intentionally issue a request which serves nothing more

than creating unnecessary labor to identify and produce materials of which the substance has already been provided. This request also exceeds the agreement between the parties that granular "financial" documents like invoices, and items related to expenses (like receipts) would not be needed in production and were not understood as responsive. Otherwise, Ectosense has produced all that Itamar would require (as described by Itamar's prior counsel) in order to assess alleged damages and alleged diverted earnings, which is the perceived reason for issuing this request, so further production would be overbroad. If Itamar is seeking this information to address Ectosense's subject matter jurisdiction arguments, then the concern is mooted by the Court's recent Omnibus Order on Ectosense's motions to dismiss.

<u>REQUEST FOR PRODUCTION NO. 176</u>:

> All communications with UK Consultant, Paul Phillips, regarding the 510(k).

<u>SUPPLEMENTAL RESPONSE:</u> Responsive materials have been produced, or are contemporaneously being produced herewith. To the extent responsive materials are comprised of documents not yet produced or identified on a privilege log, Ectosense designates such materials as "Attorney's Eyes Only."

<u>REQUEST FOR PRODUCTION NO. 177</u>:

> All documents authored by UK Consultant, Paul Phillips regarding the NightOwl products.

<u>SUPPLEMENTAL RESPONSE:</u> Responsive materials have been produced, or are contemporaneously being produced herewith, to the extent they exist. To the extent responsive materials are comprised of documents not yet produced or identified on a privilege log, Ectosense designates such materials as "Attorney's Eyes Only."

<u>REQUEST FOR PRODUCTION NO. 178</u>:

> Any studies conducted by UK Consultant, Paul Phillips or with his participation

regarding the NightOwl products.

SUPPLEMENTAL RESPONSE: Responsive materials have been produced, or are contemporaneously being produced herewith, to the extent they exist. To the extent responsive materials are comprised of documents not yet produced or identified on a privilege log, Ectosense designates such materials as "Attorney's Eyes Only."

REQUEST FOR PRODUCTION NO. 179:

All documents authored by UK Consultant, Paul Phillips regarding Itamar's WatchPAT® products.

SUPPLEMENTAL RESPONSE: Responsive materials have been produced, or are contemporaneously being produced herewith, to the extent they exist. To the extent responsive materials are comprised of documents not yet produced or identified on a privilege log, Ectosense designates such materials as "Attorney's Eyes Only."

REQUEST FOR PRODUCTION NO. 180:

Any studies conducted by UK Consultant, Paul Phillips or with his participation regarding Itamar's WatchPAT® products.

SUPPLEMENTAL RESPONSE: This request is duplicative of Request 179, at a minimum, as "participation" is a subset of what is encompassed within the word "conduct" in Request 179. Notwithstanding the redundancy of the request, responsive materials have been produced, or are contemporaneously being produced herewith, to the extent they exist. To the extent responsive materials are comprised of documents not yet produced or identified on a privilege log, Ectosense designates such materials as "Attorney's Eyes Only."

REQUEST FOR PRODUCTION NO. 181:

All communications with UK Consultant, Paul Clark regarding the 510(k).

SUPPLEMENTAL RESPONSE: No responsive documents exist within Ectosense's possession,

custody, or control which comprise communications with any U.K. consultant named Paul Clark. Any discovery materials produced by Ectosense suggesting to the contrary specific to "Paul Clark," inaccurately identify and describe such a consultancy. This response should be construed as superseding any previous discovery materials suggesting to the contrary. Moreover, any communications of the type sought, which relate to non-U.S. issues for which consultants were retained, are beyond the scope of what the parties have agreed is "responsive." Notwithstanding the objection, Ectosense is not withholding responsive documents on a privilege basis or otherwise.

REQUEST FOR PRODUCTION NO. 182:

SUPPLEMENTAL RESPONSE: No responsive documents exist within Ectosense's possession, custody, or control which comprise communications with any U.K. consultant named Paul Clark. Any discovery materials produced by Ectosense suggesting to the contrary specific to "Paul Clark," inaccurately identify and describe such a consultancy, This response should be construed as superseding any previous discovery materials suggesting to the contrary. Moreover, any communications of the type sought, which relate to non-U.S. issues for which consultants were retained, are beyond the scope of what the parties have agreed is "responsive." Notwithstanding the

REQUEST FOR PRODUCTION NO. 183:

Any studies conducted by UK Consultant, Paul Clark or with his participation regarding the NightOwl products.

SUPPLEMENTAL RESPONSE: No responsive documents exist within Ectosense's possession, custody, or control which comprise communications with any U.K. consultant named Paul Clark. Any discovery materials produced by Ectosense suggesting to the contrary specific to "Paul Clark," inaccurately identify and describe such a consultancy, This response should be construed as superseding any previous discovery materials suggesting to the contrary. Moreover, any

communications of the type sought, which relate to non-U.S. issues for which consultants were retained, are beyond the scope of what the parties have agreed is "responsive." Notwithstanding the objection, Ectosense is not withholding responsive documents on a privilege basis or otherwise.

REQUEST FOR PRODUCTION NO. 184:

All documents authored by UK Consultant, Paul Clark regarding Itamar's WatchPAT® products.

SUPPLEMENTAL RESPONSE: No responsive documents exist within Ectosense's possession, custody, or control which comprise communications with any U.K. consultant named Paul Clark. Any discovery materials produced by Ectosense suggesting to the contrary specific to "Paul Clark," inaccurately identify and describe such a consultancy, This response should be construed as superseding any previous discovery materials suggesting to the contrary. Moreover, any communications of the type sought, which relate to non-U.S. issues for which consultants were retained, are beyond the scope of what the parties have agreed is "responsive." Notwithstanding the objection, Ectosense is not withholding responsive documents on a privilege basis or otherwise.

REQUEST FOR PRODUCTION NO. 185:

Any studies conducted by UK Consultant, Paul Clark or with his participation regarding Itamar's WatchPAT® products.

SUPPLEMENTAL RESPONSE: No responsive documents exist within Ectosense's possession, custody, or control which comprise communications with any U.K. consultant named Paul Clark. Any discovery materials produced by Ectosense suggesting to the contrary specific to "Paul Clark," inaccurately identify and describe such a consultancy, This response should be construed as superseding any previous discovery materials suggesting to the contrary. Moreover, any communications of the type sought, which relate to non-U.S. issues for which consultants were retained, are beyond the scope of what the parties have agreed is "responsive." Notwithstanding the

objection, Ectosense is not withholding responsive documents on a privilege basis or otherwise.

REQUEST FOR PRODUCTION NO. 186:

      All documents and data in Your possession at the time of Your 501(k) submission that compared Photoplethysmography to Peripheral Arterial Tonometry.

SUPPLEMENTAL RESPONSE:  All responsive, non-privileged documents known to exist have been produced. Should additional responsive materials be identified, Ectosense will assess whether supplementation of its written responses, production, or privilege log is necessary, and promptly act accordingly.

REQUEST FOR PRODUCTION NO. 187:

      All documents and data in Your possession at the time of Your 501(k) submission that compared Photoplethysmography to Peripheral Arterial Tone.

SUPPLEMENTAL RESPONSE: All responsive, non-privileged documents known to exist have been produced. Should additional responsive materials be identified, Ectosense will assess whether supplementation of its written responses, production, or privilege log is necessary, and promptly act accordingly.

REQUEST FOR PRODUCTION NO. 188:

      All Your communications with the Centers for Medicare and Medicaid Services (CMS) related to the claim that the NightOwl product meets the requirements for CPT Code 95800.

SUPPLEMENTAL RESPONSE: No responsive documents exist within Ectosense's possession, custody, or control.

REQUEST FOR PRODUCTION NO. 189:

      All Your communications with the American Medical Association (AMA) related to the claim that the NightOwl product meets the requirements for CPT Code 95800.

SUPPLEMENTAL RESPONSE: No responsive documents exist within Ectosense's possession,

custody, or control.

REQUEST FOR PRODUCTION NO. 190:

All Your documents supporting the claim that the NightOwl product meets the requirements for CPT Code 95800.

SUPPLEMENTAL RESPONSE: The request is vague and overbroad as drafted. To the extent it seeks internal communications, such are protected by the work-product doctrine and attorney-client privilege, and may already be identified on Ectosense's privilege log. The request is also duplicative of previous requests. The request also seeks trade-secret and highly confidential materials.  The request is also cumulative of multiple other documents, including but not limited Ectosense's 510(k) submission. Otherwise, Ectosense agrees to produce documents sufficient to demonstrate the same, if Itamar indicates it does not currently possess such documentation.

REQUEST FOR PRODUCTION NO. 191:

All Your documents related to customer complaints involving the NightOwl product.

SUPPLEMENTAL RESPONSE: Ectosense interprets the request as limited to the topics the parties have stipulated are responsive subject matter topics, which in relation to customer complaints, would include complaints regarding Ectosense's assertions as to whether NightOwl measures PAT. Any responsive documents known to exist have either been produced, or identified on Ectosense's privilege log.

REQUEST FOR PRODUCTION NO. 192:

All Your documents sufficient to identify all customers of Ectosense's NightOwl product in the United States.

SUPPLEMENTAL RESPONSE: This request is duplicative of prior requests, and this request also exceeds the scope of discovery and what is considered "responsive" and subject to production,

explicitly on a topic which Ectosense's counsel specifically conferred with Itamar's previous counsel regarding. Otherwise, Ectosense reincorporates all other prior objections to this request.

REQUEST FOR PRODUCTION NO. 193:

All Your internal documents relating to the email from the FDA to You dated February 27, 2020 (the "Feb. 27, 2020 FDA Communication") (Bates no. ECTO0000428).

SUPPLEMENTAL RESPONSE: Ectosense is unaware of what documents would fall within this category, as the request delves into the interpretations of the FDA regarding what internal Ectosense documents "relate to" a particular email from the FDA. In other words, Itamar appears to be requesting all documents which were created by Ectosense, which the FDA considers related to the email. As a result, Ectosense is presently unaware of responsive materials within its possession, custody, or control. Moreover, Itamar could easily ask the entity better equipped to identify documents it considers responsive, even if originally disseminated internally within Ectosense— that entity being the FDA itself.

REQUEST FOR PRODUCTION NO. 194:

All communications between Ectosense and third parties relating to the Feb. 27, 2020 FDA Communication.

SUPPLEMENTAL RESPONSE: No responsive documents are presently known to be within Ectosense's possession, custody, or control. Should additional responsive documents be located in the future, Ectosense will promptly amend its responses and either produce, or amend its privilege log.

REQUEST FOR PRODUCTION NO. 195:

All communications between Ectosense and the FDA relating to the Feb. 27, 2020 FDA Communication.

SUPPLEMENTAL RESPONSE: Excluding materials comprised of documents which have

already been produced or identified on a privilege log, Ectosense already produced responsive materials, and no additional responsive documents are presently known to be within Ectosense's possession, custody, or control.

REQUEST FOR PRODUCTION NO. 196:

All drafts of Your March 2, 2020 response to the Feb. 27, 2020 FDA Communication.

SUPPLEMENTAL RESPONSE: Excluding materials comprised of documents which have already been produced or identified on a privilege log, no additional responsive documents are presently known to be within Ectosense's possession, custody, or control. To the extent the request seeks different versions of the actually transmitted email, the only possible iterations of such documents would be based on the difference in the persons receiving the email. Otherwise, the substance of the request is already sufficiently met by the Feb. 27, 2020 communication itself, and any non-final, preliminary versions of what were ultimately sent would either not lead to discoverable evidence beyond what has already been produced in substance, or would be cumulative, depending on the interpretation ascribed to a description of non-final versions of the document ultimately sent are "drafts."

REQUEST FOR PRODUCTION NO. 197:

All communications between You and VirtuOx regarding the use of the term "PAT-based" and or the use of the PAT MARKS.

SUPPLEMENTAL RESPONSE: This request is duplicative of previous requests, including but not limited to Requests 169, 171, 173, and 174. Ectosense therefore incorporates its previously asserted objections. The request is also now moot, given Itamar's dismissal of VirtuOx with prejudice, and to the extent Itamar would argue it is not moot, it would at a minimum be cumulative in the alternative.

REQUEST FOR PRODUCTION NO. 198:

All communications between You and VirtuOx regarding Itamar.

SUPPLEMENTAL RESPONSE: This request is duplicative of previous requests, including but not limited to Requests 169, 171, 173, and 174. Ectosense therefore incorporates its previously asserted objections. The request is also now moot, given Itamar's dismissal of VirtuOx with prejudice, and to the extent Itamar would argue it is not moot, it would at a minimum be cumulative in the alternative.

REQUEST FOR PRODUCTION NO. 199:

All notes of internal meetings regarding the 510(k).

SUPPLEMENTAL RESPONSE: Ectosense interprets the request as seeking the notes of meetings which included 510(k) as a specific topic, not every instance in which someone at Ectosense referenced 510(k) submissions in even a passing fashion. No responsive documents are known to exist, which have not already been provided.

REQUEST FOR PRODUCTION NO. 200:

All notes of internal meetings regarding communications with the FDA relating to the 510(k).

SUPPLEMENTAL RESPONSE: This request appears duplicative of prior requests, and if not duplicative, Ectosense interprets the request as seeking the notes of meetings which included 510(k) as a specific topic, not every instance in which someone at Ectosense referenced 510(k) submissions in even a passing fashion. No responsive documents are known to exist, which have not already been provided.

Dated: October 8, 2021                          Respectfully submitted,

                                                */s/ Laura Ganoza*
                                                **FOLEY & LARDNER LLP**
                                                Laura Ganoza, Esq.
                                                Florida Bar No. 0118532
                                                lganoza@foley.com
                                                atownsend@foley.com
                                                Ana Romes, Esq.
                                                Florida Bar No. 101179
                                                aromes@foley.com
                                                avargas@foley.com
                                                Hawwi W. Edao
                                                Florida Bar No. 1026550
                                                hedao@foley.com
                                                hmoreno@foley.com
                                                One Biscayne Tower, Suite 1900
                                                2 South Biscayne Boulevard
                                                Miami, Florida 33131
                                                Tel.: (305) 482-8400

                                                ***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 17th of January, 2022, at 9:30 a.m. PST, a true and correct copy of theforegoing was electronically served on all counsel of record as listed in the Service List below.

                                                */s/ B. George Walker*
                                                B. George Walker

## SERVICE LIST

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 20-cv-60719- DIMITROULEAS/SNOW

**TRIPP SCOTT, P.A.**
Paul O. Lopez, Esq.
eservice@trippscott.com
pol@trippscott.com
sxc@trippscott.com

Seth J. Donahoe, Esq.
eservice@trippscott.com
sjd@trippscott.com
sgc@trippscott.com

B. George Walker, Esq.
eservice@trippscott.com
bgw@trippscott.com
sxc@trippscott.com

*Counsel for Ectosense NV*

**GREENBERG TRAURIG, LLP**
Paul B. Ranis, Esq.
ranisp@gtlaw.com
scottlaw@gtlaw.com
FLService@gtlaw.com

*Co-Counsel for Ectosense NV*

**FOLEY & LARDNER LLP**
Laura Ganoza, Esq.
lganoza@foley.com
atownsend@foley.com
Ana Romes, Esq.
aromes@foley.com
avargas@foley.com
Yelan Escalona
yescalona@foley.com
Jessica N. Walker, Esq.
*(admitted pro hac vice)*
jwalker@foley.com

*Counsel for Plaintiff Itamar Medical Ltd.*

**GK ADVISORY**
Anna Adamsky, Esq.
*(pro hac vice filed)*
anna@gk-ad.com
Gene Kleinhendler, Esq.
*(pro hac vice filed)*
gene@gk-ad.com

*Co-Counsel for Plaintiff Itamar Medical Ltd.*

# Exhibit 1



# ECTOSENSE TECHNOLOGY

# INTO PERSPECTIVE

An introduction to the uses of plethysmography in HSAT

The following document serves to provide the sleep physician with a greater understanding of the many uses of the photo-plethysmography signal as well as its relation to the 'Peripheral Arterial Tonometry' (PAT) signal, a signal used by novel home sleep apnea tests (HSATs) for the accurate diagnosis of sleep apnea in the home environment.

March 2017





# 1 THE PPG DEMYSTIFIED

## 1.1 PPG: MORE INFORMATION THAN MEETS THE EYE

Known for its use in pulse oximetry, photo-plethysmography (PPG) is an optical measurement of the pulsatile blood volume in a tissue, typically the finger or forehead. Several phenomena associated with variation in capillary perfusion can be captured via a detailed analysis of the PPG, resulting typically in PPG amplitude attenuations and pulse rate changes.



### Heart function

Pulse (heart) rate and pulse rate variability analysis allows monitoring of cardiac function and cardiac arrhythmia.

### SNS activity

Through an innervation of the digital artery by α-adrenergic receptors, increased sympathetic nervous system (SNS) activity results in digital artery vasoconstriction, which can be observed as an attenuation in the amplitude of the PPG. Similarly, low sympathetic activation is translated into higher PPG amplitudes. Autonomic arousals are also associated with an increase in pulse rate.



### Breathing function

Respiratory correlates can be captured from pulse rate (PR) changes caused by respiratory sinus arrhythmia. Respiratory information can also be derived from PPG amplitude. For example, decreased intra-thoracic and increased intra-abdominal pressures due to respiratory effort result in a pressure gradient in the inferior vena cava, thereby increasing right heart filling which then deviates the interventricular septum and decreases the left ejection volume. This eventually translates into a decreased PPG amplitude.



### Blood oxygen saturation (SpO$_2$)

Due to the different light absorption levels of haemoglobin and oxyhaemoglobin at different wavelengths of emitted light, it is possible – typically by using red and infra-red light – to determine the relative concentration of each of these two forms in the blood, leading to an estimate of the oxygen saturation.





### 1.2   INTELLIGENT ALGORITHMS CAN SUBSTRACT THE RICH INFORMATION

Although the PPG is a rich source of information, its richness has been overlooked by physicians since extracting information such as respiration and SNS activity requires intelligent algorithms, whereas direct measurements of those phenomena – as provided by the other PSG channels – provides the desired information without such requirement for further signal processing. With the advancement of signal processing techniques in the engineering field, the extraction of this information is now possible.

## 2   THE PAT DEMYSTIFIED

### 2.1   'PAT': WHAT'S IN THE NAME?

Peripheral Arterial Tone, or 'PAT', refers to a plethysmographic measurement of the pulsatile blood volume in a body extremity such as the fingertip. The signal can be measured optically, making use of the photo-plethysmography technique as described earlier.

### 2.2   THE VALUE OF PAT AS A SLEEP APNEA TESTING MODALITY

As was illustrated under 1.1 in the case of an optical measurement of PAT through the PPG signal, the PAT signal provides a measure of sympathetic nervous system activation.

Sleep-disordered breathing-related events, and in particular the end-stage of apneic events, result into sympathetic tone variations. The increased blood pressure and vasoconstriction subsequently result into amplitude and rate modulations of the PAT signal which can be used to identify such apneic events.



*Figure 1 – A cessation of breathing during and arousals at the end of apneic event – as measured by the PSG channels – result into clear modulations of the PAT signal*

In March 2017, the American Association of Sleep Medicine (AASM) endorsed in its Clinical Practice Guidelines the accurate detection of sleep apnea events by a combination of PAT, oximetry and actigraphy, creating a specific Home Sleep Apnea Test (HSAT) category for testing devices that make use of such technology[1].

---

[1] V. K. Kapur et al., "Clinical Practice Guideline for Diagnostic Testing for Adult Obstructive Sleep Apnea: An American Academy of Sleep Medicine Clinical Practice Guideline," *J. Clin. Sleep Med.*, vol. 13, no. 3, pp. 479–504, 2017.

3   WATCHPAT VS NIGHTOWL DEVICE



| WatchPAT™ | NIGHTOWL |
|---|---|
| Disposable pressurized cuff with optical sensor and wrist-device weighing 150 grams | Patched sensor dot weighing 8 grams |

### SLEEP STUDY TYPE

| | |
|---|---|
| Type IV | Type IV |

### CHANNELS

| | |
|---|---|
| ▪ PAT signal | ▪ PAT signal |
| ▪ Oxygen saturation | ▪ Oxygen saturation |
| ▪ Actigraphy | ▪ Actigraphy |
| ▪ Heart Rate | ▪ Heart Rate |
| ▪ Sound (opt.) | ▪ Head position (when worn on forehead) |
| ▪ Chest movement / body position (opt.) | ▪ Sound (opt.) |

### PRICING MODEL

| | |
|---|---|
| Price per night/disposable probe | Price per 7-day test |

### POSITIONAL THERAPY

| | |
|---|---|
| No | Coming soon [2] |

### MAIN CLINICAL FEATURES

| | |
|---|---|
| ▪ AHI | ▪ AHI |
| ▪ ODI | ▪ ODI |
| ▪ Sleep/wake detection | ▪ Sleep/wake detection |
| ▪ Total Sleep Time | ▪ Total Sleep Time |
| ▪ Up to 3 nights (*with 3 disposable probes*) | ▪ Up to 7 nights |
| ▪ Central AHI (*with additional sensor*) | ▪ Central sleep apnea flagging |
| ▪ 'PAT-sleep stages' | ▪ Head position (*coming soon*) |
| ▪ Body position (*with additional sensor*) | ▪ Snoring (*coming soon*) |
| ▪ Snoring (*with additional sensor*) | |

### ANTI-TAMPERING OPTION

| | |
|---|---|
| Yes, with additional bracelet, but allows to circumvent easily | Coming soon |

---

[2] Following an in-app activation purchase by the patient, the device can be used for continued follow-up analyses or positional therapy provision.